## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NAYDA ALVAREZ**, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **DONALD J. TRUMP**, *in his official capacity as President of the United States, et al.*, <br><br> **Defendants.** | No. 1:19-cv-0404-TNM |
| **CENTER FOR BIOLOGICAL DIVERSITY**, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **DONALD J. TRUMP**, *President of the United States, et al.*, <br><br> **Defendants.** | No. 1:19-cv-0408-TNM |

## MOTION FOR LEAVE TO FILE MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AS *AMICUS CURIAE* BY REP. ANDY BARR

Pursuant to Local Rule 7, movant Rep. Andy Barr respectfully seeks this Court's leave to file the accompanying memorandum of law as an *amicus curiae* in support of the federal defendants' motion to dismiss the two above-captioned challenges to the Presidential Proclamation on Declaring a National Emergency Concerning the Southern Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019). Pursuant to Local Rule 7(m), the parties conferred on this motion. Counsel for parties indicated their clients' positions on this motion as follows: the defendants consent; the plaintiffs in No. No. 1:19-cv-0404-TNM do not oppose a motion filed on or before April 10; and the plaintiffs in No. No. 1:19-cv-0408-TNM "will take a position on the motion once filed."

In support of his motion for leave to file the accompanying memorandum of law as an

*amicus curiae,* Rep. Barr states as follows:

1.     Rep. Barr has represented Kentucky's 6th congressional district since 2013.

2.     A lawyer by training, Rep. Barr also taught constitutional law at the University of Kentucky and Morehead State University  when his practice was based in Kentucky.

3.     Rep. Barr supports the President's attention to the humanitarian and public-safety emergency on the southern border as both a citizen and as a Member of Congress. In his legislative capacity, Rep. Barr has a significant interest in protecting the statutory scheme that Congress enacted to delegate power in emergencies to the President, not to courts.

4.     The proffered memorandum discusses the congressional understanding in enacting the National Emergencies Act, 50 U.S.C. §§ 1601-1651 ("NEA"), in 1976 and in amending it in 1985 to remove the constitutional infirmity with concurrent resolutions that surfaced in *INS v. Chadha,* 462 U.S. 919, 946 (1983), and also discusses merits and justiciability issues that flow from the Act's structure and content. In these discussions, Rep. Barr draws on the Act's structure to raise issues of justiciability not addressed by the defendants' motions to dismiss, but within this Court's obligation to consider jurisdiction *sua sponte.* Specifically, on justiciability, Rep. Barr argues that because the NEA does not provide judicially manageable standards to evaluate the President's exercise of discretion, and there has been no final agency action here, this action falls outside the Administrative Procedure Act's waiver of sovereign immunity. *See* 5 U.S.C. §§ 701(a)(2), 702, 704.

5.     Movant Barr thus respectfully submits that his proffered memorandum of law could aid the Court in resolving these cases and will not prejudice the parties.

6.     Finally, because this Court has two similar cases before it — Nos. 1:19-cv-0404-TNM and 1:19-cv-0408-TNM — that differ in some respects but present the same issues for the

purposes of Rep. Barr's analysis, Rep. Barr respectfully submits the same brief for the Court's consideration in each case, rather than seeking leave to file two differently captioned, but otherwise identical briefs.

WHEREFORE, for the foregoing reasons, Rep. Barr respectfully seeks this Court's leave to file the accompanying memorandum of law as an *amicus curiae* in both cases. A proposed order is attached.

Dated: April 9, 2019

Respectfully submitted,

/s/ Lawrence J. Joseph

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
chajec@irli.org

Lawrence J. Joseph, , D.C. Bar No. 464777
1250 Connecticut Av NW Suite 700-1A
Washington, DC 20036
Telephone: (202) 355-9452
Facsimile: (202) 318-2254
ljoseph@larryjoseph.com

*Counsel for Representative Andy Barr*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 9th day of April 2019, I electronically filed the foregoing

motion — together with its accompanying memorandum of law and proposed order — with the

Clerk of the Court using the CM/ECF system, which I understand to have caused service of the

parties' counsel.


/s/ Lawrence J. Joseph
_____
Lawrence J. Joseph

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NAYDA ALVAREZ**, *et al.*,<br><br>          **Plaintiffs**,<br><br>          v.<br><br>**DONALD J. TRUMP**, *in his official capacity as President of the United States, et al.*,<br><br>          **Defendants.** | No. 1:19-cv-0404-TNM |
| **CENTER FOR BIOLOGICAL DIVERSITY**, *et al.*,<br><br>          **Plaintiffs**,<br><br>          v.<br><br>**DONALD J. TRUMP**, *President of the United States, et al.*,<br><br>**Defendants.** | No. 1:19-cv-0408-TNM |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BY *AMICUS CURIAE* REP. ANDY BARR

CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org

LAWRENCE J. JOSEPH
Law Office of Lawrence J. Joseph
1250 Connecticut Ave. NW, Suite 700-1A
Washington, DC 20036
(202) 355-9452
ljoseph@larryjoseph.com

*Counsel for Rep. Andy Barr*

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ......................................................................................................... iii

Identity and Interest of *Amicus Curiae* ...........................................................................1

Introduction.......................................................................................................................1

Statement of Facts.............................................................................................................1

Argument ..........................................................................................................................2

I.      The NEA provides the President with flexibility in emergencies, Congress
with oversight, and private Plaintiffs wth no role. ...............................................2

      A.     The NEA provides the President with flexibility and Congress —
not private parties — with oversight.........................................................3

