**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; ANIMAL LEGAL DEFENSE FUND,<br><br>      Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>      Defendants. | Civil Action No. 19-CV-00408 (TNM) |
| RIO GRANDE INTERNATIONAL STUDY CENTER (RGISC), *et al.*,<br><br>      Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>      Defendants. | Civil Action No. 19-CV-00720 (TNM) |
| UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>      Plaintiff,<br><br> v.<br><br>STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, *et al.*,<br><br>      Defendants. | Civil Action No. 19-CV-00969 (TNM) |

**NOTICE OF DECISION BY THE DEPARTMENT OF DEFENSE TO AUTHORIZE
<u>BORDER BARRIER PROJECTS PURSUANT TO 10 U.S.C. § 2808</u>**

Defendants hereby notify the Court and parties in the above-captioned cases that, on September 3, 2019, the Secretary of Defense authorized eleven border barrier projects in California, Arizona, New Mexico, and Texas pursuant to 10 U.S.C. § 2808. A description of the project locations and estimated cost of each project is attached as Exhibit 1. *See* Memorandum from the Secretary of Defense re: Guidance for Undertaking Military Construction Projects Pursuant to Section 2808 of Title 10, U.S. Code (Sept. 3, 2019). In accordance with 10 U.S.C. § 2808(b), the Secretary of Defense has notified Congress of his decision to undertake military construction projects authorized by Section 2808. *See, e.g.,* Letter from Secretary of Defense Mark Esper to Sen. James Inhofe (Sept. 3, 2019) (attached as Exhibit 2).

To fund these projects, the Secretary of Defense has authorized the Department of the Army to expend up to $3.6 billion in unobligated military construction funds. *See id.* The Secretary of Defense has further directed that, initially, only funds associated with deferred military construction projects located outside of the United States will be provided to the Department of the Army. *See id.* Deferred military construction projects outside of the United States account for $1.8 billion of the required funds. *See id.* The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation. *See id.* Defendants will provide the Court and parties with the list of unobligated military construction projects currently identified for deferral as soon as congressional notifications are complete but no later than Friday, September 6, 2019.

The timeline for obligating funds and beginning construction of the Section 2808 projects depends on type of expenditure and the project's location. *See* Declaration of Brigadier General Glenn Goddard ¶¶ 7–12 (attached as Exhibit 3). The U.S. Army Corps of Engineers (USACE) has identified four types of expenditures associated with the projects. *See id.* ¶¶ 7–10. First, USACE expects to begin incurring project-related administrative costs as soon as funds are made

available. *See id.* ¶ 7. These costs include labor costs for USACE employees, travel costs, and other overhead costs related to the approved projects. *Id.* Because it has not yet identified the number of personnel or the amount of their time needed to manage these projects, USACE is unable to provide a precise estimate of the amount of money it would need for these administrative costs. *Id.* USACE is developing a staffing plan and a precise budget for its administrative costs, but based on experience from other border barrier projects, once fully staffed, USACE estimates the likely administrative costs will be approximately $1 million per week. *Id.*

Second, USACE estimates it will spend approximately $500,000 on costs associated with initial real estate activities necessary to acquire or obtain administrative jurisdiction of land not currently under the jurisdiction of the Department of Defense (DoD). *See id.* ¶ 8. Some of the project areas are on land not currently under the control of DoD, thus DoD must acquire administrative jurisdiction over the land and add it to the Department of the Army's real property inventory, either as a new military installation or as part of an existing military installation. *See* Exhibit 1. As part of that process, USACE must acquire, among other things, preliminary title evidence on all lands necessary for the projects. *See* Goddard Decl. ¶ 7. USACE expects to begin obligating and expending funds for this category of expenses starting on September 23 and continuing over the course of the next several months. *See id.*

Third, USACE will use funds made available for the approved Section 2808 projects to provide just compensation to landowners for land acquired through negotiated purchases or condemnation, for payments of relocation assistance benefits, and for the provision of substitute facilities, where appropriate. *See id.* ¶ 9. USACE does not expect to expend any funds for these purposes before April 2020. *Id.*

Fourth, USACE will use Section 2808 funds for barrier constriction contracts. *See id.* ¶ 10. The timeline for obligating funds for construction contracts and beginning construction

depends on the location of each project. *Id.* The project locations generally fall into three categories, as explained below.

