**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

        Plaintiffs,

   v.

DONALD J. TRUMP, in his official capacity as
President of the United States of America, *et al.*,

        Defendants.

Civil Action No. 1:19-cv-00408 (TNM)

---

## NOTICE OF SUPPLEMENTAL AUTHORITY

On September 5, 2019, the United States Government Accountability Office (GAO), in response to a request from three United States Senators, issued the attached legal opinion addressing several appropriations questions presented in this case. The GAO, which serves as the legislative agency charged with overseeing Executive Branch spending on behalf of Congress, concluded that the Department of Defense (DOD) acted consistently with Section 8005 of the 2019 DoD Appropriations Act and 10 U.S.C. § 284 in transferring and using its "fiscal year 2019 appropriations for the purpose of constructing fences at the southern border of the United States" to support DHS's drug-interdiction efforts. *See* GAO Opinion B-330862 at 1 (https://www.gao.gov/products/B-330862).

The GAO concluded that DOD's transfer was for an "unforeseen military requirement" under Section 8005 because DHS's Section 284 request "was unforeseen at the time of DOD's budget request," and DOD's "authority to support DHS by constructing fences at the southern border under section 284 only materialized when DHS requested DOD's assistance on February 25, 2019, and DOD accepted that request." *See* GAO Opinion at 7–8. The item had not been

"denied by Congress" because DOD had not requested funds to support DHS, "so there was nothing for Congress to deny with respect to DOD." *Id.* at 9. The GAO "reached similar conclusions in prior opinions." *Id.* at 10. The GAO also concluded that "the fence construction requested by DHS meets the conditions of section 284." *Id.* at 12.

The GAO's Opinion, while not binding, is informative as the expert view of an independent, nonpartisan arm of Congress charged with overseeing Executive spending. Accordingly, it provides further support for Defendants' position that DOD's use of § 8005 is lawful. *See* Defendants' Motion to Dismiss at 48–49 (ECF No. 22); Defendants' Reply in Support of Motion to Dismiss at 15–17 (ECF No. 33).

Dated:  September 18, 2019

<div style="margin-left:40%">

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
KATHRYN C. DAVIS
MICHAEL J. GIRARDI
RACHAEL L. WESTMORELAND
Trial Attorneys
United States Department of Justice

</div>

Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0727
Fax: (202) 616-8470
Email: Leslie.Vigen@usdoj.gov

*Counsel for Defendants*

# EXHIBIT 1



**U.S. GOVERNMENT ACCOUNTABILITY OFFICE**

441 G St. N.W.
Washington, DC  20548

B-330862

September 5, 2019

Congressional Requesters

Subject:   *Department of Defense—Availability of Appropriations for Border Fence Construction*

This responds to your request for our legal opinion on whether the Department of Defense (DOD) may transfer and use its fiscal year 2019 appropriations for the purpose of constructing fences at the southern border of the United States.[1] Specifically, you asked (1) whether DOD's transfer of amounts to its Drug Interdiction and Counter-Drug Activities, Defense, account for border fence construction was consistent with DOD's transfer authority; (2) whether DOD's use of its Drug Interdiction and Counter-Drug Activities, Defense, account for border fence construction was consistent with appropriations law principles in light of amounts previously appropriated to DOD's Operation and Maintenance, Defense-Wide, account for installing fences; and (3) whether DOD's reliance on the Department of Homeland Security (DHS) to exercise its authority to waive certain laws requiring environmental studies to facilitate DOD border fence construction was consistent with a certain prohibition on the use of DOD's fiscal year 2019 appropriations.

As discussed below, we conclude that DOD's transfer of amounts into its Drug Interdiction and Counter-Drug Activities, Defense, account for border fence construction was consistent with DOD's statutorily enacted transfer authority, and that use of these amounts for the purpose of border fence construction was permissible under various statutory provisions.  We also conclude that DHS waivers of legal requirements did not violate a prohibition on use of DOD's appropriations.  Our opinion applies the legal provisions to the facts before us and does not address or draw conclusions regarding border fencing as a policy matter.

---

[1] Letter from Patrick Leahy, Vice Chairman, Committee on Appropriations, United States Senate; Richard J. Durbin, Vice Chairman, Subcommittee on Defense, Committee on Appropriations, United States Senate; and Brian Schatz, Ranking Member, Subcommittee on Military Construction, Veterans Affairs, and Related Agencies, Committee on Appropriations, United States Senate, to the Comptroller General (March 11, 2019).

Consistent with our practice for legal opinions, we requested and received from DOD pertinent factual information and its legal views on this matter.  GAO, *Procedures and Practices for Legal Decisions and Opinions*, GAO-06-1064SP (Washington, D.C.: Sept. 2006), *available at* www.gao.gov/products/GAO-06-1064SP; Letter from Managing Associate General Counsel, GAO, to General Counsel, DOD (June 10, 2019); Letter from Deputy General Counsel, Fiscal, DOD, to Managing Associate General Counsel, GAO (July 3, 2019) (Response Letter).[2]

BACKGROUND

Statutory authority for border fence construction

DHS has statutory authority to control and guard the borders of the United States. 8 U.S.C. § 1103(a)(5).  Specifically, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), as amended, requires DHS to take necessary actions to install physical barriers and roads in the vicinity of the border of the United States to deter illegal crossings in areas of high illegal entry.  Pub. L. No. 104-208, div. C, title I, § 102(a), 110 Stat. 3009, 3009-546, 3009-554 (Sept. 30, 1996), *as amended by* Department of Homeland Security Appropriations Act, 2008, Pub. L. No. 110-161, div. E, title V, § 564, 121 Stat. 1844, 2042, 2090 (Dec. 26, 2007).  The REAL ID Act of 2005 amended IIRIRA by expanding the authority of the Secretary of DHS to waive all legal requirements determined necessary to ensure expeditious construction of barriers and roads along the border.  Pub. L. No. 109-13, div. B, title I, § 102, 119 Stat. 231, 302, 306 (May 11, 2005).

