**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; and ANIMAL LEGAL DEFENSE FUND,<br><br>        Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America; PATRICK M. SHANAHAN, in his official capacity as Acting Secretary of Defense; LIEUTENANT GENERAL TODD T. SEMONITE, in his official capacity as Commander and Chief of Engineers, U.S. Army Corps of Engineers; KEVIN McALEENAN, in his official capacity as Acting Homeland Security Secretary; DAVID BERNHARDT, in his official capacity as Secretary of the Interior,<br><br>        Defendants. | Case No.: 1:19-cv-00408 (TNM) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

ARGUMENT ...................................................................................................................................1

    I.      Plaintiffs Have Article III Standing to Challenge Department of Defense Implementing Actions Transferring Emergency Military Construction Funds to Border Wall Construction .................................................................................................1

    II.     The Long Delay Between Issuance of Proclamation 9844 and Department of Defense Implementing Actions Affirms the Validity of Plaintiffs' Claim that the President Abused His Authorities Under the National Emergencies Act ...............2

    III.    Department of Defense Implementing Actions Are Not Committed to Agency Discretion by Law .........................................................................................................3

    IV.    Plaintiffs' Claims Challenging the Transfer of MILCON Funds as a Violation of 10 U.S.C. § 2808 and the 2019 Consolidated Appropriations Act Are More Than Adequately Pled ..................................................................................................6

    V.     Defendants Have Unlawfully Transferred MILCON Funds to Border Wall Projects Not Carried Out With Respect to a Military Installation .........................7

    VI.    Defendants' IIRIRA Waivers of Laws in Relation to 284 Counterdrug Border Wall Projects Do Not Render Plaintiffs' NEPA Claim Unjusticiable ...................9

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ................................................................................................................3

*AFSCME Local 2401 v. District of Columbia*,
   796 F. Supp. 2d 136 (D.D.C. 2011) ........................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................6

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ................................................................................................................5

*Citizens to Preserve Overton Park v. Volpe*,
   401 U.S. 402 (1971) ................................................................................................................4

*Defenders of Wildlife v. Lujan*,
   504 U.S. 555 (1992) ................................................................................................................1

* *Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ...................................................................................................2, 3, 4

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988) ................................................................................................................5

*Hamdi v. Rumsfeld*,
   542 U.S. 507 (2004) ................................................................................................................5

*Laird v. Tatum*,
   408 U.S. 1 (1972) ....................................................................................................................5

* *Lincoln v. Vigil*,
   508 U.S. 182 (1993) ................................................................................................................5

* *Milk Train, Inc. v. Veneman*,
   310 F.3d 747 (D.C. Cir. 2002) ................................................................................................4

*North Dakota v. United States*,
   495 U.S. 423 (1990) ................................................................................................................5

*Planned Parenthood of N.Y. City, Inc. v. United States*,
   337 F. Supp. 3d 308 (S.D.N.Y. 2018) .....................................................................................5

*Sterling v. Constantin*,
  278 U.S. 378 (1932) ...........................................................................................................6

**STATUTES**

5 U.S.C. § 701(a)(2) ......................................................................................................3, 4

10 U.S.C. § 284 ....................................................................................................1, 3, 9, 10

\* 10 U.S.C. § 2801(a) ......................................................................................................4, 7

10 U.S.C. § 2801(c)(4) .........................................................................................................7

\* 10 U.S.C. § 2808 ....................................................................................................... passim

10 U.S.C. § 2808(a) ..............................................................................................................7

23 U.S.C. § 210 ....................................................................................................................8

23 U.S.C. § 210 (a)(1) .........................................................................................................8

23 U.S.C. § 210 (e) ..............................................................................................................8

\* Consolidated Appropriations Act, 2019
  Pub. L. No. 116-6, 132 Stat. 2981 ....................................................................................6
  § 230(a) .............................................................................................................................6
  § 739 ..................................................................................................................................6

IIRIRA Section 102, 8 U.S.C. § 1103 note.........................................................................9

