**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*, <br><br> Defendants. | Civil Action No. 1:19-cv-00408 (TNM) |

**REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs' Amended Complaint should be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted. The recent decision by the Secretary of Defense to authorize construction of border barrier projects pursuant to 10 U.S.C. § 2808 does not alter this outcome, and the Court should reject Plaintiffs' arguments to the contrary in their supplemental brief.

1. Plaintiffs argue that the President's national emergency declaration violates the National Emergencies Act (NEA) because the situation at the southern border is not an "emergency" as defined by Webster's Dictionary. *See* Pls.' Supp. Mem. at 2 (ECF No. 44). This argument fails on several grounds: (1) Congress has impliedly precluded judicial review of Presidential national emergency declarations; (2) the President's decision to declare a national emergency is a nonjusticiable political question; (3) the Administrative Procedure Act does not allow review of the President's action; and (4) the Court should not impose either declaratory or injunctive relief against the President for his official conduct. *See* Defs.' Mot. at 22–34 (ECF No. 22); Defs.' Reply at 2–10 (ECF No. 33). Further, the Court cannot review this statutorily authorized discretionary judgment of the President. *See Dalton v. Specter*, 511 U.S. 462, 474–76 (1994). Congress did not define the term "national emergency" in the NEA or impose any restrictions on the President's ability to declare one. *See* Defs.' Mot. at 12–17. Congress thus gave the President broad discretion to declare a national emergency in an array of circumstances. *See United States v. Spawr Optical Research, Inc.*, 685 F.2d 1076, 1081 (9th Cir. 1982). "How the President chooses to exercise the discretion Congress has granted him is not a matter for [judicial] review." *Dalton*, 511 U.S. at 476.

Nor is there any basis for the Court to conclude that the President violated the NEA because he waited too long to declare a national emergency. *See* Pls.' Supp. Mem. at 2. Presidents

previously have declared national emergencies to address longstanding problems, similar to the current emergency at the southern border. *See* Defs.' Mot. at 2, 14–16. No legal authority supports imposing an arbitrary time limit within which the President must declare a national emergency, or any judicially manageable standards for imposing such a limit. *See* Defs.' Reply at 7.

Plaintiffs also argue that the President abused his authority under the NEA because of the amount of time that elapsed between the President's proclamation and the Secretary of Defense's decision to authorize specific border barrier projects pursuant to § 2808. *See* Pls.' Supp. Mem. at 3. This argument is misplaced and meritless. Section 2808 vests the Secretary of Defense—not the President—with the power to undertake military construction projects. The President's proclamation invoked 10 U.S.C. § 2808 and made that construction authority available to the Secretary of Defense to use at his discretion. But there is no statutory obligation for the Secretary of Defense to act at all, let alone act within a certain period of time—indeed, past Secretaries of Defense have invoked § 2808 to authorize military construction projects years after a declared national emergency. *See* Cong. Research Serv., Military Construction Funding in the Event of a Nat'l Emergency at 1–3 & tbl. 1 (updated Jan. 11, 2019). The Secretary has broad discretion to address and decide when, where, and how funds should be spent under this authority. Here, the Secretary of Defense undertook a deliberate process, including obtaining assessments from the Chairman of the Joint Chiefs of Staff, to reach a considered judgment that the 11 border barrier projects are military construction projects necessary to support the use of the armed forces and therefore authorized under § 2808. *See* First Declaration of Kenneth P. Rapuano ¶¶ 14–15 (ECF No. 22-1).

2. A final decision by the Secretary to undertake construction pursuant to § 2808 is

committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2); *see also* Defs.' Mot. 40–43.[1] The Secretary's § 2808 decision falls within one of the "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion'" given that the decision involves "national security" determinations. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (quoting *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S. Ct. 361, 370 (2018)). Plaintiffs are thus incorrect that 5 U.S.C. § 701(a)(2) does not apply here. *See* Pls.' Supp. Mem. at 3.

Plaintiffs offer no meaningful response, choosing instead to argue at strawmen. Defendants do not contend that "the involvement of the military render[s] this case unreviewable." Pls.' Supp. Mem. at 5. Instead, Defendants have shown that the specific predicates required for agency action pursuant to § 2808—the Presidential declaration of a national emergency that "requires use of the armed forces," and the determination by the Secretary of Defense that military construction is "necessary to support such use of the armed forces"—are core military decisions that are unreviewable because no judicially manageable standards exist to inform such review. *See, e,g.*, *Nat'l Fed'n of Fed. Employees v. United States*, 905 F.2d 400, 405 (D.C. Cir. 1990); *see also* Defs.' Mot. at 40–43; Defs.' Reply at 19. This Court should hold as much here.

3. Plaintiffs have not amended their complaint subsequent to the Secretary of Defense's decision to authorize military construction pursuant to § 2808. Accordingly, the arguments in Defendants' motion to dismiss continue to apply, and demonstrate that Plaintiffs' allegations regarding § 2808 are far too conclusory to state a claim that the statute has been violated. *See* Defs.' Mot. 46–48; Defs.' Reply 19–21.

