**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; ANIMAL LEGAL DEFENSE FUND,<br><br>                    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>                    Defendants. | Civil Action No. 19-CV-00408 (TNM) |
| RIO GRANDE INTERNATIONAL STUDY CENTER (RGISC), *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>                    Defendants. | Civil Action No. 19-CV-00720 (TNM) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
ADDRESSING ZONE OF INTERESTS**

## **INTRODUCTION**

Plaintiffs in these related cases challenge the Government's funding and construction of barriers along the southern border of the United States pursuant to various statutory authorities, including statutes Congress enacted to govern emergency military construction, 10 U.S.C. § 2808; military support to civilian law enforcement agencies, 10 U.S.C. § 284; internal monetary transfers within the Department of Defense (DoD) from one appropriation to another, § 8005 of the DoD Appropriations Act 2019, Pub. L. No. 115-245, 132 Stat. 2981 (2018); and discretionary expenditures of surplus money in the Treasury Forfeiture Fund (TFF), 31 U.S.C. § 9705.[1] Plaintiffs assert these claims through a cause of action under Administrative Procedure Act (APA) and, alternatively, an implied equitable cause of action alleging statutory and constitutional violations. But Plaintiffs' asserted interests in raising these challenges—which are environmental, aesthetic, recreational, and organizational-resource interests—have nothing to do with the interests Congress intended to be protected by statutes governing emergency military spending, the relationships among and between Executive agencies and Congress, and agencies' discretionary spending. Accordingly, Plaintiffs here cannot pass the zone-of-interests test, which requires that their asserted interests be, at the very least, related to and protected by the statutes they seek to enforce.

Nor can Plaintiffs escape this conclusion by asserting that the zone-of-interests requirement does not apply to their claims. It is beyond dispute that the requirement applies to claims brought pursuant to the APA, and both the Supreme Court and this Circuit have made plain that the requirement also applies to constitutional challenges. Moreover, Plaintiffs cannot escape the zone-

---

[1] The *RGISC* Plaintiffs alone allege violations of § 284 and § 9705. *Compare* Am. Compl. ¶¶ 133–68, *Rio Grande Int'l Study Ctr. v. Trump*, 1:19-cv-720-TNM, ECF No. 28 *with* Am. Compl. ¶¶ 147–202, *Ctr. for Biological Diversity v. Trump*, 1:19-cv-408-TNM, ECF No. 16.

of-interests test by asserting implied equitable causes of action alleging *ultra vires* governmental conduct, and such a conclusion would lead to absurd consequences. Finally, the Appropriations Clause does not provide the relevant zone-of-interests framework. Plaintiffs assert no constitutional violation separate from their alleged statutory violations and the zone-of-interests inquiry must therefore focus only on the statutes that form the basis of Plaintiffs' claims.

For these reasons, in addition to those stated in Defendants' prior briefs and at oral argument, Plaintiffs' amended complaints should be dismissed.

**I.     The Zone-of-Interests Requirement Applies to Plaintiffs' Claims.**

The zone-of-interests requirement is a general presumption about Congress's intended limits on the scope of *all* causes of action, not just congressionally authorized causes of action under the APA or other statutes. As the Supreme Court has made clear, the zone-of-interests test "is a 'requirement of general application'" that "*always* applies and is never negated[.]" *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (emphasis in original) (quoting *Bennett v. Spear*, 520 U.S. 154, 163–64 (1997)). Indeed, the zone-of-interests test indisputably applies to claims brought under the APA. *See Lexmark*, 527 U.S. at 129 (citing *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150 (1970)); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012).

