# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; and ANIMAL LEGAL DEFENSE FUND, | | Case No.: 1:19-cv-00408 (TNM) |
| Plaintiffs, | | |
| v. | | |
| DONALD J. TRUMP, in his official capacity as President of the United States of America; MARK ESPER, in his official capacity as Secretary of Defense; LIEUTENANT GENERAL TODD T. SEMONITE, in his official capacity as Commander and Chief of Engineers, U.S. Army Corps of Engineers; CHAD WOLF, in his official capacity as Acting Homeland Security Secretary; DAVID BERNHARDT, in his official capacity as Secretary of the Interior, | | |
| Defendants. | | |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ADDRESSING ZONE OF INTERESTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ..........................................................................................................1

ARGUMENT ..................................................................................................................2

     I.     Plaintiffs Are Within the Zone of Interests of the Relevant Statutes ......................2

          a.     Plaintiffs Allege Violations of Consolidated Appropriations Act
                   Provisions Intended to Protect Environmental Interests ............................2

          b.     Consolidated Appropriations Act §§ 230-232 and § 739 Are Integrally
                   Related ........................................................................................................6

          c.     The Resolution of Plaintiffs' CAA Claims Is Intertwined with the Merits
                   of Defendants' Assertion that DoD Transfer Provisions (§ 2808 and
                   § 8005) Provide Alternative Border Wall Funding Mechanisms ...............9

     II.     To the Extent Constitutional Claims are Subject to the Zone of Interests
           Test, Plaintiffs Meet That Standard ....................................................................11

CONCLUSION ..............................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Ass'n of Data Processing Serv. Orgs. v. Camp,*
  397 U.S. 150 (1970) ........................................................................................................2

*Bennett v. Spear,*
  520 U.S. 154 (1997) ......................................................................................................13

*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388 (1987) ...............................................................................................2, 7, 13

*Dalton v. Specter,*
  511 U.S. 462 (1994) ......................................................................................................12

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ........................................................................................................9

*Grocery Mfrs. Ass'n v. EPA,*
  693 F.3d 169 (D.C. Cir. 2012) .........................................................................................7

*Hazardous Waste Treatment Council v. Thomas,*
  885 F.2d 918 (D.C. Cir. 1989) ..................................................................................2, 13

*Indian River Cty. v. United States DOT,*
  No. 19-5012, 2019 U.S. App. LEXIS 37961 (D.C. Cir. Dec. 20, 2019) .............................6, 13

* *Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ................................................................................... 4, 11-12

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ........................................................................................................1

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012)...................................................................................................6, 13

* *Milk Train, Inc. v. Veneman,*
  310 F.3d 747 (D.C. Cir. 2002) .......................................................................................11

* *Nat'l Coal Assoc. v. Hodel,*
  825 F.2d 523 (D.C. Cir. 1987) .......................................................................................10

*Nat'l Petrochemical & Refiners Ass'n v. EPA,*
  287 F.3d 1130 (D.C. Cir. 2002) ................................................................................. 6-7

*Raoof v. Sullivan*,
  315 F. Supp. 3d 34 (D.D.C. 2018) ........................................................9

*Sierra Club v. Trump*,
  379 F. Supp. 3d 883 (N.D. Cal. 2019) ...................................................5

*Trump v. Sierra Club*,
  140 S. Ct. 1 (2019) ...........................................................................11

\* *Twin Rivers Paper Co. v. SEC*,
  934 F.3d 607 (D.C. Cir. 2019) ........................................................2, 4

*U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*,
  665 F.3d 1339 (D.C. Cir. 2012) ..........................................................12

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
  249 F. Supp. 3d 524 (D.D.C. 2017) ......................................................7

## CONSTITUTION

\* U.S. CONST. art. I, § 9, cl. 7 ...........................................................12

## STATUTES

5 U.S.C. § 702 ......................................................................................2

10 U.S.C. § 284 .....................................................................................1

10 U.S.C. § 2808 ...........................................................................*passim*

16 U.S.C. § 668ee(2) ..............................................................................5

31 U.S.C. §1301 *et seq.* ........................................................................12

54 U.S.C. § 100101(a) ............................................................................5

\* Consolidated Appropriations Act, 2019
  Pub. L. No. 116-6, 133 Stat. 13 .....................................................*passim*
  §§ 230-232 ..................................................................................*passim*
  § 230(a)(1) ..........................................................................................3
  § 230(b) ...........................................................................................3, 8
  § 231(1)-(5) .........................................................................................3
  § 739 ..........................................................................................1, 6, 8

