**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; ANIMAL LEGAL DEFENSE FUND,<br><br>                    Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>                    Defendants. | Civil Action No. 19-CV-00408 (TNM) |
| RIO GRANDE INTERNATIONAL STUDY CENTER (RGISC), *et al.*,<br><br>                    Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>                    Defendants. | Civil Action No. 19-CV-00720 (TNM) |

**DEFENDANTS' REPLY IN SUPPORT OF
SUPPLEMENTAL MEMORANDUM ADDRESSING ZONE OF INTERESTS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

    I.    The Zone-of-Interets Requirement Applies to Plaintiffs' Claims.........................................2

    II.   Plaintiffs Fall Outside the Zone of Interests of the Consolidated Appropriations Act.........6

    III.  Plaintiffs Fall Outside the Zone of Interests of § 2808, § 284, § 9705,
         and the Appropriations Clause....................................................................................10

        A.   Section 2808................................................................................................ 10

        B.   Section 284.................................................................................................. 12

        C.   The Treasury Forfeiture Fund and Section 9705 ....................................... 13

        D.   The Appropriations Clause ........................................................................ 13

CONCLUSION................................................................................................................. 14


## TABLE OF AUTHORITIES

**CASES**

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*,
  498 U.S. 517 (1991) .................................................................................................. 8

*Am. Fed'n of Gov't Employees, Local 3295 v. Fed. Labor Relations Auth.*,
  46 F.3d 73 (D.C. Cir. 1995) ..................................................................................... 10

*Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*,
  746 F. App'x 1 (D.C. Cir. 2018) .............................................................................. 14

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) .................................................................................................. 3

*Bennett v. Spear*,
  520 U.S. at 154 ................................................................................................. 2, 6, 7

*Cisneros v. Alpine Ridge Grp.*,
  508 U.S. 10 (1993) .................................................................................................. 10

*Citizens for Responsibility & Ethics in Washington v. Trump*,
  939 F.3d 131 (2d Cir. 2019) ...................................................................................... 3

*Clarke v. Securities Industry Ass'n*,
  479 U.S. 388 (1987) ................................................................................................ 10

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) ............................................................................................. 5, 6

*Dalton v. Specter*,
  511 U.S. 462 (1994) ................................................................................................ 13

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) .................................................................................................. 5

*Fed'n for Am. Immigration Reform, Inc. v. Reno*,
  93 F.3d 897 (D.C. Cir. 1996) ..................................................................................... 8

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) .................................................................................................. 3

*Haitian Refugee Ctr. v. Gracey*,
  809 F.2d 794 (D.C. Cir. 1987) ................................................................................... 5

*Hazardous Waste Treatment Council v. Thomas*,
  885 F.2d 918 (D.C. Cir. 1989) ................................................................................... 7

*Indian River Cty. Fla. v. U.S. Dep't of Transp.*,
  945 F.3d 515 (D.C. Cir. 2019) .................................................................................. 8, 9

** *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .......................................................................................... 2, 3, 5, 6

*Maher Terminals, LLC v. Port Auth. of New York & New Jersey*,
  805 F.3d 98 (3d Cir. 2015) ............................................................................................ 3

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ................................................................................................. 8, 11

*Miccosukee Tribe of Indians of Fla. v. United States*,
  2009 WL 10668917 (S.D. Fla. Sept. 30, 2009) ............................................................ 7

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................................... 4

*Twin Rivers Paper Co. LLC v. SEC*,
  934 F.3d 607 (D.C. Cir. 2019) ..................................................................................... 7

*Rodriguez v. AT&T Mobility Servs. LLC*,
  728 F.3d 975 (9th Cir. 2013) .................................................................................... 4, 5

*Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*,
  87 F.3d 1356 (D.C. Cir. 1996) ..................................................................................... 9

** *Sierra Club v. Trump*,
  140 S. Ct. 1 (2019) ............................................................................................. 1, 4, 14

