**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; ANIMAL LEGAL DEFENSE FUND, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*, <br><br> Defendants. | Civil Action No. 19-CV-00408 (TNM) |
| RIO GRANDE INTERNATIONAL STUDY CENTER (RGISC), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*, <br><br> Defendants. | Civil Action No. 19-CV-00720 (TNM) |
| UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, *et al.*, <br><br> Defendants. | Civil Action No. 19-CV-00969 (TNM) |

**NOTICE REGARDING AUTHORIZATION OF ADDITIONAL BORDER BARRIER PROJECTS PURSUANT TO 10 U.S.C. § 284**

Defendants hereby notify the Court and parties in the above-captioned cases that the Department of Defense (DoD) has authorized the funding and construction of additional border barrier projects pursuant to 10 U.S.C. § 284.

On January 15, 2020, the Department of Homeland Security (DHS) submitted a request to DoD for assistance in constructing 13 border barrier projects located in drug-smuggling corridors along the southern border.  *See* Seventh Declaration of Kenneth Rapuano, Assistant Secretary of Defense for Homeland Defense and Global Security ¶ 3 (Exhibit 1).  The request sought construction of new fencing as well as the replacement of existing vehicle barriers and dilapidated fencing, the construction of new and improvement of existing patrol roads, and the installation of lighting, all of which would be on Federal land.  *Id.*  The 13 requested projects consist of 38 discrete construction segments.  *See id.*, Ex. A.

On February 13, 2020, the Secretary of Defense approved construction and funding for 31 segments within the 13 project areas.  *See* Seventh Rapuano Decl. ¶ 4 & Ex. B.  The approved projects are summarized below:

1. **San Diego A:**  3 miles of new primary pedestrian fencing and 14 miles of replacement pedestrian fencing in San Diego County, CA (Segments 1–3);

2. **El Centro A:**  10 miles of new pedestrian fencing in Imperial County, CA (Segment 1);

3. **Yuma A:**  7 miles of vehicle barriers replaced with new pedestrian fencing and 9 miles of replacement secondary pedestrian fencing in Yuma County, AZ (Segments 1–2);

4. **Yuma B:**  0.5 miles of replacement primary pedestrian fencing and 0.5 miles of new secondary pedestrian fencing located in Imperial County, CA on the Quechan Reservation (Segments 1–2);

5. **Tucson A:**  24 miles of replacement primary pedestrian fencing, 1 mile of replacement secondary pedestrian fencing, and 4.5 miles of new primary pedestrian fencing in Cochise County, AZ (Segments 1–5);

6. **Tucson B:**  2 miles of replacement primary pedestrian fencing and 27.5 miles of new pedestrian fencing in Santa Cruz and Cochise Counties, AZ (Segments 1, 3–6);

7. **Tucson C:**  7 miles of replacement primary pedestrian fencing and 9 miles of new primary pedestrian fencing in Santa Cruz and Pima Counties, AZ (Segments 1, 3–4);

8. **El Paso A:** 20 miles of replacement primary pedestrian fencing in El Paso County, TX (Segment 1);

9. **El Paso B:** 2 miles of new pedestrian fencing in Luna County, NM (Segment 6);

10. **El Paso C:** 10 miles of replacement pedestrian fencing in Dõna Ana and Luna Counties, NM (Segments 1–2);

11. **El Paso D:** 3 miles of replacement secondary pedestrian fencing and 18 miles of replacement primary pedestrian fencing in El Paso County, TX, and 0.5 miles of new primary pedestrian fencing in Dõna Ana County, NM (Segments 1–4);

12. **Del Rio A:** 2 miles of replacement pedestrian fencing in Maverick County, TX (Segment 1);

13. **Del Rio B:** 2 miles of replacement pedestrian fencing in Val Verde County, TX (Segment 1).

To fund these projects, the Secretary of Defense authorized the transfer of $3.831 billion to the counter narcotics support line of the Drug Interdiction and Counter-Drug Activities, Defense, account. *See* Seventh Rapuano Decl. ¶ 5. The Secretary directed the transfer of funds pursuant to DoD's general transfer authority under § 8005 of the DoD Appropriations Act for Fiscal Year 2020, *see* Pub. L. No. 116-93, 133 Stat 2317, Div. A, Title VIII, and § 1001 of the National Defense Authorization Act for Fiscal Year 2020 (NDAA), *see* Pub. L. No. 116-92, 133 Stat. 1198, Title X, and DoD's special transfer authority under § 9002 of the FY20 DoD Appropriations Act and § 1520A of the FY20 NDAA. *Id.* The source accounts for the transferred funds are described in Exhibit C to the Seventh Rapuano Declaration. *Id.*

The U.S. Army Corps of Engineers anticipates that it will award contracts and fully obligate the necessary funds for the new § 284 projects no earlier than March 15, 2020. *See* Second Declaration of Jill Stiglich, Director of Contracting for the U.S. Army Corps of Engineers ¶ 4 (Exhibit 2). Several of the new § 284 projects are in close proximity to the prior § 284 projects approved in fiscal 2019, and the U.S. Army Corps of Engineers intends modify the existing § 284 contracts to add the new project work. *Id.* ¶ 5.a. Because the contractors working on the prior

§ 284 projects are already mobilized in close proximity to the new project areas, ground-disturbing activities and substantial construction may begin as soon as the contract modifications are executed, that is, no earlier than March 15, 2020. *Id.* The U.S. Army Corps of Engineers is working to determine which, if any, of the additional § 284 projects to undertake using this contract modification process. *Id.*

For the remaining § 284 projects that are not executed through the contract modification process described above, the U.S. Army Corps of Engineers intends to undertake a competitive contract award process and award task orders to qualified contractors holding a multiple award task order contract. *See* Stiglich Decl. ¶ 5.b. The U.S. Army Corps of Engineers anticipates that it will award the first of these task orders and fully obligate the necessary funds for these additional § 284 projects no earlier than April 7, 2020. *Id.* For these projects, the U.S. Army Corps of Engineers will be prepared to begin ground-disturbing activities as early as five days after task order award and substantial construction as early as ten days after task order award. *Id.*

Dated:  February 13, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel, Federal Programs Branch

3

KATHRYN C. DAVIS (D.C. Bar No. 985055)
MICHAEL J. GERARDI
LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
RACHAEL L. WESTMORELAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-5084
Fax: (202) 616-8470
Email: Andrew.Warden@usdoj.gov

*Counsel for Defendants*

# EXHIBIT 1



**ASSISTANT SECRETARY OF DEFENSE**
**2600 DEFENSE PENTAGON**
**WASHINGTON, D.C. 20301-2600**

HOMELAND DEFENSE &
GLOBAL SECURITY

## SEVENTH DECLARATION OF KENNETH P. RAPUANO

I, KENNETH P. RAPUANO, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Assistant Secretary of Defense for Homeland Defense and Global Security
(ASD(HD&GS)). Among other duties, which are generally reflected in Department of Defense
(DoD) Directive 5111.13, I am responsible for developing, coordinating, and overseeing
implementation of DoD policy for plans and activities related to defense support of civil
authorities. On April 5, 2018, the Secretary of Defense designated the ASD(HD&GS) to manage
the then-newly established DoD Border Security Support Cell. The DoD Border Security
Support Cell is the focal point and integrator for all requests for assistance, taskings, and
information related to DoD support pursuant to the President's April 4, 2018, memo, "Securing
the Southern Border of the United States."

2. This declaration is based on my personal knowledge and information made available to me in
the course of my official duties.

3. On January 15, 2020, the Department of Homeland Security (DHS) submitted a request to the
Department of Defense (dated January 14, 2020) for assistance in blocking up to 13 specific
drug-smuggling corridors along certain portions of the southern border of the United States
pursuant to 10 U.S.C. § 284. Specifically, the request sought construction of new pedestrian
fencing, replacement of existing vehicle barricades or dilapidated pedestrian fencing with new
pedestrian fencing, the construction of new patrol roads and the improvement of existing patrol
roads, and the installation of lighting, all of which would be on Federal land. *See* Exhibit A.

