**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, *et al.*, | |
| **Plaintiffs**, | |
| v. | No. 1:19-cv-0408-TNM |
| **DONALD J. TRUMP**, *President of the United States, et al.*, | |
| **Defendants**. | |
| **RIO GRANDE INTERNATIONAL STUDY CENTER (RGISC)**, *et al.*, | |
| **Plaintiffs**, | |
| v. | No. 1:19-cv-0720-TNM |
| **DONALD J. TRUMP**, *President of the United States of America, et al.*, | |
| **Defendants**. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**</u>
<u>**BY *AMICUS CURIAE* REP. ANDY BARR**</u>

CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave. NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org

LAWRENCE J. JOSEPH
Law Office of Lawrence J. Joseph
1250 Connecticut Ave. NW, Suite 700-1A
Washington, DC 20036
(202) 355-9452
ljoseph@larryjoseph.com

*Counsel for Rep. Andy Barr*

## <u>TABLE OF CONTENTS</u>

Table of Contents ..................................................................................................................... ii

Table of Authorities ................................................................................................................ iii

Identity and Interest of *Amicus Curiae* ................................................................................. 1

Introduction ............................................................................................................................. 1

Statement of Facts ................................................................................................................... 2

Argument ................................................................................................................................. 2

I.      Plaintiffs lack an interest required to challenge the Government's border-wall construction. ........................................................................................................... 2

      A.      Plaintiffs' aesthetic interests are insufficiently related to an "injury in fact" to satisfy Article III jurisdiction. ................................................... 3

            1.      Plaintiffs' aesthetic interests are not cognizable. ......................... 4

            2.      Plaintiffs lack an injury in fact because they lack a legally protected interest. ................................................................... 5

            3.      Plaintiffs' diverted resources do not provide Plaintiffs with standing in their own right. ............................................... 7

      B.      Plaintiffs lack the "direct injury" required for an action in equity. ...................... 10

II.     Plaintiffs lack a viable claim on the merits. ............................................................. 11

      A.      Plaintiffs' APA claim under § 739 fails because DHS's funding under the CAA did not repeal DOD's funding under DOD's appropriations authority by implication. ................................................................ 11

      B.      Plaintiffs' *ultra vires* claims under § 284, § 8005, and § 2808 fail on the merits. .............................................................................................. 13

            1.      The Government's actions comply with § 284. ......................... 13

            2.      The Government's actions comply with § 8005. ....................... 13

            3.      The Government's actions comply with § 2808. ....................... 15

Conclusion ............................................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Action Alliance of Senior Citizens v. Heckler*,
  789 F.2d 931 (D.C. Cir. 1986) ........................................................................9

\* *Alabama Power Co. v. Ickes*,
  302 U.S. 464 (1938) ...............................................................................7, 11

*Allen v. Wright*,
  468 U.S. 737 (1984) ........................................................................................3

*Bender v. Williamsport Area Sch. Dist.*,
  475 U.S. 534 (1986) ........................................................................................2

*Blessing v. Freestone*,
  520 U.S. 337 (1997) ......................................................................................11

*Chamber of Commerce of the United States v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ......................................................................10

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ......................................................................................14

*City of Rancho Palos Verdes v. Abrams*,
  544 U.S. 113 (2005) ......................................................................................11

*Clapper v. Amnesty Int'l USA*,
  133 S.Ct. 1138 (2013) .....................................................................................7

*Cooper Indus., Inc. v. Aviall Serv., Inc.*,
  543 U.S. 157 (2004) ....................................................................................9-10

*Ctr. for Biological Diversity v. Wolf*,
  No. 19-975, 2020 U.S. LEXIS 3479 (June 29, 2020) ..................................4-5

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ........................................................................................3

*Defenders of Wildlife v. Chertoff*,
  527 F. Supp. 2d 119 (D.D.C. 2007) ................................................................4

*Diamond v. Charles*,
  476 U.S. 54 (1986) ......................................................................................6-7

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................10, 13

*Flast v. Cohen*,
  392 U.S. 83 (1968) ..........................................................................................6

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ........................................................................................3

*Gladstone, Realtors v. Bellwood,*
    441 U.S. 91 (1979)..................................................................................8

*Hardin v. Ky. Utils. Co.,*
    390 U.S. 1 (1968)....................................................................................7

\* *Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)..............................................................................8-9

*Heckler v. Chaney,*
    470 U.S. 821 (1985)..............................................................................14

*In re Border Infrastructure Envtl. Litig.,*
    915 F.3d 1213 (9th Cir. 2019) ...............................................................4

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)................................................................................3