      B.     Even if the switch from concurrent to joint resolutions would have
changed some votes in 1976, Congress ratified the current NEA with
the post-*Chadha* amendment in 1985. ......................................................6

II.     This Court lacks jurisdiction to grant Plaintiffs' requested relief. ......................8

      A.     Plaintiffs lack an Article III case or controversy. ...................................8

      B.     Sovereign immunity bars this action........................................................10

             1.     The United States has not waived sovereign immunity for
this action. ...................................................................................10

                  a.     This Court lacks judicially manageable standards to
review this matter...........................................................11

                  b.     Plaintiffs have not challenged a final agency action
and lack statutory review. ...............................................12

             2.     Plaintiffs' adequate future remedies displace some equity
claims. ..........................................................................................13

III.    Plaintiffs lack a viable action on the merits. ......................................................14

      A.     The President's NEA proclamation complies with the NEA................14

      B.     Plaintiffs do not state a claim under either 31 U.S.C. § 9705 or 10
U.S.C. §§ 284, 2808..............................................................................15

      C.     Plaintiffs do not state a claim under the Appropriations or Take Care
Clauses of the Constitution. ...................................................................16

Conclusion ......................................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Air New Zealand Ltd. v. C.A.B.*,
   726 F.2d 832 (D.C. Cir. 1984) .......................................................................................11

*Allen v. Wright*,
   468 U.S. 737 (1984) .........................................................................................................8

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) .........................................................................................................8

*Califano v. Sanders*,
   430 U.S. 99 (1977) ...........................................................................................................2

\* *Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ...................................................................................................2, 11

*Council of and for the Blind of Delaware County Valley, Inc., v. Regan*,
   709 F.2d 1521 (D.C. Cir. 1983) (*en banc*) ....................................................................13

*Dep't of Army v. Blue Fox, Inc.*,
   525 U.S. 255 (1999) .......................................................................................................10

*Ex parte Young*,
   209 U.S. 123 (1908) ...................................................................................................13-14

*FDIC v. Meyer*,
   510 U.S. 471 (1994) .......................................................................................................10

*Fleming v. Mohawk Co.*,
   331 U.S. 111 (1947) .........................................................................................................7

*Friends of the Capital Crescent Trail v. Fed. Transit Admin.*,
   49 ELR 20038 (D.D.C. 2019) ........................................................................................14

*FTC v. Standard Oil Co.*,
   449 U.S. 232 (1980) .........................................................................................................4

*Gray v. Powell*,
   314 U.S. 402 (1941) .......................................................................................................11

*Green v. Mansour*,
   474 U.S. 64 (1985) .........................................................................................................14

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .......................................................................................................11

*INS v. Cardoza-Fonseca*,
   480 U.S. 421 (1987) .......................................................................................................12

*INS v. Chadha*,
   462 U.S. 919 (1983) ......................................................................................................6-7

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982)......................................................................................8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994)......................................................................................8

*Lane v. Pena,*
518 U.S. 187 (1996)....................................................................................10

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)......................................................................................9

*Luther v. Borden,*
48 U.S. 1 (1849)............................................................................................9

*Marbury v. Madison,*
5 U.S. (1 Cranch) 137 (1803)......................................................................13

*Muskrat v. United States,*
219 U.S. 346 (1911)......................................................................................8

*Nat'l Labor Relations Bd. Union v. Fed. Labor Relations Auth.,*
834 F.2d 191 (D.C. Cir. 1987).....................................................................14

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999)....................................................................................14

*Panama Canal Co. v. Grace Line, Inc.,*
356 U.S. 309 (1958)....................................................................................12

*Red Lion Broad. Co. v. FCC,*
395 U.S. 367 (1969)......................................................................................7

*Sea-Land Serv., Inc. v. Alaska R.R.,*
659 F.2d 243 (D.C. Cir. 1982).....................................................................10

*Steel Co. v. Citizens for a Better Env't.,*
523 U.S. 83 (1998)........................................................................................8

*Texas v. United States,*
523 U.S. 296 (1998)......................................................................................9

*United States v. Sherwood,*
312 U.S. 584 (1941)....................................................................................10

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.,*
535 U.S. 635 (2002)...............................................................................13-14

*Vieth v. Jubelirer,*
541 U.S. 267 (2004)................................................................................9, 12

*Younger v. Harris,*
401 U.S. 37 (1971)......................................................................................13

## **<u>STATUTES</u>**

U.S. CONST. art. III ...................................................................................... 8-10

iv

U.S. Const. art. III, § 2 ........................................................................................8

Administrative Procedure Act,
    5 U.S.C. §§ 551-706 ................................................2, 4-5, 10-13

5 U.S.C. § 701 ........................................................................................4

5 U.S.C. § 701(a)(1) ........................................................................................11

\* 5 U.S.C. § 701(a)(2) ........................................................................................2, 11

5 U.S.C. § 702 ........................................................................................2, 4, 10

5 U.S.C. § 702(2) ........................................................................................11

5 U.S.C. § 703 ........................................................................................11

\* 5 U.S.C. § 704 ........................................................................................2, 4, 11-12

10 U.S.C. § 284 ........................................................................................1, 15

10 U.S.C. § 284(a) ........................................................................................15

10 U.S.C. § 284(b)(7) ........................................................................................15

10 U.S.C. § 2808 ........................................................................................1, 15-16

10 U.S.C. § 2808(a) ........................................................................................16

10 U.S.C. § 2801(b) ........................................................................................16

10 U.S.C. § 2801(a) ........................................................................................16

10 U.S.C. § 2801(c)(4) ........................................................................................16

28 U.S.C. § 1361 ........................................................................................11

31 U.S.C. § 9705 ........................................................................................1, 15

31 U.S.C. § 9705(g)(4)(B) ........................................................................................15

National Emergencies Act,
    50 U.S.C. §§ 1601-1651 ................................1-7, 9-12, 14-15, 17