### A. Projects on the Barry M. Goldwater Range

Two border barrier projects (Yuma 2 and Yuma 10/27) are located on the Barry M. Goldwater Range, an existing military installation in Arizona that is under the administrative jurisdiction of the Department of the Navy. *See id.* ¶ 10.a. USACE will not award a contract (thereby obligating funds for all contract costs) for border barrier construction on the Goldwater Range earlier than October 3, 2019. *Id.* The contract for these two barrier-construction projects is estimated to cost $567 million. *Id.* No ground-disturbing activities, including geotechnical borings and clearing and grubbing, will occur before 20 days after the date of contract award. *Id.* The earliest date on which substantial construction could occur for these projects is 40 days after contract award. *Id.*

### B. Projects on Federal Public Domain Land

There are seven projects located, at least in part, on Federal public domain land currently under the administrative jurisdiction of the Department of the Interior. *See id.* ¶ 10.b. The projects and estimated costs are: Yuma 3 ($630 million); Yuma 6 ($65 million); San Diego 4 ($67 million); San Diego 11 ($57 million); El Paso 2 ($476 million); El Paso 8 ($164 million); and El Centro 9 ($286 million). *Id.* Yuma 3 and San Diego 4 are exclusively on Federal public land. *Id.* The remaining five projects involve various combination of Federal public domain land; Federal non-public domain land that can be transferred between Federal agencies under the Federal Property and Administrative Services Act of 1949, as amended (the Property Act); and non-Federal land.[1] The Department of the Army anticipates obtaining administrative jurisdiction

---

[1] USACE's understanding of the current land status of the seven project areas is based on the best information available at this time. *See* Goddard Decl. ¶ 10.b.

over the portions of these seven projects that are on Federal public domain land no earlier than 30 days after the Secretary's decision. *Id.* The processes required for USACE to obtain jurisdiction over Federal non-public domain land and non-Federal land will require additional time and are not expected to conclude before April 2020. *Id.* The earliest date on which USACE could award a construction contract and obligate funds for any of these projects is 30 days after the Department of the Army has accepted administrative jurisdiction and recorded the property in its records as a military installation. *Id.* USACE would not need to acquire all of the land in a project area before awarding a contract and may proceed with contract award for a project once some portion of the land is under the administrative jurisdiction of the Department of the Army. *Id.* USACE anticipates that the construction contracts for Yuma 3 and San Diego 4 will be the first of these seven projects ready for award and obligation. *Id.* The earliest date on which any ground-disturbing activities could occur for these projects is 20 days after contract award. *Id.* The earliest date on which substantial construction could occur for these projects is 40 days after contract award. *Id.*

### C. <u>Projects Exclusively on Non-Public Land</u>

The remaining two projects (El Centro 5 and Laredo 7) are located entirely on Federal non-public domain land and non-Federal land. *See id.* ¶ 10.c. To obtain administrative jurisdiction over non-Federal land will require either purchase or condemnation. *Id.* As explained above, USACE does not expect to expend funds for either purchase or condemnation before April 2020. *Id.* Similarly, USACE does not expect to obtain jurisdiction of Federal non-public domain land before April 2020. *Id.* The earliest date on which the Task Force could award a construction contract for these projects is 30 days after the Department of the Army has recorded the property in its records as a military installation. *Id.* The earliest date on which any ground-disturbing activities could occur for these projects is 20 days after contract award. *Id.* The earliest date on which substantial construction could occur for these projects is 40 days after

contract award. *Id.* The estimated costs for construction of these projects is $20 million for El Centro 5 and $1.268 billion for Laredo 7. *Id.*