DHS has delegated authority to secure the borders to the Customs and Border Protection's (CBP) Border Patrol.  6 U.S.C. § 211(e)(3).  Border Patrol divides responsibility for border security geographically among nine sectors along the southern border as follows:  San Diego; El Centro; Yuma; Tucson; El Paso; Big Bend; Del Rio; Laredo; and Rio Grande Valley.  GAO, *CBP Is Evaluating Designs and Locations for Border Barriers But Is Proceeding Without Key Information*, GAO-18-614 (Washington, D.C.: July 2018), at 8.  CBP receives an annual appropriation for its construction activities, among other purposes, in its Procurement, Construction, and Improvements account.  *See, e.g.*, Department of Homeland

[2] Of the three questions addressed herein, one of the questions—that is, whether DOD's transfer of amounts to its Drug Interdiction and Counter-Drug Activities, Defense, account for border fence construction was consistent with DOD's transfer authority—is the subject of ongoing litigation in federal courts.  *See, e.g.*, *Donald J. Trump, et al. v. Sierra Club, et al.*, 588 U.S. ___ (2019) (granting application to stay a permanent injunction ordered by the District Court).  In response to our request to DOD for factual information and its legal views on the three questions asked of the Comptroller General, DOD stated that the government's pleadings in *Sierra Club* reflect DOD's legal views, and provided us with copies of the government's pleadings, administrative records, and declarations filed in *Sierra Club*.

Security Appropriations Act, 2019, Pub. L. No. 116-6, div. A, title II, 133 Stat. 13, 15, 18 (Feb. 15, 2019).

DOD has statutory authority to provide support to civilian law enforcement agencies, such as DHS.  *See* subtitle A, part I, chapter 15 of title 10 of the United States Code (Military Support for Civilian Law Enforcement Agencies).  For example, DOD may train federal civilian law enforcement officials and make military equipment available to them.  10 U.S.C. §§ 272, 273.

DOD also has authority under section 284 of title 10 of the United States Code (section 284) to provide support for the counter-drug activities of another department of the federal government if that support is requested by the official who has responsibility for the counter-drug activities.  10 U.S.C. § 284(a)(1)(A).  One of the "purposes for which [DOD] may provide support" includes "[c]onstruction of . . . fences . . . to block drug smuggling corridors across international boundaries of the United States."  10 U.S.C. § 284(b)(7).

DOD receives an annual appropriation for its counter-drug activities in its Drug Interdiction and Counter-Drug Activities, Defense, account.  *See, e.g.*, Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, div. A, title VI, 132 Stat. 2981, 2982, 2997 (Sept. 28, 2018).  In fiscal years 2006 and 2008, DOD received line-item appropriations in its Operation and Maintenance, Defense-Wide, account for support to DHS, including "installing fences."  Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Hurricane Recovery, 2006, Pub. L. No. 109-234, title V, 120 Stat. 418, 480 (June 15, 2006); Department of Defense Appropriations Act, 2008, Pub. L. No. 110-116, div. A, title II, 121 Stat. 1295, 1299 (Nov. 13, 2007).

<u>Executive Order, Appropriations for Fiscal Year 2019, and National Emergency</u>

On January 25, 2017, the President ordered executive departments and agencies "to deploy all lawful means to secure the Nation's southern border."  Exec. Order No. 13767, *Border Security and Immigration Enforcement Improvements*, 82 Fed. Reg. 8793 (Jan. 25, 2017).  The President also declared it the policy of the executive branch to secure the southern border through "immediate construction of a physical wall," and defined "wall" as "a contiguous, physical wall or other similarly secure, contiguous, and impassable physical barrier."  *Id*. at 8793–8794.

Consistent with the executive order, the President's Budget for Fiscal Year 2019, transmitted in February 2018, requested $1.8 billion in appropriations for CBP Procurement, Construction, and Improvements, with $1.6 billion of that budgeted for border security assets and infrastructure.  *Appendix*, *Budget of the United States Government for Fiscal Year 2019*, (Feb. 2018), at 496–497, *available at* https://www.whitehouse.gov/wp-content/uploads/2018/02/appendix-fy2019.pdf (last visited Aug. 5, 2019).  On January 6, 2019, the Office of Management and Budget notified members of the House and Senate Appropriations Committees that the

President was requesting a total of $5.7 billion in fiscal year 2019 amounts for CBP to construct a steel barrier for the southwest border.  *See, e.g.*, Letter from Acting Director, Office of Management and Budget, to the Chairman of the Committee on Appropriations, United States Senate (Jan. 6, 2019) (OMB Letter), at 1.  CBP was ultimately appropriated $2.5 billion for Procurement, Construction, and Improvements.  Pub. L. No. 116-6, 133 Stat. at 18.  Of the total amount available for CBP Procurement, Construction, and Improvements, $1.375 billion was "for the construction of primary pedestrian fencing, including levee pedestrian fencing, in the Rio Grande Valley Sector."  *Id*. § 230(a)(1).

With respect to DOD activities, the President's Budget did not specifically request anything for construction of fences at the border, but requested $787.5 million for Drug Interdiction and Counter-Drug Activities, Defense.  *Appendix*, *Budget for Fiscal Year 2019,* at 236.  In September 2018, Congress appropriated to DOD for fiscal year 2019 $881.5 million for Drug Interdiction and Counter-Drug Activities, Defense.  Pub. L. No. 115-245, 132 Stat. at 2997.  In the same appropriations act, Congress in section 8005 granted DOD authority to transfer up to $4 billion between its appropriations, on the condition that " . . . such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item . . . has been denied by the Congress . . . ."  *Id*. § 8005 (section 8005).