**EXECUTIVE AND ADMINISTRATIVE MATERIALS**

Presidential Proclamation on Declaring a National Emergency Concerning the
Southern Border of the United States, 84 Fed. Reg. 4949 (Feb. 20, 2019)
(Proclamation 9844)..................................................................................................... passim

40 C.F.R. § 1501.5(a)(1)-(2) ..............................................................................................10

Public Lands Order No. 7883, 85 Fed. Reg. 50063 (Sept. 24, 2019) (San Diego 4) .......8

Public Lands Order No. 7884, 85 Fed. Reg. 50063 (Sept. 24, 2019) (El Paso 8) ..........8

Public Lands Order No. 7885, 85 Fed. Reg. 50064 (Sept. 24, 2019) (El Paso 2) ..........8

Public Lands Order No. 7886, 85 Fed. Reg. 50065 (Sept. 24, 2019) (Yuma 6) ............8

Public Lands Order No. 7887, 85 Fed. Reg. 50064 (Sept. 24, 2019) (Yuma 3) ............8

**COURT RULES**

Fed. R. Civ. P. 12(b)(1) .....................................................................................................10

Fed. R. Civ. P. 12(b)(6) .....................................................................................................10

# ARGUMENT

The Department of Defense ("DoD") Secretary's September 3, 2019 decision to fund eleven border wall projects through transfer of $3.6 billion in appropriated emergency military construction funds (hereafter, "MILCON") reaffirms the bases for denying Defendants' Motion to Dismiss for the following supplemental reasons.

## I. Plaintiffs Have Article III Standing to Challenge Department of Defense Implementing Actions Transferring Emergency Military Construction Funds to Border Wall Construction

Plaintiffs' opposition brief, ECF No. 31, demonstrated Article III standing in relation to all claims and included submission of twelve member declarations. These declarations included injury-in-fact allegations for two "border wall projects" previously identified in Customs and Border Protection's ("CBP") February 25, 2019 Request for Assistance Pursuant to 10 U.S.C. § 284, but not funded until the Secretary's September 3, 2019 MILCON decision—Yuma 3 (Bird, McKinnon, and Walsh Declarations) and El Paso 2 (Hadley, Robinson, Schlyer, and Walsh Declarations). In addition, Plaintiffs' standing declarations addressed four border wall projects that did receive § 284 funds, and overlap with areas now also impacted by four MILCON projects—El Centro 5 and El Centro 9 (in same vicinity as El Centro 1) (Anderson Declaration), El Paso 8 (in same vicinity as El Paso 2) (Hadley, Robinson, Schlyer, and Walsh Declarations), and Yuma 6 (in same vicinity as Yuma 1) (Russell Declaration). In addition, Plaintiffs provide a new declaration for the newly identified San Diego 4 project (Holslin).[1]

---

[1] Plaintiffs' First Amended Complaint ("FAC"), ECF No. 16, alleges injury-in-fact for the areas impacted by remaining MILCON border wall projects not yet specifically addressed by Plaintiffs' standing declarations, including San Diego 11 (¶¶ 133-134), Yuma 2 and 10/27 (¶¶ 137-139), and Laredo 7 (¶¶ 143-146). Plaintiffs will produce detailed member standing declarations specific to these projects on summary judgment. *See Defs. of Wildlife v. Lujan*, 504 U.S. 555, 561 (1992) (when deciding a motion to dismiss, courts "presume that general allegations embrace those specific facts that are necessary to support the claim.").

**II.    The Long Delay Between the Issuance of Proclamation 9844 and Department of Defense Implementing Actions Affirms the Validity of Plaintiffs' Claim that the President Abused His Authorities Under the National Emergencies Act**

Plaintiffs' opposition brief demonstrated that its NEA claim is justiciable, as it turns upon ordinary principles of statutory interpretation, including addressing the meaning of the term "emergency." Understanding the meaning of "emergency" begins with its plain language definition as an "unforeseen combination of circumstances or the resulting state that calls for immediate action." *Emergency*, MERRIAM-WEBSTER DICTIONARY. The declaration and implementation of the February 15, 2019 "Proclamation Declaring a National Emergency Concerning the Southern Border of the United States" (hereafter, "Proclamation 9844") meets neither of these criteria.