---

[1] Defendants presented no new arguments on this issue in their supplemental brief, *see* Defs.' Supp. Br. 4–5, and so it is inappropriate for Plaintiffs to address this issue again by raising points they neglected to advance in their opposition brief, *see* Pls.' Supp. Mem. at 3–6.

4.      The locations for the planned border barrier projects also fall within § 2808's broad definition of "military installation," which includes "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department[.]" 10 U.S.C. § 2801(c)(4). As Plaintiffs recognize, *see* Pls.' Mot. at 7, two of the projects are on the Barry M. Goldwater Range, an existing military installation. With respect to the remaining project areas, there is no merit to Plaintiffs' argument that § 2808 limits land acquisition only to expanding the physical footprint of preexisting military installations. *See* Pls.' Mot. at 8. Section 2808 authorizes "military construction," a defined term that includes "*any* acquisition of land." 10 U.S.C. § 2801(a) (emphasis added). DoD therefore has the authority to acquire any land necessary for the § 2808 projects.

In addition, DoD has the authority to take custody of federal land currently held by other agencies. This is clear both because 10 U.S.C. § 2808(a) authorizes DoD to engage in military construction "without regard to any other provision of law"—a broad authorization that includes the authority to take custody of land held elsewhere in the Government—and because Congress has expressly authorized land transfers between federal agencies for land currently controlled by other agencies. The Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701 *et seq.*, authorizes the Secretary of the Interior to make "withdrawals" of land, *id.* § 1714(a), including "transferring jurisdiction over an area of Federal land . . . from one department, bureau or agency to another department, bureau or agency," *id.* § 1702(j). The Property Act, 40 U.S.C. §§ 101 *et seq.*, authorizes GSA to transfer excess real property between agencies. *See id.* § 521. For any non-federal land, the federal government's power of eminent domain has long been used to acquire property for military installations. *See, e.g., Higginson v. United States*, 384 F.2d 504, 505 (6th Cir. 1967). DoD thus has the authority to obtain administrative jurisdiction over the project land

and either convert that land into a new military installation or add it to an existing military installation in accordance with DoD's regulations governing property acquisition. *See* DoD Instruction 4165.14, Real Property Inventory and Forecasting; DoD Instruction 4165.71, Real Property Acquisition.

     5.     Finally, Plaintiffs' NEPA claims against the § 2808 projects should be dismissed because § 2808 authorizes the Secretary of Defense to undertake emergency military construction projects "without regard to any other provision of law." This broad language—a variant of a *non obstante* or "notwithstanding" clause—sweeps aside all statutory and regulatory provisions that might otherwise constrain the authority provided by § 2808. *See Am. Fed'n of Gov't Emps., Local 3295 v. Fed. Labor Relations Auth.*, 46 F.3d 73, 76 (D.C. Cir. 1995). The clause thus provides "a sweeping dispensation from all legal constraints," and "indicate[s] that Congress intended agencies to enjoy 'unfettered discretion.'" *Id.*; *see also Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (approving lower courts' statements that a notwithstanding clause "supersede[s] all other laws" and that a "clearer statement is difficult to imagine"). Here, § 2808 applies only "[i]n the event of a declaration of war or the declaration by the President of a national emergency," and Congress drafted the statute to give DoD great flexibility during such times to engage in emergency construction projects necessary to support the use of the armed forces. 10 U.S.C. § 2808. The use of such broad language indicates that Congress intended § 2808's "without regard to" clause to override any otherwise applicable legal restrictions, such as NEPA, that would impede the activities authorized by § 2808, including acquisitions of land.

* * *

For these reasons as well as those explained in Defendants' submissions (ECF Nos. 22, 33, 41, 42), Plaintiffs' amended complaint should be dismissed.

Dated:  October 9, 2019

        Respectfully submitted,

        JOSEPH H. HUNT
        Assistant Attorney General

        JAMES M. BURNHAM
        Deputy Assistant Attorney General

        ALEXANDER K. HAAS
        Director, Federal Programs Branch

        ANTHONY J. COPPOLINO
        Deputy Director, Federal Programs Branch

        */s/ Andrew I. Warden*
        ANDREW I. WARDEN (IN Bar No. 23840-49)
        Senior Trial Counsel, Federal Programs Branch

        */s/ Leslie Cooper Vigen*
        LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
        KATHRYN C. DAVIS
        MICHAEL J. GIRARDI
        RACHAEL L. WESTMORELAND
        Trial Attorneys
        United States Department of Justice
        Civil Division, Federal Programs Branch
        1100 L Street, N.W.
        Washington, DC 20005
        Tel: (202) 305-0727
        Fax: (202) 616-8470
        Email: Leslie.Vigen@usdoj.gov

        *Counsel for Defendants*