In addition, the Supreme Court and the D.C. Circuit have applied the zone-of-interests requirement to causes of action to enforce constitutional provisions. *See, e.g.*, *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) ("[T]he Court has required that the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (quotation marks omitted)); *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 320–21 n.3 (1977) (applying

the zone-of-interests requirement to plaintiffs seeking to enforce the dormant Commerce Clause); *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 11 (D.C. Cir. 2008) (applying the zone-of-interests requirement to a First Amendment claim); *DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 283–86 (D.C. Cir. 1989) (holding that plaintiffs were not within the zone of interests protected by the First Amendment); *Moore v. U.S. House of Representatives*, 733 F.2d 946, 953–54 (D.C. Cir. 1984) (applying zone-of-interests test to an Origination Clause claim); *see also Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 186 (2d Cir. 2002) (Sotomayor, J.) ("plaintiffs' alleged harm does not fall within the zone of interests protected by the Due Process Clause").

Plaintiffs cannot evade the zone-of-interests test by pleading a claim for equitable relief against alleged *ultra vires* government conduct. *See Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F. Supp. 2d 4, 18 n.4 (D.D.C. 2008) (Bates, J.) (stating that plaintiffs' argument that "they may evade" the zone of interests analysis "by labeling" the agency's action as "ultra vires is equally unavailing"). Although the Supreme Court in *Lexmark* referred to the zone-of-interests requirement as applying to "statutory" or "statutorily created" causes of action, 572 U.S. at 129, the Court did not suggest—let alone hold—that the requirement does *not* apply to non-statutory causes of action in general or to equitable constitutional claims in particular. *Lexmark* therefore did not silently abrogate the Supreme Court's prior precedents recognizing that the zone-of-interests requirement applies to equitable actions seeking to enjoin constitutional violations.

In any event, the reference in *Lexmark* to "statutorily created" causes of action necessarily encompasses implied causes of action to enjoin statutory or constitutional violations. The Supreme Court has explained that the "judge-made remedy" of a suit to enjoin unlawful executive action is "the creation of courts of equity" and is "subject to express and implied statutory limitations."

3

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). One of those implied limitations is the requirement that Plaintiffs' asserted interests fall within the zone of interests arguably protected by the provision whose alleged violation forms the basis for Plaintiffs' claim, as demonstrated by long-standing precedent cited above, recognizing that the zone-of-interests requirement applies to suits seeking to enforce constitutional violations. *See Lexmark*, 572 U.S. at 130 n.5 (zone of interest requirement has common-law "roots"). Indeed, if anything, courts "requir[e] more" for cases where plaintiffs seek to invoke an implied right of action. *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987). The Supreme Court in *Clarke* suggested that such plaintiffs must show that they are "one of the class for whose *especial* benefit" the provision was adopted. *Id.* The very reason *Clarke* discussed the higher standard was to illustrate "[t]he difference made by the APA" and to stress the possibility of a more rigorous "inquiry under whatever constitutional or statutory provision" is invoked in non-APA cases. *See id.*

Moreover, an implied cause of action is, in fact, statutorily created, as it rests on the general equitable powers that Congress by statute vested in the lower federal courts. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (citing the statutory grant of equity jurisdiction in the Judiciary Act of 1789). Such implied causes of action are limited to "traditional equitable practice," *id.* at 322, which is important given that it would be unprecedented and lead to "absurd consequences" to allow implied equitable actions by plaintiffs whose alleged Article III injuries "are unrelated" to the interests protected by the statutory or constitutional provisions invoked. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176–78 (2011) (identifying hypothetical persons with Article III injuries from statutory violations who plainly would be improper plaintiffs to enforce the statute). Indeed, no controlling authority supports the proposition that plaintiffs with injuries that fall outside a statute's zone of interests may bring a

4

suit that would otherwise be barred merely by asserting an equitable *ultra vires* claim.

Fundamental separation-of-powers principles underscore why the zone-of-interests requirement applies to implied equitable causes of action. "[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action," because "the Legislature is in the better position" to weigh the competing considerations involved in creating private rights of action. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856–57 (2017). And while courts may wield "traditional equitable powers," *id.* at 1856, "Congress is in a much better position than" courts "to design the appropriate remedy" when "depart[ing] from" "traditional equitable practice," *Grupo Mexicano*, 527 U.S. at 322. There is thus no basis to conclude that Congress intended to allow courts to infer an equitable cause of action to enforce a statutory provision for individuals outside the zone of interests of the statutory limitations being enforced. It would turn the Constitution's separation of powers on its head for courts to allow a larger class of plaintiffs to sue an agency under an implied cause of action in equity than the class of plaintiffs Congress intended to allow to sue under the APA's express cause of action that it created for such challenges. Accordingly, courts' authority to infer equitable claims cannot extend beyond the traditional presumption that Congress does not intend to allow plaintiffs outside the zone of interests of a statute to sue to enforce it. *See Lexmark*, 527 U.S. at 129; *Armstrong*, 325 U.S. at 326–27.