Department of Defense and Labor, Health and Human Services, and Education Appropriations
Act 2019 and Continuing Appropriations Act, 2019,
Pub. L. No. 115-245, 132 Stat. 2981 (2018) ...........................................1
  § 8005 .................................................................. 9, 11, 12, 13-14
  § 8005(b)(2) .....................................................................................10

## COURT RULES

FED. R. CIV. P. 12(b)(1) ..............................................................................................14

FED. R. CIV. P. 12(b)(6) ..............................................................................................14

## INTRODUCTION

In determining whether a plaintiff meets the zone of interests test, courts look to the "relevant statute" whose violation is the "gravamen of the complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990).  Here, the gravamen of plaintiffs' first amended complaint ("FAC") (claims II-V), ECF No. 16, is that agency implementing actions to identify, transfer, and obligate $3.6 billion of Department of Defense ("DoD") military construction funds pursuant to 10 U.S.C. § 2808, and $2.5 billion of DoD funds passed through the 10 U.S.C. § 284 counterdrug account, violate the 2019 Consolidated Appropriations Act ("CAA"), § 230 (by exceeding and falling outside of the Act's monetary and geographic restrictions, respectively) and § 739 (by violating prohibition on use of any appropriated funds to increase funding for a program, project, or activity). Pub. L. No. 116-6, 133 Stat. 13. Plaintiffs' interests in the conservation of the natural environment and protection of Federal public lands fall squarely within the "zone of interests" protected by these CAA provisions.

Defendants' supplemental motion to dismiss does not differentiate between this case and the separate *Rio Grande International Study Center* action. Although there is some similarity and overlap in underlying merits arguments, these two cases involve two distinct classes of plaintiffs, and different theories of pleading. Plaintiffs in this case have pled their claims as Administrative Procedure Act ("APA") based challenges (with *ultra vires* pled in the alternative), and have not contested the application of the zone of interests standard to their APA claims. Thus, the portion of the government's supplemental brief arguing that the zone of interests applies does not require a response. To the extent the government's supplemental brief does raise arguments relevant in this case, defendants' motion to dismiss on zone of interests grounds should be denied for the reasons discussed below, which are supplemental to plaintiffs' primary brief in opposition. *See* Plfs.' Mot. to Dismiss ("MTD") Opp'n., ECF No. 22, at p. 22-26.

1

## ARGUMENT

I.   **Plaintiffs Are Within the Zone of Interests of the Relevant Statutes**

   a.   **Plaintiffs Allege Violations of Consolidated Appropriations Act Provisions Intended to Protect Environmental Interests**

The APA provides judicial review to a person "aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. In determining whether a plaintiff's interest is encompassed "within the meaning of the relevant statute," such interest "may reflect aesthetic, conservational, and recreational as well as economic values." *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153-54 (1970).[1] Plaintiffs "must assert interests falling 'arguably within the zone of interests to be protected or regulated' by the laws they invoke." *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 616 (D.C. Cir. 2019) (*quoting Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 396 (1987)). The D.C. Circuit Court of Appeals has recently explained that "[p]rotected interests are ones asserted either by 'intended beneficiaries' of the statute at issue or by other 'suitable challengers'—*i.e.*, parties whose interests coincide 'systematically, not fortuitously' with those of intended beneficiaries." *Twin Rivers Paper Co.*, 934 F.3d at 616 (*quoting Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922-24 (D.C. Cir. 1989)). Here, plaintiffs meet either formulation of the Circuit's protected zone of interests test when applied to the relevant provisions of the CAA, §§ 230-232 and § 739.

The environmental interests at the heart of plaintiffs' organizational missions are also a primary focus of these CAA provisions. During the federal government shutdown, the Trump Administration requested "$5.7 billion for construction of a steel barrier for the Southwest border." Plfs.' MTD Opp'n., at p. 3, Ex. 1 (letter from Russell T. Vought, Acting Director,

---

[1] Unless otherwise noted, internal quotations and citations are omitted from case citations.