*Sierra Club v. Trump*,
  379 F. Supp. 3d 883 (N.D. Cal. 2019) ......................................................................... 4

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ....................................................................................... 4

*Thompson v. N. Am. Stainless*,
  562 U.S. 170 (2011) .................................................................................... 3, 4, 12, 13

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ................................................................................................. 4

**STATUTES**

10 U.S.C. § 284 ................................................................................................................ 1, 12

10 U.S.C. § 2801 ..................................................................................................................10

10 U.S.C. § 2808 ............................................................................................................. *passim*

13 U.S.C. § 9705 .................................................................................................................. 1, 13

Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, § 740,
    131 Stat. 388 ........................................................................................................................8

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 740,
    132 Stat. 599 ........................................................................................................................8

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, §§ 230–32, 739,
    133 Stat. 13 .............................................................................................................1, 6, 7, 8, 9

Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, § 8005,
    132 Stat. 2982 ..............................................................................................................1, 4, 8

**UNITED STATES CONSTITUTION**

U.S. Const., art. I, § 9, cl. 7............................................................................................ 1, 4, 13, 14

**INTRODUCTION**

Defendants' supplemental brief explained in detail why the zone-of-interests requirement applies to all of Plaintiffs' claims. In response, Plaintiffs in *Center for Biological Diversity* (CBD) do not dispute that conclusion. Plaintiffs in *Rio Grande International Study Center* (RGISC) nonetheless contend that their implied *ultra vires* and constitutional claims are exempt from the zone-of-interests requirement, but that position is contrary to well-established authority that the zone-of-interests test is a requirement of general application that applies to all causes of action. RGISC Plaintiffs cannot evade the zone-of-interest requirement by artful pleading and labeling their claims as arising under the Court's equitable jurisdiction.

Plaintiffs also have not carried their burden to establish that their environmental, aesthetic, recreational, and organizational-resource interests fall within the interests protected by the statutes they seek to enforce: 10 U.S.C. § 2808; 10 U.S.C. § 284; § 8005 of the DoD Appropriations Act 2019; 31 U.S.C. § 9705; and various provisions of the Consolidated Appropriations Act of 2019 (CAA). Plaintiffs' claims raise purely statutory questions and the zone-of-interest inquiry is properly focused on these statutes, not the Appropriations Clause, as confirmed by the Supreme Court's stay order in *Sierra Club v. Trump*, 140 S. Ct. 1 (2019). Further, a straightforward analysis of the interests protected or regulated by the statutes at issue leads to the conclusion that Plaintiffs' interests fall outside the relevant zone of interests. CBD Plaintiffs do not even attempt to argue that they fall within the zone of interests for § 2808 or § 8005, and the Court should reject their characterization of the CAA, which appropriates funds to DHS for border barrier construction and regulates agency budgets, as an environmental protection act. RGISC Plaintiffs similarly fail the zone-of-interests test and fundamentally misunderstand that not every Article III injury-in-fact is sufficient to provide a cause of action. The misalignment between the interests protected by the

1

statutes at issue and the environmental and organizational interests RGISC Plaintiffs seek to enforce is fatal to their claims.

For these reasons, in addition to those stated in Defendants' prior briefs and at oral argument, Plaintiffs' amended complaints should be dismissed.