4. On February 13, 2020, the Secretary of Defense approved 31 of the 38 projects and segments
to block drug-smuggling corridors requested by DHS in its January 14, 2020, request. *See*
Exhibit B.

5. Also on February 13, 2020, the Secretary of Defense decided to use DoD's general transfer
authority under Section 8005 of the Department of Defense Appropriations Act, 2020, and
Section 1001 of the National Defense Authorization Act (NDAA) for Fiscal Year 2020, as well
as the special transfer authority under Section 9002 of the Department of Defense Appropriations
Act, 2020, and Section 1520A of the NDAA for Fiscal Year 2020, to transfer funds between
DoD appropriations to fund the approved projects. Specifically, he determined that the projects
he approved for support to DHS will be funded through a transfer of $3.831 billion to the
counter-narcotics support line of the Drug Interdiction and Counter-Drug Activities, Defense,
account. Source accounts and explanations as to why the funds were available are described in
more detail in Exhibit C.

6. On February 13, 2020, the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer initiated the reprogramming to transfer funds pursuant to the above authorities. Congress was promptly notified of this transfer on February 13, 2020.

7. On February 13, 2020, the designated $3.831 billion was transferred from the Drug Interdiction and Counter-Drug Activities, Defense, account to the Operation and Maintenance, Army, account for use by the U.S. Army Corps of Engineers to undertake fence and road construction and lighting installation for the approved projects.

8. DoD is not using any DoD counter-narcotics funding for the drug-demand-reduction program, the National Guard counter-drug program, or the National Guard counter-drug schools program to provide support to DHS under 10 U.S.C. § 284(b)(7).

***

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   February 13, 2020

KENNETH P. RAPUANO

# EXHIBIT A



*Executive Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

January 14, 2020

MEMORANDUM FOR:    CAPT Oliver Lewis, USN
                                Executive Secretary
                                Department of Defense (DoD)

FROM:                        Juliana Blackwell
                                  Acting Executive Secretary
                                Department of Homeland Security (DHS)

SUBJECT:                Request for Assistance Pursuant to 10 U.S.C. § 284

## I. Overview

As the government department tasked with border security, the Department of Homeland Security (DHS), through U.S. Customs and Border Protection (CBP), is requesting that the Department of Defense (DoD) assist DHS in its efforts to secure the southern border.  The Acting Secretary has directed me to transmit this request for assistance to your attention.

In Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (IIRIRA), 8 U.S.C. § 1103 note, Congress has directed DHS to construct border infrastructure in areas of high illegal entry to deter illegal crossing of both drugs and people into the United States.  Pursuant to Section 102, DHS has identified the areas set forth in Section II below as areas of high illegal entry where CBP must take action (the Project Areas).

Within the Project Areas, DHS is experiencing large numbers of individuals and narcotics being smuggled into the country illegally.  The Project Areas are also used by individuals, groups, and transnational criminal organizations (TCOs) as drug smuggling corridors. Mexican Cartels remain dominant in these areas, influencing and controlling narcotics and human smuggling operations, within their respective strongholds.

DHS must use its authority under Section 102 of IIRIRA to install additional physical barriers and roads in the vicinity of the United States border in order to deter and prevent illegal crossings within the Project Areas.  The construction of border infrastructure within the Project Areas will support DHS's ability to impede and deny illegal entry and drug smuggling activities within the Project Areas.

The Project Areas identified below are adjacent to some of the most densely populated metropolitan areas of Mexico and are also home to some of the strongest and most violent drug cartels in the world.  Deterring and preventing illegal cross-border activity will help stem the

OSD000472-20/CMD000540-20

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 2

flow of illegal narcotics and entries in these areas.  Similarly, the improved ability to impede, deny, and be mobile within the Project Areas creates a safer operational environment for law enforcement.

To support DHS's action under Section 102 of IIRIRA, DHS is requesting that DoD, pursuant to its authority under 10 U.S.C. § 284(b)(7), assist with the construction of fences and roads and the installation of lighting within the Project Areas to block drug-smuggling corridors across the international boundary between the United States and Mexico.

## II. Capabilities Requested

Within the Project Areas, DHS lacks pedestrian fencing to slow or stop pedestrian and vehicle traffic from illegally entering the United States or there is existing vehicle fence and dilapidated pedestrian fencing that no longer meet CBP's operational needs.  Vehicle fencing is intended to stop vehicles from illegally entering the United States, but can be climbed over or under by individuals. Pedestrian fencing is intended to prevent and deter individuals and vehicles from illegally crossing into the United States.

DHS requests that DoD assist in the execution of projects, within the Project Areas set forth below, to: (1) construct new pedestrian fencing or replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing; (2) construct roads; and (3) install lighting.

The new pedestrian fencing includes Linear Ground Detection System (LGDS), which consists of two fiber optic cables, laser interrogator, server, and Command and Control (C2) display. The LGDS is intended to, among other functions, alert Border Patrol agents when individuals attempt to damage, destroy or otherwise harm the fencing.  The road construction includes the construction of new roads and the improvement of existing roads.  The lighting that is requested has an imbedded camera that works in conjunction with the pedestrian fence. Camera coverage must provide complete visibility of the fencing and roads, including within washes, bends, and other obstructions and must be triggered by any activation of the LGDS to, again, maximize Border Patrol agents' ability to detect, identify and respond when individuals try to damage, destroy or otherwise harm the fencing. The lighting must be supported by grid power.

The segments of fence within the Project Areas identified below are situated on federal property for which DHS can grant DoD access for purposes of construction DHS will be responsible for securing the necessary interest in real property, to the extent required, for project execution such as access to the project site.  In the event a real estate interest or instrument that is needed for project execution cannot be obtained for a segment of fence within a Project Area in a time frame that is within the requirements of this request for assistance, the segment may be withdrawn from this request.  In addition, DHS will be responsible for any applicable environmental planning and compliance to include stakeholder outreach and consultation associated with the projects.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 3

**Project Areas**
**II.A. San Diego Sector**

Within the U.S. Border Patrol San Diego Sector (San Diego Sector), DHS is requesting that DoD assist by undertaking road construction, by constructing approximately three miles of new pedestrian fencing, by replacing approximately 14 miles of dilapidated pedestrian fencing with new pedestrian fencing, and by installing lighting in the specific locations identified below.

The Project Areas within the San Diego Sector identified below are located in San Diego County, California.  San Diego County has been identified by the Office of National Drug Control Policy (ONDCP) as a High Intensity Drug Trafficking Area (HIDTA).  In the remote areas of the San Diego Sector or areas where there is no fencing or dilapidated fencing, there is a susceptibility to breaching and vehicle incursions.  The San Diego Sector is also one of the main destination locations for migrant caravans.  The San Diego Sector is used by multiple TCOs that exploit both the urban areas and remote areas in the San Diego Sector using varied tactics, techniques, procedures, and varying concealment methods in order to smuggle both drugs and illegal aliens into the United States.  There are numerous TCOs operating in the San Diego Sector at any given time; however, the four principal cartels include the Sinaloa Cartel, the Tijuana Cartel, also known as the Arellano Felix Organization (AFO), the Cartel Jalisco Nueva Generacion (CJNG), and the Cartel Tijuana Nueva Generacion (CTNG).  The constant internal and territorial disputes involving these cartels have increased the violence in the area.  CJNG joined forces with the AFO in 2015 and formed the CTNG to appropriate territory controlled by the Sinaloa cartel.  This alliance led to several murders in the Tijuana area. However, the CJNG and AFC alliance ended in late 2016 and the CTNG continued to operate independently.  As of 2017, all four criminal organizations continue to operate independently and as rivals. Consequently, the violence has escalated to unprecedented levels as the cartels' turf war continues.

Because there are urban areas on both sides of the border in many portions of the San Diego Sector, the San Diego Sector suffers from some of the quickest vanishing times – that is the time it takes to illegally cross into the United States and assimilate into local, legitimate traffic.  These quick vanishing times enable the illegal activities of the TCOs, whether they are smuggling people or narcotics.