*Lewis v. Casey,*
    518 U.S. 343 (1996)................................................................................3

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973)................................................................................6

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)............................................................................3-5

\* *McConnell v. FEC,*
    540 U.S. 93 (2003)..............................................................................6-7

*Mountain States Legal Found. v. Glickman,*
    92 F.3d 1228 (D.C. Cir. 1996) .............................................................8-9

*Muskrat v. United States,*
    219 U.S. 346 (1911)................................................................................3

*Nader v. Saxbe,*
    497 F.2d 676 (D.C. Cir. 1974) ...............................................................6

\* *Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
    551 U.S. 644 (2007)..............................................................................12

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976)................................................................................7

*People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture,*
    797 F.3d 1087 (D.C. Cir. 2015) ...........................................................7-8

*Sierra Club v. Morton,*
    405 U.S. 727 (1972).............................................................................5, 8

*South Central Bell Tel. Co. v. Alabama,*
    526 U.S. 160 (1999)................................................................................9

*Steel Co. v. Citizens for a Better Env't.,*
    523 U.S. 83 (1998)..................................................................................2

*United States v. Lee*,
    106 U.S. 196 (1882)................................................................................10

*United States v. Mendoza*,
    464 U.S. 154 (1984)..................................................................................9

*United States v. Richardson*,
    418 U.S. 166 (1974)..................................................................................4

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)..................................................................................5

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002)................................................................................13

\* *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)...............................................................................6-7

*Wadley S. R. Co. v. Georgia*,
    235 U.S. 651 (1915)................................................................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................8

*Waters v. Churchill*,
    511 U.S. 661 (1994)..................................................................................9

*Youngberg v. Romeo*,
    457 U.S. 307 (1982)................................................................................10

## <u>STATUTES</u>

U.S. CONST. art. III ..........................................................................3, 6, 8, 11

U.S. CONST. art. III, § 2 ...............................................................................3

Administrative Procedure Act,
    5 U.S.C. §§ 551-706 .....................................................................1, 3, 10-11

10 U.S.C. § 284.............................................................1-2, 6, 10-11, 13

10 U.S.C. § 284(a) ...................................................................................13

10 U.S.C. § 284(b)(7) ...............................................................................13

10 U.S.C. § 2801(a) ..................................................................................15

10 U.S.C. § 2801(b) ..................................................................................15

10 U.S.C. § 2801(c)(4) ..............................................................................15

10 U.S.C. § 2808........................................................................1-2, 10-13, 15

10 U.S.C. § 2808(a) ..................................................................................15

National Emergencies Act,
    50 U.S.C. §§ 1601-1651 .......................................................................1, 12

\* 50 U.S.C. § 1621(b) ..................................................................................12

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
PUB. L. NO. 104-208, Div. C, 110 Stat. 3009, 3009-546 to 3009-724 (1996)....................4

PUB. L. NO. 104-208, Div. C, § 102(c)(1),
110 Stat. 3009, 3009-546 to 3009-724, 3009-555 (1996)....................................4

Real ID Act of 2005, PUB. L. NO. 109-13, Tit. I, Div. B,
119 Stat. 231, 302-11 (2005) ................................................................4

PUB. L. NO. 109-13, Tit. I, Div. B, § 102,
119 Stat. 231, 306 (2005) (codified at 8 U.S.C. § 1103 note) ............................4

DOD Appropriations Act for Fiscal Year 2019, PUB. L. NO. 115-245,
132 Stat. 2981 (Sept. 28, 2018)..........................................................2

DOD Appropriations Act for Fiscal Year 2019, PUB. L. NO. 115-245, div. A, § 8005,
132 Stat. 2981, 2999 (Sept. 28, 2018)........................................2, 10-11, 13-15

Consolidated Appropriations Act 2019,
PUB. L. NO. 116-6, 132 Stat. 2981 (2019)............................................1

Consolidated Appropriations Act 2019, PUB. L. NO. 116-6, § 739,
133 Stat. 13, 197 (2019)............................................................... 1, 11-13

## LEGISLATIVE HISTORY

H.R. REP. NO. 103-200 (1993) ............................................................15

H.R. REP. NO. 110-652, 420 (2008)......................................................15

## RULES AND REGULATIONS

Local Rule 7(o)(5)..............................................................................1

FED. R. APP. P. 29(a)(4)(E) ...............................................................1

Presidential Proclamation on Declaring a National Emergency Concerning the Southern
Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019).........................1

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Rep. Andy Barr seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion for leave to file.[1] As explained in the motion for leave to file, Rep. Barr (hereinafter, "*Amicus*") has an ongoing interest in federal immigration policy both as the Representative elected to the 116th Congress for Kentucky's Sixth Congressional District and as a citizen. For these reasons, Rep. Barr has direct interests in the issues here.