\* 50 U.S.C. § 1621(a) ........................................................................................3, 14

\* 50 U.S.C. § 1621(b) ........................................................................................10, 15

Pub. L. No. 80-772, § 1, 62 Stat. 683, 765 (1948) ........................................4

Pub. L. No. 94-412, 90 Stat. 1255 (1976) ........................................2

Pub. L. No. 94-574, § 1, 90 Stat. 2721 (1976) ........................................10

Pub. L. No. 99-93, § 801, 99 Stat. 405, 448 (1985) ........................................7

8 U.S.C. § 1254(c)(2) (1982) ........................................6

18 U.S.C. § 1383 (1970) ........................................4-5

# LEGISLATIVE HISTORY

S. Comm. on Gov't Operations & the Special Comm. on Nat'l Emergencies and
  Delegated Emergency Powers, 94th Cong., 2d Sess., The National Emergencies
  Act Source Book: Legislative History, Texts, and Other Documents (1976) ........... 3-6, 12

H.R. REP. NO. 99-240 (1985) .................................................................................................7

S. REP. NO. 93-1170 (1974) ...................................................................................................4

120 CONG. REC. 29,975, 29,983 (Aug. 22, 1974) ...........................................................4

120 CONG. REC. 34,011, 34,013 (Oct. 7, 1974) ...........................................................2-3

121 CONG. REC. 27,632, 27,636 (Sept. 4, 1975) .............................................................3

121 CONG. REC. 27,632, 27,645 (Sept. 4, 1975) ...................................................3, 5, 12

121 CONG. REC. 27,632, 27,646 (Sept. 4, 1975) .............................................................5

122 CONG. REC. 28,466 (Aug. 31, 1976) .........................................................................6

131 CONG. REC. 14,671, 14,947 (June 7, 1985) ..............................................................7

# RULES AND REGULATIONS

Local Rule 7(o)(5) ..................................................................................................................1

FED. R. APP. P. 29(a)(4)(E) ....................................................................................................1

Presidential Proclamation on Declaring a National Emergency Concerning the Southern
  Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019) ............................... 1-2, 14

# OTHER AUTHORITIES

Kenneth Culp Davis, *"Nonreviewable Administrative Action,"* 96 U. PA. L. REV.
  749 (1948) ..........................................................................................................................11

Louis L. Jaffee, *The Right to Judicial Review I,* 71 HARV. L. REV. 401 (1958) ...........................13

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Rep. Andy Barr seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion for leave to file.[1] As explained in the motion for leave to file, Rep. Barr (hereinafter, "*Amicus*") has an ongoing interest in federal immigration policy both as the Representative elected to the 116th Congress for Kentucky's Sixth Congressional District and as a citizen. For these reasons, Rep. Barr has direct interests in the issues here.

## INTRODUCTION

In two related — but not yet consolidated — actions, several individual landowners and environmental groups (collectively, "Plaintiffs") have sued various federal Executive offices, officers, and the United States (collectively, the "Government") to challenge the Presidential Proclamation on Declaring a National Emergency Concerning the Southern Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019), as well as future actions under the Treasury Forfeiture Fund ("TFF"), 31 U.S.C. § 9705, and the Department of Defense's funding under 10 U.S.C. §§ 284, 2808. The primary driver of this litigation is Plaintiffs' policy dispute with the Government on whether an emergency exists at the southern border and on immigration policy generally. In making the Proclamation, the President relied on authority delegated by Congress in the National Emergencies Act, 50 U.S.C. §§ 1601-1651 ("NEA").

## STATEMENT OF FACTS

*Amicus* adopts the facts as stated by the Government. Gov't Memo. at 3-10 (ECF #8) (No. 1:19-cv-0404-TNM); Gov't Memo. at 3-11 (ECF #12) (No. 1:19-cv-0408-TNM). In arguing these

---

[1] Consistent with FED. R. APP. P. 29(a)(4)(E) and Local Rule 7(o)(5), counsel for movant and *amicus curiae* authored the motion and brief in whole, and no counsel for a party authored the motion or brief in whole or in part, nor did any person or entity, other than the movant/*amicus* and his counsel, make a monetary contribution to preparation or submission of the motion or brief.

cases, however, *Amicus* does not rely on the specific facts concerning each Plaintiff.

## ARGUMENT

The NEA provides the President with flexibility and Congress with oversight, leaving no room for private enforcement. By leaving one political actor's discretion bounded only by the discretion of another political actor, the NEA provides a reviewing court "no law to apply" in an action for judicial review. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Thus, NEA actions fall outside the ambit of not only the Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA"), but also the APA's waiver of sovereign immunity. 5 U.S.C. §§ 701(a)(2), 702. Further, all of the challenged actions here — *i.e.*, both NEA and non-NEA actions — fall outside the APA's waiver of sovereign immunity because the Government has taken no final agency action. 5 U.S.C. §§ 702, 704. This Court accordingly should conclude that it lacks jurisdiction to hear Plaintiffs' claims.