***

In sum, the soonest any ground disturbing activity will begin for any of the Section 2808 projects is October 23, 2019 for the two projects on BMGR (Yuma 2 and Yuma 10/27). *Id.* ¶ 11. The Corps anticipates that ground disturbing activities for the Yuma 3 and San Diego 4 projects would begin next, approximately 30 days later. *Id.* The timetable for ground disturbing activities on the remaining projects is uncertain, but will not occur earlier than as indicated for Yuma 2, Yuma 10/27, Yuma 3, and San Diego 4. *Id.*

With respect to the obligation of funds, money for the projects will be drawn initially only from funds associated with deferred military construction projects located outside of the United States. *See* Exhibit 2. The Corps will begin immediately incurring project-related administrative costs that are expected to be no more than $1 million per week. *See* Goddard Decl. ¶ 12. Beginning no sooner than September 23, 2019, the Corps will start expending additional funds, not expected to exceed $500,000, on initial real estate activities necessary to acquire or obtain administrative jurisdiction of non-DoD land. *Id.* The earliest contract award and obligation of funds for construction will occur no sooner than October 3, 2019, for the two projects on BMGR (Yuma 2 and Yuma 10/27), which are estimated to cost $567 million. *Id.* It is expected that the next construction contracts to be awarded and obligated will be Yuma 3 ($630 million) and San Diego 4 ($67 million), approximately 30 day later. *Id.* The timetable for award and obligation of the remaining contracts is uncertain, but will not occur earlier than as indicated for Yuma 2, Yuma 10/27, Yuma 3, and San Diego 4. *Id.*

Dated:  September 3, 2019                Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel, Federal Programs Branch

KATHRYN C. DAVIS (D.C. Bar No. 985055)
MICHAEL J. GERARDI
LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
RACHAEL L. WESTMORELAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-5084
Fax: (202) 616-8470
Email: Andrew.Warden@usdoj.gov

*Counsel for Defendants*

# EXHIBIT 1



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

9/3/19

MEMORANDUM FOR SECRETARIES OF THE MILITARY DEPARTMENTS
ACTING UNDER SECRETARY OF DEFENSE
(COMPTROLLER)/CHIEF FINANCIAL OFFICER

SUBJECT: Guidance for Undertaking Military Construction Projects Pursuant to Section 2808 of Title 10, U.S. Code

On February 15, 2019, in accordance with the National Emergencies Act, the President declared that a national emergency exists at the southern border requiring the use of the armed forces. This declaration made available, among other statutes, 10 U.S.C. § 2808, which authorizes the Secretary of Defense, without regard to any other provision of law, to undertake military construction projects not otherwise authorized by law that are necessary to support the use of the armed forces in connection with the national emergency.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

I therefore authorize and direct the Acting Secretary of the Army to expeditiously undertake the eleven border barrier military construction projects specified in the attachment, and, as authorized by section 2808, to do so without regard to any other provision of law that could impede such expeditious construction in response to the national emergency. Such laws include, but are not limited to, the National Environmental Policy Act, the Endangered Species Act, the National Historic Preservation Act, the Clean Water Act, and provisions in Chapter 137 ("Procurement Generally") of title 10, U. S. Code. The Acting Secretary of the Army shall immediately apply for and accept administrative jurisdiction of real property from other Federal departments and agencies, including DOI, and acquire the non-Federal real property necessary to undertake the specified military construction projects. Once the Department of the Army obtains administrative jurisdiction of the requisite land, the Acting Secretary of the Army shall add such land to the Department of the Army's real property inventory, either as a new installation or as part of an existing military installation, consistent with DoD Instruction (DoDI) 4165.14, "Real Property Inventory (RPI) and Forecasting," and DoDI 4165.71, "Real Property Management."