After appropriations were enacted, on February 15, 2019 the President officially declared that a national emergency exists at the southern border of the United States.  Proclamation No. 9844, *Declaring a National Emergency Concerning the Southern Border of the United States*, 84 Fed. Reg. 4949 (Feb. 15, 2019).  A fact sheet published by the White House announced plans for DOD to provide support to DHS by constructing fences to block drug smuggling corridors pursuant to DOD's authority under section 284.[3]  White House, Fact Sheets: *The Funds Available to Address the National Emergency at Our Border* (Feb. 26, 2019), *available at* https://www.whitehouse.gov/briefings-statements/funds-available-address-national-emergency-border/ (last visited Aug. 5, 2019).  To fund DOD's efforts, the announcement stated that DOD would transfer up to $2.5 billion to DOD's Drug Interdiction and Counter-Drug Activities, Defense, account from other DOD accounts using DOD's transfer authority under section 8005.  *Id*.

Fiscal Year 2019 activities with respect to DOD border fence construction

On February 25, 2019, DHS requested that DOD provide assistance to secure the southern border by, among other things, constructing fences to block drug-

---

[3] As noted above, section 284 authorizes DOD to provide support for the counter-drug activities of another department including "[c]onstruction of . . . fences . . . to block drug smuggling corridors across international boundaries of the United States." 10 U.S.C. § 284(b)(7).

smuggling corridors across the international boundary between the United States and Mexico pursuant to DOD's authority under section 284.  Response Letter, Encl. 1.  DHS requested DOD's assistance in four particular sectors:  Yuma, El Paso, El Centro, and Tucson.  *Id*.

DOD agreed to provide support to DHS, and in March and May transferred $1.8 billion into its Drug Interdiction and Counter-Drug Activities, Defense, account using its authority under section 8005.[4]  Response Letter, Encl. 1.  DOD awarded contracts for border fence construction for locations in the Yuma, El Paso, El Centro, and Tucson sectors. *See, e.g.,* DOD, *Contracts for April 9, 2019,* Release No. CR-066-19, *available at* https://dod.defense.gov/News/Contracts/Contract-View/Article/1809986/ (last visited Aug. 5, 2019) (April Contracts); DOD, *Contracts for May 15, 2019*, Release No. CR-092-19, *available at* https://dod.defense.gov/News/Contracts/Contract-View/Article/1848882/ (last visited Aug. 5, 2019) (May Contracts).

DHS published notices under IIRIRA, as amended, that it was installing physical barriers in the Yuma, El Paso, El Centro, and Tucson sectors, and that DOD was providing support by constructing fences, among other things, in those sectors. 84 Fed. Reg. 17185 (Apr. 24, 2019); 84 Fed. Reg. 17187 (Apr. 24, 2019); 84 Fed. Reg. 21798 (May 15, 2019); 84 Fed. Reg. 21800 (May 15, 2019).  In the notices,

---

[4] As noted above, section 8005 provides authority for DOD to transfer up to $4 billion between appropriations on the condition that " . . . such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item . . . has been denied by the Congress . . ."  Pub. L. No. 115-245, § 8005.  On March 25, 2019, DOD transferred a total of $1 billion using authority under section 8005 from the Military Personnel, Army, and Reserve Personnel, Army accounts, made available in the DOD Appropriations Act, 2019.  Response Letter, Encl. 1.  On May 9, 2019, DOD transferred a total of  $818.5 million using authority under section 8005 from the following accounts, made available in the DOD Appropriations Act, 2019:  Reserve Personnel, Army; National Guard Personnel, Army; Military Personnel, Navy; Military Personnel, Marine Corps; Reserve Personnel, Navy; Military Personnel, Air Force; Reserve Personnel, Air Force; National Guard Personnel, Air Force; Aircraft Procurement, Air Force; Missile Procurement, Air Force; Space Procurement, Air Force; and Chemical Agent and Munitions Destruction, Defense. *Id*.  DOD also transferred $681.5 million on May 9, 2019 into its Drug Interdiction and Counter-Drug Activities, Defense, account to fund activities in support of DHS using authority under section 9002 of the DOD Appropriations Act, 2019. *Id*.  That transfer authority is not the subject of our opinion.  We are aware that DOD announced plans this week to use unobligated military construction funds for projects along the southern border.  Letter from Secretary, DOD, to the Chairman of the Committee on Armed Services, House of Representatives (Sept. 3, 2019).  Use of military construction funds is not the subject of this opinion either.

DHS also stated that it was waiving several laws in their entirety, including the National Environmental Policy Act (NEPA), to ensure expeditious construction of barriers in these sectors.  Pub. L. No. 109-13, § 102; *see*, *e.g.*, 84 Fed. Reg. at 17187.

DISCUSSION

At issue here is whether DOD's transfer of amounts to its Drug Interdiction and Counter-Drug Activities, Defense, account for border fence construction was consistent with DOD's transfer authority under section 8005, and whether DOD's use of its Drug Interdiction and Counter-Drug Activities, Defense, account for the purpose of border fence construction was a permissible use of this appropriation account.  We also address whether DHS's waivers of legal requirements in order to expedite border fence construction was consistent with a certain prohibition on the use of DOD's appropriations.  We will address each of the three issues in turn.

<u>Transfer of DOD appropriations for border fence construction</u>

Agencies may transfer[5] funds only when expressly authorized by law.  31 U.S.C. § 1532.  In that regard, section 8005 authorizes DOD to transfer funds between appropriations as follows:

> "Upon determination by the Secretary of Defense that such action is necessary in the national interest, he may . . . transfer not to exceed $4,000,000,000 of . . . funds made available in this Act . . . between such appropriations or funds or any subdivision thereof, to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred:  *Provided*, That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item . . . has been denied by the Congress . . . ."  Pub. L. No. 115-245, § 8005.