First, the President significantly delayed the time between his initial identification of an emergency situation and the issuance of Proclamation 9844. The President's own words demonstrate that he initially used the threat of an emergency declaration as a tool to cajole Congress into meeting his funding demands; and when that approach failed, he used the NEA authorities as a pretext for transferring billions of dollars in appropriated DoD funds in order to achieve his border wall funding goals. FAC ¶¶ 92-108; *see Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019) ("[T]he Secretary was determined to reinstate a citizenship question from the time he entered office; instructed his staff to make it happen; waited while Commerce officials explored whether another agency would request census-based citizenship data; subsequently contacted the Attorney General himself to ask if DOJ would make the request; and adopted the Voting Rights Act rationale late in the process."). By the time the President issued Proclamation 9844, the long delay precluded any possible characterization of the declared emergency as involving an "unforeseen combination of circumstances."

Similarly, Defendants' actions after the Proclamation bear no relation to the dictionary definition of emergency of "immediate action" taken in response. Nearly seven months elapsed between Proclamation 9844 and the Secretary's September 3, 2019 decision approving the transfer of $3.6 billion in MILCON funds pursuant to 10 U.S.C. § 2808. During the intervening time, Defendants instead prioritized the spending of $2.5 billion in DoD funds passed through the 284 counterdrug account, highlighting the abuse of the NEA's authorities as a pretext for achieving the President's appropriations goals. *See Dep't of Commerce*, 139 S. Ct. at 2575-76 ("Altogether, the evidence tells a story that does not match the explanation the Secretary gave for his decision … Accepting contrived reasons would defeat the purpose of the enterprise. If judicial review is to be more than an empty ritual, it must demand something better than the explanation offered for the action taken in this case.").

### III. Department of Defense Implementing Actions Are Not Committed to Agency Discretion By Law

Defendants argue that "a final decision by the Secretary of Defense to undertake military construction pursuant to § 2808 is not reviewable because it is 'committed to agency discretion by law.'" Supp. Br. at 4 (*quoting* 5 U.S.C. § 701(a)(2)). The Supreme Court, however, has recently reaffirmed that it "read[s] the § 701(a)(2) exception … quite narrowly, restricting it those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *DOC*, 139 S. Ct. at 2569 (internal quotations and citations omitted). It has also "generally limited the exception to certain categories of administrative decision that courts traditionally have regarded as committed to agency discretion." *Id*. This narrow reading is consistent with the "basic presumption of judicial review" in APA cases. *Abbott Labs v. Gardner*, 387 U.S. 136, 140 (1967).

The Defense Secretary's decision transferring $3.6 billion in MILCON funds to eleven border wall construction projects in order to implement Proclamation 9844 is by its own terms made "pursuant to the authority granted to [him] in Section 2808." Def. Supp. Br. Ex. 1. Section 2808 provides both "law to apply" and "meaningful standards" by which to measure the legality of the Proclamation 9844 and the Secretary's decision. Thus, "[b]ecause this is not a case in which there is 'no law to apply,' the Secretary's decision is subject to judicial review." *DOC v. New York*, 139 S. Ct. at 2569 (*quoting Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)).

Here, the plain language of § 2808 "constrains the Secretary's authority . . . in a number of ways." *DOC v. New York*, 139 S. Ct. at 2568. *See* FAC ¶¶ 155-166. As detailed further in Section IV, *infra*, the large majority of the eleven MILCON projects are planned for lands that are privately owned or are on Federal public lands. These lands are not a "military installation" and thus do not qualify as "military construction," as defined by the MILCON statutory provisions. 10 U.S.C. § 2801(a). While Defendants dispute Plaintiffs' interpretation, the language of § 2808 constrains the Secretary's discretion with a specificity more than sufficient to allow for statutory interpretation and judicial review.