This conclusion is supported by *Haitian Refugee Center v. Gracey*, 809 F.2d 794 (D.C. Cir. 1987). Contrary to Plaintiffs' argument, the reasoning in *Haitian Refugee Center* suggests that the zone-of-interests requirement *does* apply to claims challenging Executive action as *ultra vires*. The D.C. Circuit there clarified (in dicta in a footnote) that in cases where the plaintiff challenges Executive action as exceeding statutory authority, the relevant question is whether the

5

plaintiff's "interest may be said to fall within the zone protected by the *limitation[s]*" on the "statutory powers invoked by the [defendant]." *Id.* at 811 n.14 (emphasis added). Indeed, the court stated that the zone-of-interests requirement must be understood by reference to whether "a particular constitutional or statutory provision was intended to protect persons like the litigants by limiting the authority conferred" on the Executive Branch. *Id.* To the extent Plaintiffs contend that the *Haitian Refugee Center* footnote stands for the sweeping proposition that the zone-of-interests test categorically does not apply to claims challenging Executive action as *ultra vires*, neither the D.C. Circuit nor courts within this district have ever adopted that position. To the contrary, as explained above, both the Supreme Court and the D.C. Circuit have applied the zone-of-interests requirement to various types of statutory and constitutional claims, and there is no basis for the Court to depart from that well-established authority.

## II.     Plaintiffs Fall Outside the Zone of Interests of the Statutes at Issue.

Plaintiffs—a collection of environmental and animal advocacy organizations, landowners, and immigration reform organizations—cannot satisfy the zone-of-interests requirement for any of the statutory provisions that form the basis for their claims because their alleged environmental, advocacy, and land interests are entirely unrelated to the interests protected by those provisions. Specifically, Plaintiffs' interests fall outside the scope of statutes Congress enacted to govern emergency military construction (§ 2808); military support to civilian law enforcement agencies (§ 284); internal monetary transfers within DoD from one appropriation to another (§ 8005); discretionary expenditures of surplus money in the Treasury Forfeiture Fund (§ 9705); or appropriations granted to the Department of Homeland Security (DHS) in the Consolidated Appropriations Act of 2019 (CAA), Pub. L. No. 116-6, 133 Stat. 13, § 230 (2019).

The zone-of-interests test requires courts to assess whether the plaintiff's interests fall within the zone of interests "that Congress sought to protect or regulate under the statute in question." *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 900 (D.C. Cir. 1996); *see Patchak*, 567 U.S. at 224 ("The interest [the plaintiff] asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated.") (internal quotations omitted). The test forecloses suit where the plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Patchak*, 567 U.S. at 399.

The "[t]he relevant statute" for zone-of-interests purposes "is the statute whose violation is the gravamen of the complaint," *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 886 (1990), as confirmed "by reference to the particular provision of law upon which the plaintiff relies," *Bennett*, 520 U.S. at 175–76; *see Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) ("we look to whether [the plaintiffs] fall within the zone of interests sought to be protected by the substantive statute pursuant to which the Department of Labor acted: the INA"); *Amalgamated Transit Union v. Skinner*, 894 F.2d 1362, 1366 (D.C. Cir. 1990) (applying zone-of-interests test to the substantive statute under which the agency acted where the plaintiff claimed the agency lacked statutory authority for the challenged program). Here, Plaintiffs' challenge is fundamentally a dispute about whether the Departments of Defense and the Treasury have satisfied the criteria of the statutes authorizing the challenged funding and border barrier construction—§ 2808, § 284, § 8005, and § 9705—or whether the appropriations to DHS in the CAA prohibit reliance on those statutes. These statutes, therefore, provide the frame of reference for the Court's zone-of-interests analysis.