OMB, to Sen. Richard Shelby, Chairman, Sen. Appropriations Comm. (Jan. 6, 2019)). The Administration stated that the requested funds would be directed to "a total of approximately 234 miles of new physical barrier and fully fund the top 10 priorities in CBP's Border Security Improvement Plan." *Id*. These priority areas included proposed border wall construction in all four of the southwestern border states—California, Arizona, New Mexico, and Texas. Plfs.' MTD Opp'n., at p. 4, Ex. 2 (Press Release, DHS, Walls Work (Dec. 12, 2018)).

The Congressional enactment of the CAA specifically rejected the President's border wall funding levels, instead appropriating $1.375 billion "for the construction of primary fencing, including levee pedestrian fencing." CAA § 230(a)(1). Congress also specifically rejected the geographic scope of the President's border wall request, restricting the appropriated funds to the CBP Rio Grande Valley ("RGV") Sector, and limited border wall construction to "operationally effective designs deployed as of the date of the [2017 CAA] such as currently deployed steel bollard designs, that prioritize agent safety." CAA § 230(b).

In addition to rejecting the President's requested border wall funding levels and limiting appropriated funds to the RGV Sector, Congress chose to prohibit border wall construction in four areas of environmental significance within that area, including two units of Federal public lands within the National Wildlife Refuge System (Santa Ana National Wildlife Refuge and the Vista del Mar Ranch tract of the Lower Rio Grande Valley National Wildlife Refuge), a Texas State Park (Bentsen-Rio Grande Valley State Park), and a private nature reserve (the National Butterfly Center), as well as a municipal area of historical and cultural significance (La Lomita Historical Park). CAA § 231(1)-(5). The CAA also established specific consultation, and notice and comment requirements, in relation to five cities or census designated places within the RGV Sector. CAA § 232.

Courts use "traditional principles of statutory interpretation" to determine if a plaintiff falls within the zone of interests of the relevant statutes. *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Here, the plain language of CAA §§ 230-232 communicates Congressional intent to place geographic and additional restrictions on border wall construction in order to protect the environment.

It thus "requires no guesswork" to confirm that plaintiffs' environmental interests are within the zone of interests Congress intended to address in enacting these provisions of the CAA. *Lexmark Int'l*, 578 U.S. at 131. By the plain terms of the statute, Congress did not authorize the use of appropriated funds for *any* border wall construction outside of the RGV Sector, and prohibited construction on National Wildlife Refuges within the sector that were created with the specific purpose of providing habitat in perpetuity for endangered species and other wildlife. Plaintiff environmental organizations—and the individual members these organizations represent—are accordingly "intended beneficiaries," or at the very least, "parties whose interests coincide systematically, not fortuitously, with those of intended beneficiaries" under the CAA. *Twin Rivers Paper Co.*, 934 F.3d at 616.

This conclusion is further reinforced by defendants' use of the challenged transferred funds, which has been overwhelmingly focused on replacing "vehicle barriers" with border wall in California, Arizona, and New Mexico, including in National Wildlife Refuges and other protected Federal lands. These areas were identified as "top 10 priorities" by the Administration, but were specifically rejected by Congress in the CAA when it limited border wall appropriations to the RGV Sector. As plaintiffs have previously detailed, these protected lands contain habitat for numerous endangered species and other wildlife that are dependent on cross-border connectivity (the ability to move between populations in the United States and Mexico), and vehicle barriers were installed in these areas during the George W. Bush Administration in an

effort to balance border security considerations with preservation of the borderland region's extraordinary natural resources. Plfs.' MTD Opp'n., at p. 5-10.

Vehicle barriers are made of steel—typically range from four to six feet in height—and as their name reflects, they block vehicles, but not wildlife. In contrast, the "border wall system" already being constructed in some areas consists of a 30-foot "bollard wall," where "[t]he bollards are steel-filled concrete that are approximately six inches in diameter and spaced approximately four inches apart, and accompanied by lighting." *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 924 (N.D. Cal. 2019). The environmental impacts of vehicle barriers on wildlife populations are fundamentally distinguishable from that of bollard border walls, as vehicle barriers allow connectivity for wildlife movement between populations in the U.S. and Mexico that are vital to species' survival. By contrast, the 30-foot bollard border walls being constructed will end such movement and connectivity.