## ARGUMENT

### I. The Zone-of-Interests Requirement Applies to Plaintiffs' Claims.

As Defendants demonstrated in their opening brief, the zone-of-interests requirement is a general presumption about Congress's intended limits on the scope of *all* causes of action, not just congressionally authorized causes of action under the APA or other statutes.  *See* Defs.' Supp. Memo Addressing Zone of Interests 2–6 (Defs.' Br.); *Ctr. for Biological Diversity v. Trump*, 1:19-cv-408-TMN, ECF No. 48; *Rio Grande Int'l Study Ctr. v. Trump*, 1:19-cv-720-TNM, ECF No. 67. The Supreme Court has made clear that the zone-of-interests test "is a 'requirement of general application'" that "*always* applies and is never negated[.]"  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 163–64 (1997)).  Neither set of Plaintiffs contests that the zone-of-interests test applies to their APA claims (which the RGISC Plaintiffs assert in the alternative).  *See* Ctr. for Biological Diversity Supp. Memo. Addressing Zone of Interests 1 (CBD Br.), *Ctr. for Biological Diversity v. Trump*, 1:19-cv-408-TMN, ECF No. 49; Rio Grande Int'l Study Ctr. Opp'n to Defs.' Supp. Memo. Addressing Zone of Interests 3 n.2, 12 (RGISC Br.),  *Rio Grande Int'l Study Ctr. v. Trump*, 1:19-cv-720-TNM, ECF No. 69.  Nor can they deny that both the Supreme Court and the D.C. Circuit have applied the zone-of-interests requirement in actions seeking to enforce constitutional provisions.[1]  *See*

---

[1] Contrary to RGISC Plaintiffs' argument, *Lexmark* did not hold that non-statutory or equitable constitutional challenges are exempt from the zone-of-interest requirement.  *See* Defs.' Br. 3. Since *Lexmark*, courts have continued to apply the zone of interests test to constitutional claims.

2

Defs.' Br. 2–3 (citing cases).

In contravention of this well-established authority, RGISC Plaintiffs primarily assert that they are not required to satisfy the zone-of-interests requirement because they purport to seek equitable relief against *ultra vires* governmental conduct, rather than assert statutory causes of action. RGISC Br. 3–9. But as Defendants have shown, Plaintiffs' attempt to evade the zone-of-interests requirement is inconsistent with the historical underpinnings of equity jurisdiction, and adoption of their position would lead to absurd results. Defs.' Br. 3–5. Indeed, Plaintiffs ignore that the Supreme Court has recognized that the "judge-made remedy" of equitable suits to enjoin executive *ultra vires* conduct is "subject to express and implied statutory limitations," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015), and that the zone-of-interests requirement is one such implied limitation, *see Lexmark*, 572 U.S. at 130 n.5 (recognizing common-law "roots" of zone-of-interests test).[2] If this boundary did not apply to implied equitable claims not specifically authorized by Congress, but *did* limit causes of action Congress has expressly approved, it would result in the "absurd consequence[]" of permitting plaintiffs who barely met the minimum constitutional requirements to bring an action Congress has not authorized, where the same plaintiffs could not pursue a congressionally authorized cause of action. *Cf. Thompson v. N. Am. Stainless*, 562 U.S. 170, 176–78 (2011) (zone-of-interests

---

*See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. Trump*, 939 F.3d 131, 153 (2d Cir. 2019); *Maher Terminals, LLC v. Port Auth. of New York & New Jersey*, 805 F.3d 98, 105 (3d Cir. 2015).

[2] Further supporting the conclusion that implied limits on statutory causes of action apply equally to equitable causes of action is the fact that Congress vested equitable power in the courts via statute. *See* Defs.' Br. 4–5. The Court need not find that equitable causes of action "are, in fact, statutory causes of action," as Plaintiffs suggest, RGISC Br. 6, to reach the logical conclusion that the preexisting zone-of-interests requirement applies to suits seeking equitable relief, *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) (explaining that implied causes of action are limited by "traditional equitable practice").

requirement properly "exclude[es] plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the [relevant] statutory provisions"). Such a result would also be contrary to "separation-of-powers principles." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *see also* Defs.' Br. 5.