In fiscal year 2019, there were over 300 separate drug-related events between border crossings in the San Diego Sector, through which Border Patrol seized over 3,300 pounds of marijuana, over 1,280 pounds of cocaine, over 293 pounds of heroin, over 3,985 pounds of methamphetamine, and over 107 pounds of fentanyl.

The San Diego Sector is also an area of high illegal entry.  Border Patrol's own experience with apprehensions between border crossings bears this out.  In fiscal year 2019, there were over 58,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the San Diego Sector.

The construction of new fencing and the replacement of ineffective pedestrian fencing in the San Diego Sector is necessary to close existing gaps in the fencing and because the existing landing

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 4

mat fencing is easily breached and has been damaged to the extent that it is ineffective.
Constructing new pedestrian fencing will replace the vulnerable landing mat and close gaps
along the border that are susceptible to exploitation while simultaneously creating longer,
contiguous segments of border fencing.  The contiguous segments will satisfy San Diego
Sector's requirement to have a primary border fencing that will slow or stop illegal activity,
including narcotics smuggling and illegal entries, and facilitate an expedited law enforcement
response, increasing the likelihood of arrest. Additionally, with the increased impedance
provided by the new and replacement border fencing, field commanders are able to compress
enforcement operations to the immediate border, becoming more efficient and effective.

The specific Project Area is as follows:

***San Diego Project A:***
- o   The project includes three non-contiguous segments of primary pedestrian
     replacement fencing. The project includes approximately 14 miles of primary
     pedestrian replacement fencing beginning approximately four miles east of the Tecate
     Port of Entry continuing west for 13.7 miles for 14 miles of non-contiguous primary
     pedestrian replacement fencing in San Diego County.
     - ▪   Start coordinate: (32.581552, -116.564932);
     - ▪   End coordinate: (32.606114, -116.261684)
- o   This project also includes two segments of new primary pedestrian fencing.
     - •   The first segment includes approximately 2 miles of new primary pedestrian
          fencing approximately 22 miles east of the Tecate Port of Entry continuing east in
          San Diego County.
          - ▪   Start coordinate: (32.606126, -116.261453);
          - ▪   Stop coordinate: (32.608967, -116.226311)
     - •   The second segment includes approximately 1 mile of non-contiguous new
          primary pedestrian fencing beginning approximately 28 miles east of the Tecate
          Port of Entry continuing west in San Diego County.
          - ▪   Start coordinate: (32.3261511, -116.148822);
          - ▪   End coordinate: (32.618435, -116.106229)

## II.B. El Centro Sector

Within the U.S. Border Patrol El Centro Sector (El Centro Sector), DHS is requesting that DoD
assist by undertaking road construction, by constructing approximately 10 miles of new
pedestrian fencing, and by installing lighting in the specific locations identified below.

The specific Project Area identified below is located in Imperial County, California and has been
identified by ONDCP as a HIDTA.  Multiple local TCOs known for smuggling drugs into
Calexico from Mexico using a variety of tactics, techniques, procedures, and varying
concealment methods operate in this area, including CJNG as well as remnants of the Beltran
Leyva Organization and La Familia Michoacana organizations. CJNG, based in Jalisco, was
previously a faction of the Sinaloa Cartel. CJNG broke away from the Sinaloa Cartel and has

Subject: Request for Assistance Pursuant to 10 U.S.C. § 284
Page 5

become an established Mexican Cartel. The Mexican government has declared CJNG as one of the most dangerous cartels in the country.

Due to the close proximity of urban areas on both sides of the border, the El Centro Sector suffers from some of the quickest vanishing times – that is the time it takes to illegally cross into the United States and assimilate into local, legitimate traffic. These quick vanishing times enable the illegal activities of TCOs, whether they are smuggling narcotics or people.

In fiscal year 2019, Border Patrol had approximately 180 separate drug-related events between border crossings in the El Centro Sector, through which it seized over 100 pounds of marijuana, over 60 pounds of cocaine, over 100 pounds of heroin, and over 2,600 pounds of methamphetamine.

To the south of the international border is Mount Signal and sections of the Jacumba Mountain range. These mountains give smugglers a high point advantage. The smugglers are able to counter-surveil the patrol activities of El Centro Sector agents, which they then communicate to the "foot-guides" during illegal incursions into the United States.

Additionally, the El Centro Sector is an area of high illegal entry. Border Patrol's own experience with apprehensions between border crossings bears this out. In fiscal year 2019, there were over 35,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the El Centro Sector.

The construction of a new pedestrian fencing in this area of the El Centro Sector will satisfy the primary fencing requirement for an area that has long needed infrastructure. The project area is the westernmost section of the El Centro Sector's area of responsibility, lying adjacent to the San Diego Sector. San Diego Sector is currently proposed to receive additional fencing that would create an almost contiguous section of border fencing across the San Diego Sector. As CBP continues to construct needed fencing in the San Diego Sector, it is reasonable to conclude that TCOs will adjust their tactics and shift attempted illegal entries to adjacent locations that currently have no fencing or ineffective fencing.

As noted above, the El Centro Sector already experiences a high volume of illegal entries of both narcotics and people. Thus, constructing new fencing in the El Centro Sector's westernmost flank, an area without current fencing, would prepare the U.S. Border Patrol for a probable shift in the smuggling of narcotics and people by continuing the contiguous segment of fencing from the mountains of the San Diego Sector to the low-lying desert of the El Centro Sector where agents have the tactical advantage. Smugglers currently attempt to exploit this area of the El Centro Sector because of the lack of fencing and the proximity to California's Interstate 8 freeway, which provides TCOs rapid egress away from the border entry locations. Lastly, new fencing in this area will increase vanishing times, translating to additional time for law enforcement to interdict and arrest. The new border fencing also improves lateral border access, providing mobility along the border, decreasing the amount of time it will take agents to respond to illegal entries of narcotics and people.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 6

The specific Project Area is as follows:

***El Centro Project A:***
- o The project includes approximately 10 miles of new primary pedestrian fencing beginning 36 miles west of the Calexico West Port of Entry continuing east in Imperial County.
  - Start coordinate: (32.618435 -116.106229);
  - End coordinate: (32.631962, -115.932737)

## II.C. Yuma Sector

Within the U.S. Border Patrol Yuma Sector (Yuma Sector) DHS is requesting that DoD assist by undertaking road construction, constructing approximately 0.5 miles of new secondary pedestrian fencing, replacing approximately 0.5 miles of dilapidated pedestrian fencing with new fencing, replacing 7 miles of existing vehicle barrier with new pedestrian fencing, replacing 9 miles of dilapidated secondary fencing with new secondary fencing, and installing lighting in the specific locations identified below.

The Project Areas within the Yuma Sector that are identified below are in Yuma County, Arizona and Imperial County, California.  Yuma and Imperial Counties have been identified by the ONDCP as HIDTAs. Of particular note is the operation of the Sinaloa Cartel in the Yuma Sector.  The Sinaloa Cartel continues to be the most powerful cartel in the country and controls illicit networks and operations in the United States. Despite the arrest and conviction of Joaquin "El Chapo" Guzman-Loera, its narcotics business has continued uninterrupted.  As a result, there have been no significant changes within the Sinaloa Cartel's hierarchy, or any changes in the illicit operations conducted by the Sinaloa Cartel.

In fiscal year 2019, there were over 800 drug-related events between border crossings in the Yuma Sector, through which Border Patrol seized over 3,000 pounds of marijuana, over 33 pounds of heroin, over 1,186 pounds of methamphetamine, and over 50 pounds of fentanyl. The Yuma Sector is also an area of high illegal entry.  Border Patrol's own experience with apprehensions between border crossings bears this out.  In fiscal year 2019, there were over 68,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the Yuma Sector.