## INTRODUCTION

In these consolidated actions, several individuals and public-interest groups (collectively, "Plaintiffs") have sued various federal Executive officers (collectively, the "Government") to challenge actions taken to build a border wall on the southern border. The Government's actions include actions taken pursuant to the Presidential Proclamation on Declaring a National Emergency Concerning the Southern Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019), as well as Department of Defense ("DOD") actions under 10 U.S.C. §§ 284, 2808. In the Proclamation, the President relied on authority delegated by Congress in the National Emergencies Act, 50 U.S.C. §§ 1601-1651 ("NEA"). This Court dismissed most of Plaintiffs' claims, leaving only (1) a claim under the Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA") premised on the Government's alleged violation of § 739 of the Consolidated Appropriations Act 2019, PUB. L. NO. 116-6, § 739, 133 Stat. 13, 197 (2019) ("CAA")[2], and (2) *ultra vires* claims premised on

---

[1]     Consistent with FED. R. APP. P. 29(a)(4)(E) and Local Rule 7(o)(5), counsel for movant and *amicus curiae* authored the motion and brief in whole, and no counsel for a party authored the motion or brief in whole or in part, nor did any person or entity, other than the movant/*amicus* and his counsel, make a monetary contribution to preparation or submission of the motion or brief.

[2]     CAA's § 739 provides as follows: "None of the funds made available in this or any other appropriations Act may be used to increase, eliminate, or reduce funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed

the Government's alleged violation of § 284, § 2808, and § 8005 of the DOD Appropriations Act

for Fiscal Year 2019, Pub. L. No. 115-245, div. A, § 8005, 132 Stat. 2981, 2999 (Sept. 28, 2018).[3]

## STATEMENT OF FACTS

*Amicus* adopts the facts as stated by the Government. Gov't Memo. at 1-12 (ECF #068)

(No. 1:19-cv-0408-TNM).

## ARGUMENT

I.  **PLAINTIFFS LACK AN INTEREST REQUIRED TO CHALLENGE THE GOVERNMENT'S BORDER-WALL CONSTRUCTION.**

Federal courts are courts of limited jurisdiction, *Bender v. Williamsport Area Sch. Dist.*,

475 U.S. 534, 541 (1986), and must assure themselves of jurisdiction before reaching the merits.

*Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 95 (1998). "It is to be presumed that a cause

---

change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." *Id.*

[3]      The DOD Appropriation Act's § 8005 provides as follows: "Upon determination by the Secretary of Defense that such action is necessary in the national interest, he may, with the approval of the Office of Management and Budget, transfer not to exceed $4,000,000,000 of working capital funds of the Department of Defense or funds made available in this Act to the Department of Defense for military functions (except military construction) between such appropriations or funds or any subdivision thereof, to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred: Provided, That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress: Provided further, That the Secretary of Defense shall notify the Congress promptly of all transfers made pursuant to this authority or any other authority in this Act: Provided further, That no part of the funds in this Act shall be available to prepare or present a request to the Committees on Appropriations for reprogramming of funds, unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which reprogramming is requested has been denied by the Congress: Provided further, That a request for multiple reprogrammings of funds using authority provided in this section shall be made prior to June 30, 2019: Provided further, That transfers among military personnel appropriations shall not be taken into account for purposes of the limitation on the amount of funds that may be transferred under this section." *Id.*

lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, Plaintiffs lack Article III standing for their APA claim and a cause of action against the Government in equity.

A.   <u>**Plaintiffs' aesthetic interests are insufficiently related to an "injury in fact" to satisfy Article III jurisdiction.**</u>

Under Article III, federal courts cannot issue advisory opinions, *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911), but must instead focus on the cases or controversies presented by affected parties. U.S. CONST. art. III, § 2. "All of the doctrines that cluster about Article III — not only standing but mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to … the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Allen v. Wright,* 468 U.S. 737, 750 (1984) (internal quotation marks omitted). Although the Government purports to concede Plaintiffs' standing for some affected projects, Gov't Memo. at 14-15, parties cannot confer jurisdiction by consent or waiver. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). As explained in this section, Plaintiffs' aesthetic interests cannot confer standing *here*, even if those same interests could establish standing *in another case*: "standing is not dispensed in gross." *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996). Instead, Plaintiffs must establish standing independently for each Government action that they seek to overturn. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006). Plaintiffs cannot do so here.