Even if this Court concludes that it has jurisdiction, Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted. In issuing his Proclamation and in vetoing the joint resolution to terminate it, the President faithfully followed the statutory framework enacted by Congress and properly exercised his powers under the Constitution.

## I.    THE NEA PROVIDES THE PRESIDENT WITH FLEXIBILITY IN EMERGENCIES, CONGRESS WITH OVERSIGHT, AND PRIVATE PLAINTIFFS WTH NO ROLE.

Congress enacted the NEA in 1976, Pub. L. No. 94-412, 90 Stat. 1255 (1976), culminating a review of emergency legislation begun by the Senate's formation of the Special Committee on the Termination of the National Emergency — later renamed the Special Committee on National Emergencies and Delegated Emergency Powers (hereinafter, the "Special Committee") — in 1973 to study national emergencies that remained "on the books" even though the triggering emergency had passed. 120 Cong. Rec. 34,011, 34,013 (Oct. 7, 1974) (Sen. Mathias), *reprinted in* S. Comm.

on Gov't Operations & the Special Comm. on Nat'l Emergencies and Delegated Emergency

Powers, 94th Cong., 2d Sess., The National Emergencies Act Source Book: Legislative History,

Texts, and Other Documents, at 84-85 (1976) (hereinafter, "NEA Source Book"). Sens. Church

and Mathias co-chaired the Special Committee, which also included several other Senators,

including — as relevant here — Sen. Pearson. Representatives Morehead and Flowers were the

floor managers for the bill in the House.

A.   **The NEA provides the President with flexibility and Congress — not private parties — with oversight.**

Congress contemplated that the NEA would provide the President unfettered discretion to

*declare* an emergency, subject only to the power of Congress under the NEA to *terminate* an

emergency by concurrent resolution:

> As a firm believer in a strong Presidency and Executive flexibility, I could not support this bill if it would impair any of the rightful constitutional powers of the President. [The bill] will have no impact on the flexibility to declare a national emergency and to quickly respond if the necessity arises.

121 CONG. REC. 27,632, 27,636 (Sept. 4, 1975) (Rep. Hutchinson), *reprinted in* NEA Source Book,

at 252-53; 121 CONG. REC. 27,632, 27,645 (Sept. 4, 1975) (Red. Drinan), *reprinted in* NEA Source

Book, at 279 ("H.R. 3884 [has] no standard really, whatsoever, when and why the President can

proclaim a national emergency"). Consistent with the statutory text, 50 U.S.C. § 1621(a) ("the

President is authorized to declare such national emergency"), a President has full discretion to

declare an emergency in the first instance.

As enacted, the NEA relied on congressional oversight, 121 CONG. REC. 27,632, 27,636

(Sept. 4, 1975) (Rep. Moorhead), *reprinted in* NEA Source Book, at 254 ("Congress would assume

the major role of reviewing and overseeing the conduct of the Executive branch in a national

emergency situation"), not on judicial review:

> Unlike inherent Presidential powers which can be reviewed by the Supreme
> Court, emergency powers are specific legal delegations of authority to a
> President. The Supreme Court has generally given deference to such delegations
> of authority. The laws are viewed as persuasive evidence of Congressional intent
> that the President should be permitted special latitude during crises. Thus, *unless
> the Congress itself imposes controls, emergency powers shall remain largely
> unchecked.*

120 CONG. REV. 29,975, 29,983 (Aug. 22, 1974) (Sen. Pearson), *reprinted in* NEA Source Book,

at 84-85 (emphasis added). NEA's legislative history addresses APA review — obliquely — in

two places. In an interim report, the Special Committee used the example of the reviewability of

arrests under former 18 U.S.C. § 1383 (1970):[2]

> Would these arrests be reviewable in court? It is not clear. Judicial review of
> agency action is guaranteed in 5 USC 702, but 5 USC 701 excludes action taken
> under declarations of martial law.

S. REP. NO. 93-1170, at 2 (1974), *reprinted in* NEA Source Book, at 20; Special Committee Report,

at 3, *reprinted in* NEA Source Book, at 35 (same). While the NEA did not resolve whether pre-

NEA law would allow judicial review of hypothetical arrests under § 1383, this example raises

two important issues. First, the Special Committee recognized that in addition to the APA's

generous review, the question of reviewability also hinged on the APA's *limits* to that review.[3]

---

[2]     When the NEA was enacted, § 1383 provided as follows: "Whoever, contrary to the
restrictions applicable thereto, enters, remains in, leaves, or commits any act in any military area
or military zone prescribed under the authority of an Executive order of the President, by the
Secretary of the Army, or by any military commander designated by the Secretary of the Army,
shall, if it appears that he knew or should have known of the existence and extent of the restrictions
or order and that his act was in violation thereof, be fined not more than $5,000 or imprisoned not
more than one year, or both." PUB. L. NO. 80-772, § 1, 62 Stat. 683, 765 (1948).

[3]     Although the Special Committee cited 5 U.S.C. § 701 as a relevant limitation on APA
review, *Amicus* submits that 5 U.S.C. § 704 would provide another potential limit to review in the
scenario outlined by the Special Committee. *FTC v. Standard Oil Co.*, 449 U.S. 232, 246 (1980)
("complaint averring reason to believe that [defendant] has violated the Act is not 'final agency
action' under [5 U.S.C. § 704], it is not judicially reviewable before administrative adjudication
concludes").

Second, the Special Committee hypothesized APA review of the *arrests*, not of the underlying *Executive order* that triggered § 1383 in the first place.