The Acting Secretary of the Army is directed to immediately proceed to construct 33 miles of border barrier on the Barry M. Goldwater Range (BMGR), identified as Yuma 10/27 and Yuma 2, to the extent the land is already under the jurisdiction of the Secretary of the Navy. As the land holding agency for BMGR, the Secretary of the Navy shall ensure USACE has the access and information necessary to undertake these military construction projects on BMGR. The Acting Secretary of the Army shall proceed with construction of the remaining projects as soon as the requisite land is under the administrative jurisdiction of the Department of the Army and reflected in its records as a military installation.

I further authorize and direct the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the eleven specified military construction projects. As will be detailed in separate guidance, the Comptroller will prioritize deferred military construction projects to ensure that, initially, only funds associated with projects outside of the United States will be provided to the Department of the Army for construction of section 2808 projects.

The Secretaries of the other Military Departments will assist the Acting Secretary of the Army with any staffing shortfalls related to undertaking these tasks.

*[signature: Mark T. Esper]*

Attachment:
As stated

cc:
Chairman, Joint Chiefs of Staff
Under Secretary of Defense (Policy)
Under Secretary of Defense (Acquisition & Sustainment)
General Counsel of the Department Of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant to the Secretary of Defense for Public Affairs
Commander, U.S. Army Corps of Engineers

# List of Proposed Border Barrier Projects

**Yuma Project 2 ($40M):** Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 197, for a total of approximately 1.5 - 2 miles.

**Yuma Project 10/27 ($527M):** Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3 ($630M):** Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4 ($67M):** Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6 ($65M):** Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2 ($476M):** Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8 ($164M):** Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11 ($57M):** Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5 ($20M):** Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7 ($1,268M):** Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9 ($286M):** Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.

# EXHIBIT 2

The Honorable James Inhofe
Chairman
Committee on Armed Services
United States Senate
Washington, DC 20510

Dear Mr. Chairman:

On February 15, 2019, the President issued a proclamation declaring that a national emergency exists along the southern border of the United States that requires the use of the armed forces. In order to provide additional authority to the Department of Defense as part of the Federal Government's response to this national emergency, the President further made available, in accordance with Section 301 of the National Emergencies Act (50 U.S.C. 1631), the authority provided in Section 2808 of Title 10, U.S. Code.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

Accordingly, I have authorized and directed the Acting Secretary of the Army to undertake these 11 projects expeditiously, and, as authorized by Section 2808, to do so without regard to any other provision of law that may impede the expeditious construction of such projects in response to the national emergency. A description of and the estimated cost for each project, including the cost of any associated real estate actions, can be found in the enclosure.

I have further authorized and directed the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the specified military construction projects. The funds being made available are associated only with deferred military construction projects that are not scheduled for award until fiscal year 2020 or later and do not include any family housing, barracks, or dormitory projects. Furthermore, I have directed the Acting Under Secretary of Defense (Comptroller) to prioritize deferred military construction projects such that, initially, only funds associated with deferred military construction projects outside of the United States will be made available to the Department of the Army. This will

provide for approximately $1.8 billion of the required funds. The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation. My intent in prioritizing funds in this manner is to provide time to work with you to determine opportunities to restore funds for these important military construction projects as well as to work with our allies and partners in improving cost burden sharing for the overseas construction projects.

    I am sending an identical letter to the other Congressional defense committees.

Sincerely,

*[signature: Mark T. Esper]*

Enclosure:
As stated

cc:
The Honorable Jack Reed
Ranking Member

# List of Military Construction Projects

**Yuma Project 2** ($40M): Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 297, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M): Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M): Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M): Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M): Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M): Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M): Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M): Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M): Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M): Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M): Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.

# EXHIBIT 3

# DECLARATION OF BRIGADIER GENERAL GLENN A. GODDARD

I, Glenn A. Goddard, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. This declaration is based on my own personal knowledge and information made available to me in the course of my official duties.

2. I am a Brigadier General in the United States Army and am currently the Deputy Director for Military Programs at the Headquarters of the U.S. Army Corps of Engineers (Corps). I am stationed in Washington, DC.

3. The Corps is providing engineering and construction services to Customs and Border Protection (CBP), and is responsible for undertaking construction of approved border barrier projects on the southern border of the United States pursuant to 10 U.S.C. § 284 and § 2808.