In March and May of 2019, DOD transferred amounts made available in the DOD Appropriations Act, 2019, into its Drug Interdiction and Counter-Drug Activities, Defense, account in order to construct fences in four particular sectors at the southern border in support of DHS pursuant to DHS's request and DOD's authority under section 284.[6]  Response Letter, Encl. 1.  DOD relied on its authority under

---

[5] A transfer is the shifting of budget authority between appropriations.  GAO, *A Glossary of Terms Used in the Federal Budget Process*, GAO-05-734SP (Washington, D.C.: Sept. 2005), at 95.

[6] DOD referred to this as a "reprogramming action."  Response Letter, Encl. 1.  DOD uses the phrase "reprogramming action" generally to include both transfers (the shifting of funds from one appropriation account to another) and reprogrammings

(continued...)

section 8005 for these transfers.  *Id*.  The issue is whether DOD's transfers were consistent with DOD's transfer authority under section 8005.  Specifically at issue here are two of the conditions under section 8005 that must be satisfied.  First, the item to which funds are transferred must be of "higher priority . . . based on unforeseen military requirements, than those for which originally appropriated."  Pub. L. No. 115-245, § 8005.  Second, the item to which funds are transferred must not be one "denied by the Congress."  *Id*.  We consider each of these statutory conditions in turn.

### (1) Higher priority based on unforeseen military requirements

DOD asserts that the transferred funds were in support of higher priority items, based on unforeseen military requirements.  Response Letter, Encl. 1.  The first issue is whether DOD border fence construction in support of DHS under section 284 was an unforeseen military requirement.  The answer is determined by reference to section 284 and DOD's internal guidance.

DOD states that "unforeseen" under section 8005 means that DOD was not aware of the need at the time of the budget request and when Congress passed DOD's appropriations.  Response Letter, Encl. 8.  We do not disagree with DOD's interpretation of "unforeseen" under section 8005.  For purposes of section 8005, the question is not whether border fencing was unforeseen in general.  Indeed, the President campaigned for border fencing and explicitly requested amounts for border fencing as part of DHS's budget.  *See*, *Donald Trump's Presidential Announcement Speech*, (June 16, 2015), *available at* https://time.com/3923128/donald-trump-announcement-speech/ (last visited Aug. 28, 2019); OMB Letter, at 1.  Rather, the question under section 8005 is whether it was unforeseen at the time of the budget request and enactment of appropriations that DOD would fund and construct border fencing pursuant to DOD's authority under section 284.

Section 284 makes clear that DOD's authority to construct fences in support of other departments is available only upon the request of another department and DOD's acceptance of the request.  10 U.S.C. § 284(a)(1)(A) (DOD "*may* provide support . . . *if* . . . requested" by the official with responsibility for the counter-drug activities) (emphasis added).  Here, the President's Budget for Fiscal Year 2019 was submitted in February 2018, and while the President requested funds for border fencing as part of DHS's budget, DOD had not yet been requested by an appropriate official to provide support to DHS by constructing fences under section 284, and DOD's budget did not include amounts to provide support under section 284.

---

(...continued)
(the shifting of funds within an account).  *See* DOD Financial Management Regulation 7000.14-R, vol. 3, ch. 6, *Reprogramming of DOD Appropriated Funds* (Sept. 2015); *Glossary*, at 85, 95.

Similarly, when DOD received its appropriations for fiscal year 2019 through its annual appropriations act enacted on September 28, 2018, there was not yet a request from DHS or an acceptance by DOD regarding support at the southern border pursuant to section 284.

Rather, DOD's authority to support DHS by constructing fences at the southern border under section 284 only materialized when DHS requested DOD's assistance on February 25, 2019, and DOD accepted the request.  (DOD accepted part of the work in March 2019 and the remainder of the work in May 2019).  Response Letter, Encl. 1 (providing copies of DHS's February 25, 2019 request letter and DOD's March 2019 and May 2019 acceptance letters).  Until the requisite request and acceptance for support took place, which was well into the second quarter of fiscal year 2019, DOD had no requirement to construct fences under section 284.  Thus it was unforeseen at the time of DOD's budget request and appropriations that DOD would fund and construct such border fences.

DOD defines "military requirement" as "[a]n established need justifying the timely allocation of resources to achieve a capability to accomplish approved military objects, missions, or tasks."  CJCS Guide 3401D, *CJCS Guide to the Chairman's Readiness System*, Appendix A, Glossary (Nov. 15, 2010, current as of Nov. 25, 2013).  Once DOD accepted DHS's request, the provision of support constituted a military requirement as defined in DOD's internal guidance.

The legislative history of section 8005 indicates that one of the reasons Congress enacted this transfer authority was to provide DOD with flexibility when changing conditions occur.  H.R. Rep. No. 93-662, at 16 (1973).  While border fencing in general was foreseen, it was not foreseen that DOD would fund and construct border fencing pursuant to DOD's authority in section 284.  The realization of a military requirement during the course of the fiscal year, as was the case here, is such a condition that the transfer authority permits DOD to address.  DOD's authority to construct fences in support of civilian agencies is dependent upon a request from such agency under section 284.  That authority, and a corresponding military requirement for construction, did not materialize until after submission of the President's Budget and enactment of DOD's appropriations and thus was not forecast in DOD's budget submission.  We conclude that DOD's fence construction projects constitute an unforeseen military requirement under section 8005.