The Secretary's decision also does not fall within the "categories of administrative decision that courts traditionally have regarded as committed to agency discretion." Like other legislative enactments, discretionary expenditure statutes and appropriations acts are reviewable where they "afford[] a statutory reference point by which the court is able to review the Secretary's determination." *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 752 (D.C. Cir. 2002) (internal citations and quotations omitted); *id*. at 754 (rejecting arguments that the Agriculture Secretary's decisions were unreviewable under § 701(a)(2) where her actions were "inconsistent with the plain language of the 2000 Appropriations Act.").

While "certain allocations of funds from lump-sum appropriations may be committed to agency discretion, this narrow exception does not 'typically' or 'presumptively' extend to all allocations of appropriated funds." *Planned Parenthood of N.Y. City, Inc. v. United States*, 337 F. Supp. 3d 308, 325 (S.D.N.Y. 2018) (*quoting Lincoln v. Vigil*, 508 U.S. 182, 190 (1993)). Accordingly, "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statute." *Lincoln*, 508 U.S. at 193. Here, 10 U.S.C. § 2808 (as well as provisions of the 2019 Consolidated Appropriations Act ("CAA")) specifically circumscribes DoD's use of MILCON funds to construction projects undertaken with respect to a military installation, and thus this case does not fall within the "lump sum" exception to reviewability.

Nor does the involvement of the military render this case unreviewable. This is not a case involving internal military personnel matters or concerns about confidential state secrets, but the legality of transferring DoD funds to construct a border wall, much of it on protected Federal public lands, and much of the remainder of which will require the taking of private property. *Cf North Dakota v. United States*, 495 U.S. 423, 443 (1990); *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Chappell v. Wallace*, 462 U.S. 296, 300 (1983). DoD agency action to transfer MILCON funds to border wall construction will result in injury-in-fact to Plaintiffs' members' (and many others') interests. The government cannot shield its actions as unreviewable under the banner of military or national security considerations in these circumstances. *Laird v. Tatum*, 408 U.S. 1, 16 (1972) ("[T]here is nothing in our Nation's history or in this Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004) ("[I]t does not infringe on the core role of the military for the courts to exercise their own time

honored and constitutionally mandated roles of reviewing and resolving claims like those presented here."); *Sterling v. Constantin*, 287 U.S. 378, 401 (1932) ("What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions.").

### IV. Plaintiffs' Claims Challenging the Transfer of MILCON Funds as a Violation of 10 U.S.C. § 2808 and the 2019 Consolidated Appropriations Act Are More Than Adequately Pled

Plaintiffs' second and third claims plead in detail allegations explaining how Proclamation 9844 and DoD implementing actions unlawfully transfer funds appropriated to military construction in violation of § 2808 and the CAA. FAC ¶¶ 155-170. The fact that the final DoD implementing action was not taken until more than seven months after the President's proclamation does not render these allegations "conclusory assertions." *See AFSCME Local 2401 v. District of Columbia*, 796 F. Supp. 2d 136, 141 (D.D.C. 2011) ("[P]laintiffs' complaint provides as much or more detail and factual heft as have others than have been held to state a claim . . . under *Twombly* and *Iqbal* . . . ."). Defendants also incorrectly state that these claims are "unsupported by factual allegations," when the FAC includes extensive factual background in relation to all of the claims. *See* FAC, ¶¶ 83-146; *AFSCME Local 2401*, 796 F. Supp. 2d at 140 ("Read *in toto* … plaintiffs' amended complaint states a plausible claim …"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007) (at pleading stage, concern is not with particularity of the factual allegation, but whether the complaint "*in toto* . . . render[ed] plaintiffs' entitlement to relief plausible.")[2]

---

[2] Like Plaintiffs' claims alleging the unlawful transfer of appropriated funds into, and from the 284 counterdrug account, Plaintiffs' MILCON claims allege that the transfers also violate provisions of the 2019 CAA (§ 230(a) (by exceeding and falling outside of the Act's monetary and geographic restrictions, respectively) and § 739 (violating prohibition on use of any appropriated funds to increase funding for a program, project, or activity).