Additionally, because the statutes at issue do not regulate Plaintiffs, their claims "necessarily rest[] on the idea that [their] members' interests are among those Congress sought to


Case 1:19-cv-00408-TNM   Document 48   Filed 01/06/20   Page 9 of 18

protect." *Reno*, 93 F.3d at 900; *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922–23 (D.C. Cir. 1989) (explaining the difference between "regulated interests" and "protected interests" for purposes of the zone-of-interests inquiry). The D.C. Circuit recently explained that "[p]rotected interests are ones asserted either by intended beneficiaries of the statute at issue or by other suitable challengers—*i.e.*, parties whose interests coincide systemically, not fortuitously with those of intended beneficiaries." *Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*, 934 F.3d 607, 616 (D.C. Cir. 2019) (internal quotations omitted). As explained below, Plaintiffs' interests do not fall within the zone of interests protected by any of the statutes at issue in this case.

A. **Section 2808**

Section 2808 provides that in the event of a Presidential declaration of national emergency that requires the use of the armed forces, DoD may, "without regard to any other provision of law," undertake military construction projects that are "necessary to support such use of the armed forces." 10 U.S.C. § 2808(a). Nothing in its text suggests that Congress intended to permit enforcement of the statute's limitations by parties who, like the environmental and immigration advocacy groups here, assert indirect harm to their aesthetic, recreational, and resource interests. Because § 2808 authorizes DoD to undertake military construction projects "without regard to any other provision of law," it reflects Congress's decision to give DoD significant flexibility to engage in construction projects necessary to support the use of the armed forces. Section 2808 has nothing to do with environmental or recreational interests that such construction might implicate and certainly does not evince congressional intent to protect such interests. Indeed, the statutory text— specifically the "without regard to any other provision of law" clause—authorizes DoD to bypass the extrinsic statutory and regulatory requirements that would otherwise limit DoD from exercising its military construction authority effectively and expeditiously. *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (approving lower courts' statements that a notwithstanding clause

8

"supersede[s] all other laws" and that a "clearer statement is difficult to imagine"); *Am. Fed'n of Gov't Employees, Local 3295 v. Fed. Labor Relations Auth.*, 46 F.3d 73, 76 (D.C. Cir. 1995) (describing a similar "without regard to" clause as providing "a sweeping dispensation from all legal constraints").

Section 2808 is distinguishable from the land acquisition statute at issue in *Patchak*. That case involved an APA challenge to the Secretary of the Interior's statutory authority "to acquire property 'for the purpose of providing land for Indians.'" 567 U.S. at 211–12. The Supreme Court concluded that a neighboring landowner was within the zone of interests because acquisition of land was "closely enough and often enough entwined with" the use of land that "neighbors to the use" where "reasonable—indeed, predictable—challengers." *Id.* at 227–28. Not so here. Not only does § 2808 make no mention of any issues at all related to environmental or recreational concerns, but specifically disables other laws that would otherwise apply to the military construction at issue.

Moreover, allowing this suit to proceed would lead to "absurd consequences" by enabling advocacy organizations to delay the expenditure of funds for *emergency* military construction projects based on unrelated recreational, aesthetic, or resource concerns. *Thompson*, 562 U.S. at 176. Congress could not have intended that result when it enacted § 2808 to permit the Secretary of Defense to authorize expedient military construction during a time of war or national emergency "without regard to any other provision of law."

**B.     Section 284**

Nor are Plaintiffs within the zone of interests of § 284. Section 284's limitations on when DoD can provide counter-drug support are designed to regulate the relationship between Congress, DoD, and state or federal agencies seeking assistance, based on budgetary control and agency focus. The "interests protected by the" statute are completely unrelated to the environmental,

9

aesthetic, and resource interests Plaintiffs seek to vindicate here. *See Lexmark*, 572 at 131. Nothing in the statute suggests that Congress intended to give advocacy organizations a remedy for protecting against the alleged negative externalities of barrier construction. As such, neither the APA nor an implied cause of action in equity provides Plaintiffs with a remedy for an alleged violation. *Id.* at 129; *see Clarke*, 479 U.S. at 396, 400 & n.16.