Plaintiffs have provided twelve declarations detailing conservational, recreational, scientific, aesthetic, and other interests in, and use of, the particular border wall "project" areas that are harmed by defendants' unlawful transfers. *See* Plfs.' MTD Opp'n. The harm to these interests is particularly pronounced in this case, where the border wall projects are primarily being carried out on protected Federal lands preserved for their beauty, their value to wildlife, their contribution to scientific understanding, and other values consistent with plaintiffs' demonstrated interests that align with the zone of interests Congress sought to protect in enacting the CAA. *See*, *e.g.*, National Park Service Organic Act of 1916, 39 Stat. 535 (Aug. 25, 1916) (*codified at* 54 U.S.C. § 100101(a))(directing National Park Service to "conserve the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations"); 16 U.S.C. § 668ee(2) (identifying six "wildlife-dependent recreation uses"—hunting, fishing, wildlife observation, wildlife

photography, environmental education, and environmental interpretation—to be prioritized on National Wildlife Refuge lands). Although these declarations were primarily submitted to demonstrate associational Article III standing, they also demonstrate plaintiffs' "systematic" alignment with the environmental interests Congress sought to protect under §§ 230-232 of the CAA.

### b.   Consolidated Appropriations Act §§ 230-232 and § 739 Are Integrally Related

In an effort to discount Congress' plain language intent under the CAA to limit its appropriation of funds for border wall construction to one geographic area of south Texas while also providing specific additional environmental protections, defendants argue that CAA § 231 "is irrelevant" to the court's zone of interests analysis "because plaintiffs are not seeking to enforce the limitations in § 231 and do not allege that the Government plans to construct border barriers in any of the restricted locations named in § 231." Defs.' Suppl. Br., ECF No. 48, at p. 13, n. 2. This argument falters for two reasons: 1) it is counter to Supreme Court and D.C. Circuit Court of Appeals precedent instructing that courts are to look at not only the specific provision alleged to be violated, but to analyze that provision in combination with other provisions that it bears an "integral relationship" to; and 2) even if the court's inquiry was limited to CAA § 230 and § 739, plaintiffs would still meet the zone of interests standard.

As affirmed weeks ago by the D.C. Circuit, when "assessing whether a plaintiff's interests fall within the zone-of-interests protected by a statute, we must consider the 'context and purpose' of the relevant statutory provisions and regulations at issue." *Indian River Cty. v. United States DOT*, No. 19-5012, 2019 U.S. App. LEXIS 37961, at * 25 (D.C. Cir. Dec. 20, 2019) (*quoting Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 226 (2012)). Accordingly, the Circuit "'do[es] note look at the specific provision said to have been violated in complete isolation', but rather in combination with other provisions to

6

which it bears an 'integral relationship.'" *Id.* (*quoting Nat'l Petrochemical & Refiners Ass'n v. EPA*, 287 F.3d 1130, 1147 (D.C. Cir. 2002)); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 186 (D.C. Cir. 2012) (Kavanaugh, J., dissenting) (same); *see also Clarke*, 479 U.S. at 401 ("we first observe that the Comptroller's argument focuses too narrowly on 12 U.S.C. § 36, and does not adequately place § 36 in the overall context of the National Bank Act"); *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 249 F. Supp. 3d 524, 550 (D.D.C. 2017) (reversed on other grounds, 892 F.3d 332 (2018) ("[T]he District of Columbia Circuit has looked to both the language of the specific statutory provision in question and the broader history of the statute as a whole.").

Here, CAA §§ 231-232 are integrally related to CAA § 230, as these provisions provide additional prohibitions and constraints on the $1.375 billion of appropriated funds for border wall construction within the RGV Sector provided by Congress under CAA § 230. As discussed *infra*, the plain language of these provisions unquestionably demonstrates Congressional intent to protect specific areas of land set aside for their environmental importance, and these environmental interests systematically align with plaintiffs' interests. Moreover, CAA § 739 helps ensure this intent is carried out by prohibiting the use of "funds made available in this or any other appropriations Act" from being "used to increase . . . funding for program, project, or activity as proposed in the President's budget request for a fiscal year . . .".

Defendants' objection that the government has no current "plans to construct border barriers in any of the restricted locations in § 231" is wholly beside the point. Defs.' Suppl. Br., at p. 13, n. 2. The foundational premise for the government's argument that the transfers are legal is built upon the fiction that the CAA only narrowly limits CBP border wall construction with CBP appropriated funds, and that border wall funding through the claimed alternative funding mechanisms (military construction, funds passed through the counterdrug account, and Treasury

Forfeiture Funds) can be obligated in utter disregard of the CAA's carefully crafted limitations. *See*, *e.g.* Defs.' MTD Reply, ECF No. 33, at p. 22-23 ("What the provision does *not* say is that any other border wall construction—particularly that permitted under other statutory authority— is prohibited.") (emphasis in original). Regardless of defendants' alleged plans, the logical ramifications of this argument are undeniable—DoD transferred funds in excess of the specific $1.375 billion appropriation can be used anywhere along the border, not only outside of the RGV Sector, but in the five specific areas within that sector for which Congress specifically prohibited construction under CAA § 231, and without observance of any of the other CAA restrictions (including the operational design provision, CAA § 230(b), or consultation and notice and comment provisions of CAA § 232).