The authorities RGISC Plaintiffs cite do not alter this conclusion. The majority of their arguments are lifted directly from district court and Ninth Circuit opinions in the related *Sierra Club* litigation. *See* RGISC Br. 3–4, 5, 6, 9 (quoting *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019); *Sierra Club v. Trump*, 379 F. Supp. 3d 883 (N.D. Cal. 2019)). But the Supreme Court issued a subsequent order in that case staying the district court's injunction and, in doing so, overturning the Ninth Circuit motions panel's denial of a stay. *See Sierra Club*, 140 S. Ct. at 1; Defs.' Br. 10. The Supreme Court's decision to stay an injunction is guided by the same factors that inform the issuance of a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). Thus, when the Supreme Court stayed the district court's injunction, it necessarily found that the Government was likely to succeed on the merits of the claim that Plaintiffs "have no cause of action to obtain review of the Acting Secretary's compliance with Section 8005." *Sierra Club*, 140 S. Ct. at 1. That conclusion directly contradicts the Ninth Circuit motions panel's conclusion that the Sierra Club plaintiffs stated a cause of action under the Appropriations Clause and fell within the Clause's zone of interests. *See Sierra Club*, 929 F.3d at 700–04. *But see id.* at 707–20 (N.R. Smith, J., dissenting) (concluding that plaintiffs raised only statutory claims and fell outside the zone of interests of § 8005). The motions panel's decision—and logically, the preceding district court decision—are thus "clearly irreconcilable with the reasoning" of the Supreme Court's order and do not provide this Court with even persuasive authority.[3] *Rodriguez v. AT&T Mobility*

---

[3] Plaintiffs hardly acknowledge the Supreme Court's order, simply asserting that it "did not

4

*Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013).

RGISC Plaintiffs also rely heavily upon dicta in a footnote in *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 811 n.14 (D.C. Cir. 1987). *See* RGISC Br. 4–5, 7. They do not, however, contest that no court within this Circuit has ever held that *Haitian Refugee* stands for the proposition that a plaintiff seeking non-statutory equitable relief need not satisfy the zone-of-interests test. *See* Defs.' Br. 6. Indeed, Plaintiffs misinterpret *Haitian Refugee*, which explains that a plaintiff asserting *ultra vires* claims need not fall within the zone-of-interests of the *powers* invoked by the executive, but makes clear that he must fall within the zone of interests of the *limitations* of that statutory or constitutional provision. 809 F.2d at 811 n.14. That court explained such a plaintiff could satisfy the zone-of-interests test if "a particular constitutional or statutory provision was intended to protect persons like the litigant by limiting the authority conferred." *Id.* Thus, *Haitian Refugee*'s observations regarding the applicability of the zone-of-interests test to *ultra vires* actions are best understood as an explanation as to how to frame the zone-of-interests inquiry in such cases. Because RGISC Plaintiffs have not asserted that their interests fall within this category, *Haitian Refugee* is inapplicable.

RGISC Plaintiffs additionally rely upon cases such as *Dames & Moore v. Regan*, 453 U.S. 654 (1981), in which the zone of interests was not raised, and the court accordingly did not engage in a zone-of-interests analysis. *See* RGISC Br. 5, 9. Such decisions are irrelevant, as "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc.*

---

reference the zone of interests." RGISC Br. 8 n.5. This shallow analysis ignores the fact that the parties' briefs focused on the zone of interests, *see, e.g.*, Reply in Support of Application for a Stay Pending Appeal, at *3–10, *Trump v. Sierra Club*, No. 19A60, 2019 WL 3451617 (July 22, 2019), and that the Supreme Court has characterized the zone-of-interests test as a limitation on a cause of action, *see Lexmark*, 572 U.S. at 129.

5

*v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (citation omitted).  This is particularly true given that the Supreme Court has recognized the zone-of-interests limitation is not jurisdictional, meaning courts are not obligated to address the issue if the parties fail to raise it.  *See Lexmark*, 572 U.S. at 128 n.4.