The construction of new fencing and the replacement of ineffective pedestrian fencing, including secondary fencing, in the Yuma Sector is necessary because the older designs are easily breached and have been damaged to the extent that they are ineffective.  Additionally, the Yuma Sector is notorious for border violence and narcotics smuggling. While the deployment of vehicle barrier in the Yuma Sector initially curtailed the volume of illegal cross-border vehicular traffic, TCOs quickly adapted their tactics by switching to foot traffic, cutting the fencing, or simply driving over it to smuggle their illicit cargo into the United States. Thus, in order to respond to these changes in tactics, DHS now requires pedestrian fencing rather than vehicle barriers.  Replacing the primary pedestrian fence and building the new and replacement secondary fencing segments will provide a contiguous enforcement zone that is critical to securing the border.  The enforcement zone that will be constructed facilitates the compression of border enforcement to

Subject: Request for Assistance Pursuant to 10 U.S.C. § 284
Page 7

the immediate border area which enables the U.S. Border Patrol to become more efficient and effective. This improvement occurs by increasing vanishing times through added impedance capability, translating to additional time for law enforcement to make a successful arrest while simultaneously decreasing the amount of time, through improved mobility, it takes for law enforcement to respond to illegal activity, including narcotics smuggling and illegal entries.

The specific Project Areas are as follows:

### *Yuma Project A:*
- o The project includes approximately 7 miles of vehicle barrier replaced with primary pedestrian fencing beginning approximately 5.7 miles south of the Andrade Port of Entry continuing along the Colorado River in Yuma County.
  - Start coordinate: (32.642102, -114.764632);
  - End coordinate: (32.569515, -114.791422)
- o The project also includes approximately 9 miles of secondary pedestrian replacement fencing starting approximately 2 miles west of the San Luis Port of Entry, continuing east in Yuma County.
  - Start coordinate: (32.493634, -114.811603);
  - End coordinate: (32.450532, -114.666551)

### *Yuma Project B:*
- o The project includes approximately 0.5 mile of primary pedestrian replacement fencing beginning 0.1 mile east of the Andrade Port of Entry continuing east in Imperial County, California on the Quechan Reservation.
  - Start coordinate: (32.718285 -114.726726);
  - End coordinate: (32.71872, -114.720282)
- o The project includes approximately 0.5 mile of new secondary pedestrian fencing beginning 0.1 mile east of the Andrade Port of Entry continuing east in Imperial County, California on the Quechan Reservation.
  - Start coordinate: (32.718715, -114.725929);
  - End coordinate: (32.719132, -114.720119)

## II.D. Tucson Sector

Within the U.S. Border Patrol Tucson Sector (Tucson Sector) DHS is requesting that DoD assist by undertaking road construction, constructing approximately 40 miles of new pedestrian fencing, replacing approximately 33 miles of pedestrian fencing, replacing approximately 28 miles of existing vehicle barrier with new pedestrian fencing, replacing 1 mile of secondary pedestrian fencing, and by installing lighting in the specific locations identified below.

The Project Areas within the Tucson Sector identified below are located in Pima, Cochise, and Santa Cruz Counties, Arizona. Pima, Cochise and Santa Cruz Counties have been identified by the ONDCP as HIDTAs. The Sinaloa Cartel relies on their local associates to coordinate, direct, and support the smuggling of illegal drugs and aliens from Mexico to the United States. Since Arizona is contiguous with the U.S.-Mexico International Boundary, the Tucson and Phoenix

FOR OFFICIAL USE ONLY (FOUO)

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 8

metropolitan areas are major trans-shipment and distribution points for contraband smuggling.
Plaza bosses operate as a Sinaloa Cartel leader within their specific area of operation along the
Sonora-Arizona corridor of the U.S.-Mexico International Boundary.

In fiscal year 2019, there were over 1,200 drug-related events between border crossings in the
Tucson Sector, through which Border Patrol seized over 59,000 pounds of marijuana, over 150
pounds of cocaine, over 155 pounds of heroin, over 2,700 pounds of methamphetamine, and over
12 pounds of fentanyl.

The Tucson Sector is also an area of high illegal entry.  Border Patrol's own experience with
apprehensions between border crossings bears this out.  In fiscal year 2019, there were over
63,000 apprehensions of illegal entrants attempting enter the United States between the border
crossings in the Tucson Sector.

The absence of adequate pedestrian fencing, either due to a complete lack of fencing or to the
presence of vehicle barrier or ineffective primary and secondary pedestrian fencing designs, in
the Tucson Sector continues to be particularly problematic as it pertains to the trafficking of
illegal narcotics.  Rival TCOs frequently employ "rip crews" who leverage the remote desert
environment and lack of fencing or the ineffective designs of current fencing to steal one
another's illicit cargo resulting in increased border violence.

The terrain in the Tucson Sector also provides high ground to scouts seeking to protect and warn
smuggling loads being passed through the area.  TCOs have successfully utilized this advantage
in furtherance of their illicit activity and for this reason the area is in need of an improved
capability to impede and deny illegal crossings of narcotics and people.  In addition, the area
hosts a number of tourist attractions that allow illegal activity to blend into legitimate activity;
successfully avoiding detection and evading interdiction.  The replacement of dilapidated
primary and secondary pedestrian fencing, as well as construction of new primary pedestrian
fencing, will add much needed infrastructure to these areas.  The added impedance capability
provided by new steel bollard fencing will slow or stop illegal activity and afford law
enforcement more time to respond, increasing the likelihood of interdicting and arresting
narcotics smugglers and illegal entrants while providing Border Patrol agents with improved
lateral access along the border.

The specific Project Areas are as follows:

***Tucson Project A:***
- o   The project includes five segments of primary pedestrian replacement fencing.
  - The first segment includes approximately 9 miles of primary pedestrian
    replacement fencing beginning approximately 12 miles west of the Naco Port of
    Entry continuing east in Cochise County.
    - Start coordinate: (31.334137, -110.147464);
    - End coordinate: (31.334117, -110.000337)

FOR OFFICIAL USE ONLY (FOUO)

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 9

- The second segment includes 14 miles of primary pedestrian replacement fencing beginning approximately 5 miles east of the Naco Port of Entry continuing east in Cochise County.
    - Start coordinate: (31.334088, -109.874333);
    - Stop coordinate: (31.334049,-109. 630508)
- The third segment includes 1 mile of primary pedestrian replacement fencing beginning east of the Douglas Port of Entry continuing east in Cochise County.
    - Start coordinate: (31.333994, -109.46753);
    - Stop coordinate: (31.333995, -109.453305)
- The fourth segment includes 1 mile of secondary pedestrian replacement fencing beginning approximately 0.4 miles west of the Naco Port of Entry continuing east in Cochise County.
    - Start coordinate: (31.334238, -109.945827);
    - End coordinate: (31.33425, -109.948594)
- The fifth segment includes 4.5 miles of new primary pedestrian fencing beginning approximately 26 miles east of the Douglas Port of Entry continuing east in Cochise County.
    - Start coordinate: (31.332694, -109.125);
    - End coordinate: (31.33202, -109.049997)

### Tucson Project B:
- o The project includes approximately 2 miles of primary pedestrian replacement fencing beginning approximately 3 miles west of the Nogales – Mariposa Port of Entry continuing east for through the Coronado National Forest in Santa Cruz County.
    - Start coordinate: (31.332555, -111.01132);
    - End coordinate: (31.332649, -110.976586)
- o The project also includes approximately 26 miles of non-contiguous vehicle fencing replaced with primary pedestrian fencing beginning approximately 9 miles east of the Nogales – Morley Gate Port of Entry, on the Coronado National Forest, continuing east in Santa Cruz and Cochise Counties.  These miles were included in the fiscal year 2019 Request for Assistance as part of the Tucson 4 project.
    - Start coordinate: (31.333578, -110.79579);
    - End coordinate: (31.333602, -110.288665)
- o The project also includes four segments of non-contiguous new primary pedestrian fencing.
    - The first segment includes approximately 21 miles of new primary pedestrian fencing beginning approximately 13 miles southeast of the Sasabe Port of Entry, on the Coronado National Forest, continuing east in Santa Cruz County.
        - Start coordinate: (31.388755, -111.25);
        - End coordinate: (31.33253, -111.01233)