At its constitutional minimum, standing presents the tripartite test of whether the party invoking a court's jurisdiction raises an "injury in fact" under Article III: (a) a legally cognizable injury (b) that is both caused by the challenged action and (c) redressable by a court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992). To qualify as "an invasion of a legally

protected interest," moreover, an injury in fact must be both "concrete and particularized" to the plaintiff and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). The opposite of a "concrete and particularized" injury is "a generalized grievance" that is "plainly undifferentiated" to the plaintiff and "common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 176-77 (1974) (interior quotation marks omitted). Further, a plaintiff's "'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require." *Defenders of Wildlife*, 504 U.S. at 564. To the extent that Plaintiffs' alleged injuries are even cognizable, those injuries are too generalized to support standing.

### 1. Plaintiffs' aesthetic interests are not cognizable.

Aesthetic injuries have no claim to qualify as legally protected interests here because Congress allowed the Government to waive environmental-review statutes for these projects, and the Government has waived them. Specifically, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, PUB. L. NO. 104-208, Div. C, 110 Stat. 3009, 3009-546 to 3009-724 ("IIRIRA"), gave DHS's predecessor the discretionary (and unreviewable) authority to waive environmental review for certain border-wall projects, *id.* at § 102(c)(1), 110 Stat. at 3009-555, and the Real ID Act of 2005, PUB. L. NO. 109-13, Tit. I, Div. B, 119 Stat. 231, 302-11, broadened that waiver authority, and transferred it to DHS. *Id.* § 102, 119 Stat. at 306 (codified at 8 U.S.C. § 1103 note); *Defenders of Wildlife v. Chertoff*, 527 F. Supp. 2d 119, 122 n.3 (D.D.C. 2007); *In re Border Infrastructure Envtl. Litig.*, 915 F.3d 1213, 1221-26 (9th Cir. 2019) (majority); *id.* at 1226-27 (Callahan, J., dissenting). Because Plaintiffs have no legal protection for their aesthetic interests, this Court erred in finding standing.

Indeed, the Supreme Court recently denied a petition for a writ of *certiorari* in *Ctr. for*

*Biological Diversity v. Wolf*, No. 19-975, 2020 U.S. LEXIS 3479 (June 29, 2020). Plaintiffs'

petition presented the question "Whether IIRIRA § 102(c)—which grants the Secretary of

Homeland Security unfettered discretion to waive all federal, and related state, local, and tribal

laws, regulations, and legal requirements, and sets forth no standards or criteria to apply in

determining whether such waiver is necessary for expeditious border wall construction—violates

the separation of powers, the non-delegation doctrine, and the Presentment Clause of the

Constitution of the United States."[4] The Supreme Court's rejection of Plaintiffs' claims dooms the

ability of Plaintiffs to premise standing on aesthetic interests, given that the environmental-review

laws protecting Plaintiffs' interests have been waived. While Plaintiffs may have *interests*, they

do not have *legally protected interests*.

## 2.   Plaintiffs lack an injury in fact because they lack a legally protected interest.

In general, a plaintiff can premise its standing on non-economic injuries, *Valley Forge*

*Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 486 (1982)

("standing may be predicated on noneconomic injury"), including a "change in the aesthetics and

ecology of [an] area," *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). But the threshold

requirement for the "the irreducible constitutional minimum of standing" is that a plaintiff suffered

an "injury in fact" through "an invasion of a *legally protected interest* which is … concrete and

particularized" to that plaintiff. *Defenders of Wildlife*, 504 U.S. at 560 (emphasis added). To be

sure, the requirement for particularized injury typically poses the biggest problem for plaintiffs —

for example, *Valley Forge Christian College* and *Morton*, *supra*, turned on the lack of a

---

[4]      The Question Presented is available in the petition for a writ of *certiorari* (Jan. 31, 2020)
at      https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-
975.html (last visited July 10, 2020).

particularized injury — but the requirement for a legally protected interest is even more basic.

As the Supreme Court recently explained in rejecting standing for *qui tam* relators based on their financial stake in a False Claims Act penalty:

> There is no doubt, of course, that as to this portion of the recovery — the bounty he will receive if the suit is successful — a *qui tam* relator has a concrete private interest in the outcome of the suit. But the same might be said of someone who has placed a wager upon the outcome. *An interest unrelated to injury in fact is insufficient to give a plaintiff standing*. The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right. A *qui tam* relator has suffered no such invasion[.]