Rep. Drinan introduced an amendment to limit the President's authority to initiate an NEA emergency to instances during wartime or attack, with all other emergencies requiring a joint resolution of the two houses of Congress authorizing the President to declare an emergency. 121 CONG. REC. 27,632, 27,645 (Sept. 4, 1975), *reprinted in* NEA Source Book, at 278. Rep. Drinan introduced his amendment to trim the President's flexibility: "In H.R. 3884 there is no standard really, whatsoever, when and why the President can proclaim a national emergency." *Id.*, *reprinted in* NEA Source Book, at 279 (Rep. Drinan). Rep. Moorhead opposed the Drinan amendment because it "would completely take away from the President the flexibility of acting in times of crisis or an emergency." 121 CONG. REC. 27,632, 27,646 (Sept. 4, 1975), *reprinted in* NEA Source Book, at 280 (Rep. Moorhead). These rival positions appear to have been resolved by the power that the NEA gave the Congress to terminate a presidentially declared emergency with a concurrent resolution:

> Mr. Conyers. … What happens if the President of the United States vetoes the congressional termination of the emergency power? Is that contemplatable within the purview of this legislation? …
>
> Mr. Flowers. Mr. Chairman, on the advice of counsel we have researched that thoroughly. A concurrent resolution would not require Presidential signature or acceptance. It would be an impossibility that it would be vetoed.
>
> Mr. Conyers. So there is no way that the President could interfere with the Congress.
>
> Mr. Flowers. The gentleman is correct.

121 CONG. REC. 27,632, 27,646 (Sept. 4, 1975), *reprinted in* NEA Source Book, at 280. After that colloquy, the Drinan amendment was rejected. *Id.* In a later colloquy, Rep. Moorhead asked Rep. Flowers to "tell the House whether there is any intent here to limit either the President's power or

flexibility to declare a national emergency," and Rep. Flowers replied that "there is not" and that "I do not think that we want to do that by legislation in any event." 122 CONG. REC. 28,466 (Aug. 31, 1976), *reprinted in* NEA Source Book, at 342 (Reps. Moorhead and Flowers). In sum, as passed in 1976, the NEA allowed the President full discretion to declare emergencies, subject only to the ability of the two houses of Congress to terminate an emergency by a veto-proof concurrent resolution.[4]

B. **Even if the switch from concurrent to joint resolutions would have changed some votes in 1976, Congress ratified the current NEA with the post-*Chadha* amendment in 1985.**

*Amicus* does not doubt that some members of the 94th Congress voted for the NEA because, under it, Congress would retain the power unilaterally to terminate a presidentially declared emergency through a concurrent resolution (*i.e.*, one passed by a majority vote in each house, without presentment to the President). *See* 121 CONG. REC. 27,632, 27,646 (Sept. 4, 1975), *reprinted in* NEA Source Book, at 280 (Reps. Conyers and Flowers). In *INS v. Chadha,* 462 U.S. 919, 946 (1983), however, the Supreme Court rejected the one-house veto provisions of former 8 U.S.C. § 1254(c)(2) (1982) for failing to meet the constitutional requirements of bicameralism and presentment. In doing so, *Chadha* cast grave doubt on the ability of Congress to void presidential action by a concurrent resolution (*i.e.*, without presentment to the President). Simply put, bicameralism alone is insufficient: either the President must sign the bill, or Congress must override a veto.

If Congress had not acted to address the NEA's revealed constitutional infirmity, this Court

---

[4]     Although congressional review appears to have been very relevant — if not critical — to the NEA's passage, Congress later ultimately accepted and ratified the current NEA, with its less stringent congressional review via joint resolutions. *See* Section I.B, *infra*.

might well have to consider whether the remainder of the NEA was severable from the unconstitutional concurrent-resolution provision. In 1985, however, the 99th Congress amended the NEA to replace oversight via *concurrent* resolution with oversight via *joint* resolution, PUB. L. NO. 99-93, § 801, 99 Stat. 405, 448 (1985), and that amendment ratified the rest of the NEA as enacted. *See Fleming v. Mohawk Co.*, 331 U.S. 111, 118-19 (1947); *cf. Red Lion Broad. Co. v. FCC,* 395 U.S. 367, 380-81 (1969) (post-enactment history is "entitled to great weight in statutory construction" of the original statute). As interesting as severability and vetoed resolutions might be, they are irrelevant.

Specifically, the 1985 amendment expressly addressed the NEA's *Chadha* problem and provided a legislative fix:

> In the past year and a half, … the constitutional validity of the use of concurrent resolutions to terminate statutory delegations of power has been called into question. In particular, the so-called *Chadha* case, *INS versus Chadha*, invalidated in that case the one-house veto of an administrative action. The reasoning of the Court is based on the view that "every bill" as well as "every order, resolution, or both, to which the concurrence of the Senate and the House of Representatives may be necessary" shall be presented to the President for the opportunity to approve or disapprove the letter subject to override by a two-thirds vote of both Houses.
>
> I am of the view that we in the Congress should respond to the opinion of the Court and determine if a joint resolution procedure, which would meet the constitutional test set forth by the Court, would adversely affect the purposes of the National Emergencies Act as they originally intended. Upon reflection, I have concluded that we should amend the National Emergencies Act and replace the use of the concurrent resolution for termination of a State or national emergency with the procedure of a joint resolution.