4. In my capacity as the Deputy Director for Military Programs, I serve as the National Program Manager for Southwest Border Infrastructure. In this respect, my responsibilities include providing oversight, direction, and management of systems and personnel involved in executing all border barrier projects. I am familiar with barrier construction timelines, including the timeline for awarding contracts and the timeline for commencing ground-disturbing activities.

5. On September 3, 2019, the Secretary of Defense decided to undertake eleven military construction (MILCON) projects pursuant to 10 U.S.C. § 2808. MILCON projects can only be undertaken with respect to a military installation (i.e., property under the administrative jurisdiction of a military department of the Department of Defense).

6. As a consequence of the Secretary's decision, the Corps will use $3.6 billion of unobligated MILCON funds made available for the approved Section 2808 projects for project-related administrative costs, costs associated with activities necessary to acquire or obtain administrative jurisdiction of land, just compensation and related payments, and border-barrier-construction contracts.

7. <u>Project-Related Administrative Costs.</u> Administrative costs include labor costs for Corps employees, travel costs, and other Corps overhead costs related to the approved projects. Because it has not yet identified the number of personnel or the amount of their time needed to manage these projects, the Corps is unable to provide a precise estimate of the amount of Section 2808 project funds it would need for these administrative costs. The Corps is developing a staffing plan and a precise budget for its administrative costs. Drawing on Corps experience from other border barrier projects, once fully staffed, I estimate the likely administrative costs at approximately $1 million per week. The Corps expects to begin incurring these costs as soon as MILCON funds are made available for construction under Section 2808.

8. <u>Costs Associated with Initial Real Estate Activities Necessary to Acquire or Obtain Administrative Jurisdiction of Non-DoD Land.</u> The Corps must acquire preliminary title evidence on all lands necessary for the Section 2808 projects. Preliminary title evidence includes preliminary certificates of title, title guarantees or title insurance commitments, and

1

limited abstracts of title. Using existing contracts, the Corps will award task order contracts or contracts against Blanket Purchase Agreements to obtain preliminary title evidence. The Corps expects to begin obligating and expending funds for title product contracts no sooner than September 23, 2019. The Corps expects to receive the title products within 45 to 60 days of contract award. The Corps will then acquire planning maps for use prior to the initiation of negotiations for rights-of-entry in support of environmental and design due diligence studies. The Corps expects to begin obligating and expending funds for mapping contracts no sooner than 15 days after receiving the title evidence. The Corps expects to spend $375,000 of MILCON funds for preliminary title evidence and $125,000 on mapping. The Corps will then acquire or prepare survey and appraisal reports. In sum, the Corps expects to expend a total of approximately $500,000 on this category of expenses starting on September 23 and continuing over the course of the next several months.

9. <u>Just Compensation and Related Payments.</u> The Corps will also use funds made available for the approved Section 2808 projects to provide just compensation to landowners for land acquired through negotiated purchases or condemnation, for payments of relocation assistance benefits, and for the provision of substitute facilities, where appropriate. The Corps does not expect to expend any funds for these purposes before April 2020.

10. <u>Border-Barrier-Construction Contracts.</u> The timeline for obligating MILCON funds on border-barrier-construction contracts, and the amounts of funds required for such contracts, will depend on the location of each Section 2808 project.

>a. There are two border barrier projects located on the Barry M. Goldwater Range (BMGR), an existing military installation that is under the administrative jurisdiction of the Department of the Navy. These projects are Yuma 2 and Yuma 10/27. The Corps will not award a contract (thereby obligating funds for all contract costs) for border barrier construction on BMGR earlier than October 3, 2019. The contract for the barrier-construction projects at BMGR is estimated to cost $567 million. No ground-disturbing activities, including geotechnical borings and clearing and grubbing, will occur before 20 days after the date of contract award. The earliest date on which substantial construction could occur for these projects is 40 days after contract award.