The next issue is whether construction of fences at the southern border in support of DHS constituted a "higher priority" military requirement than the activities from which funds were transferred.  In light of the President's order to executive departments and agencies to "deploy all lawful means to secure the Nation's southern border . . . through the immediate construction of a physical wall,"[7] and declaration of national

---

[7] 82 Fed. Reg. at 8793.

emergency at the southern border,[8] DOD asserts that the transferred funds were in support of higher priority military requirements.  We are in no position to disagree with DOD's prioritization of military requirements.  DOD asserts that funds were available from other accounts to transfer into its Drug Interdiction and Counter-Drug Activities, Defense, account for various reasons.  Lower than expected agency contributions to the new Blended Retirement System due to fewer than planned opt-ins, a reduction to Army's overall end strength target, and reduced projected costs gained by shortening schedules at chemical agent destruction plants meant that some funds were no longer needed for these purposes and could be transferred into the Drug Interdiction and Counter-Drug Activities, Defense, account.  Response Letter, Encl. 1.  We do not find legally objectionable DOD's determination that construction of fences at the southern border in support of DHS was a higher priority than these activities from which funds were transferred.

Based on the foregoing, we conclude that DOD satisfied the first condition of section 8005 when it transferred funds into its Drug Interdiction and Counter-Drug Activities, Defense, account in order to construct fences at the southern border in support of DHS pursuant to DHS's request and DOD's authority under section 284.  We now consider the second condition of section 8005.

(2) Not denied by Congress

DOD asserts that "none of the items [to which funds are being transferred] has previously been denied by the Congress."  Response Letter, Encl. 1.  The "items" here are fences at four sectors at the southern border, and we consider whether such fences were denied by Congress for fiscal year 2019.

Neither section 8005 nor the DOD Appropriations Act, 2019, defines "denied by Congress."  So, we turn to the ordinary meaning of the term "deny" which is "to refuse to grant" or "to give a negative answer to."  Merriam-Webster Dictionary Online, *Definition of deny*, *available at* www.merriam-webster.com/dictionary/deny (last visited Aug. 5, 2019).  GAO has recognized that when "Congress . . . intends to impose a legally binding restriction on an agency's use of funds, it does so by means of explicit statutory language."  55 Comp. Gen. 307, 318, Oct. 1, 1975.  This principle, along with the ordinary definitions, suggest that to deny is to actively refuse.

Here, the President's Budget for Fiscal Year 2019 did not request any amounts for DOD with respect to construction of fences at the southern border, so there was nothing for Congress to deny with respect to DOD.  Further, Congress did not include any restrictive language with regard to border fences in either the John S. McCain National Defense Authorization Act for Fiscal Year 2019 (NDAA, 2019),

---

[8] 84 Fed. Reg. at 4949.

Pub. L. No. 115-232, 132 Stat. 1636 (Aug. 13, 2018), or the DOD Appropriations Act, 2019, Pub. L. No. 115-245, 132 Stat. 2982.

The appropriation to CBP for $1.375 billion for the construction of primary pedestrian fencing in the Rio Grande Valley sector does not constitute a "denial" of appropriations to DOD for its counter-drug activities in furtherance of DOD's mission under section 284 to support other agencies' activities. Additionally, although Congress ultimately appropriated less to CBP in its Procurement, Construction, and Improvements account than what the President requested, a reduction from the amount requested is not tantamount to a denial of the item by Congress, nor does a reduction from the amount requested negate the otherwise proper exercise of statutory transfer authority. DOD came to the same conclusion. Response Letter, Encl. 2.

We have reached similar conclusions in prior opinions. For example, where Congress did not appropriate amounts requested for fiscal year 1979 for the President's new Urban Crime Prevention Program, the agency put the program into effect anyway by using amounts budgeted for other related programs. B-195269, Oct. 15, 1979. We did not take issue with the agency's actions since the agency's appropriations were otherwise available for this purpose. *Id*. The fact that Congress did not appropriate the additional amount for the program did not mean that Congress intended to curtail, or deny, the initiative, and Congress did not enact legislation imposing restrictions on the use of money for this purpose. *See id*. As another example, where Congress made $8 million available for fiscal year 1963 for a certain National Aeronautics and Space Administration (NASA) activity, as opposed to the request for $10 million, we did not object to NASA's transfer of $4.4 million to increase amounts for the activity, on the grounds that the reduction by Congress did not render inoperative the exercise of NASA's statutory transfer authority. B-151157, June 27, 1963.

Here, there was no denial of fences at the southern border and, in fact, Congress provided affirmative authority for the same. Specifically, Congress provided DOD authority under section 284 to support the counter-drug activities of civilian law enforcement agencies (including the construction of fences), an appropriation for counter-drug activities, and authority to transfer amounts between its appropriations. 10 U.S.C. § 284; Pub. L. No. 115-245, 132 Stat. at 2997; Pub. L. No. 115-245, § 8005. Congress provided DHS with direction to install physical barriers at the border, a lump-sum appropriation for CBP's construction activities, and a line-item[9] appropriation to be used for fencing in the Rio Grande Valley sector, one of the nine sectors at the southern border. Pub. L. No. 104-208, § 102(a), *as amended by* Pub.

---

[9] A lump-sum appropriation is one that is made to cover a number of programs, projects, or items. In contrast, a line-item appropriation is available only for the specific object described. GAO, *Principles of Federal Appropriations Law*, Vol. 2, 3rd ed., ch. 6, § B.1, GAO-06-382SP (Washington, D.C.: Feb. 2006).