### V.     Defendants Have Unlawfully Transferred MILCON Funds to Border Wall Projects Not Carried Out With Respect to a Military Installation

Defendants again repeat their incorrect assertion that "the statutory provisions cited by Plaintiffs [in the FAC] are entirely unrelated to the Secretary of Defense's ability to exercise his § 2808 authority." MTD Supp. at 5. To the contrary, the meaning of the term "military construction" is central to the legality of the Secretary's actions. Even assuming the President validly declared a national emergency that requires use of the armed forces pursuant to the NEA (he did not), the Defense Secretary's implementing actions are still constrained by the statutory meaning of "military construction," defined as "any construction, development, conversion, or extension of any kind *carried out with respect to a military installation*." *Id*. § 2801(a) (emphasis added); *see* U.S.C. § 2808(a) (in event of national emergency, Defense Secretary "may undertake military construction projects."). "Military installation" is in turn defined to "mean[] a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department." *Id*. § 2801(c)(4).

Defendants concede that only two of the MILCON border wall projects are located on an existing military installation, Yuma 2 and Yuma 10/27, located on Barry M. Goldwater Range. Goddard Decl. ¶ 10a, ECF No. 37, Ex. 3. Two additional projects—Yuma 3 and San Diego 4—are located exclusively on federal public domain land. *Id*. ¶ 10b. Five projects are located on a combination of federal and private lands, and the remaining two projects are located entirely on private lands. *Id*. ¶ 10b-10c.

On September 24, 2019, Public Lands Orders issued by the Secretary of the Interior transferred public domain lands under his stewardship to the Department of the Army for five of the eleven projects, including the totality of San Diego 4 and Yuma 3, and portions of Yuma 6, El Paso 2, and El Paso 8, were published in the Federal Register. *See* Public Lands Order No.

7883 (San Diego 4), 85 Fed. Reg. 50063; No. 7884, 85 Fed. Reg. 50063 (El Paso 8); No. 7885, 85 Fed. Reg. 50064 (El Paso 2); No. 7886, 85 Fed. Reg. 50065 (Yuma 6); No. 7887, 85 Fed. Reg. 50064 (Yuma 3).

Defendants cannot manufacture the presence of a "military installation" through after-the-fact piecemeal acquisition of Federal and private lands within the eleven MILCON border wall project areas subsequent to the President's February 22, 2019 Proclamation.  Although the definition of "military construction" also includes "any acquisition of land or construction of a defense access road [23 U.S.C. § 210]," this phrase is best interpreted as specific to acquisition related to ensuring access to *existing* military installations.  *See* 23 U.S.C. § 210(a)(1) ("The Secretary is authorized . . .to provide for the construction and maintenance of defense access road . . . *to military reservations*") (emphasis added); *id* § 210(e)("[T]he Secretary is authorized to acquire, enter upon, take possession thereof, and expend funds for projects thereon.").

Defendants' argument would instead allow emergency MILCON funds and other acquisition mechanisms to *create* new "military installations" where none currently exist.  Under this circular interpretation, emergency funds which are limited to military installations under § 2808 can be used to create a new military installation, thus justifying the legality of the emergency proclamation.  Indeed, Defendants intend to use MILCON funds not only for the purported "military construction" of the border wall, but on project-related administrative costs, costs associated with initial real estate activities (including title evidence) necessary to acquire jurisdiction over non-DoD land; and eminent domain payment claims.  Goddard Decl. ¶¶ 7-9.

Even assuming that the parcels within planned border wall projects recently acquired by DoD can be considered a "military installation," the designation of such installations would cover only select, isolated, and piecemeal portions of the eleven MILCON projects.  DoD, for example, currently has *no* ownership interest in or jurisdiction over any portion of El Centro 5

8

and Laredo 7, which are entirely privately owned and "will require either purchase or condemnation." Goddard Decl. ¶ 10c.  There is also no evidence DoD has acquired ownership or jurisdiction over any portion of San Diego 11 or El Centro 9.  *Id*. ¶ 10b.  Finally, pursuant to the Interior Secretary's Public Land Orders DoD has acquired jurisdiction over only piecemeal portions of Yuma 6, El Paso 2, and El Paso 8, which like San Diego 11 and El Centro 9, "involve various combinations of Federal domain land; Federal non-public domain land . . . and non-Federal land."  *Id*.  Defendants' processes to acquire the Federal lands and take the private lands by eminent domain "will require additional time and are not expected to conclude before April 2020."