    C.    **Section 8005**

For similar reasons, Plaintiffs are not within the zone of interests of § 8005. In related litigation the Supreme Court concluded the Government was entitled to a stay of an injunction prohibiting border barrier construction because, "[a]mong other reasons," it had sufficiently shown that "the plaintiffs have no cause of action to obtain review of the Acting Secretary's compliance with Section 8005." *Trump v. Sierra Club*, 140 S. Ct. 1 (2019); *see Lexmark*, 572 U.S. at 129 ("a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked"). The Supreme Court's decision to stay an injunction is guided by the same factors that inform the issuance of an injunction. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). Thus, when the Supreme Court stayed the injunction, it necessarily concluded that the Government was likely to succeed on the merits of the claim that the *Sierra Club* plaintiffs, who asserted environmental, recreational, and organizational interests similar to those asserted by Plaintiffs here, "have no cause of action to obtain review of the Acting Secretary's compliance with Section 8005." *Sierra Club*, 140 S. Ct. at 1. There is no basis for this Court to contradict that decision from the Supreme Court, particularly given that it is consistent with a straightforward application of zone-of-interests principles.

Section 8005 is a provision in a DoD appropriations act that does nothing more than permit, when certain criteria are met and within certain limitations, transfers of funds from one DoD appropriation to another. *See* Pub. L. No. 115-245, 132 Stat. at 2999, § 8005. Section 8005 thus

10

regulates the relationship between Congress and the Executive by setting forth in what circumstances DoD may transfer appropriated funds between internal accounts. Nothing in § 8005 suggests that Congress even arguably intended to allow persons alleging aesthetic, recreational, or resource harms to sue to enforce § 8005's terms, let alone that it specifically intended to protect such persons. *See Sierra Club v. Trump*, 929 F.3d 670, 715 (9th Cir. 2019) (N.R. Smith, J., dissenting) (concluding that the plaintiffs' environmental and organizational interests "fall outside § 8005's zone of interests").

Indeed, there is no indication that Congress intended to authorize judicial enforcement of § 8005 at all, as opposed to leaving any potential violations to its own oversight. Congress required DoD to provide notice to Congress when it exercises its transfer authority, *see* Pub. L. No. 115-245, § 8005, 132 Stat. at 2999, and Congress intended § 8005 to "tighten *congressional* control of the re-programming process," DoD Appropriation Bill, 1974, H. Rep. No. 93-662, at 16–17 (1973) (emphasis added). To the extent Congress disagrees with DoD's transfer decisions, it has the necessary tools to address the problem, but Congress as a whole has chosen not to restrict or otherwise modify DoD's § 8005 authority. *See* DoD Appropriations Act, 2020, Pub. L. No. 116-93, Div. A, § 8005 (Dec. 20, 2019).

### D. The Treasury Forfeiture Fund

Plaintiffs also fail to demonstrate that their asserted interests are within the zone of interests of the TFF. The TFF is comprised of "seizures and forfeitures" made by the Department of the Treasury and its partner agencies. 31 U.S.C. § 9705(a). The fund's authorizing legislation explains that, after reserving statutorily required amounts not at issue here, surplus unobligated funds are available to the Secretary of the Treasury "for obligation or expenditure in connection with the law enforcement activities of any Federal agency." *Id.* § 9705(g)(4)(B). Similar to an appropriations act, the statute authorizing the TFF is intended to govern Treasury's ability to expend forfeited

11

funds. And following the fulfillment of certain statutory obligations, Congress clearly communicated its intent for Treasury to have broad discretion regarding expenditure of surplus funds "in connection with the law enforcement activities of any Federal agency." There is no hint in the TFF's authorizing legislation that Congress intended private parties to have any right to interfere in the Secretary's discretionary decisions. Nor is there any indication in § 9705 that Congress had any intention to protect the environmental, recreational, or organizational interests asserted by Plaintiffs here. Plaintiffs thus fall outside the zone of interests of the TFF.