Even if the court's zone of interests analysis was limited to CAA § 230, this provision standing alone evidences sufficient Congressional intent to bring plaintiffs within the statutory zone of interests. By limiting border wall appropriations to the RGV Sector, Congress made an affirmative decision to provide *no* appropriations for border wall construction in other areas of Texas, or *anywhere* within California, Arizona, and New Mexico. These states' borders are predominantly comprised of Federal lands which, as discussed *infra*, have been set aside for the protection of land, wildlife, and other natural resources. It strains credulity to believe, as defendants argue, that Congress ensured the protection of National Wildlife Refuges and other high value lands within the RGV Valley while at the same time allowing CBP or DoD unrestricted license to use DoD funds for border wall construction in protected lands outside that region such as Cabeza Prieta National Wildlife Refuge, Organ Pipe Cactus National Monument, and many other areas. Even without the additional context provided in the integrally related provisions of CAA §§ 231-232, and the further limitations of CAA § 739, the specific Congressional appropriations and limitations made under CAA § 230 (both in terms of dollar

amount and geographic restrictions) evidence an intent to protect environmental resources that brings plaintiffs within the CAA's zone of interests.

      **c.**      **The Resolution of Plaintiffs' CAA Claims Is Intertwined with the Merits of Defendants' Assertion that DoD Transfer Provisions (§ 2808 and § 8005) Provide Alternative Border Wall Funding Mechanisms**

The gravamen of plaintiffs' claims challenging the DoD appropriations transfers to border wall construction is the allegation that all of the transfers—regardless of the claimed underlying statutory justifications—run counter to the specific border wall appropriations decisions Congress made in the enactment of the CAA. The alleged violations of the CAA are the common denominator in all of plaintiffs' unlawful transfer claims, both the primary APA-based claims and the *ultra vires* claims presented in the alternative. Plfs.' FAC, Claims II-V, ¶¶ 155-181. In order to reach the merits of these arguments, the court must resolve defendants' assertions that the provisions of 10 U.S.C. § 2808 and § 8005 of the FY19 Defense Appropriations Act provide alternative funding mechanisms that would essentially provide an exception to the specific manner in which Congress exercised its Article I authority in enacting the CAA. *See Raoof v. Sullivan*, 315 F. Supp. 3d 34, 42 (D.D.C. 2018) (McFadden, J.) ("In answering statutory interpretation questions, 'a court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a harmonious whole.'") (*quoting FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000)).

That the court must consider the merits of these assertions does not alter the fact that the ultimate purpose of this inquiry is to determine whether border wall appropriations limitations within the CAA have been violated, nor does it negate the alignment of plaintiffs' environmental interests with the zone of interests Congress intended to protect under that law. The intertwined nature of plaintiffs' CAA claims and defendants' reliance on § 2808 and § 8005 as an exception to the CAA limitations requires a consideration of the merits, and should thus preclude dismissal

of plaintiffs' claims challenging the DoD transfers at this motion to dismiss stage. *Nat'l Coal Assoc. v. Hodel*, 825 F.2d 523, 527 (D.C. Cir. 1987) ("[P]arties complaining of administrative error obviously need not prevail on all issues of statutory interpretation in order to establish [a cause of action]; were that so, the zone of interests test would not merely implicate but would duplicate the merits."); *id*. at 531, n.14 ("To require plaintiffs to allege market power with any greater degree of specificity would inappropriately convert the zone of interests test into a premature mini-trial of the merits of plaintiffs' main substantive 'antitrust' argument.").