## II.     Plaintiffs Fall Outside the Zone of Interests of the Consolidated Appropriations Act.

Defendants have explained that, as an appropriations act, the CAA serves as a congressional directive to Executive agencies as to the amount of and the manner in which they may spend appropriated funds.  Defs.' Br. 12.  Section 230 of the Department of Homeland Security (DHS) Appropriations Act, 2019 (a component of the CAA), which Plaintiffs claim the Government has violated, does nothing more than specify the amount of funds DHS may expend on border barrier construction from its 2019 budget, where barriers may be constructed using those funds, and what form the barriers may take.  *See* Pub. L. No. 116-6, § 230, 133 Stat. 28.  Section 739, which is part of the Financial Services and General Appropriations Act, 2019 (a different component of the CAA), addresses agencies' ability to augment their appropriations absent a relevant reprogramming or transfer provision.  *See* Pub. L. No. 116-6, div. D, § 739.  On their faces, these provisions govern the relationship between Congress and the Executive Branch regarding federal spending.  Plaintiffs' asserted environmental, aesthetic, recreational, and resource interests have nothing to do with these concerns.

The Court should reject CBD Plaintiffs' attempt to recast § 230 as environmental legislation that protects their environmental interests.  *See* CBD Br. 2–6.  CBD Plaintiffs' entire argument rests upon the limitations included in *different* sections of the Act—§§ 231 and 232.  *See* CBD Br. 3–4.  The Supreme Court has made clear that the zone-of-interests inquiry must focus on "the particular provision of law upon which the plaintiff relies"—here, § 230.  *Bennett*, 520 U.S.

at 175–76. Plaintiffs do not allege that the Government has violated §§ 231 or 232; they are therefore not relevant to the zone-of-interests inquiry.

Even if the Court were to consider these additional sections in its zone-of-interests analysis, it is plain that these provisions are not intended to benefit environmental organizations. Indeed, the DHS Act as a whole is aimed solely at providing the agency with spending authority and defining limitations upon that authority, not upon benefiting nongovernmental actors. *See Miccosukee Tribe of Indians of Fla. v. United States*, 2009 WL 10668917, at \*4 (S.D. Fla. Sept. 30, 2009) (holding that an appropriations act protected, at most, a federal agency's interest in appropriated funds, not the interests asserted by plaintiffs). This remains the case even if third parties also, as a factual matter, derive some benefit from the legislation. *See Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 925 (D.C. Cir. 1989) (stating that a defense contractor would fall outside zone of interests of an appropriations act because "the annual defense appropriation is not passed *in order to* benefit defense contractors, benefit them though it may") (emphasis in original). CBD Plaintiffs are thus incorrect that environmental organizations are either "intended beneficiaries" or "parties whose interests coincide systematically, not fortuitously, with those of intended beneficiaries." CBD Br. 4 (quoting *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 616 (D.C. Cir. 2019)). Instead, they are more akin to the paper manufacturer plaintiff in *Twin Rivers Paper*, who the D.C. Circuit found fell outside the zone of interests of securities regulations, even though regulations requiring paper filings served to benefit it. *See* 934 F.3d at 617–18.

Additionally, there is no basis to conclude that Plaintiffs fall within the zone of interests of § 739. As explained above, § 739 is part of an entirely different component of the CAA, and there is no indication that Congress had any provision of the DHS Act in mind—let alone § 230

7

specifically—when enacting § 739. It therefore does not have an "integral relationship" to § 230. *See Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 530 (1991) (finding that two separate acts did not have an "integral relationship," despite the fact that "both were included in the general codification of postal statutes"); *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 904 (D.C. Cir. 1996) (holding that distinct provisions of the INA did not have the "integral relationship" required to be considered together for the purpose of zone-of-interests analysis). To the contrary, § 739 is a common provision that appears in consolidated appropriations acts year after year, and which, until recently, no private party has even attempted to enforce. *See, e.g.*, Consolidated Appropriations Act, 2018, Pub. L. 115-141, § 740, 132 Stat. 599 (2018); Consolidated Appropriations Act, 2017, Pub. L. 115-31, § 740, 131 Stat. 388 (2017). It has no purpose other than to regulate the relationship between Congress and the Executive. Plaintiffs' alleged environmental, resource, land-use, and various other interests thus cannot be said to be even "arguably" within the zone of interests of § 739. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012).