Subject: Request for Assistance Pursuant to 10 U.S.C. § 284
Page 10

- The second segment includes approximately 0.5 miles of new pedestrian fencing begins approximately 5 miles east of the Nogales – Morley Gate Port of Entry, continuing east in Santa Cruz County.
  - Start coordinate: (31.333702, -110.851153);
  - End coordinate: (31.333758, -110.847792)
- The third segment includes approximately 4 miles of new pedestrian fencing beginning approximately 10 miles east of the Nogales – Morley Gate Port of Entry, on the Coronado National Forest, continuing east for in Santa Cruz County.
  - Start coordinate: (31.33351, -110.775333);
  - End coordinate: (31.33328, -110.70545)
- The final segment includes approximately 2 miles of new pedestrian fencing beginning approximately 20 miles west of the Naco Port of Entry, on the Coronado National Forest, continuing east in Cochise County.
  - Start coordinate: (31.333602, -110.288665);
  - End coordinate: (31.333754, -110.253863)

### *Tucson Project C*:
  o The project includes approximately 7 miles of primary pedestrian replacement fencing starting approximately 2.5 miles west of the Sasabe Port of Entry continuing east through the Buenos Aires National Wildlife Refuge in Pima County.
  - Start coordinate: (31.495537, -111.584263);
  - End coordinate: (31.460175, -111.473171)
  o The project also includes 2 miles of non-contiguous vehicle barrier replaced with primary pedestrian fencing beginning approximately 4 miles east of the Sasabe Port of Entry continuing east through the Coronado National Wildlife Refuge in Pima County. These miles were included in the fiscal year 2019 Request for Assistance as part of the Tucson 5 project.
  - Start coordinate: (31.386813, -111.243966);
  - End coordinate: (31.459673, -111.471584)
  o The project also includes four segments of non-contiguous new primary pedestrian fencing.
    - The first segment includes approximately 3 miles of new primary pedestrian fencing beginning approximately 5 miles northwest of the Sasabe Port of Entry continuing southeast in Pima County.
      - Start coordinate: (31.508665, -111.625);
      - End coordinate: (31.495537, -111.584263)
    - The three remaining segments include approximately 6 miles of new pedestrian fencing beginning approximately 5 miles southeast of the Sasabe Port of Entry, on the Buenos Aires National Wildlife Refuge and Coronado National Forest, continuing southeast in Pima and Santa Cruz Counties.
      - Start coordinate: (31.459243, -111.47024);
      - Stop coordinate: (31.423471, -111.358336)

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 11

**II.E. El Paso Sector**

Within the U.S. Border Patrol El Paso (El Paso Sector) DHS is requesting that DoD assist by undertaking road construction, constructing approximately 63 miles of new pedestrian fencing, replacing approximately 51 miles of pedestrian fencing, replacing approximately 6 miles of vehicle barrier with pedestrian fencing, replacing approximately three miles of secondary fencing, and installing lighting in the specific locations identified below.

The Project Areas within the El Paso Sector identified below are located in Luna, Hidalgo and Doña Ana Counties, New Mexico, and El Paso County, Texas.  El Paso, Luna, Hidalgo and Doña Ana Counties have been identified by the ONDCP as a HIDTAs.  There are three specific TCOs of interest operating in the El Paso Sector - the Sinaloa Cartel as well as remnants of the Juarez Cartel and the Beltran Leyva Organization.  In the El Paso Sector, the Sinaloa Cartel employs a variety of tactics, techniques and procedures depending upon the terrain and environment to move drugs across the border.  While the Sinaloa Cartel has a strong presence and control of territories at the flanks of the Sector, it does not have full control of the territory throughout the El Paso Sector.  The Juarez Cartel, traditionally a major trafficker of marijuana and cocaine, has become an active member in opium cultivation and heroin production.  In fiscal year 2019, there were over 400 drug-related events between border crossings in the El Paso Sector, through which Border Patrol seized over 11,000 pounds of marijuana, over 137 pounds of cocaine, over 35 pounds of heroin, over 340 pounds of methamphetamine, and over two pounds of fentanyl.

The El Paso Sector is also an area of high illegal entry.  Border Patrol's own experience with apprehensions between border crossings in the El Paso Sector bears this out. In fiscal year 2019, there were over 182,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the El Paso Sector. Also

Although the deployment of vehicle barrier in the El Paso Sector initially curtailed the volume of illegal cross-border vehicular traffic, TCOs quickly adapted their tactics switching to foot traffic, cutting the fencing, or simply driving over it to smuggle their illicit cargo into the United States. Thus, in order to respond to these changes in tactics, CBP now requires pedestrian fencing rather than vehicle barriers.  While the legacy pedestrian fencing in the El Paso Sector initially proved to be better than no fencing at all, the current fencing is only 15 feet high and is constructed with thin and easily breached bollards and thus does not provide the level of impedance necessary to meet the operational requirements of the U.S. Border Patrol.  Additionally, the secondary fencing to be replaced is easily climbed which creates a safety risk for illegal entrants and narcotics smugglers attempting to cross the irrigation canal.  This also endangers the agents that come to their rescue.

Constructing primary fencing in the remote areas of the western portions of the El Paso Sector will satisfy the requirement for primary border fencing, specifically areas that will receive primary pedestrian fencing in place of vehicle barrier as well as areas that will receive new primary pedestrian fencing to close existing gaps.  Successfully impeding and denying illegal activities of TCOs in this area is further complicated by the close proximity of New Mexico

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 12

Highway 9 to the border.  In some cases the highway is less than a half a mile from the border, allowing illegal cross-border traffic to evade detection and apprehension and quickly vanish from the border area.

The eastern portions of the El Paso Sector are proposed to receive primary pedestrian replacement fencing.  The deployment of new, steel bollard fencing will satisfy the Sector's requirement for a primary fencing by providing the necessary impedance required to enable a law enforcement response to illegal activity including narcotics smuggling and illegal entries. Similar to the western portion of the Sector, the proximity to Interstate 10, coupled with the lack of impedance provided by the current fencing, drive the requirement for the proposed steel bollard fencing solution.

The construction of new fencing in the El Paso Sector is intended to slow or stop illegal activity. Increasing the level of impedance and lateral access along the border will improve law enforcement's ability to respond to narcotics smuggling and illegal entries and will increase the likelihood of a positive law enforcement resolution.

The specific Project Areas are as follows:

**El Paso Project A:**
- o  The project includes approximately 20 miles of primary pedestrian replacement fencing beginning approximately 11 miles northwest of the Tornillo Port of Entry continuing southeast in El Paso County.
  - Start coordinate: (31.552981, - 106.26213);
  - End coordinate: (31.39439, -106.022199)

**El Paso Project B:**
- o  The project includes approximately 6 miles of vehicle barrier replaced with primary pedestrian fence beginning approximately 21 miles west of the Antelope Wells Port of Entry continuing west in Hidalgo County.
  - Start coordinate: (31.332292, -108.885945);
  - End coordinate: (31.332219, -108.785406)
- o  The project also includes five segments of non-contiguous new primary pedestrian fencing.
  - The first segment includes approximately 5 miles of new primary pedestrian fencing beginning approximately 30 miles west of the Antelope Wells Port of Entry continuing east in Hidalgo County.
    - Start coordinate: (31.33202, -109.049997);
    - End coordinate: (31.332323, -109.962631)
  - The second segment includes approximately 4 miles of new primary pedestrian fencing beginning approximately 15 miles west of the Antelope Wells Port of Entry, continuing east in Hidalgo County.
    - Start coordinate: (31.332219, -108.785406);
    - End coordinate: (31.332916, -108.715858)

Subject: Request for Assistance Pursuant to 10 U.S.C. § 284
Page 13

- The third segment includes approximately 2 miles of new primary pedestrian fencing beginning approximately 5 miles west of the Antelope Wells Port of Entry, continuing east in Hidalgo County.
    - Start coordinate: (31.333345, -108.614594);
    - End coordinate: (31.333368, -108.582412)
- The fourth segment includes approximately 49 miles of new primary pedestrian fencing beginning approximately 3 miles east of the Antelope Wells Port of Entry, continuing east and north in Hidalgo County.
    - Start coordinate: (31.333407, -108.47926);
    - End coordinate: (31.453091, -108.182442)
- The final segment includes approximately 2 miles of new primary pedestrian fencing beginning approximately 20 miles west of the Columbus Port of Entry continuing east in Luna County.
    - Start coordinate: (31.783708, -107.963193);
    - End coordinate: (31.7837, -107.923151)

### *El Paso Project C:*
- o The project includes replacement of two segments of pedestrian fencing.
    - The first segment includes approximately 3 miles of primary pedestrian replacement fencing beginning approximately 3 miles west of the Columbus Port of Entry and continuing east of the Columbus Port of Entry in Luna County.
        - Start coordinate: (31.783689, -107.678632);
        - Stop coordinate: (31.78371, -107.57392)
    - The second segment includes approximately 7 miles of primary pedestrian replacement fencing beginning approximately 1 mile west of the Santa Teresa Port of Entry continuing east in Doña Ana County.