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-73 (2000) (emphasis added, interior quotation marks, citations, and alterations omitted); *accord McConnell v. FEC*, 540 U.S. 93, 226-27 (2003). Thus, even a monetary loss does not necessarily qualify as an injury in fact. Rather, "Art. III standing requires an injury with a nexus to the substantive character of the statute or regulation at issue." *Diamond v. Charles*, 476 U.S. 54, 70 (1986).[5] The statutes at issue here have no nexus to Plaintiffs' aesthetic injuries. Indeed, § 284 expressly allows the planned border projects to be built. For this reason, Plaintiffs have not suffered an injury in fact under the statutes at issue here.[6]

---

[5]     After rejecting standing based on an interest in a *qui tam* bounty, *Stevens* held that *qui tam* relators have standing on an assignee theory (*i.e.*, the government has an Article III case or controversy and assigns a portion of it to the *qui tam* relator). *Stevens*, 529 U.S. at 771-73. Outside of taxpayer-standing cases that implicate the Establishment Clause, the nexus test of *Flast v. Cohen*, 392 U.S. 83 (1968), typically arises in cases challenging a failure to prosecute. *See*, *e.g.*, *Nader v. Saxbe*, 497 F.2d 676, 680-82 (D.C. Cir. 1974); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973) ("in the unique context of a challenge to a criminal statute, appellant has failed to allege a sufficient nexus between her injury and the government action which she attacks"). Even without the *Flast* nexus test, Article III nonetheless requires that the claimed interest qualify as a "legally protected right." *Stevens*, 529 U.S. at 772-73.

[6]     Although analogous to the prudential zone-of-interests test, *Stevens* and *McConnell* make clear that the need for a *legally protected interest* is an element of the threshold inquiry under Article III of the Constitution, not a merely prudential inquiry that a party could waive.

Fifty years ago, federal courts would have rejected as a generalized grievance any injuries to a plaintiff that challenged only the federal funding of an otherwise lawful project:

> This Court has, it is true, repeatedly held that … injury which results from lawful competition cannot, in and of itself, confer standing on the injured business to question the legality of any aspect of its competitor's operations. But competitive injury provided no basis for standing in the above cases simply because the statutory and constitutional requirements that the plaintiff sought to enforce were in no way concerned with protecting against competitive injury.

*Hardin v. Ky. Utils. Co.*, 390 U.S. 1, 5-6 (1968) (citations omitted); *Alabama Power Co. v. Ickes*, 302 U.S. 464, 478-79 (1938). This Court need not resolve whether *Ickes* and *Hardin* remain good law because *Stevens*, *McConnell*, and *Diamond* certainly do. Plaintiffs' aesthetic injuries may suffice to support standing for environmental review statutes, but they do not suffice under the statutes at issue here.

### 3.      Plaintiffs' diverted resources do not provide Plaintiffs with standing in their own right.

In addition to arguing for injuries to their members' aesthetic sensibilities, the institutional Plaintiffs also claim injury in the form of their frustrated efforts or increased expenditures to counteract the Government's failure to follow Plaintiffs' understanding of the applicable laws. Although the Court did not address diverted-resource standing, the issue may remain if this Court accepts that Plaintiffs' aesthetic injuries are not legally protected. For that reason, *Amicus* addresses that form of standing here.

Under Circuit precedent, such diverted-resource injuries can qualify for standing, *People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015) ("*PETA*"), even though such injuries should be mere self-inflicted injuries that do not provide standing. *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1152-53 (2013); *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976). If mere spending could manufacture standing, any private advocacy group could establish standing against any government action, but that clearly is not the

law. *Morton,* 405 U.S. at 739 (organizations lack standing to defend "abstract social interests").

This diverted-resource form of standing derives from *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372-73 (1982), and — as Judge Millett explained in her *PETA* dissent — "[t]he problem is not *Havens*[; the] problem is what our precedent has done with *Havens*." 797 F.3d at 1100-01 (Millett, J., dissenting). Under the unique statutory and factual situation in *Havens*, a housing-rights organization's diverted resources provided it standing, but in most other settings such diverted resources are mere self-inflicted injuries. As applied here, the diverted-resource basis for standing extends — *at most* — to Plaintiffs' future environmental claims, which the DHS has the authority to waive. *See* Section I.A.1, *supra*.

Relying on *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 102-09 (1979), *Havens* held that the Fair Housing Act at issue there extends "standing under § 812 … to the full limits of Art. III," so that "courts accordingly lack the authority to create prudential barriers to standing in suits brought under that section." 455 U.S. at 372. In this way, the Fair Housing Act collapsed the standing inquiry into the question of whether the alleged injuries met the Article III minimum of injury in fact. *Id.* The typical organizational plaintiff and typical statute lack several critical criteria from *Havens*.