131 CONG. REC. 14,671, 14,947 (June 7, 1985) (Sen. Mathias). Senator Mathias's amendment passed the Senate and was added to the House bill in Conference. *Id.*; H.R. REP. NO. 99-240, at 86 (1985) (Conf. Rep.) ("Senate amendment amends the National Emergencies Act to stipulate that a national emergency may be terminated by joint resolution of the Congress," and "Conference Substitute is identical to the Senate amendment"). Because of the 1985 amendment, a resolution

passed by both houses of Congress to terminate a presidentially declared emergency is irrelevant, unless the President signs the bill or both houses override a presidential veto.

## II.  THIS COURT LACKS JURISDICTION TO GRANT PLAINTIFFS' REQUESTED RELIEF.

Federal courts are courts of limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The parties cannot confer jurisdiction by consent or waiver, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982), and federal courts instead have the obligation to assure themselves of jurisdiction before reaching the merits. *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 95 (1998). As explained below, these actions suffer from several jurisdictional defects.

### A.  Plaintiffs lack an Article III case or controversy.

Under Article III, federal courts cannot issue advisory opinions, *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911), but must instead focus on the cases or controversies presented by affected parties before the court. U.S. CONST. art. III, § 2. "'All of the doctrines that cluster about Article III — not only standing but mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to … the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" *Allen v. Wright,* 468 U.S. 737, 750 (1984) (*quoting Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J., concurring)). These actions fail under several overlapping strands of Article III doctrine.

*Amicus* generally supports the Government's arguments on Article III, supplementing those arguments with the following points:

8

- **Standing**. Plaintiffs' injuries are too conjectural because it is unclear whether, when, or where the constructions projects will occur: "'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

- **Ripeness**. As a variant of the lack of concrete threats to Plaintiffs' concrete interests, it also appears that these actions may not be ripe: "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted).

- **Political Question**. Plaintiffs ask this Court to delve into several areas that the NEA leaves to Congress and the President, including "a textually demonstrable constitutional commitment of the issue to a coordinate political department" and "a lack of judicially discoverable and manageable standards for resolving [the case]." *Vieth v. Jubelirer,* 541 U.S. 267, 277-78 (2004) (*quoting Baker v. Carr,* 369 U.S. 186, 217 (1962). As explained in Section II.B.1.a, *infra*, the lack of manageable standards for resolving these cases also goes to the Court's jurisdiction under the APA's waiver of sovereign immunity. As the only unelected branch of government, courts are the *least* fit to answer such questions: "making judges supreme arbiters in political controversies … [would] dethrone [the people] and [make them] lose one of their … invaluable birthrights." *Luther v. Borden,* 48 U.S. 1, 52-53 (1849).

As the Government argues, this Court has ample basis under Article III to dismiss these actions.

B.     **Sovereign immunity bars this action.**

In addition to the lack of Article III jurisdiction, these actions also fall outside the scope of the APA's waiver of sovereign immunity and thus are subject to an independent jurisdictional bar. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature"). Accordingly, this Court must consider immunity, even if the Government's briefs did not raise it.

1.     **The United States has not waived sovereign immunity for this action.**

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," without regard to any perceived unfairness, inefficiency, or inequity. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Moreover, the scope of such waivers is strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Here, Plaintiffs lack a waiver of sovereign immunity for an APA action.

In the 1976 APA amendments to 5 U.S.C. § 702,[5] Congress "*eliminat[ed]* the sovereign immunity defense in *all equitable actions* for specific relief against a Federal agency or officer acting in an official capacity." *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1982) (quoting S. REP. NO. 996, 94th Cong., 2d Sess. 8 (1976); H.R. REP. NO. 1656, 94th Cong., 2d Sess. 9 (1976), 1976 U.S. Code Cong. & Admin. News 6121, 6129) (R.B. Ginsburg, J.). But that waiver has several restrictions that preclude review *in this action*.[6]

---

[5]     PUB. L. NO. 94-574, § 1, 90 Stat. 2721 (1976).

[6]     In addition to the generally applicable limits in the APA's waiver of sovereign immunity, the NEA also provides that "[n]o law enacted after September 14, 1976, shall supersede this [the NEA] unless it does so in specific terms, referring to [the NEA], and declaring that the new law supersedes the provisions of [the NEA]."  50 U.S.C. § 1621(b). The APA's waiver was enacted

*(Footnote cont'd on next page)*

10

As relevant here, the APA excludes review for "statutes [that] preclude judicial review," those that commit agency action to agency discretion, and ones with "special statutory review." 5 U.S.C. §§ 701(a)(1)-(2), 703.[7] In addition, the waiver of immunity extends only to actions either made reviewable by statute or for which there is no other adequate remedy in court. 5 U.S.C. § 704. These actions fall outside the APA's waiver of sovereign immunity because the defendants' actions are committed to agency discretion and because Plaintiffs do not challenge a final agency action.

### a.    This Court lacks judicially manageable standards to review this matter.

Judicial review is precluded "to the extent that … agency action is committed to agency discretion by law." 5 U.S.C. § 702(2); *accord id.* § 701(a)(2). One sign that Congress has committed an issue to executive officers' discretion is when a reviewing court would have "no law to apply" in reviewing the agency action. *Overton Park*, 401 U.S. at 410. Similarly, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830 (1985). Indeed, this principle predates the APA, *Gray v. Powell,* 314 U.S. 402, 412 (1941), and forms a "common law" of "nonreviewability." Kenneth Culp Davis, *"Nonreviewable Administrative Action,"* 96 U. Pa. L. Rev. 749, 750-51 (1948). Review is particularly outside judicial expertise when, as here,

---

after September 14, 1976, *see* Pub. L. No. 94-574, 90 Stat. at 2721, and does not supersede the NEA expressly.