>b. Based on the best information currently available to the Corps, there are seven border barrier projects located, at least in part, on Federal public domain land currently under the administrative jurisdiction of the Department of the Interior. These projects are Yuma 3, San Diego 4, Yuma 6, El Paso 2, El Paso 8, San Diego 11, and El Centro 9. Yuma 3 and San Diego 4 are exclusively on Federal public domain land. The remaining five projects involve various combinations of Federal public domain land; Federal non-public domain land that can be transferred between Federal agencies under the Federal Property and Administrative Services Act of 1949, as amended, (the Property Act); and non-Federal land. The Department of the Army anticipates obtaining administrative jurisdiction over the portions of these seven projects that are Federal public domain land no earlier than 30 days after the Secretary's decision. The processes required for the Corps to obtain jurisdiction over Federal non-public domain land and non-Federal land will require

2

additional time and are not expected to conclude before April 2020. The earliest date on which the Corps could then award a construction contract and obligate funds for any of these projects is 30 days after the Department of the Army has accepted administrative jurisdiction and recorded the property in its records as a military installation. The Corps would not need to acquire all of the land in a project area before awarding a contract and may proceed with contract award for a project once some portion of the land is under the administrative jurisdiction of the Department of the Army. The Corps anticipates that the construction contracts for Yuma 3 and San Diego 4 will be the first of these seven projects ready for award and obligation. The earliest date on which any ground-disturbing activities could occur for these projects is 20 days after contract award. The earliest date on which substantial construction could occur for these projects is 40 days after contract award. The estimated costs for construction of these projects is as follows: $630 million for Yuma 3; $67 million for San Diego 4; $65 million for Yuma 6; $476 million for El Paso 2; $164 million for El Paso 8; $57 million for San Diego 11; and $286 million for El Centro 9.

c. The remaining two border barrier projects are located entirely on Federal non-public domain land and non-Federal land. These projects are El Centro 5 and Laredo 7. To obtain administrative jurisdiction over non-Federal land will require either purchase or condemnation. As explained above, the Corps does not expect to expend funds for either purchase or condemnation of non-Federal land before April 2020. Similarly, the Corps does not expect to obtain jurisdiction of Federal non-public domain land before April 2020. The earliest date on which the Corps could award a construction contract for these projects is 30 days after the Department of the Army has recorded the property in its records as a military installation. The earliest date on which any ground-disturbing activities could occur for these projects is 20 days after contract award. The earliest date on which substantial construction could occur for these projects is 40 days after contract award. The estimated costs for construction of these projects is as follows: $20 million for El Centro 5 and $1,268 million for Laredo 7.

11. In sum, the soonest any ground disturbing activity will begin for any of the Section 2808 projects is October 23, 2019 for the two projects on BMGR (Yuma 2 and Yuma 10/27). The Corps anticipates that ground disturbing activities for the Yuma 3 and San Diego 4 projects would begin next, approximately 30 days later. The timetable for ground disturbing activities on the remaining projects is uncertain, but will not occur earlier than as indicated for Yuma 2, Yuma 10/27, Yuma 3, and San Diego 4.

12. With respect to the obligation of funds, the Corps will begin immediately incurring project-related administrative costs that are expected to be no more than $1 million per week. Beginning no sooner than September 23, 2019, the Corps will begin expending additional funds, not expected to exceed $500,000, on initial real estate activities necessary to acquire or obtain administrative jurisdiction of non-DoD land. The earliest contract award and obligation of funds for construction will occur no sooner than October 3, 2019, for the two projects on BMGR (Yuma 2 and Yuma 10/27), which are estimated to cost $567 million. It is expected that the next

3

construction contracts to be awarded and obligated will be Yuma 3 ($630 million) and San Diego 4 ($67 million), approximately 30 day later. The timetable for award and obligation of the remaining contracts is uncertain, but will not occur earlier than as indicated for Yuma 2, Yuma 10/27, Yuma 3, and San Diego 4.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 3rd day of September, 2019.

*[signature]*

Glenn A. Goddard
Brigadier General, United States Army