L. No. 110-161, § 564; Pub. L. No. 116-6, 133 Stat. at 18; Pub. L. No. 116-6, § 230(a)(1).

We do note that certain congressional committees expressed objection to the transfers and use of DOD amounts for this purpose. *See* Letter from Senate Committee on Appropriations, to the Acting Secretary of Defense (Mar. 25, 2019); Letter from House of Representatives Committee on Appropriations, to the Under Secretary of Defense, Comptroller (Mar. 26, 2019); Letter from House of Representatives Committee on Armed Services, to the Under Secretary of Defense Comptroller and Chief Financial Officer (Mar. 26, 2019).  However, the Supreme Court has made clear that congressional exercise of legislative power requires bicameralism and presentment.[10]

Although prior committee approval is not binding as a matter of law, and the objection of the congressional committees in this case does not constitute a "denial by Congress" within the meaning of section 8005, we have cautioned that agencies "ignore such expressions of intent at the peril of strained relations with the Congress."  55 Comp. Gen. 307, 325, Oct. 1, 1975.  Indeed, the DOD Financial Management Regulation sets forth a process for DOD to obtain the prior approval of the Appropriations and Armed Services Committees of the House of Representatives and United States Senate prior to transferring amounts between appropriations under section 8005.  DOD-FMR 7000.14-R, vol. 3, ch. 6.  In this case, there is no evidence that DOD obtained prior approval of the committees before the March or May transfers.

Having found that DOD's March and May transfers of funds into its Drug Interdiction and Counter-Drug Activities, Defense, account for border fence construction was consistent with the conditions under section 8005 for a higher priority item based on unforeseen military requirements, and not denied by Congress, we conclude that the transfers were a permissible use of DOD's transfer authority.  We now turn to consideration of whether the use of DOD appropriations for the purpose of border fence construction was permissible.

<u>Use of DOD appropriations for border fence construction</u>

The purpose statute, 31 U.S.C. § 1301(a), provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made . . . ."  Given the size and breadth of the federal government, Congress may appropriate amounts for

---

[10] *See Immigration & Naturalization Service v. Chadha*, 462 U.S. 919 (1983) (holding that a one-house veto provision is unconstitutional because it was an exercise of legislative power that circumvented the procedures of bicameralism and presentment); *see also* B-330330.1, Dec. 10, 2018; GAO, *Principles of Federal Appropriations Law*, 4th ed., 2016 rev., ch. 2, § B.7.a(4), GAO-16-464SP (Washington, D.C.: Mar. 2016).

a broad purpose and not enumerate each permissible expenditure.  As such, application of the purpose statute requires an analysis of whether the expenditure in question is a "necessary expense" of the appropriation.  This application involves a three-step analysis, known as the necessary expense rule:  (1) the expenditure must bear a logical relationship to the appropriation; (2) the expenditure must not be prohibited by law; and (3) the expenditure must not be otherwise provided for.  *See*, *e.g.*, B-303170, Apr. 22, 2005; GAO, *Principles of Federal Appropriations Law*, 4th ed., 2017 rev., ch. 3, § B, GAO-17-787SP (Washington, D.C.: Mar. 2016).  We address DOD's use of its appropriations for the purpose of border fence construction in the context of this three-step analysis.

(1) <u>Step 1: logical relationship between the expenditure and the appropriation</u>

With regard to step one, the expenditure must contribute to accomplishing the purposes of the corresponding appropriation.  In this regard, the language of the appropriation act is of paramount importance.  *See, e.g.*, B-303927, June 7, 2005.  Other statutes, such as authorizing legislation, and the agency's interpretation of its appropriations are also relevant considerations.  B-323365, Aug. 6, 2014; B-223608, Dec. 19, 1988.

In this case, following DOD's transfer of amounts into its Drug Interdiction and Counter-Drug Activities, Defense, appropriation, DOD obligated those amounts by awarding contracts for construction of fences in the Yuma, El Paso, El Centro, and Tucson sectors, in accordance with DHS's request.  Response Letter, Encl. 6, 7; April Contracts; May Contracts.  The question is whether DOD border fence construction undertaken pursuant to section 284 contributes to accomplishing the purposes of the Drug Interdiction and Counter-Drug Activities, Defense, appropriation.

We begin with the language of the appropriation and the provision permitting DOD to support the counter-drug activities of other agencies (section 284).  The Drug Interdiction and Counter-Drug Activities, Defense, appropriation provides that it is available for, among other things, "counter-narcotics support."  Pub. L. No. 115-245, 132 Stat. at 2997.  Border fence construction with no connection to countering narcotics does not fall within the plain meaning of the appropriation.  Here, DOD's border fence construction was undertaken pursuant to section 284, which specifically authorizes "construction of . . . fences . . . to block drug smuggling corridors across international boundaries of the United States."  10 U.S.C. § 284(b)(7).

Based on the information before us, the fence construction requested by DHS meets the conditions of section 284.  In its request to DOD for support, DHS asserted that the Yuma, El Paso, El Centro, and Tucson sectors are experiencing "large numbers of individuals and narcotics being smuggled into the country illegally" and are used "as drug smuggling corridors."  Response Letter, Encl. 1.  DHS also asserted that "[t]he construction of border infrastructure within the [p]roject [a]reas will support

DHS's ability to impede and deny illegal entry and drug smuggling activities within the [p]roject [a]reas." *Id*.  Construction of fences in order to block drug smuggling corridors is logically related to hindering, or countering, the movement of narcotics. Thus, DOD's construction of fences in this case bears a logical relationship to the stated purpose of the Drug Interdiction and Counter-Drug Activities, Defense, appropriation, that is, for "counter-narcotics support."

Because border fence construction under the circumstances presented here has a logical relationship to the Drug Interdiction and Counter-Drug Activities, Defense, appropriation, we conclude that step one of the necessary expense rule is satisfied.