Despite this piecemeal and isolated transfer of lands to DoD jurisdiction in relation to the eleven MILCON projects, under the Defense Secretary's September 3 decision, *$3.6 billion in MILCON funds have already been transferred*.  *See* Goddard Decl. ¶ 12 ("[T]he Corps will begin immediately incurring project-related administrative costs . . .").  This transfer is plainly counter to § 2808(a), which only authorizes the Defense Secretary to transfer MILCON funds for "military construction" that is being carried out with respect to a military installation.

### VI. Defendants' IIRIRA Waivers of Laws in Relation to '284 Counterdrug' Border Wall Projects Do Not Render Plaintiffs' NEPA Claim Unjusticiable

In the briefing on Defendants' motion to dismiss, the parties disputed whether the Court lacks jurisdiction to hear Plaintiffs' NEPA claim because of waivers issued under the Illegal Immigration and Immigrant Responsibility Act (IIRIRA) for the border barrier construction projects funded by DoD funds moved through the § 284 account.  Irrespective of the Court's ruling on the impact of these waivers, Defendants have not purported to issue such waivers in relation to the border wall projects funded with MILCON moneys.

9

There is thus no basis for dismissing Plaintiffs' NEPA claim, which is not specific to either the § 2808 or § 284 moneys, but instead argues that CBP, as lead agency for the Trump administration's border wall projects, "shall supervise the preparation of an environmental impact statement," as more than one Federal agency "is involved in the same action," and the border wall projects involves a "group of actions directly related to each other because of their functional interdependence or geographical proximity."  40 C.F.R. § 1501.5(a)(1)-(2).

To the extent Defendants intend to argue that the "without regard to" language of § 2808 exempts compliance with NEPA and other environmental laws; even if true (which Plaintiffs do not concede), as discussed in section V, *supra*, such legal waiver would extend to only a small portion of the MILCON projects, since the large majority of those projects are indisputably not "military installations."  Plaintiffs' NEPA claim remains justiciable.

## CONCLUSION

For the foregoing reasons, which are supplemental to Plaintiffs' primary brief in opposition to Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants' should be denied.

DATED:      October 2, 2019          Respectfully Submitted,

*/s/ Brian Segee*

Brian Segee (CA Bar No. 200795)(Pro Hac Vice)
CENTER FOR BIOLOGICAL DIVERSITY
660 S. Figueroa St., Suite 1000
Los Angeles, CA 90017
Tel: (805) 750-8852
Email: bsegee@biologicaldiversity.org

*/s/ Tanya Sanerib*

Tanya Sanerib (D.C. Bar No. 473506)
CENTER FOR BIOLOGICAL DIVERSITY
2400 NW 80th Street, #146

10

Seattle, WA 98117
Tel: (206) 379-7363
Email: tsanerib@biologicaldiversity.org

Anchun Jean Su (D.C. Bar No. CA285167)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
Tel: (202) 849-8399
Email:  jsu@biologicaldiversity.org

Jason C. Rylander (D.C. Bar No. 474995)
Michael P. Senatore (D.C. Bar No. 453116)
DEFENDERS OF WILDLIFE
1130 17th Street, NW
Washington, DC 20036
Tel: (202) 682-9400 x 145
Facsimile: (202) 682-1331
Email: jrylander@defenders.org
Email: msenatore@defenders.org

Anthony T. Eliseuson (IL Bar No. 6277427)
ANIMAL LEGAL DEFENSE FUND
150 South Wacker Drive, Suite 2400
Chicago, IL  60606
Tel: (707) 795-2533
Email: aeliseuson@aldf.org