### E. The Consolidated Appropriations Act of 2019

Plaintiffs' attempt to frame their complaints as alleging violations of the CAA does nothing to solve their zone-of-interests problem. As an appropriations act, the CAA is a directive from Congress to Executive agencies setting forth the specific amounts and purposes for which appropriations may be spent. *See OPM v. Richmond*, 496 U.S. 414, 424 (1990). Section 230 of the CAA simply appropriates funds to DHS for construction of border barriers in specified areas in the Rio Grande Valley Sector of Texas. *See* Pub. L. No. 116-6, § 230, 133 Stat. 28. Section 739 of the CAA limits an agency's authority to increase funding for a "program, project, or activity as proposed in the President's budget request for a fiscal year" until such a change is enacted in a subsequent appropriations act or made pursuant to an agency's reprogramming or transfer authority. *See id.* § 739, 113 Stat. 197. These provisions regulate the relationship between Congress and the Executive Branch regarding federal spending, and in no way protect the public's generalized interest in the expenditure of appropriations. *See Miccosukee Tribe of Indians of Fla. v. United States*, 2009 WL 10668917, at *4 (S.D. Fla. Sept. 30, 2009) (holding that an appropriations act protected, at most, a federal agency's interest in appropriated funds, not the interests asserted by plaintiffs); *cf. Hazardous Waste Treatment Council*, 885 F.2d at 925 (stating

that a defense contractor would fall outside zone of interests of an appropriations act because "the annual defense appropriation is not passed *in order* to benefit defense contractors, benefit them though it may").

Indeed, on their face, the provisions of the CAA that appropriate fiscal year 2019 funds to DHS for border barrier construction do not purport to regulate or protect Plaintiffs' interests in the environmental, aesthetic, recreational, or resource impacts of border barriers. *See Haitian Refugee Ctr.*, 809 F.2d at 812. Plaintiffs cannot merely allege a "generalized grievance" about the Government's action; they must show that "the interest asserted . . . *in the particular instance* is one intended by Congress to be protected or regulated by *the statute under which suit is brought*." *Id.* at 813–14 (citations omitted). Nor can Plaintiffs demonstrate that they fall within the zone of interests of the CAA generally. "If a plaintiff were permitted to bring a claim for violation of a particular statutory provision whenever he or she came within the zone of interests of *some* provision contained within the same act, the zone-of-interests test could be deprived of virtually all meaning." *Reno*, 93 F.3d at 903 (internal quotations omitted); *see also Indian River Cty., Fla. v. Dep't of Transportation*, 348 F. Supp. 3d 17, 29 (D.D.C. 2018) (concluding that the "relevant unit of analysis" for the zone-of-interests test is the particular provision invoked by the plaintiff, not "an interest advanced *anywhere*" in a "massive statute with many objectives"). Here, Plaintiffs' CAA claims are premised on violations of §§ 230 and 739, and Plaintiffs cannot establish that they fall within the zone of interests of those appropriations provisions.[2]

---

[2] Plaintiffs asserted at oral argument that the provision in § 231 of the CAA restricting border barrier construction in five locations within the Rio Grande Valley indicates congressional intent to protect environmental interests. But that provision is irrelevant to the zone-of-interest analysis because Plaintiffs are not seeking to enforce the limitations in § 231 and do not allege that the Government plans to construct border barriers in any of the restricted locations named in § 231. Because the zone-of-interests requirement must be applied "by reference to the particular provision