This point is underscored by defendants' supplemental brief, which argues that plaintiffs do not meet the zone of interests standard with respect to the military construction funds transfers by relying primarily on a merits-based argument regarding the "without regard to any other provision of law" language contained in § 2808. Defs.' Suppl. Br., at p. 8-9. As addressed in plaintiffs' first supplemental brief in opposition, and at the December 16, 2019 hearing, an analysis of those merits would in fact demonstrate that defendants have unlawfully transferred military construction funds to border wall projects not carried out with respect to a military installation, thus precluding reliance on that provision, and violating CAA appropriations limitations. Plfs.' First Suppl. MTD Opp'n., ECF No. 44, at p. 7-10.

Similarly, plaintiffs' challenge to defendants' reliance on § 8005 turns on whether the DoD funds transferred pursuant to that authority have been "used for an item that has been denied authorization by Congress." § 8005(b)(2). Plfs.' First Suppl. MTD Opp'n., at p. 47-49. The analysis of this issue is, again, a merits-based question that can only be resolved by examining the interplay between the general transfer provision of the DoD FY19 Appropriations Act and the CAA; specifically, whether the "item" funded by the CAA is the same as the "item" funded through the § 8005 DoD appropriations transfers. As plaintiffs have previously argued, defendants' proposed interpretation would adopt an expansive view of the transfer provision that

10

would essentially render the CAA limitations without effect, while plaintiffs' interpretation would harmonize and preserve both laws by leaving the general broad transfer authority of § 8005 intact, with only its specific unlawful inapplicability to border wall construction confirmed. *Id.*, at p. 49-51.

Defendants further cite to the Supreme Court's stay of the injunction prohibiting border wall construction using funds transferred pursuant to § 8005 as grounds for arguing that plaintiffs fall outside the zone of interests in this case. In that Order, the Court stated that "the plaintiffs have no cause of action to obtain review of the Acting Secretary's compliance with Section 8005." *Trump v. Sierra Club*, -- U.S. --, 140 S. Ct. 1 (2019). The *Sierra Club* Order has no discernable relevance to plaintiffs' challenge here. Plaintiffs in the *Sierra Club* case have based their causes of action entirely upon equitable, *ultra vires* theories, have alleged that the zone of interests test is inapplicable, and have not pled APA-based claims. In contrast, plaintiffs in the case at bar have pursued straightforward, APA challenges based on the statutory language of the CAA, and the government's claimed exceptions to the CAA under § 8005 and § 2808. Like other legislative enactments, appropriations acts are reviewable where Congress "limits the [agency's] authority to disburse funds," as such limitations "afford[] a statutory reference point by which the court is able to review the [agency's] determination." *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 752 (D.C. Cir. 2002). Given the fundamentally different postures of these cases, the Supreme Court's Order has no bearing here.

## II.   To the Extent Constitutional Claims are Subject to the Zone of Interests Test, Plaintiffs Meet That Standard

Recent Supreme Court precedent leaves doubt whether the zone of interests test applies to constitutional claims, or is instead only a matter of ascertaining, "as a matter of statutory interpretation, the scope of [a] private remedy created by Congress." *Lexmark Int'l*, 572 U.S. at

126; *id*. at 127 ("Whether a plaintiff comes within 'the zone of interests' is an issue that requires

us to determine, using traditional tools of statutory interpretation, whether a legislatively

conferred cause of action encompasses a particular plaintiff's claim."). Regardless, plaintiffs

satisfy the test with respect to their Appropriations Clause claim, as an unlawful transfer of DoD

funds pursuant to § 2808 or § 8005 would exceed and fall outside of the specific border wall

appropriations decisions made to benefit environmental interests by Congress in enacting the

CAA.

In asserting that plaintiffs do not fall within the zone of interests for this constitutional

claim, defendants largely reiterate merits-based arguments that the parties have addressed in their

previous briefing. Defendants continue to emphasize the Supreme Court's decision in *Dalton v.*

*Specter*, 511 U.S. 462 (1994) for the proposition that an alleged statutory violation cannot serve

as the basis for an alleged constitutional violation. As previously explained, the government's

argument seeks to recharacterize *Dalton's* holding that statutory-based claims against the

President and agency officials are not by extension automatically also constitutional claims into a

prohibition on the connection between such claims. *See* Plfs.' MTD Opp'n Br., at p. 53-56.

Such a prohibition would have little basis in logic or common sense. As demonstrated by

plaintiffs' claims in this case, some allegations under the Appropriations Clause will naturally

concern the executive branch's failure to implement, or action to disregard, specific statutory

provisions enacted by Congress in the exercise of its Article I power of the purse authorities. The

government's citation to *U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339

(D.C. Cir. 2012) reinforces rather than undermines this point. *Id*. at 1341 ("Decisions of the

Supreme Court and this Court have strictly enforced the constitutional requirement, implemented

by federal statutes, that uses of appropriated funds be authorized by Congress. *See* U.S. CONST.

art. I, § 9, cl. 7; 31 U.S.C. §1301 *et seq*.").