For these same reasons, there is no merit to CBD Plaintiffs' argument that the provisions of the CAA are intertwined with § 2808 and § 8005 such that Plaintiffs do not need to satisfy the zone of interests for § 2808 and § 8005. *See* CBD Br. at 9–10. Nothing in § 2808 or § 8005 illuminates or clarifies the interests Congress intended to protect in CAA. *See Indian River Cty. Fla. v. U.S. Dep't of Transp.*, 945 F.3d 515, 528–29 (D.C. Cir. 2019). Nor does the passage of the CAA give the Court license to exempt Plaintiffs from satisfying the zone of interests test for § 2808 and § 8005. Notably, CBD Plaintiffs make no effort to argue that they fall within the zone of interests of § 2808 and § 8005. "Courts must police the extent to which they look beyond the provision invoked to ensure that casting a wider net does not deprive the zone-of-interests test of

8

virtually all meaning." *Indian River Cty.*, 945 F.3d at 528–29 (quoting the district court decision and stating it is a "perfectly reasonable construction of the zone-of-interests test").[4]

The D.C. Circuit's decision in *Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*, 87 F.3d 1356 (D.C. Cir. 1996) does not counsel in favor of a different conclusion. *See* RGISC Br. 14–15. There, the court considered whether a travel agency competing for government contracts could challenge DoD's policy of requiring some funds to be deposited in "morale funds" outside of the U.S. Treasury as a violation of the Miscellaneous Receipts statute, which requires all funds collected by the Government to be deposited in the Treasury. *Id.* at 1360-61. Determining that the "funds at issue" were either "covered by the [Miscellaneous Receipts] statute" or "not," the Court found the travel agency's interest "congruent" with that of Treasury because the travel agency was essentially arguing that competitors were benefiting "at Treasury's expense." *Id.* RGISC Plaintiffs attempt to analogize § 739 of the CAA to the Miscellaneous Receipts statute in *Scheduled Airlines Traffic Offices*, but their analysis fails to consider the interests protected by these statutes in conjunction with the interests they assert. Here, unlike in *Scheduled Airlines Traffic Offices*, RGISC Plaintiffs do not purport to have a financial injury as a result of alleged violations of an appropriations statute. RGISC Plaintiffs' alleged environmental and recreational injuries are not relevant to funding limitations, and are thus not "congruent" with those of the regulated parties, Congress and the Executive.[5] Accordingly, their interests are outside the zone of interests protected by the CAA, even assuming that § 739 is properly at issue in this case.

---

[4] Contrary to CBD Plaintiffs' argument, CBD Br. at 11–12, zone of interests is a pure question of law that should be decided at the motion to dismiss stage. Whether Plaintiff's interests fall within the zone of interests of the relevant statutory provisions is entirely separate from the merits analysis of the statutes that the Court would undertake, if at all, at summary judgment.

[5] *Indian River Cty. Fla. v. U.S. Dep't of Transp.*, 945 F.3d 515 (D.C. Cir. 2019) is inapposite for similar reasons. There, the Court emphasized the statute's allowance of considering environmental

9

### III.  Plaintiffs Fall Outside the Zone of Interests of § 2808, § 284, § 9705, and the Appropriations Clause.

#### A.  Section 2808

RGISC Plaintiffs claim to be within the zone of interests of § 2808 because of alleged environmental and recreational impacts from the use of funds pursuant to the statute.  *See* RGSIC Br. 19.  But their interests in the environment and outdoor recreation are "inconsistent with the purposes implicit in [§ 2808]," which authorizes emergency military construction "without regard to any other provision of law," including environmental laws that would otherwise limit DoD from exercising its military construction authority effectively and expeditiously.  *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399 (1987).  Plaintiffs thus fall outside the zone of interests Congress intended to protect in § 2808.