        - Start coordinate: (31.783873, -106.698191);
        - End coordinate: (31.783925,-106.580689)

### *El Paso Project D:*
- o The project includes approximately 3 miles replacement of secondary pedestrian fencing beginning around the Paso Del Norte Port of Entry continuing east of the Paso Del Norte Port of Entry in El Paso County.
    - Start coordinate: (31.763185, - 106.447753);
    - End coordinate: (31.748581, - 106.488527)
- o The second project includes two segments of primary pedestrian replacement fencing.
    - The first segment includes approximately 1 mile of primary pedestrian replacement fencing beginning approximately 2 miles northwest of the Paso Del Norte Port of Entry continuing southeast in El Paso County.
        - Start coordinate: (31.77816, -106.524187);
        - End coordinate: (31.768596, -106. 511873)
    - The second segment includes approximately 17 miles of primary pedestrian replacement fencing beginning approximately 2 mile southeast of the Bridge of Americas Port of Entry continuing southeast in El Paso County.

Subject: Request for Assistance Pursuant to 10 U.S.C. § 284
Page 14

- Start coordinate: (31.670877, -106.336817);
- End coordinate: (31.731177, -106.378986)
  o The third project includes approximately 0.5 miles of new primary pedestrian fencing beginning approximately 5 miles north-west of the Paso Del Norte Port of Entry continuing southeast in Doña Ana County.
    - Start coordinate: (31.783889, -106.556848);
    - End coordinate: (31.783889, -106. 546137)

## II.F. Del Rio Sector

Within the U.S. Border Patrol Del Rio (Del Rio Sector) DHS is requesting that DoD assist by undertaking road construction, replacing approximately four miles of pedestrian fencing with new pedestrian fencing, and installing lighting in the specific locations identified below.

The Project Areas within the Del Rio Sector that are identified below are located in Val Verde and Maverick Counties, Texas. Val Verde and Maverick Counties have been identified by the ONDCP as HIDTAs. The Del Rio Sector is used by multiple TCOs to conceal and transport narcotics into the United States. In addition to larger TCOs such as Cartel del Noresté, the Del Rio Sector is host to many alien smuggling organizations and smaller TCOs that are responsible for the smuggling of narcotics and aliens through the Del Rio Sector. These smaller, lesser known TCOs are known to have smuggled thousands of pounds of marijuana through the Del Rio Sector over the past several years. Additionally, gangs within the Del Rio Sector range from local street gangs to nationally organized gangs. Their activities involve crimes ranging from illegal entry/reentry into the United States, alien smuggling, assault, and scouting for smuggling of aliens and/or drugs. In fiscal year 2019, there were over 146 drug-related events between border crossings in the Del Rio Sector, through which Border Patrol seized over 40 pounds of marijuana, over 15 pounds of cocaine, over 24 pounds of heroin, and over 195 pounds of methamphetamine.

The Del Rio Sector is also an area of high illegal entry. Border Patrol's own experience with apprehensions between border crossings in the Del Rio Sector bears this out. In fiscal year 2019, there were over 57,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the Del Rio Sector.

The current pedestrian fencing in the Del Rio Sector lacks the ability to provide the level of impedance necessary to effectively secure the border in those areas. TCOs frequently defeat and exploit the existing dilapidated fencing for narcotics and human smuggling by simply using unassisted climbing techniques, an indication of the fencing's inferior design and current state. Additionally, the Eagle Pass Station's area of responsibility experiences the highest volume of assaults on agents, border violence, and rescues in the Del Rio Sector. Construction of new steel bollard fencing to replace the dilapidated existing fencing that is easily scaled will allow the Del Rio Sector to secure the areas and more effectively leverage resources in adjacent areas leading to a safer, more secure border environment.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 15

The specific Project Areas are as follows:

***Del Rio Project A:***
- o The project includes approximately 2 miles of primary pedestrian replacement fencing beginning approximately 1 mile north of the Eagle Pass Port of Entry continuing south in Maverick County.
    - Start Coordinate: (28.702032, -100.504759);
    - End Coordinate: (28.71969, -100.504983)

***Del Rio Project B:***
- o The project includes approximately 2 miles of primary pedestrian replacement fencing beginning approximately 2 miles northwest of the Del Rio Port of Entry continuing southeast in Val Verde County.
    - Start coordinate: (29.345863, -100.945134);
    - Stop coordinate: (29.33107, -100.913086)

## III. Technical Specifications

As set forth above, DHS requires road construction, installation of lighting, and the construction of new or replacement of existing vehicle barrier or dilapidated pedestrian fencing with new pedestrian fencing within the Project Areas. DHS will provide DoD with more precise technical specifications as contract and project planning moves forward.

Given DHS's experience and technical expertise, DHS plans to coordinate closely with DoD throughout project planning and execution, to include review and approval of design specifications, fencing alignment and location, and other aspects of project planning and execution.

## IV. Sequencing

The DHS request for assistance includes approximately 271 miles in which DHS requires road construction, the installation of lighting, and the construction of new pedestrian fencing or the replacement of existing vehicle barrier or dilapidated pedestrian fencing with new pedestrian fencing within the Project Areas. DHS requests that DoD's support under 10 U.S.C. § 284 address the requirements in order of priority as DoD resources allow. The DHS order of priority is as follows:
1. El Centro Project A
2. El Paso Project A
3. El Paso Project B
4. Del Rio Project A
5. Yuma Project A
6. Tucson Project A
7. Tucson Project B
8. El Paso Project C
9. Del Rio Project B

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 16

10. San Diego Project A
11. El Paso Project D
12. Yuma Project B
13. Tucson Project C

## V.  Funding

DHS requests that DoD provide the above-referenced border fences, roads, and lighting on a
non-reimbursable basis as support to block drug smuggling corridors.

DHS will accept custody of the completed infrastructure and account for that infrastructure in its
real property records.

DHS will operate and maintain the completed infrastructure.

## VI. Conclusion

DHS requests DoD assistance under 10 U.S.C. § 284 to construct fences, roads, and to install
lighting in order to block drug smuggling corridors in the Project Areas set forth above. The
Projects Areas set forth above are areas of high illegal entry under IIRIRA § 102(a), and the
requested fences, roads, and lighting will assist in deterring illegal crossings in the Project Areas.