First, the *Havens* organization had a statutory right (backed by a statutory cause of action) to truthful information that the defendants denied to it. Because "Congress may create a statutory right … the alleged deprivation of [those rights] can confer standing." *Warth v. Seldin,* 422 U.S. 490, 514 (1975). Under a typical statute, a typical organizational plaintiff has no claim to any rights related to its own voluntarily diverted resources.

Second, and related to the first issue, the injury that an organizational plaintiff claims must align with the other components of its standing, *Mountain States Legal Found. v. Glickman,* 92

8

F.3d 1228, 1232 (D.C. Cir. 1996), including the allegedly cognizable right. In *Havens,* the statutorily protected right to truthful housing information aligned with the alleged injury (costs to counteract false information that violated the statute). By contrast, under a typical statute, there will be no rights even *remotely* related to a third-party organization's spending.

Third, and most critically, the *Havens* statute eliminated prudential standing, so the zone-of-interest test did not apply. When a plaintiff — whether individual or organizational — sues under a statute that does not eliminate prudential standing, that plaintiff cannot bypass the zone-of-interest test or other prudential limits on standing.[7] Typically, it would be fanciful to suggest that a statute has private, third-party spending in its zone of interests. Here, this Court or a future court might — or might not — find that the environmental-review statutes seek to ease Plaintiffs' mission by protecting Plaintiffs' spending to review alleged environmental violations,[8] but none of Plaintiffs' *present* claims fall within the zone of interests of the cited statutory or constitutional provisions.

Non-mutual estoppel does not apply to the federal government, *United States v. Mendoza,* 464 U.S. 154 (1984), and *stare decisis* cannot be applied so conclusively that, in effect, it operates as preclusion against non-parties to the prior litigation. *South Central Bell Tel. Co. v. Alabama,* 526 U.S. 160, 167-68 (1999). While Judge Millet acknowledged problematic precedent under *Havens*, those "cases cannot be read as foreclosing an argument that they never dealt with." *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality); *Cooper Indus., Inc. v. Aviall Serv., Inc.,* 543

---

[7]     For example, applying *Havens* to diverted resources in *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 939 (D.C. Cir. 1986) (R.B. Ginsburg, J.), then-Judge Ginsburg correctly recognized the need to ask whether those diverted resources fell within the zone of interests of the Age Discrimination Act. 789 F.2d at 939.

[8]     As indicated, the Government has the authority to waive any future environmental claims before they materialize. *See* Section I.A.1, *supra*.

U.S. 157, 170 (2004). *Amicus* respectfully submits that this Court has a constitutional obligation to consider diverted-resource standing without regard to either issue preclusion or preclusive resort to *stare decisis* from decisions that did not expressly consider the foregoing issues.

**B.**     **Plaintiffs lack the "direct injury" required for an action in equity.**

With respect to Plaintiffs' claims under § 284, § 8005, and § 2808, this Court indicated that Plaintiffs may have an equitable *ultra vires* cause of action, even if they lack an APA action. Even if Plaintiffs have standing for their APA claim, they lack the equity needed to bring an *ultra vires* action against the Government. Because this type of equitable review is an exception to the United States' sovereign immunity, this threshold issue is jurisdictional.

While "nothing in the subsequent enactment of the APA altered the [*ultra vires*] doctrine of review," and the APA's enactment did "not repeal the review of *ultra vires* actions recognized long before," *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (internal quotation marks omitted), it is equally true that the APA's enactment did not *expand* non-APA *ultra vires* review, either. As explained in this section, Plaintiffs lack the direct interest needed to sue in equity.

Plaintiffs need more than an aesthetic injury that would — or at least *could* — suffice for standing under the APA. Instead, an equity plaintiff or petitioner must invoke a statutory or constitutional right for equity to enforce, such as life, liberty, or property under the Due Process Clause or equal protection under the Equal Protection Clause or its federal equivalent in the Fifth Amendment. *See*, *e.g.*, *United States v. Lee*, 106 U.S. 196, 220-21 (1882) (property); *Ex parte Young*, 209 U.S. 123, 149 (1908) (property); *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) (liberty); *cf. Wadley S. R. Co. v. Georgia*, 235 U.S. 651, 661 (1915) ("any party affected by [government] action is entitled, *by the due process clause*, to a judicial review of the question as to whether he has been thereby deprived of a right protected by the Constitution") (emphasis

added). Plaintiffs' claimed injuries here fall short of what equity requires.