[7]     With the advent of general-purpose review statutes like the APA, the term "nonstatutory" has become something of a "misnomer." *Air New Zealand Ltd. v. C.A.B.,* 726 F.2d 832, 836-37 (D.C. Cir. 1984) (Scalia, J.). "Statutory review" means review pursuant the governing substantive statute, and "nonstatutory review" means review pursuant to a general-purpose provision (*e.g.*, originally equity, but now also the APA or 28 U.S.C. § 1361).

"the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms." *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 318 (1958).

The NEA has not given a reviewing court the "law to apply." As Rep. Drinan candidly acknowledged in trying to amend the NEA bill to give Congress control over non-wartime emergencies, "H.R. 3884 [has] no standard really, whatsoever, when and why the President can proclaim a national emergency." 121 CONG. REC. 27,632, 27,645 (Sept. 4, 1975) (Red. Drinan), *reprinted in* NEA Source Book, at 279.

> Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.

*INS v. Cardoza-Fonseca,* 480 U.S. 421, 442-43 (1987) (citation omitted). Because Congress purposefully enacted legislation that gives the President complete flexibility — and thus gives a reviewing court "no law to apply" to measure the President's exercise of that discretion — this Court should thus find the President's declarations unreviewable and outside the APA's waiver of sovereign immunity.[8]

**b.     Plaintiffs have not challenged a final agency action and lack statutory review.**

The Government argues that the NEA displaces APA review, but even if the Court were to reject that argument, the NEA plainly does not make Presidential actions *reviewable by statute* within the ambit of the APA. *See* 5 U.S.C. § 704. Thus, for these actions to be reviewable under the APA, Plaintiffs must point to a "final agency action for which there is no other adequate remedy in a court." *Id.* Without either a statutorily reviewable action or a final action with no adequate

---

[8]     Alternatively, the lack judicially manageable standards provides a basis for rejecting the claims here as non-justiciable political questions. *See Vieth,* 541 U.S. at 277; Section II.A, *supra.*

remedy, this Court lacks authority to review the Government's actions. *Council of and for the Blind of Delaware County Valley, Inc., v. Regan,* 709 F.2d 1521, 1531 (D.C. Cir. 1983) (*en banc*). The Government's actions here are not final and, to the extent that Plaintiffs are truly aggrieved by future actions, Plaintiffs may have an adequate remedy at that time (*e.g.*, to challenge a taking of land).

### 2.   Plaintiffs' adequate future remedies displace some equity claims.

Even assuming *arguendo* that Plaintiffs could state a ripe claim for whatever future injuries they claim to fear, the availability of an action to redress those injuries — if and when they become imminent or concrete — would displace a current action in equity. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). Accordingly, *Amicus* sees no reason why these Plaintiffs can resort to equity to avoid the limitations of APA review.

Long before the 1976 APA amendment waiving sovereign immunity for judicial review, our political and legal tradition allowed suit to compel government officers to comply with the government's laws and Constitution:

> that the King's courts… could order his officers to account for their conduct []
> was the essence of… "the rule of law." Whatever the logical contradictions
> between this doctrine and sovereign immunity, [it] had become firmly
> established [and] as much a part of the law as… sovereign immunity.

Louis L. Jaffee, *The Right to Judicial Review I,* 71 HARV. L. REV. 401, 433 (1958); *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 165 (1803) ("the law… entertains no respect or delicacy [for the Crown's officers]; but furnishes various methods of detecting the errors and misconduct of those agents, by whom the king has been deceived and induced to do a temporary injustice") (*quoting* 3 WILLIAM BLACKSTONE, COMMENTARIES *255). Plaintiffs' problem here is not that they lack a cause of action *per se* but that they lack a *viable* cause of action.

Significantly, "inquiry into whether suit lies [for judicial review] under *Ex parte Young*

does not include [merits] analysis." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 636-37 (2002). To succeed, however, that type of review requires an *ongoing violation* of federal law. *Green v. Mansour,* 474 U.S. 64, 66-67 (1985). At best, Plaintiffs here might fear a future violation of federal law, but make no credible claim of an *ongoing violation* of federal law. This type of ancient and important exception to the doctrine of sovereign immunity does not authorize private plaintiffs to air their policy disputes with the Government. *Cf. Nat'l Labor Relations Bd. Union v. Fed. Labor Relations Auth.,* 834 F.2d 191, 196-97 (D.C. Cir. 1987) (distinguishing between review of *ultra vires* actions and review of arbitrary and capricious actions). While invoking *Ex parte Young* can avoid a jurisdictional dismissal in an appropriate case, the operative complaints here do not state a claim under *Ex parte Young*.

## III.   PLAINTIFFS LACK A VIABLE ACTION ON THE MERITS.

Assuming *arguendo* that this Court reaches the merits, this Court should reject Plaintiffs' claims on the merits. Indeed, a federal court may dismiss for lack of statutory standing — *i.e.*, failure to qualify under the relevant statute — before analyzing jurisdiction. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 830-31 (1999); *cf. Friends of the Capital Crescent Trail v. Fed. Transit Admin.*, 49 ELR 20038, ___ n.3, 2019 U.S. Dist. LEXIS 34997, *7 n.3 (D.D.C. Mar. 1, 2019) (zone of interests). Thus, this Court could dismiss these claims with prejudice and on the merits.