(2) Step 2: expenditure not prohibited by law

We now consider, under the second step of the necessary expense rule, whether there is a specific statutory prohibition on the use of appropriations for border fence construction undertaken pursuant to section 284.  When a law specifies that an agency's appropriation is not available for a designated purpose, obligations or expenditures for that purpose may violate the Antideficiency Act, 31 U.S.C. § 1341(a)(1), which provides that an agency may not obligate or expend in excess or in advance of an appropriation.  For example, where an expenditure violated the prohibition on publicity or propaganda of the relevant appropriations act, and the agency had no appropriations available for this purpose, the agency violated the Antideficiency Act.  B-302710, May 19, 2004.  Here, neither the NDAA, 2019, nor the DOD Appropriations Act, 2019, contains any prohibitive language regarding construction of fences at the southern border.  We are not aware of any other law that prohibits use of DOD's appropriations for border fence construction.  We conclude that step two of the necessary expense rule is satisfied.

(3) Step 3: expenditure not otherwise provided for

Having concluded that DOD's obligation of funds for construction of fences at the southern border bears a logical relationship to the Drug Interdiction and Counter-Drug Activities, Defense, appropriation and that use of DOD's appropriations for this purpose was not prohibited by law, we now turn to the final step:  determining whether another appropriation other than the Drug Interdiction and Counter-Drug Activities, Defense, account provides for DOD border fence construction pursuant to section 284 in the Yuma, El Paso, El Centro, and Tucson sectors.  If another appropriation provides for this activity, then use of the Drug Interdiction and Counter-Drug Activities, Defense, account for this activity would be impermissible under the purpose statute, 31 U.S.C. § 1301(a).

With regard to step three, a more specific appropriation prevails over a general appropriation, including where another agency has the more specific appropriation. *Compare* B-139510, May 13, 1959 (concluding that the Navy's Shipbuilding and Conversion, Navy, appropriation was not available to dredge a deeper channel for naval vessel transit because the Army Corps of Engineers had more specific

appropriations for this purpose) *with* B-184595, Mar. 10, 1976 (concluding that the Immigration and Naturalization Service's (a precursor to Border Patrol) appropriations could be used to repair border fencing installed by other agencies because there was no other appropriation more specific in this regard that prevailed).

Applying our case law to the issues here, we first consider whether DHS, the agency with statutory authority for controlling and guarding the borders, has an appropriation that specifically provides for the activity in question—border fence construction undertaken by DOD pursuant to section 284. DHS is required to install physical barriers at the border to deter illegal crossings in areas of high illegal entry. Pub. L. No. 104-208, § 102(a), *as amended by* Pub. L. No. 110-161, § 564. DHS was appropriated a lump-sum amount for CBP's Procurement, Construction, and Improvements, which, based on the information before us, is available to fund DHS's mandate to install physical barriers in the sectors located at the southern border. Pub. L. No. 116-6, 133 Stat. at 18. Of the lump sum, CBP was also appropriated a line-item amount available only for the construction of fencing in one particular sector—the Rio Grande Valley. *Id*. § 230(a)(1). Thus, DHS has amounts available for CBP's fence construction activities, including an amount available only for fencing in the Rio Grande Valley sector.

However, Congress has also long vested DOD with authority to construct fences as part of its counter-drug support activities upon the request of another agency, and has provided DOD with appropriations to cover this activity. Specifically, in the National Defense Authorization Act for Fiscal Year 1991, Congress permitted DOD to provide support for the counter-drug activities of other agencies, including construction of fences to block drug smuggling corridors, under what is now section 284. Pub. L. No. 101-510, div. A, title X, § 1004, 104 Stat. 1485, 1629-1630 (Nov. 5, 1990). DOD's provision of support for the counter-drug activities of other agencies is not subject to reimbursement under section 284. While section 277(a) of title 10 of the United States Code provides that DOD shall require a law enforcement agency to which support is provided to reimburse DOD for that support, section 284(g)(1) provides that support provided under section 284 is not subject to other requirements of the chapter, which would include section 277(a). Congress established the Drug Interdiction, Defense (now the Drug Interdiction and Counter-Drug Activities, Defense), appropriation in the DOD Appropriations Act, 1989, to cover DOD's costs under section 284. *See* Pub. L. No. 100-463, title VII, 102 Stat. 2270, 2270-16 (Oct. 1, 1988).

The fact that Congress appropriated line items in fiscal years 2006 and 2008 for "installing fences" has no legal consequence at this point in time. Specifically, Congress in 2006 appropriated $708 million as an additional amount for DOD Operation and Maintenance, Defense-Wide, for emergency support to DHS, including "installing fences and vehicle barriers." Pub. L. No. 109-234, 120 Stat. at 480. Then, in fiscal year 2008 Congress provided that $247 million of amounts provided for DOD Operation and Maintenance, Defense-Wide, shall be available for

support to DHS, including "installing fences and vehicle barriers."  Pub. L. No. 110-116, 121 Stat. at 1299.  The 2006 and 2008 line-item appropriations expired on September 30, 2007 and September 30, 2008, respectively, which means they are no longer available to cover new obligations.  GAO, *Principles of Federal Appropriations Law*, Vol. I, 3rd ed., ch. 5, § D.1, GAO-04-264SP (Washington, D.C.: Jan. 2004).

Here, DOD's authority to construct fences in support of the counter-drug activities of other agencies has been in place since fiscal year 1991, and DOD has received a lump sum appropriation for its counter-drug activities for each fiscal year starting with 1989.[11]  Pub. L. No. 101-510, § 1004; Pub. L. No. 100-463, 102 Stat.at 2270-16.  Thus, DOD's authorities and appropriations for counter-drug support activities existed before and continue to exist after the line-item appropriations for 2006 and 2008.  With no currently available line-item appropriation for this purpose, and without a statutory means of reimbursement from DHS, DOD's Drug Interdiction and Counter-Drug Activities, Defense, appropriation is the appropriate source of funds to cover DOD's costs under section 284.