### III. The Appropriations Clause Does Not Provide the Relevant Zone of Interests.

Plaintiffs cannot escape the conclusion that the aforementioned statutes provide the relevant framework for the zone-of-interests inquiry by asserting that they fall within the zone of interests of the Appropriations Clause. The Appropriations Clause provides that appropriations must be "made by Law," U.S. Const., art. I, § 9, cl. 7, and § 2808, § 284, § 8005, and § 9705 are the "law[s]" that Defendants are invoking. Plaintiffs' claims turn entirely on whether Defendants' actions violated these statutes or are prohibited by §§ 230 and 739 of the CAA, making those statutes the "particular provision of law upon which the plaintiff relies." *Bennett*, 520 U.S. at 175–76. Under Plaintiffs' theory of liability, the Appropriations Clause is implicated if and only if Defendants have exceeded their statutory authority; there are no separate or independent Appropriations Clause principles at issue in this case. Plaintiffs' claims thus raise "no constitutional question whatever"; the "only issues" involve "statutory interpretation." *Dalton v. Specter*, 511 U.S. 462, 473–74 & n.6 (1994) (quotation marks omitted); *see U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1349–50 (D.C. Cir. 2012) (Kavanaugh, J.) (addressing challenge to an agency's expenditure of funds by analyzing the relevant statute); *Harrington v. Schlesinger*, 528 F.2d 455, 457–58 (4th Cir. 1975) (stating that disputes about "the interpretation and application of congressional statutes under which the challenged expenditures either were or were not authorized" do not present a "controversy about the reach or application of" the Appropriations Clause). Accordingly, even assuming that Plaintiffs could assert an implied equitable claim outside of the APA, the relevant zone of interests is nevertheless established by the statutory authority invoked by Defendants, not by the Appropriations Clause—just as the

---

of law upon which the plaintiff relies," *Bennett*, 520 U.S. at 175–76, the limitations in § 231 are not implicated in the zone-of-interests analysis.

relevant zone of interests for an APA claim is established by the substantive statute that was allegedly violated, not by the APA itself.  *See Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*, 746 F. App'x 1, 7 (D.C. Cir. 2018) (citing cases).

For these reasons, the Court should not follow the Ninth Circuit's zone-of-interests analysis in *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019).  The Ninth Circuit expressed skepticism whether the "zone of interests test applies" to a non-statutory *ultra vires* claim, but concluded that, "[t]o the extent" it does apply, "it requires [the court] to ask whether Plaintiffs fall within the zone of interests of the Appropriations Clause," not the statutory provision plaintiffs asserted had been violated (*i.e.*, § 8005 of the DoD Appropriations Act).  *See id.* at 700–04.  *But see id.* at 707–20 (N.R. Smith, J., dissenting) (concluding that plaintiffs raise only statutory claims and fall outside the zone of interests of § 8005).  That interlocutory decision denying a stay, which was entered by a motions panel after limited and expedited briefing, is not binding on this Court and, in any event, the Supreme Court's subsequent order granting a stay necessarily rejected the motions panel's zone-of-interests analysis.  *See Sierra Club*, 140 S. Ct. at 1; *see also supra* at 10.  Accordingly, the Ninth Circuit's conclusions that the *Sierra Club* plaintiffs had stated an implied constitutional claim under the Appropriations Clause and that their environmental injuries fell within the zone of interests of the Appropriations Clause are "clearly irreconcilable with the reasoning" of the Supreme Court's stay order and should not be followed.  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see Dellums v. U.S. Nuclear Regulatory Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988) ("it is black letter law that a circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding on a court of appeals").  Further, the rationale of the Supreme Court's order is equally applicable to the other statutes at issue in this case—§ 284, § 2808, § 9705, and the CAA—because, like § 8005, none of the statutes provides a cause of

15

action, and for the reasons discussed above, Plaintiffs do not fall within the provisions' zones of interests.

## CONCLUSION

For the reasons explained above, as well as those set forth in Defendants' previous briefs and at the hearing on December 16, 2019, Plaintiffs' amended complaints should be dismissed.

Dated: January 6, 2020

                                                 Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
KATHRYN C. DAVIS
MICHAEL J. GIRARDI
RACHAEL L. WESTMORELAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-5084
Fax: (202) 616-8470

16

Email: Andrew.Warden@usdoj.gov

*Counsel for Defendants*