As noted, plaintiffs' claims here challenging the DoD transfers are pled as straightforward APA-based challenges turning on prosaic questions of statutory interpretation. The prosaic nature of the court's task in interpreting these arguments does not preclude the fact that violation of these statutory provisions would also raise consequential separation of powers considerations and violate fundamental constitutional restrictions.

## CONCLUSION

The Supreme Court has repeatedly emphasized that the zone of interests test "is not meant to be especially demanding." *Clarke*, 479 U.S. at 399. Plaintiffs must only "arguably fall within" the interests of the relevant statutory provision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *id*. at 166 (finding that plaintiffs "seeking to prevent application of environmental restrictions rather than to implement" them under the Endangered Species Act nonetheless fall within the Act's zone of interests). The "fundamental, and unexceptionable, idea behind [the] test is a presumption that Congress intends to deny [a cause of action] to 'those plaintiffs whose suits are more likely to frustrate than to further statutory objectives.'" *Hazardous Waste Treatment Council*, 885 F.2d at 922 (*quoting Clarke*, 479 U.S. at 397 n. 12).

As discussed herein, plaintiffs' environmental interests are closely aligned with the relevant statutory CAA provisions. As environmental organizations dedicated to the conservation of environmental resources, the protection of endangered species and other wildlife, and the integrity and health of the nation's public lands, plaintiffs are "reasonable—indeed, predictable—challenger[s]" of defendants' decisions transferring DoD funds to border wall construction, which is primarily occurring within areas of protected Federal lands and endangered species habitat in the borderlands. *Indian River Cty*., 2019 U.S. App. LEXIS 37961, at * 26 (*quoting Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 227). This conclusion is not negated by defendants' arguments that 10 U.S.C. § 2808 and the DoD

FY19 Appropriations Act general transfer provision § 8005 except Defendants from the CAA

limitations, as these questions are intertwined with merits analyses that cannot properly be

resolved at this motion to dismiss stage of the proceedings.

For the foregoing reasons, which are supplemental to plaintiffs' primary brief in

opposition, ECF No. 31, and first supplemental brief in opposition, ECF No. 44, defendants'

motion to dismiss pursuant FED. R. CIV. P. 12(b)(1) and 12(b)(6) should be denied.

DATED:        January 20, 2020                Respectfully Submitted,

                                              */s/ Brian Segee*

                                              Brian Segee (CA Bar No. 200795)(Pro Hac Vice)
                                              CENTER FOR BIOLOGICAL DIVERSITY
                                              660 S. Figueroa St., Suite 1000
                                              Los Angeles, CA 90017
                                              Tel: (805) 750-8852
                                              Email: bsegee@biologicaldiversity.org

                                              */s/ Tanya Sanerib*

                                              Tanya Sanerib (D.C. Bar No. 473506)
                                              CENTER FOR BIOLOGICAL DIVERSITY
                                              2400 NW 80th Street, #146
                                              Seattle, WA 98117
                                              Tel: (206) 379-7363
                                              Email: tsanerib@biologicaldiversity.org

                                              Anchun Jean Su (D.C. Bar No. CA285167)
                                              CENTER FOR BIOLOGICAL DIVERSITY
                                              1411 K Street N.W., Suite 1300
                                              Washington, D.C. 20005
                                              Tel: (202) 849-8399
                                              Email:  jsu@biologicaldiversity.org

                                              Jason C. Rylander (D.C. Bar No. 474995)
                                              Michael P. Senatore (D.C. Bar No. 453116)
                                              DEFENDERS OF WILDLIFE
                                              1130 17th Street, NW
                                              Washington, DC 20036
                                              Tel: (202) 682-9400 x 145
                                              Facsimile: (202) 682-1331
                                              Email: jrylander@defenders.org

14

Email: msenatore@defenders.org

Anthony T. Eliseuson (IL Bar No. 6277427)
ANIMAL LEGAL DEFENSE FUND
150 South Wacker Drive, Suite 2400
Chicago, IL  60606
Tel: (707) 795-2533
Email: aeliseuson@aldf.org