The statute's definition of military construction, 10 U.S.C. § 2801(a), with its focus on the broad needs of the military, suggests that private parties' aesthetic, recreational, or environmental interests in military installations are not sufficient to permit plaintiffs to seek to enforce the statute. Underscoring the broad discretion vested in the Secretary, § 2808 provides that the military construction it authorizes can be undertaken "without regard to any other provision of law"— including federal and state laws vindicating the kinds of environmental interests that plaintiffs have invoked.  *Id.*; *see Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (approving lower courts' statements that a notwithstanding clause "supersede[s] all other laws" and that a "clearer statement is difficult to imagine"); *Am. Fed'n of Gov't Employees, Local 3295 v. Fed. Labor Relations Auth.*, 46 F.3d 73, 76 (D.C. Cir. 1995) (describing a similar "without regard to" clause as providing "a sweeping dispensation from all legal constraints").  And Congress deferred to the Secretary's

---

and local government concerns in determining that the plaintiff was within the zone of interests. But here, congressional funding appropriations are wholly divorced from these concerns.

judgment to identify the "military construction projects . . . that are necessary to support such use of the armed forces." 10 U.S.C. § 2808(a).  Based on that judgment, § 2808 permits the use of military construction funds appropriated for other projects instead to be used for projects that are "not otherwise authorized by law." *Id.*

Ignoring the plain language and structure of the statute, RGISC Plaintiffs rest their argument on an analogy to *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012).  But *Patchak* is inapposite here.  *Patchak* concerned a statute whose "context and purpose" served "to foster Indian tribes' economic development," and authorized the Secretary of the Interior to "take[] title to properties" on behalf of Indian tribes "with at least one eye directed toward how tribes will use those lands." *Id.* at 226.  The court held that, because of that statutory purpose, the Secretary "typically acquire[s] land with its eventual use in mind [and] after assessing potential conflicts that use might create," and therefore "neighbors to the use . . . are reasonable—indeed, predictable—challengers of the Secretary's decisions." *Id.* at 227.

Here, by contrast, § 2808 gives the Secretary broad authority to authorize military construction projects when the Secretary determines that the project will meet the needs of the armed forces, without regard to the effect on any third party's aesthetic, recreational, or environmental interests.  Indeed, § 2808's "without regard to" clause expressly authorizes DoD to bypass all other legal requirements—including federal and state environmental statutes—that might otherwise limit DoD's exercise of its military construction authority.  It therefore follows that plaintiffs alleging aesthetic, recreational, or environmental harms from DoD's Section 2808 projects are not "reasonable" or "predictable" challengers under § 2808.

The structure of § 2808 further underscores this point.  No § 2808 project may proceed unless the Secretary of Defense "notif[ies] . . . the appropriate committees of Congress of the

decision and of the estimated cost of the construction project[], including the cost of any real estate action pertaining to th[at] construction project[]." 10 U.S.C. § 2808(b). This notice provision allows Congress to deploy its legislative authority to address the use of military construction funds for § 2808 projects if it disagrees with the Secretary's judgment. Congress could, for example, enact new legislation prohibiting DoD from spending funds in a particular manner; reduce future appropriations to DoD; or restrict or even repeal DoD's § 2808 authority. But nothing in the notice provision—and indeed nothing in the entirety of Section 2808—evinces any desire by Congress to permit private plaintiffs who allege environmental and aesthetic injuries to seek judicial enforcement of § 2808's terms.

### B.     Section 284

Section 284's limitations on when DoD can provide counter-drug support are designed to regulate the relationship between Congress, DoD, and state or federal agencies seeking assistance, based on budgetary control and agency focus. RGISC Plaintiffs fail to explain how they fall within § 284's zone of interests except to say that the "negative impacts" of construction authorize their suit. RGSIC Br. 20. But this argument improperly conflates their alleged injuries for purposes of standing with the zone-of-interests analysis. The Supreme Court has made clear that the Article III injury analysis is distinct from the zone-of-interests analysis. *See Thompson*, 562 U.S. at 176-77 ("If any person injured in the Article III sense by a [statute] could sue, absurd consequences would follow."). Thus, the mere fact that Plaintiffs allege injuries resulting from § 284 construction is not enough. *See id*. (identifying hypothetical persons with Article III injuries from statutory violations who plainly would be improper plaintiffs to enforce the statute). The question is whether Plaintiffs' environmental and recreational interests fall into the category of interests protected by § 284. Because they do not, Plaintiffs' claim should be dismissed.