# EXHIBIT B

| Project Name | Segment Miles (approx.) | Est. Project Cost ($M) |
|---|---|---|
| Yuma A (segment 1) | 7 | $140 |
| Yuma A (segment 2) | 9 | $180 |
| El Centro A | 10.2 | $204 |
| Tucson A (segment 1) | 9 | $180 |
| Tucson A (segment 2) | 14 | $280 |
| Tucson A (segment 3) | 1 | $20 |
| Tucson A (segment 4) | 1 | $20 |
| Tucson A (segment 5) | 4.5 | $90 |
| Tucson B (segment 5) | 4.1 | $82 |
| Tucson B (segment 6) | 2.1 | $42 |
| El Paso A | 20 | $400 |
| El Paso B (segment 6) | 2.4 | $48 |
| El Paso C (segment 1) | 3 | $60 |
| El Paso C (segment 2) | 7 | $140 |
| Tucson C (segment 1) | 7 | $140 |
| Tucson C (segment 3) | 2.6 | $52 |
| Tucson C (segment 4) | 5.7 | $114 |
| Tucson B (segment 1) | 2.1 | $42 |
| Tucson B (segment 3) | 21 | $420 |
| Tucson B (segment 4) | 0.2 | $4 |
| Yuma B (segment 1) | 0.3 | $6 |
| Yuma B (segment 2) | 0.3 | $6 |
| San Diego A (segment 1) | 13.7 | $274 |
| San Diego A (segment 2) | 2 | $40 |
| San Diego A (segment 3) | 2 | $40 |
| Del Rio A | 2 | $40 |
| Del Rio  B | 2 | $40 |
| El Paso D (segment 1) | 3 | $60 |
| El Paso D (segment 2) | 1 | $20 |
| El Paso D (segment 3) | 17 | $340 |
| El Paso D (segment 4) | 0.6 | $12 |

# EXHIBIT C

*Unclassified* **REPROGRAMMING ACTION** Page 1 of 5

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: |
|---|---|
| **Appropriation Title:** Various Appropriations | FY 20-01 RA |
| | **Includes Transfer?** Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

This reprogramming action is submitted because these actions use general and special transfer authority. This reprogramming action provides funding in support of higher priority items, based on unforeseen military requirements, than those for which originally appropriated, and is determined to be necessary in the national interest. It meets all administrative and legal requirements and none of the items has previously been denied by the Congress.

**Part I** of this reprogramming action transfers $2.202 billion between Fiscal Year (FY) 2020 Defense appropriations. This reprogramming action uses $2.202 billion of general transfer authority pursuant to section 8005 of division A of Public Law 116-93, the Department of Defense (DoD) Appropriations Act, 2020; and section 1001 of Public Law 116-92, the National Defense Authorization Act for FY 2020.

**Part II** of this reprogramming action transfers $1.629 billion between FY 2020 Title IX, Overseas Contingency Operations (OCO) Defense appropriations. This reprogramming action uses $1.629 billion of special transfer authority pursuant to section 9002 of Title IX, OCO, of division A of Public Law 116-93, the Department of Defense (DoD) Appropriations Act, 2020; and section 1520A of Public Law 116-92, the National Defense Authorization Act for FY 2020.

## PART I

**FY 2020 REPROGRAMMING INCREASE:** +2,202,000

**DEFENSE INCREASE** +2,202,000

**Drug Interdiction and Counter-Drug Activities, Defense, 20/20** +2,202,000
Budget Activity 01: Counter-Narcotics Support

| | | |
|---|---|---|
| 675,271 | 190,332 | +2,202,000 | 2,392,332 |

Explanation: Funds are required to provide support for counter-drug activities of the Department of Homeland Security (DHS). DHS has identified areas along the southern border of the United States that are being used by individuals, groups, and transnational criminal organizations as drug smuggling corridors, and determined that the construction of additional physical barriers and roads in the vicinity of the United States border is necessary in order to impede and deny drug smuggling activities. DHS requests DoD assistance in the execution of projects to replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install lighting. Title 10, U.S. Code, Section 284(b)(7) authorizes the DoD to support counterdrug activities of other Federal agencies through the construction of roads and fences, and the installation of lighting, to block drug smuggling corridors across international boundaries of the United States. Such support is funded using the DoD's Drug Interdiction and Counter-Drug Activities appropriation.

Approved (Signature and Date)

*Elaine McCusker* 2/13/20

**DD 1415** *UNCLASSIFIED*

| *Unclassified* | **REPROGRAMMING ACTION** | Page 2 of 5 |
|---|---|---|

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 20-01 RA |
|---|---|
| Appropriation Title: Various Appropriations | |
| | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |
| **FY 2020 REPROGRAMMING DECREASES:** | | | | | | **-2,202,000** | | |
| **ARMY DECREASES** | | | | | | **-201,000** | | |
| **Other Procurement, Army, 20/22** | | | | | | **-201,000** | | |
| Budget Activity 01: Tactical and Support Vehicles | | | | | | | | |
| Army National Guard HMMWV Modernization | | 100,000 | | 100,000 | | **-100,000** | | - |
| Hvy Expanded Mobile Tactical Truck Ext Serv | | 194,575 | | 194,575 | | **-101,000** | | 93,575 |

Explanation: Funds are available because they are excess to current programmatic need. The procurement of legacy vehicles is inconsistent with the goals to modernize the Tactical and Support Vehicle fleet in support of the National Defense Strategy (NDS). These are congressional special interest items.

| **NAVY DECREASES** | | | | | | **-1,469,000** | | |
|---|---|---|---|---|---|---|---|---|
| **Aircraft Procurement, Navy, 20/22** | | | | | | **-558,000** | | |
| Budget Activity 01: Combat Aircraft | | | | | | | | |
| JSF STOVL | 16 | 1,897,401 | 16 | 1,897,401 | -2 | **-223,000** | 14 | 1,674,401 |
| V-22 (Medium Lift) | 14 | 1,237,559 | 14 | 1,237,559 | -2 | **-155,000** | 12 | 1,082,559 |
| P-8A Poseidon | 9 | 1,668,073 | 9 | 1,668,073 | -1 | **-180,000** | 8 | 1,488,073 |

Explanation: Funds are available because they are excess to current programmatic need, as follows:

- JSF STOVL current funding is more than sufficient to keep the production line open and meet requirements. The minimum production sustainment rate is 4 aircraft. This is a congressional special interest item.
- MV-22 current funding is more than sufficient to keep the production line open and meet requirements. The minimum production sustainment rate is 6 aircraft. This is a congressional special interest item.
- P-8A aircraft are excess to the 117 aircraft required for homeland defense and overseas contingency operations. This is a congressional special interest item.

DD 1415                                                    *UNCLASSIFIED*

*Unclassified*  **REPROGRAMMING ACTION**

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | | | | | | DoD Serial Number: FY 20-01 RA | |
|---|---|---|---|---|---|---|---|
| Appropriation Title: Various Appropriations | | | | | | Includes Transfer? Yes | |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |
| **Shipbuilding and Conversion, Navy, 20/24** | | | | | | **-911,000** | | |
| Budget Activity 03: Amphibious Ships | | | | | | | | |
| LHA Replacement | | 650,000 | | 650,000 | | **-650,000** | | - |
| Expeditionary Fast Transport (EPF) | | 261,000 | | 261,000 | | **-261,000** | | - |

Explanation: Funds are available for the following reasons:
- Landing Helicopter Assault (LHA) ship funding is early to current programmatic need. The procurement funds are not required until FY 2023. This is a congressional special interest item.
- The Expeditionary Fast Transport (EPF) funding is excess to current programmatic need. The procurement exceeds the program-of-record requirement. This is a congressional special interest item.

| **AIR FORCE DECREASES** | | | | | | **-532,000** | | |
|---|---|---|---|---|---|---|---|---|
| **Aircraft Procurement, Air Force, 20/22** | | | | | | **-532,000** | | |
| Budget Activity 01: Combat Aircraft | | | | | | | | |
| F-35 Advance Procurement (CY) | | 811,500 | | 811,500 | | **-156,000** | | 655,500 |
| Budget Activity 02: Airlift Aircraft | | | | | | | | |
| C-130J | 8 | 742,156 | 8 | 742,156 | -2 | **-196,000** | 6 | 546,156 |
| Budget Activity 04: Other Aircraft | | | | | | | | |
| Observation Attack Replacement (OA-X) Light Attack Aircraft | | 210,000 | | 210,000 | | **-180,000** | | 30,000 |

Explanation: Funds are available for the following reasons:
- F-35 Advance Procurement funding is excess to current programmatic need. It was based on a higher number of aircraft than will be requested in the President's Budget for FY 2021. This is a congressional special interest item.
- C-130J funding is early to current programmatic need. The period of performance for the contract is not expected to begin until FY 2021, therefore procurement can be rescheduled to a later fiscal year. This is a congressional special interest item.
- OA-X funding is early to current programmatic need. The funding accelerates the program from FY 2021 when an aircraft platform is scheduled to be identified. This is a congressional special interest item.