Unlike the APA and the liberal modern interpretation of Article III, pre-APA equity review requires "direct injury," which means "a wrong which directly results in the violation of a legal right." *Ickes*, 302 U.S. at 479. Without that elevated level of direct injury, there is no review:

> It is an ancient maxim, that a damage to one, without an injury in this sense, (damnum absque injuria), does not lay the foundation of an action; because, if the act complained of does not violate any of his legal rights, it is obvious, that he has no cause to complain. Want of right and want of remedy are justly said to be reciprocal. Where therefore there has been a violation of a right, the person injured is entitled to an action. The converse is equally true, that where, although there is damage, there is no violation of a right no action can be maintained.

*Id.* (alterations, citations, and interior quotation marks omitted); *cf. Blessing v. Freestone,* 520 U.S. 337, 340 (1997) ("to seek redress through §1983, [plaintiffs] must assert the violation of a federal *right,* not merely a violation of federal *law*") (emphasis in original); *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 119-20 (2005) ("§1983 permits the enforcement of '*rights,* not the broader or vaguer 'benefits' or 'interests'") (*quoting Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002) (emphasis in *Gonzaga*)). In short, Plaintiffs would not have an action in equity, even if the Government had violated the appropriation statutes here. None of the statutes that Plaintiffs seek to enforce gives Plaintiffs a right to enforce in equity. To the contrary, Plaintiffs are bystanders to the changes taking place — whether lawfully or not — to someone else's property.

## II.   PLAINTIFFS LACK A VIABLE CLAIM ON THE MERITS.

Assuming *arguendo* that this Court reaches the merits, this Court should reject Plaintiffs' claims on the merits. Simply put, APA claims under § 739 and *ultra vires* claims under § 284, § 8005, and § 2808 lack merit.

### A.   Plaintiffs' APA claim under § 739 fails because DHS's funding under the CAA did not repeal DOD's funding under DOD's appropriations authority by implication.

Plaintiffs primarily have argued that the CAA's $1.375 billion for DHS border-wall

construction in the 2019 fiscal year displaced any other authority that either DHS or even DOD had for other border-wall projects under other statutory authority. At bottom, this is an argument for a repeal by implication: DHS's 2019 appropriation impliedly repealed DOD's earlier 2019 appropriation. Before addressing why CAA's § 739 does not impliedly repeal DOD's authority, *Amicus* notes that repeals by implication are disfavored generally and precluded under the NEA.

With respect to repeals by implication, the Supreme Court recently has explained that a court will not presume repeal "unless the intention of the legislature to repeal is clear and manifest" and "unless the later statute expressly contradicts the original act or … such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (interior alterations, citations, and quotation marks omitted). Given its silence on DOD transfers and expenditures for border-wall funding, a DHS appropriation cannot implicitly repeal DOD's existing authority.

With respect to the Government's NEA-based actions, the common law canon against repeals by implication is bolstered by the NEA statute itself. A 2019 statute like the CAA cannot repeal the NEA by implication: "No law enacted after September 14, 1976, shall supersede [the NEA] unless it does so in specific terms, referring to [the NEA], and declaring that the new law supersedes the provisions of [the NEA]." 50 U.S.C. § 1621(b). Plaintiffs' CAA-based arguments thus fail to state a claim with respect to the Government's NEA actions under § 2808 because the CAA did not even attempt to tie the President's hands in an emergency.

With that background, Plaintiffs cannot prevail under § 739. While that section may be open to Plaintiffs' argument that the CAA capped all border-wall funding at the CAA's $1.375 billion, § 739 is equally open to the Government's argument that "program, project, or activity" is a term of art in the budgeting context that refers to DHS activities. *See* Gov't Memo. at 39-42.

Under that reading, § 739 and the CAA are silent on DOD expenditures and DOD programs, projects, or activities under 2808.

The canon against repeal by implication compels this Court to reject Plaintiffs' argument because the CAA does not "clearly and manifestly" support that argument.

**B.**     **Plaintiffs'** *ultra vires* **claims under§ 284, § 8005, and § 2808 fail on the merits.**

If the Court determines to reach the merits of Plaintiffs' *ultra vires* claims, nothing in the motion-to-dismiss decision binds the parties or the Court:

> The [court's] suggestion that the doctrine of *Ex parte Young* is inapplicable because the Commission's order was probably not inconsistent with federal law is unavailing: The inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim[.]

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 638 (2002). Thus, in deciding not to dismiss Plaintiffs' *ultra vires* claim, this Court did not decide that anything the Government has done is — or even "probably" is — *ultra vires*. As shown in this section, the Government has not violated § 284, § 8005, or § 2808.

**1.**     **The Government's actions comply with § 284.**

Plaintiffs cannot dispute that funds under **§** 284 are available for "the counterdrug activities … of any other department or agency of the Federal Government," 10 U.S.C. § 284(a), expressly including "[c]onstruction of roads and fences and installation of lighting to block drug smuggling corridors across international boundaries of the United States." *Id.* § 284(b)(7). Insofar as a border barrier falls within § 284(b)(7)'s ambit as a fence to block smuggling corridors across the border, that ends the inquiry with respect to **§** 284 funds.