### A.   <u>The President's NEA proclamation complies with the NEA.</u>

The President's Proclamation complies with the NEA, which provides — without any substantive limits — that "the President is authorized to declare such national emergency" with regard to any statutes "authorizing the exercise, during the period of a national emergency, of any special or extraordinary power." 50 U.S.C. § 1621(a). Procedurally, the NEA requires that the "proclamation shall immediately be transmitted to the Congress and published in the Federal Register." *Id.* If a President did not transmit or publish a proclamation, a court perhaps could

enforce a right of access to a proclamation. *Substantively*, however, neither a reviewing court nor Plaintiffs can argue that the President violated anything. Moreover, "[n]o law enacted after September 14, 1976, shall supersede [the NEA] unless it does so in specific terms, referring to [the NEA], and declaring that the new law supersedes the provisions of [the NEA]." 50 U.S.C. § 1621(b). Plaintiffs cannot cite a law that expressly supersedes presidential authority under the NEA.

### B.  Plaintiffs do not state a claim under either 31 U.S.C. § 9705 or 10 U.S.C. §§ 284, 2808.

Plaintiffs' claims under the specific funding statutes identified by the President for future border-barrier projects also fail for the following reasons:

- **31 U.S.C. § 9705**. As the Government explains and Plaintiffs cannot dispute, unobligated TFF funds are — with restrictions not relevant here — "available …, without fiscal year limitation, … for obligation or expenditure in connection with the law enforcement activities of any Federal agency." 31 U.S.C. § 9705(g)(4)(B). Insofar as a border barrier and U.S. Customs and Border Protection fall within § 9705(g)(4)(B)'s ambit as law-enforcement activities and a federal agency, that ends the inquiry with respect to TFF funds.

- **10 U.S.C. § 284**. As the Government explains and Plaintiffs cannot dispute, funds under **§** 284 are available for "the counterdrug activities … of any other department or agency of the Federal Government," 10 U.S.C. § 284(a), expressly including "[c]onstruction of roads and fences and installation of lighting to block drug smuggling corridors across international boundaries of the United States." *Id.* § 284(b)(7). Insofar as a border barrier falls within § 284(b)(7)'s ambit as a fence to block smuggling corridors across the border, that ends the inquiry with respect to **§** 284 funds.

- **10 U.S.C. § 2808**. As the Government explains and Plaintiffs cannot dispute, funds under § 2808 are available during declared emergencies for "military construction projects," 10 U.S.C. § 2808(a), which are defined to "include[] all military construction work," *id.* § 2801(b), which is defined to "include[] any construction, development, conversion, or extension of any kind carried out with respect to a military installation, whether to satisfy temporary or permanent requirements, or any acquisition of land or construction of a defense access road." *Id.* § 2801(a). In turn, "military installation" is defined as "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department." *Id.* § 2801(c)(4). *Amicus* respectfully submits that a border barrier meets these definitions. If the Army is sent to the border, its activity there will of course be under the jurisdiction of the Secretary of the Army, and the construction of a border barrier would be "construction" "with respect to [the] military installation" consisting of the Army's activity.

Thus, if Plaintiffs survive the jurisdictional barriers to their claims, this Court should rule against them on the statutory merits.

### C.     Plaintiffs do not state a claim under the Appropriations or Take Care Clauses of the Constitution.

Plaintiffs' constitutional claims are baseless because their statutory claims are baseless. *See* Sections III.A-III.B, *supra*. The President is faithfully executing his obligation to defend the Nation with appropriated funds. In doing so, moreover, he has followed a procedure — *viz.*, declaring a national emergency and vetoing a joint resolution to terminate it — that is set forth plainly in the statute. Though his actions may displease current congressional majorities, those actions can hardly be considered an end-run around Congress as an institution or branch of government, since the actions were taken pursuant to authority that Congress has delegated to the

President in the NEA and has not withdrawn in any law.

## **<u>CONCLUSION</u>**

For the foregoing reasons and those cited by the Government, this Court should dismiss

Plaintiffs' claims.

Dated: April 9, 2019                          Respectfully submitted,


        /s/ Lawrence J. Joseph

Christopher J. Hajec                          Lawrence J. Joseph, D.C. Bar No. 464777
Immigration Reform Law Institute             1250 Connecticut Av NW Suite 700-1A
25 Massachusetts Ave. NW, Suite 335          Washington, DC 20036
Washington, DC 20001                         Telephone: (202) 355-9452
Telephone: (202) 232-5590                    Facsimile: (202) 318-2254
chajec@irli.org                              ljoseph@larryjoseph.com

*Counsel for Rep. Andy Barr*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NAYDA ALVAREZ**, *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**DONALD J. TRUMP**, *in his official capacity as President of the United States, et al.*,<br><br>    **Defendants.** | No. 1:19-cv-0404-TNM |
| **CENTER FOR BIOLOGICAL DIVERSITY**, *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**DONALD J. TRUMP**, *President of the United States, et al.*,<br><br>**Defendants.** | No. 1:19-cv-0408-TNM |

**[PROPOSED] ORDER**

On considering the motion by Rep. Andy Barr for leave to file an *amicus curiae* brief, the lack of any stated opposition from the parties, and the entire record herein, it is hereby

**ORDERED** that the motion is GRANTED; and it is

**FURTHER ORDERED** that the Clerk is ordered to file the *amicus curiae* brief that accompanied the motion on the docket for the two above-captioned actions;

**SO ORDERED**.

Dated: _____, 2019

_____
**UNITED STATES DISTRICT JUDGE**