In sum, DOD border fence construction pursuant to section 284 bears a logical relationship to the Drug Interdiction and Counter-Drug Activities, Defense, appropriation; there are no legal prohibitions on the use of DOD's appropriations for border fence construction undertaken pursuant to section 284; and the Drug Interdiction and Counter-Drug Activities, Defense, appropriation was the appropriate account to use for DOD border fence construction here, as no other account otherwise provides for this activity.  We conclude that DOD border fence construction under the terms of section 284 is a proper use of DOD's Drug Interdiction and Counter-Drug Activities, Defense, appropriation and therefore amounts were used for a permissible purpose, consistent with the purpose statute.

DHS waivers and section 8113 of the DOD Appropriations Act, 2019

You also asked whether the Secretary of DHS's waivers of legal requirements in order to expedite construction of barriers at the southern border by DHS and DOD was consistent with section 8113 of the DOD Appropriations Act, 2019.

In carrying out DHS's border control mission, the Secretary of DHS exercised authority to waive legal requirements, such as NEPA,[12] to ensure expeditious

---

[11] DOD has also received authority, like section 8005, annually since fiscal year 1974 to transfer its appropriations.  DOD Appropriations Act, 1974, Pub. L. No. 93-238, title VII, § 735, 87 Stat. 1026, 1044 (Jan. 2, 1974).

[12] NEPA requires federal agencies to evaluate the likely environmental effects of projects they are proposing, generally by preparing either an environmental assessment or a more detailed environmental impact statement.  42 U.S.C. §§ 4321–4347.

construction of barriers along the southern border, including barriers constructed by DHS and barriers constructed by DOD in support of DHS under section 284.  Pub. L. No. 109-13, § 102; 84 Fed. Reg. 17185 (Apr. 24, 2019); 84 Fed. Reg. 17187 (Apr. 24, 2019); 84 Fed. Reg. 21798 (May 15, 2019); 84 Fed. Reg. 21800 (May 15, 2019).

Section 8113 of the DOD Appropriations Act, 2019, prohibits use of DOD funds

> "to pay the salary of any officer or employee of any agency funded by this Act who approves or implements the transfer of administrative responsibilities . . . to the jurisdiction of another Federal agency not financed by this Act without the express authorization of Congress . . . ."  Pub. L. No. 115-245, § 8113 (section 8113).

Here, while the Secretary of DHS exercised authority to waive legal requirements in order to expedite barrier construction by DHS and DOD, this does not constitute a transfer of DOD's administrative responsibilities under section 8113 because DHS exercised its waiver authority with regard to projects for which DHS maintains overall responsibility.  With regard to border fences constructed by DOD in support of DHS within the scope of DHS's February 2019 request, DHS defined the requirements, will take custody of completed fences and operate them going forward, retained responsibility for securing any real estate interest required for project execution, and remained responsible for applicable environmental planning and compliance.  Response Letter, Encl. 1.  We conclude that waivers of legal requirements by the Secretary of DHS to expedite DHS and DOD barrier construction at the southern border was not a violation of section 8113.

CONCLUSION

Based on application of the relevant legal provisions to the facts before us, we conclude that DOD's transfer of amounts into its Drug Interdiction and Counter-Drug Activities, Defense, appropriation to construct fences at the southern border of the United States pursuant to section 284 was consistent with DOD's transfer authority under section 8005.  We are in no position to disagree with DOD's determination that construction of fences at the southern border pursuant to section 284 was a higher priority, and we conclude that this activity was based on unforeseen military requirements, as the requirement for DOD's support did not materialize until well into the second quarter of fiscal year 2019.  Congress has not explicitly denied either DHS or DOD from constructing border fences and, by contrast, has provided specific authorities for each agency to undertake this activity.

Further, we conclude that DOD's use of its appropriations for the purpose of border fence construction was consistent with the purpose statute, 31 U.S.C. § 1301(a).  There is a logical relationship between construction of fences to block drug smuggling corridors and the counter-narcotics purpose of the Drug Interdiction and Counter-Drug Activities, Defense, appropriation; there are no legal prohibitions on the use of DOD appropriations for border fence construction under section 284; and

the Drug Interdiction and Counter-Drug Activities, Defense, appropriation is the proper account to charge for this activity, as CBP's appropriations for construction, to include an amount for fence construction in the Rio Grande Valley sector, do not specifically provide for DOD's construction of fences under section 284.

In addition, we conclude that DHS's waivers of legal requirements to expedite construction of fences at the southern border was not a violation of section 8113. DHS exercised its statutory waiver authority with respect to projects for which DHS is ultimately responsible and in furtherance of DHS's border control mission, and those projects include fence construction undertaken by DOD at DHS's request.

Congress enacted authority for DOD to construct fences in support of other departments starting in fiscal year 1991 and Congress has enacted authority annually since fiscal year 1974 for DOD to transfer its appropriations. It is these authorities that enabled DOD to accept DHS's request for support and fund construction of fences at the southern border. Although there was no statutory requirement to do so, DOD did not obtain the prior approval of congressional committees before transferring funds, contrary to provisions in its Financial Management Regulation. Nevertheless, DOD's activities were affirmatively permitted by law under the various statutory provisions discussed herein. We express no opinion on the merits of a fence to impede drug smuggling.

If you have any questions, please contact Shirley A. Jones, Managing Associate General Counsel, at (202) 512-8156, or Omari Norman, Assistant General Counsel for Appropriations Law, at (202) 512-8272.

Thomas H. Armstrong
General Counsel

*List of Requesters*

The Honorable Patrick Leahy
Vice Chairman
Committee on Appropriations
United States Senate

The Honorable Richard J. Durbin
Vice Chairman
Subcommittee on Defense
Committee on Appropriations
United States Senate

The Honorable Brian Schatz
Ranking Member
Subcommittee on Military Construction, Veterans Affairs,
  and Related Agencies
Committee on Appropriations
United States Senate