### C.     The Treasury Forfeiture Fund and Section 9705

Section 9705 established the Treasury Forfeiture Fund (TFF) for the purpose of distributing forfeited funds for specific law enforcement purposes. *See* 31 U.S.C. § 9705. And following the fulfillment of certain statutory obligations, Congress clearly communicated its intent for Treasury to have broad discretion regarding expenditure of surplus funds "in connection with the law enforcement activities of any Federal agency." *Id.* at § 9705(g)(4)(B). There is no hint in the TFF's authorizing legislation that Congress intended private parties to have any right to interfere in the Secretary's discretionary decisions. As with their § 284 argument, RGISC Plaintiffs' argument improperly conflates standing with the zone of interests. Plaintiffs argue simply that they fall within the zone of interests of § 9705 "because of the negative impacts" that the use of TFF funds will have "on or adjacent to the Jackson Ranch Church and Cemetery and the Eli Jackson Cemetery." RGISC Br. at 21. But even assuming these negative environmental impacts are sufficient to establish an injury-in-fact, there is no basis to conclude that they are type of interests that are protected or regulated by the TFF's statutory authorization to expend surplus funds on law enforcement activities of other federal agencies. *See Thompson*, 562 U.S. at 176–77. Accordingly, Plaintiffs lie outside § 9705's zone of interests.

### D.     Appropriations Clause

The Appropriations Clause, U.S. Const., art. I, § 9, cl. 7, is irrelevant to the zone-of-interests inquiry because these cases raise purely statutory issues. *See* Defs.' Br. 14–16. Plaintiffs' claims turn on whether Defendants violated the underlying statutory provisions at issue, not separate Appropriations Clause principles. Plaintiffs' claims thus raise "no constitutional question whatever" and the "only issues" involve "statutory interpretation." *Dalton v. Specter*, 511 U.S. 462, 473–74 & n.6 (1994) (quotation marks omitted). Indeed, CBD acknowledges that their

13

"allegations under the Appropriations Clause" concerns alleged violations of "specific statutory provisions" and fail to identify any separate constitutional principles violated here. CBD Br. 12. And to the extent that the Ninth Circuit's analysis in *Sierra Club* concludes otherwise, the reasoning of that decision as it pertains to zone of interests (which is not binding on this Court) was rejected by the Supreme Court in granting a stay of the injunction. *See Sierra Club*, 140 S. Ct. at 1; *see also supra* at 4–5.

But even if Plaintiffs did have an independent Appropriations Clause claim, the zone of interests for that claim would be based on the specific statutory appropriation invoked, not the Appropriations Clause on its own.[6] This position is consistent with courts' analyses in APA cases, where the relevant zone of interests is established, not by the APA, by the substantive statute that was allegedly violated. *See Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*, 746 F. App'x 1, 7 (D.C. Cir. 2018) (citing cases). And for the reasons stated *supra*, Plaintiffs are outside the statutory zones of interests of the statutes at issue here. Thus, they are barred from proceeding on their constitutional claims under the Appropriations Clause and the separation of powers.

## **CONCLUSION**

For the reasons explained above, as well as those set forth in Defendants' previous briefs and at the hearing on December 16, 2019, Plaintiffs' amended complaints should be dismissed.

---

[6] RGISC Plaintiffs' separation of powers claims are equally amorphous, and would also require the Court to look to the underlying statutory action allegedly violating separation of powers principles.

14

| | |
|---|---|
| Dated: January 27, 2020 | Respectfully submitted, |

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
KATHRYN C. DAVIS
MICHAEL J. GIRARDI
RACHAEL L. WESTMORELAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-5084
Fax: (202) 616-8470
Email: Andrew.Warden@usdoj.gov

*Counsel for Defendants*