| *Unclassified* | **REPROGRAMMING ACTION** | Page 4 of 5 |
|---|---|---|

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 20-01 RA |
|---|---|
| Appropriation Title: Various Appropriations | |
| | Includes Transfer? Yes |

| Component Serial Number: | | *(Amounts in Thousands of Dollars)* | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

## PART II

**FY 2020 REPROGRAMMING INCREASE:**      +1,629,000

**DEFENSE INCREASE**      +1,629,000

**Drug Interdiction and Counter-Drug Activities, Defense, 20/20**      +1,629,000

Budget Activity 01: Counter-Narcotics Support

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 675,271 | | 2,392,332 | | +1,629,000 | | 4,021,332 |

Explanation: Funds are required to provide support for counter-drug activities of the Department of Homeland Security (DHS). DHS has identified areas along the southern border of the United States that are being used by individuals, groups, and transnational criminal organizations as drug smuggling corridors, and determined that the construction of additional physical barriers and roads in the vicinity of the United States border is necessary in order to impede and deny drug smuggling activities. DHS requests DoD assistance in the execution of projects to replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install lighting. Title 10, U.S. Code, Section 284(b)(7) authorizes the DoD to support counterdrug activities of other Federal agencies through the construction of roads and fences, and the installation of lighting, to block drug smuggling corridors across international boundaries of the United States. Such support is funded using the DoD's Drug Interdiction and Counter-Drug Activities appropriation.

**FY 2020 REPROGRAMMING DECREASES:**      -1,629,000

**AIR FORCE DECREASES**      -329,000

**Aircraft Procurement, Air Force, 20/22**      -329,000

Budget Activity 02: Airlift Aircraft

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| C-130J | 8 | 742,156 | 6 | 546,156 | -2 | -169,000 | 4 | 377,146 |

Explanation: Funds are available because they are early to current programmatic need. The period of performance for the contract is not expected to begin until FY 2021, therefore procurement can be rescheduled to a later fiscal year. This is a congressional special interest item.

Budget Activity 04: Other Aircraft

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| MQ-9 | 24 | 468,600 | 24 | 468,600 | -8 | -160,000 | 16 | 308,600 |

Explanation: Funds are available because they are early to current programmatic need. The program is currently undergoing a strategic review, therefore procurement, if necessary, can be rescheduled to a later fiscal year. This is a congressional special interest item.

| **DD 1415** | ***UNCLASSIFIED*** |
|---|---|

| *Unclassified* | **REPROGRAMMING ACTION** | | | | | | Page 5 of 5 | |
|---|---|---|---|---|---|---|---|---|

| **Subject:** Support for DHS Counter-Drug Activity Reprogramming Action | | | | | | | **DoD Serial Number:** FY 20-01 RA | |
| **Appropriation Title:** Various Appropriations | | | | | | | **Includes Transfer?** Yes | |

| **Component Serial Number:** | | *(Amounts in Thousands of Dollars)* | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Program Base Reflecting Congressional Action** | | **Program Previously Approved by Sec Def** | | **Reprogramming Action** | | **Revised Program** | |
| **Line Item** | **Quantity** | **Amount** | **Quantity** | **Amount** | **Quantity** | **Amount** | **Quantity** | **Amount** |
| a | b | c | d | e | f | g | h | i |
| **DEFENSE-WIDE DECREASES** | | | | | | **-1,300,000** | | |
| **NATIONAL GUARD AND RESERVE EQUIPMENT, 20/22** | | | | | | **-1,300,000** | | |
| **National Guard and Reserve Equipment, 20/22** | | | | | | **-1,300,000** | | |
| Budget Activity 01:  Reserve Equipment | | | | | | | | |
| Miscellaneous Equipment, Army Reserve | | 205,000 | | 205,000 | | **-205,000** | | - |
| Miscellaneous Equipment, Navy Reserve | | 75,000 | | 75,000 | | **-75,000** | | - |
| Miscellaneous Equipment, Marine Corp Reserve | | 25,000 | | 25,000 | | **-25,000** | | - |
| Miscellaneous Equipment, AF Reserve | | 205,000 | | 205,000 | | **-205,000** | | - |
| Budget Activity 02:  National Guard Equipment | | | | | | | | |
| Miscellaneous Equipment, Army National Guard | | 395,000 | | 395,000 | | -395,000 | | - |
| Miscellaneous Equipment, Air National Guard | | 395,000 | | 395,000 | | -395,000 | | - |

Explanation:  Funds are available because they are early to current programmatic need.  This appropriation is underexecuting prior year funds.  As of December 31, 2019, a balance of $1.6 billion from FY 2018 and FY 2019 remains unobligated, in addition to the $1.3 billion appropriated for FY 2020.  The normal obligation standard is 80% for the first year of funding availability.  Over the past 5 years, from FY 2015 to FY 2019, an average of only $112 million, or 9 percent, was obligated in the first year of availability for this appropriation.  This is a congressional special interest item.

# EXHIBIT 2

SECOND DECLARATION OF JILL E. STIGLICH

I, Jill E. Stiglich, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Director of Contracting for the U.S. Army Corps of Engineers (USACE), and have been designated as the Head of the Contracting Activity (HCA) for USACE by the Senior Procurement Executive for the Department of the Army. In my capacity as the Director of Contracting and HCA for USACE, I am responsible for oversight and direction of the South Pacific Border District (Border District) for the USACE South Pacific Division.

2. This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

3. As explained in the seventh declaration of Kenneth P. Rapuano, dated February 13, 2020, on February 13, 2020, the Secretary of Defense approved 31 additional Section 284 projects and segments to be funded using $3.831 billion transferred to the counter-narcotics support line of the Drug Interdiction and Counter-Drug Activities, Defense, account. Such funds have been transferred from that account to the Operation and Maintenance, Army, account for use by USACE to undertake fence and road construction and lighting installation for the approved projects.

4. USACE anticipates that it will award contracts and fully obligate the necessary funds for these additional Section 284 projects no later than September 30, 2020, but no earlier than March 15, 2020. The funds will expire if they are not obligated before the end of the fiscal year. USACE does not expect to begin construction, or engage in any ground disturbing activities, on any of these Section 284 projects before March 15, 2020.

5. Generally, USACE anticipates utilizing two contracting processes to construct the additional Section 284 projects.

    a. For the additional Section 284 projects that are in close proximity to existing Section 284 projects authorized in fiscal year 2019, USACE intends to execute non-competitive modifications to the existing contracts. These existing contracts include the El Paso 1 contract; the Tucson 1, 2, and 3 contracts; and the El Centro/Yuma 1 contract. USACE plans to seek proposals from the contractors currently performing work under the existing Section 284 contracts, enter into bilateral contract modifications for the additional work, and fully obligate the necessary funds no earlier than March 15, 2020. Because the contractors working on the existing Section 284 contracts are already mobilized in close proximity to the new work, ground-disturbing activities and substantial construction may occur as early as the dates of execution of the contract modifications. USACE is working to determine which, if any, of the additional Section 284 projects to undertake using this non-competitive process.

b.  For the remaining Section 284 projects that are not executed through the non-competitive contract modification process described above, USACE intends to undertake a competitive contract award process and award task orders to the short-list of qualified contractors currently holding either one of two existing multiple award task order contracts (MATOCs).  A MATOC is a type of indefinite delivery contract that does not procure or specify a firm quantity of services (other than a minimum or maximum quantity) and that provides for the issuance of orders for the performance of tasks during the period of the contract.  USACE anticipates that it will award the first of these task orders and fully obligate the necessary funds for these additional Section 284 projects no earlier than April 7, 2020.  For these projects, USACE will be prepared to begin ground-disturbing activities as early as five days after task order award and substantial construction as early as ten days after task order award.

I hereby declare under penalty of perjury that the foregoing is true and correct.


Executed on:   February 13, 2020

JILL E. STIGLICH