**2.**     **The Government's actions comply with § 8005.**

Section 8005 provides Plaintiffs with three potential statutory arguments against transferring funds under § 8005: (1) the transfers violate § 8005 because they did not address

unforeseen circumstances, (2) the transfers violate § 8005 because the CAA denied the Executive Branch funds for this purpose, and (3) § 8005 does not authorize transfers for military construction. *See* Pub. L. No. 115-245, div. A, § 8005, 132 Stat. at 2999. None of these potential arguments has merit.[9]

Plaintiffs cannot argue that § 8005's limitation to "unforeseen military requirements," *id.*, bars these transfers. When Congress enacted DOD's 2019 appropriation in 2018, it was unforeseeable *to the military* both that Congress would deny funding to DHS in the DHS appropriation in 2019 and that DHS would request assistance from the military in 2019. That is all that § 8005's proviso requires with respect to foreseeability. The entire basis for the *military* project arose *after* Congress enacted DOD's 2019 appropriation. The project was, therefore, unforeseen for purposes of § 8005.

Not can Plaintiffs argue that Congress — through the CAA — denied funds for these DOD projects. The notion that the CAA limited DOD's *pre-existing* authority would — if accepted by this Court — amount to a repeal by implication of the DOD appropriation and funding statutes. As explained in Section II.A, *supra*, this Court must reject that argument because the two acts — DHS's 2019 appropriation and DOD's prior 2019 appropriation — can be read together to allow DOD's independent projects, regardless of DHS's 2019 projects.

Finally, Plaintiffs cannot argue that § 8005 prohibits transfers for military construction with regard to transferring "funds made available … to [DOD] for military functions (except military

---

[9]     The requirement that transfers fund higher-priority projects, *id.*, is committed to DOD's discretion, with "no law to apply" under *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), and "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830 (1985). A federal court has no judicially manageable standard to weigh — much less to set — DOD priorities.

construction) between such appropriations or funds … to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred." PUB. L. NO. 115-245, div. A, § 8005, 132 Stat. at 2999. The military-construction exception applies to the fund or appropriation *from which* DOD transfers money, not to the fund or appropriation *to which* DOD transfers money. In other words, § 8005 allows transfer *to* military construction and restricts transfer *from* military construction. As such, § 8005 does limit the transfer of funds for military construction, as many historical examples show. *See*, *e.g.*, H.R. REP. NO. 103-200, at 331 (1993) ("commend[ing]" DOD's efforts to support the reinforcement of "border fence along the 14-mile drug smuggling corridor along the San Diego-Tijuana border area"); *cf.* H.R. REP. NO. 110-652, at 420 (2008) (describing border fencing as an "invaluable counter-narcotics resource"). In sum, nothing in § 8005 restricts the Government's border-barrier projects.

3.    **The Government's actions comply with § 2808.**

Plaintiffs cannot dispute that funds under **§** 2808 are available during declared emergencies for "military construction projects," 10 U.S.C. § 2808(a), which are defined to "include[] all military construction work," *id.* § 2801(b), which is defined to "include[] any construction, development, conversion, or extension of any kind carried out with respect to a military installation, whether to satisfy temporary or permanent requirements, or any acquisition of land or construction of a defense access road." *Id.* § 2801(a). In turn, "military installation" is defined as "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department." *Id.* § 2801(c)(4). *Amicus* respectfully submits that a border barrier meets these definitions. If the Army is sent to the border, its activity there will of course be under the jurisdiction of the Secretary of the Army, and the construction of a border barrier would be "construction" "with respect to [the] military installation" consisting of the Army's activity.

## **CONCLUSION**

For the foregoing reasons and those cited by the Government, this Court should grant the

Government's motion for summary judgment on Plaintiffs' remaining claims.

Dated: July 10, 2020                              Respectfully submitted,


                                                  /s/ Lawrence J. Joseph

Christopher J. Hajec                              Lawrence J. Joseph, D.C. Bar No. 464777
Immigration Reform Law Institute                  1250 Connecticut Av NW Suite 700-1A
25 Massachusetts Ave. NW, Suite 335               Washington, DC 20036
Washington, DC 20001                              Telephone: (202) 355-9452
Telephone: (202) 232-5590                         Facsimile: (202) 318-2254
chajec@irli.org                                   ljoseph@larryjoseph.com

                                                  *Counsel for Rep. Andy Barr*