**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; ANIMAL LEGAL DEFENSE FUND, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:19-cv-00408 (TNM) |
| DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.* | |
| Defendants. | |

| | |
|---|---|
| RIO GRANDE INTERNATIONAL STUDY CENTER, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:19-cv-00720 (TNM) |
| DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.* | |
| Defendants. | |

**JOINT APPENDIX**

UNCLASSIFIED/FOUO

MAR 2 1 2019

# ACTION MEMO

Prepared by: James Ross, OASD(HD&GS)
Phone Number: (571) 256-8325

**FOR:** ACTING SECRETARY OF DEFENSE

**FROM:** Kenneth P. Rapuano, Assistant Secretary of Defense, Homeland Defense & Global Security

**SUBJECT:** Department of Homeland Security Request for Department of Defense Support to Block Drug-Smuggling Corridors

**PURPOSE:** To obtain your approval of a Department of Homeland Security (DHS) request for certain assistance in blocking drug-smuggling corridors along the southern border; and for you to direct specific actions by the Under Secretary of Defense (Comptroller)/Chief Financial Officer (USD(C)/CFO) and the Secretary of the Army/Commander, U.S. Army Corps of Engineers.

**COORDINATION:** This action was coordinated with SecArmy, USD(C)/CFO, OGC, ASD(SO/LIC), and the Joint Staff.

**BLUF:** Approving this request will support DHS's efforts to secure the southern border by blocking drug-smuggling corridors. You have the authority under 10 U.S.C. § 284 to use certain DoD funds to construct roads and fences, and to install lighting, to block drug-smuggling corridors across international boundaries of the United States in support of counter-narcotics activities of Federal law enforcement agencies.

**DISCUSSION:**

- On February 25, 2019, the Secretary of Homeland Security requested DoD assistance in blocking up to 11 specific drug-smuggling corridors on Federal land along the southern border of the United States. DHS requested that DoD provide this support in order of stated priority as DoD resources allow by (1) replacing existing vehicle barricades or dilapidated pedestrian barricades with construction of new pedestrian fences (i.e., fences that would block both vehicles and pedestrians), (2) constructing new and improving existing patrol roads, and (3) installing lighting. (TAB D). This support to DHS is consistent with the President's direction in his April 4, 2018, memorandum, "Securing the Southern Border of the United States" (TAB E).

- 10 U.S.C. § 284(b)(7) gives you the authority, using funds from the counter-narcotics support line in DoD's "Drug Interdiction and Counter-Drug Activities, Defense" appropriation, to construct roads and fences, and to install lighting, to block drug-smuggling corridors across international boundaries of the United States in support of counter-narcotic activities of Federal law enforcement agencies.

  - The requirements of Section 284 are met: DHS/Customs and Border Protection (CBP) is a Federal law enforcement agency; DHS has identified each project area as a drug-smuggling corridor; and the work requested by DHS falls within the scope of subsection 284(b)(7) in that it

| SD CA | | DSD SA | |
|---|---|---|---|
| SD SMA | | DSD SMA | |
| SD MA | | DSD MA | |
| CoS | | DSD CA | |
| SD Action Grp | | | |
| ES | | ESH Rvw | SF 3-25 |
| ESR | JLJ 25 | ESD | |

UNCLASSIFIED/FOUO



OSD001680-19/CMD003528-19

UNCLASSIFIED//FOUO

involves construction of fences (including a linear ground detection system), construction of roads, and installation of lighting (supported by grid power and including imbedded cameras).

- Any support provided under Section 284, including under subsection (b)(7), is subject to 10 U.S.C. § 276, which provides that support may not be provided if the provision of such support would adversely affect the military preparedness of the United States.

- On March 1, 2019, you directed an evaluation of the DHS request for assistance (TAB F).

  - The Secretary of the Army/Commander, U.S. Army Corps of Engineers (USACE) provided preliminary cost estimates for the 11 DHS-requested border fencing construction projects, totaling $4.47B (based on construction of a 30-foot bollard fencing) and covering 217.8 miles. If the height of the bollard were changed to 18 feet, the estimated cost would be $3.7B. (TAB G)

  - To meet any level of the support requested by DHS, additional funds must be transferred into the "Drug Interdiction and Counter-Drug Activities, Defense" appropriation using DoD's general transfer authority (GTA), which is provided in Section 8005 of the Department of Defense Appropriations Act, 2019, and Section 1001 of the John S. McCain National Defense Authorization Act (NDAA) for Fiscal Year 2019. Together, these GTA provisions allow total transfers of up to $4B. Congressional notification is required under both sections, but there is no statutory requirement to obtain prior congressional approval.

    o The Department may use GTA only upon a determination by the Secretary of Defense that such action is necessary in the national interest, and the transfer may only be used to provide funding for higher priority items, based on unforeseen military requirements, than those items for which funds were originally appropriated, and in no case for an item for which funds or authorization have been denied by Congress.

    o The USD(C)/CFO has identified $1B of FY 2019 Army military personnel funds as excess to current military personnel requirements and available for transfer into the Drug Interdiction and Counter-Drug Activities, Defense, appropriation (TAB H).

    o You may determine that:
      - Use of GTA is necessary in the national interest (see April 4 memo);
      - Using funding to block drug smuggling corridors is a higher priority than the Army military personnel funds that have become excess to this fiscal year's Army military personnel programmatic requirement;
      - The military requirement for this increased support to DHS was unforeseen at the time of the budget request; and
      - Congress has not denied funding or authorization for support to DHS under Section 284(b)(7).

  - The CJCS indicates that reprogramming "of these funds into the Drug Interdiction and Counter-Drug Activities, Defense account will have no immediate negative impact on joint force readiness. However, if these funds were not reprogrammed they likely would be used to address currently unfunded DoD requirements" (TAB I). The Under Secretary of Defense for

OSD001680-19/CMD003528-19

Administrative Record - Section 284 Projects: 002

UNCLASSIFIED/~~FOUO~~

Policy (USD(P)) concurs that there is no reduction in readiness. Because there is no adverse effect on readiness and the source funds are excess to need, providing the recommended support would not adversely affect the military preparedness of the United States.

− The Secretary of the Army requests that if the full $1B is not used for support of DHS under Section 284, the remainder be returned to the Army for reprogramming and funding of unfunded Army requirements.

− During the USD(C)/CFO's mid-year review, additional funds may be identified that are excess to need or are lower-priority programmatic requirements that will not adversely affect military preparedness. The USD(C)/CFO and the USD(P) will coordinate with the CJCS and the heads of other appropriate DoD Components to provide a recommendation regarding construction of additional DHS-requested projects under Section 284.

**OPTIONS:**

• DHS's request for assistance includes approximately 218 miles of road construction, lighting installation, and fencing construction, set out as 11 distinct projects. DHS specifically requested "that DoD's support under 10 U.S.C. § 284 address the requirements in order of priority as DoD resources allow."

− All projects require that the Secretary of Homeland Security use her authority to waive such legal requirements (including environmental laws) as she determines are necessary to waive to ensure expeditious construction. Prior to executing such a waiver, the Secretary of Homeland Security must consult with relevant governmental officials, Indian tribes, and property owners to minimize effects on the environment, culture, commerce, and quality of life. The DHS request provides that DHS will be responsible for applicable environmental planning and compliance, including stakeholder outreach and consultation.

− CBP has indicated that the timeline to complete consultations and execute waivers will be longer if multiple projects are undertaken.

• We also considered USACE's ability to undertake projects using its multiple award task order contract (MATOC), which was developed as a contracting vehicle for border-fencing construction and has a limit of $350M per individual task order. USACE could propose a task order in excess of $350M under Federal Acquisition Regulation Part 16.5 procedures. Although a contractor would have to agree to a task order above $350M, we believe that contractors will agree to larger task orders. Using the MATOC improves contract management and may reduce legal challenges to the projects since it was competitively bid.

− Although the MATOC is not currently available because it is under protest, USACE anticipates that the bid protest will be resolved in time to support DHS. If the protest is not resolved as quickly as anticipated, USACE can use a new sole-source contract, which has somewhat higher legal risk.

UNCLASSIFIED/~~FOUO~~

OSD001680-19/CMD003528-19
Administrative Record - Section 284 Projects: 003

UNCLASSIFIED//FOUO

- With the constraint of $1B in available resources, USACE would be able to construct approximately 57 miles of 18-foot or 46 miles of 30-foot bollard fencing. The CBP Commissioner confirmed that CBP still strongly prefers 30-foot bollard fencing.

- The DHS order of priority, mileage, and estimated cost for each project are as follows:

| DHS Priority | Project Name | Cost / Miles ($17M/mile) 18-foot bollard | Cost/Miles ($20.5/ mile) 30-foot bollard |
|---|---|---|---|
| 1 | Yuma Sector Project 1 | $ 85M / 5 miles | $103M / 5 miles |
| 2 | Yuma Sector Project 2 | $102M / 6 miles | $123M / 6 miles |
| 3 | El Paso Sector Project 1, segment 1 | $255M / 15 miles | $308M / 15 miles |
| | El Paso Sector Project 1, segment 2 | $527M / 31 miles | $636M / 31 miles |
| 4 | El Centro Sector Project 1 | $259M / 15.25 miles | $313M /15.25 miles |
| 5 | Tucson Sector Project 1 | $646M / 38 miles | $779M / 38 miles |
| 6 | Tucson Sector Project 2 | $ 85M / 5 miles | $103M /5 miles |
| 7 | Tucson Sector Project 3 | $340M / 20 miles | $410M /20 miles |
| 8 | Tucson Sector Project 4 | $442M / 26 miles | $533M / 26 miles |
| 9 | Yuma Sector Project 3 | $527M /31 miles | $636M /31 miles |
| 10 | El Paso Sector Project 2 | $400M / 23.51 miles | $482M / 23.51 miles |
| 11 | Tucson Sector Project 5 | $ 34M / 2 miles | $41M / 2 miles |

- Addressing the DHS request in order of priority results in the following options:

  - Option 1: DHS "Top 3" Priorities: $969M; 57 miles of 18-foot bollard fencing ($17M/mile).

    PRO: This course of action provides the most mileage for $1B and meets DHS's "Top 3" Border Fencing counter-drug priorities. By building to the 18-foot bollard standard, sufficient savings will be realized to complete all 3 projects for $1B. El Paso Sector Project 1 would tie into existing fencing that is 18-feet high. All projects may be undertaken using the USACE MATOC, thereby limiting the number of contractors able to mount protests.

    CON: Does not meet DHS's desire for 30-foot bollard fencing. USACE would have to justify exceeding the MATOC's normal $350M ceiling and would have to obtain concurrence of the contractor awarded with a task order for Segment 2 of El Paso Sector Project 1. Additionally, there is a greater risk of being unable to execute the projects this fiscal year due to CBP capacity issues in completing multiple environmental consultations and waivers. Requires USACE to manage more projects.

  - Option 2: El Paso Sector Project 1: $943M; 46 miles of 30-foot bollard fencing ($20.5M/mile).

    PRO: Highest-priority single project within available funding. Requires only one use of DHS's waiver authority. Meets DHS's desire for 30-foot bollard fencing.

    CON: Does not account for DHS's two highest priority projects. USACE may award both segments of this project using the MATOC, but Segment 2 (which is above the $350M ceiling) requires contractor consent.

  - Option 3: DHS Priorities 1, 2, 3 (segment 1), 4, and 6: $948M; 46.25 miles of 30-foot bollard fencing.

UNCLASSIFIED//FOUO

OSD001680-19/CMD003528-19

Administrative Record - Section 284 Projects: 004

PRO:  Fully funds the two highest and four of the top six DHS priority projects.  Meets DHS's desire for 30-foot bollard fencing.  All projects may be undertaken using the USACE MATOC, thereby limiting the number of contractors able to mount protests.

CON:  Funds only one segment of DHS Priority 3.  Fewer miles than Option 1.  Additionally, there is a greater risk of being unable to execute projects this fiscal year due to CBP capacity issues in completing multiple environmental consultations and waivers.  In particular, DHS Priority 6 includes an environmentally sensitive area, which could further extend the time required for consultations and delay issuance of a waiver for that specific project.  Requires USACE to manage more projects.

**RECOMMENDATIONS**:

1) Determine, in light of the views of the CJCS and the USD(P), that providing up to $1B in support does not adversely affect the military preparedness of the United States because there is no adverse effect on readiness and the source funds are excess to need.

Approve: _____   Disapprove: _____   Other: _____

MAR 2 5 2019

2) Approve Option 1 -- immediate DoD support to DHS's Priority Projects 1, 2, and 3 (57 miles of 18-foot bollard fence), and sign the letter to the Secretary of Homeland Security at TAB A. This option meets DHS's top 3 priority projects and provides the maximum mileage of 18-foot bollard fencing for $1B.

Approve: _____   Disapprove: _____   Other: _____

MAR 2 5 2019

3) Determine that transferring $1B in funds for this support is in the national interest and that the other requirements of Section 8005 of the Department of Defense Appropriations Act, 2019, and Section 1001 of the John S. McCain NDAA for FY 2019 are met (i.e., that the item to be funded is higher priority than the item for which funds and authority are transferred, that the increase in Section 284(b)(7) support is based on unforeseen military requirements, and that the programmatic increase in Section 284(b)(7) support to DHS has not been denied by Congress).

Approve: _____   Disapprove: _____   Other: _____

MAR 2 5 2019

4) Sign the memorandum to the USD(C)/CFO at TAB B – authorizing the transfer of up to $1B of FY 2019 Army military personnel funds into the "Drug Interdiction and Counter-Drug Activities, Defense" appropriation, and direct the USD(C)/CFO, upon approval of the transfer by the Office of Management and Budget, to notify Congress promptly of the transfer.

Approve: _____   Disapprove: _____   Other: _____

MAR 2 5 2019

5) Sign the memorandum to the Secretary of the Army at TAB C, authorizing the Commander, U.S. Army Corps of Engineers, to undertake DHS Priority Project 3.

Approve: _____   Disapprove: _____   Other: _____

MAR 2 5 2019

COORDINATION:  TAB J

Attachments:  As stated

OSD001680-19/CMD003528-19
Administrative Record - Section 284 Projects: 005

# TAB

# A



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

MAR 2 5 2019

The Honorable Kirstjen Nielsen
Secretary of Homeland Security
Washington, DC 20528

Dear Madam Secretary:

Thank you for your February 25, 2019 request that the Department of Defense provide support to your Department's effort to secure the southern border by blocking up to 11 drug-smuggling corridors along the border through the construction of roads and fences and the installation of lighting.

10 U.S.C. § 284(b)(7) gives the Department of Defense the authority to construct roads and fences and to install lighting to block drug-smuggling corridors across international boundaries of the United States in support of counter-narcotic activities of Federal law enforcement agencies. For the following reasons, I have concluded that the support you request satisfies the statutory requirements:

- The Department of Homeland Security (DHS)/Customs and Border Protection (CBP) is a Federal law enforcement agency;

- DHS has identified each project area as a drug-smuggling corridor; and

- The work requested by DHS to block these identified drug smuggling corridors involves construction of fences (including a linear ground detection system), construction of roads, and installation of lighting (supported by grid power and including imbedded cameras).

Accordingly, at this time, I have decided to undertake Yuma Sector Projects 1 and 2 and El Paso Sector Project 1 by constructing 57 miles of 18-foot-high pedestrian fencing, constructing and improving roads, and installing lighting as described in your February 25, 2019 request.

As the proponent of the requested action, CBP will serve as the lead agency for environmental compliance and will be responsible for providing all necessary access to land. I request that DHS place the highest priority on completing these actions for the projects identified above. DHS will accept custody of the completed infrastructure, account for that infrastructure in its real property records, and operate and maintain the completed infrastructure.

The Commander, U.S. Army Corps of Engineers, is authorized to coordinate directly with DHS/CBP and immediately begin planning and executing up to $1B in support to DHS/CBP by undertaking the projects identified above.

Additional support may be available in the future, subject to the availability of funds and other factors.

Patrick M. Shanahan
Acting

2

Administrative Record - Section 284 Projects: 008





**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

MAR 2 5 2019

MEMORANDUM FOR UNDER SECRETARY OF DEFENSE (COMPTROLLER)/CHIEF
                  FINANCIAL OFFICER

SUBJECT:  Funding Construction in Support of the Department of Homeland Security Pursuant
           to 10 U.S.C. § 284

On February 25, 2019 the Secretary of Homeland Security requested that the DoD
provide support to the Department of Homeland Security's (DHS) effort to secure the southern
border by blocking up to 11 drug-smuggling corridors along the border through the construction
of roads and fences and the installation of lighting.  I have determined that the requirements of
title 10, U.S.C., section 284, have been satisfied.  Accordingly, I have approved DoD support for
Yuma Sector Projects 1 and 2 and El Paso Sector Project 1 (DHS Priority Projects 1, 2, and 3)
and have authorized up to $1B in funding for the construction of 18-foot high pedestrian fencing,
the construction and improvement of roads, and the installation of lighting to block drug-
smuggling corridors along the southern border.

I have also decided that the Department will reprogram funds to provide the support
described above.  This support will be funded through a transfer of $1B of FY 2019 Army
military personnel appropriations into the "Drug Interdiction and Counter-Drug Activities,
Defense" appropriation.  I am advised that this amount is excess to the Army's current
programmatic needs with respect to military personnel.  You should undertake a reprogramming
action to effectuate such transfer, as authorized by law.

The reprogramming action that I am directing satisfies the statutory requirements.  I have
determined that a transfer of funds and authorizations of appropriations for the construction of
fences and roads and the installation of lighting to block drug-smuggling corridors is in the
national interest.  In an April 4, 2018 memorandum, "Securing the Southern Border of the United
States," the President directed DoD to assist DHS in stopping the flow of illegal drugs into the
United States.  The reprogramming action is necessary to advance that goal.  I have also
determined that the other requirements of Section 8005 of the DoD Appropriations Act, 2019,
and Section 1001 of the John S. McCain National Defense Authorization Act for FY 2019 are
met as set forth below:

- The items to be funded (Yuma Sector Projects 1 and 2 and El Paso Sector Project 1)
  are a higher priority than the item for which funds and authority are transferred (excess
  Army military personnel funds) because Yuma Sector Projects 1 and 2 and El Paso
  Sector Project 1 are necessary in the national interest to prevent the flow of drugs into the
  United States and the Army military personnel funds are excess to need due to under-
  execution and lower-than-expected end-strength.

- Support to law enforcement under Section 284 for the construction of fences and
  roads and the installation of lighting to block drug-smuggling corridors is a military
  requirement assigned by statute.  The need to provide support for Yuma Sector Projects 1



OSD001680-19/CMD003530-19

and 2 and El Paso Sector Project 1 was an unforeseen military requirement not known at the time of the FY 2019 budget request.

- Support under Section 284 for construction of roads and fences and the installation of lighting, including for Yuma Sector Projects 1 and 2 and El Paso Sector Project 1, has not been denied by Congress.

The funds that will be used for this project are excess to the need for which they were appropriated, and therefore, the use of such funds will not have a negative impact on joint force readiness. As such, I have determined that providing the requested support for Yuma Sector Projects 1 and 2 and El Paso Sector Project 1 will not adversely affect the military preparedness of the United States.

This $1B in funds will be allocated to the Department of the Army with instructions to allocate it further to the U.S. Army Corps of Engineers to undertake fence and road construction and lighting installation for the approved project.

No funds may be transferred or re-programmed from the drug-demand-reduction program, the National Guard counter-drug program, or the National Guard counter-drug schools program in order to fund subsection 284(b)(7) support to DHS.

You will comply with all statutory requirements, but will do so without regard to comity-based DoD policies that prescribe prior approval from congressional committees.

My point of contact is Kenneth Rapuano, Assistant Secretary of Defense for Homeland Defense and Global Security.

Patrick M. Shanahan
Acting

cc:
Secretary of the Army
Chairman of the Joint Chiefs of Staff
Under Secretary of Defense for Policy
General Counsel of the Department of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant to the Secretary of Defense for Public Affairs
Commander, U.S. Army Corps of Engineers

Administrative Record - Section 284 Projects: 011

# TAB

# C



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

MAR 2 5 2019

MEMORANDUM FOR SECRETARY OF THE ARMY

SUBJECT:   Construction of Roads and Fences along the U.S. Southern Border in Support of the
Department of Homeland Security

On February 25, 2019 the Secretary of Homeland Security requested that the DoD
provide support to the Department of Homeland Security's (DHS) effort to secure the southern
border by blocking up to 11 drug-smuggling corridors along the border, through the construction
of roads and fences and the installation of lighting.

Having determined that the requirements of title 10, U.S.C, section 284, have been
satisfied, I have decided to provide up to $1B of support for Yuma Sector Projects 1 and 2 and El
Paso Sector Project 1, specifically by constructing 57 miles of new 18-foot pedestrian fencing,
constructing and improving roads, and installing lighting.

I have directed the Under Secretary of Defense (Comptroller)/Chief Financial Officer to
transfer $1B into the Drug Interdiction and Counter-Drug Activities, Defense, account.  That
$1B will be allocated to the Department of the Army with instructions to further allocate it to the
U.S. Army Corps of Engineers to undertake the DHS priority projects identified above.

The U.S. Army Corps of Engineers will be the construction agent for this support and
will take all necessary action to undertake construction this fiscal year.  In light of the urgent and
compelling nature of the crisis at the southern border, as described by the President, Secretary of
Homeland Security, and other DHS officials, you should undertake construction as quickly as
possible, consistent with applicable law.

As the proponent of the requested action, Customs and Border Protection will serve as
the lead agency for environmental compliance and will be responsible for providing all necessary
access to land. DHS will accept custody of the completed infrastructure, account for that
infrastructure in its real property records, and operate and maintain the completed infrastructure.

My point of contact is Kenneth Rapuano, Assistant Secretary of Defense for Homeland
Defense and Global Security.

Patrick M. Shanahan
Acting

cc:
Chairman of the Joint Chiefs of Staff
Under Secretary of Defense (Comptroller) / Chief Financial Officer
Under Secretary of Defense for Policy
General Counsel of the Department of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant to the Secretary of Defense for Public Affairs
Commander, U.S. Army Corps of Engineers



OSD001580-19/CMD003531-19

# TAB

# D



*Executive Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

February 25, 2019

MEMORANDUM FOR:    CAPT Hallock N. Mohler Jr.
                   Executive Secretary
                   Department of Defense (DoD)

FROM:              Christina Bobb
                   Executive Secretary
                   Department of Homeland Security (DHS)

SUBJECT:           Request for Assistance Pursuant to 10 U.S.C. § 284

## I. Overview

As the government department tasked with border security, the Department of Homeland Security (DHS), through U.S. Customs and Border Protection (CBP), is requesting that the Department of Defense assist DHS in its efforts to secure the southern border. The Secretary has directed me to transmit this request for assistance to your attention. This memorandum supersedes the February 22, 2019 version.

In Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (IIRIRA), 8 U.S.C. § 1103 note, Congress has directed DHS to construct border infrastructure in areas of high illegal entry to deter illegal crossing of both drugs and people into the United States. Pursuant to Section 102, DHS has identified the areas set forth in Section II below as areas of high illegal entry where CBP must take action (the Project Areas).

Within the Project Areas, DHS is experiencing large numbers of individuals and narcotics being smuggled into the country illegally. The Project Areas are also used by individuals, groups, and transnational criminal organizations as drug smuggling corridors. Mexican Cartels continue to remain dominant in these areas, influencing and controlling narcotics and human smuggling operations, within their respective strongholds.

DHS must use its authority under Section 102 of IIRIRA to install additional physical barriers and roads in the vicinity of the United States border in order to deter and prevent illegal crossings within the Project Areas. The construction of border infrastructure within the Project Areas will support DHS's ability to impede and deny illegal entry and drug smuggling activities within the Project Areas.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 2

The Project Areas identified are adjacent to some of the most densely populated metropolitan areas of Mexico and are also home to some of the strongest and most violent drug cartels in the world.  Deterring and preventing illegal cross-border activity will help stem the flow of illegal narcotics and entries in these areas.  Similarly, the improved ability to impede, deny, and be mobile within the Project Areas creates a safer operational environment for law enforcement.

To support DHS's action under Section 102 of IIRIRA, DHS is requesting that DoD, pursuant to its authority under 10 U.S.C. § 284(b)(7), assist with the construction of fences roads, and lighting within the Project Areas to block drug-smuggling corridors across the international boundary between the United States and Mexico.

## II. Capabilities Requested

Within the Project Areas there is existing vehicle fence and dilapidated pedestrian fencing.  Vehicle fencing is intended to stop vehicles from illegally entering the United States, but can be climbed over or under by individuals.  Pedestrian fencing is intended to prevent and deter individuals and vehicles from illegally crossing into the United States.

DHS requests that DoD assist in the execution of projects, within the Project Areas set forth below, to: (1) replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing; (2) construct roads; and (3) install lighting.

The new pedestrian fencing includes a Linear Ground Detection System, which is intended to, among other functions, alert Border Patrol agents when individuals attempt to damage, destroy or otherwise harm the barrier.  The road construction includes the construction of new roads and the improvement of existing roads.  The lighting that is requested has an imbedded camera that works in conjunction with the pedestrian fence. The lighting must be supported by grid power.

The segments of fence within the Project Areas identified below are situated on federal property.  DHS will be responsible for securing, to the extent required, any other real estate interest or instrument that is required for project execution.  In the event a real estate interest or instrument that is needed for project execution cannot be obtained for a segment of fence within a Project Area in a time frame that is within the requirements of this request for assistance, the segment may be withdrawn from this request.  In addition, DHS will be responsible for any applicable environmental planning and compliance to include stakeholder outreach and consultation associated with the projects.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 3

**Project Areas:**

**II.A.  El Centro Sector**

Within the United States Border Patrol El Centro Sector (El Centro Sector) DHS is requesting that DoD assist by undertaking road construction, by replacing approximately 15 miles of existing vehicle barrier with new pedestrian fencing, and by installing lighting in the specific locations identified below.

The specific Project Area identified below is located in Imperial County, California and has been identified by the Office of National Drug Control Policy (ONDCP) as a High Intensity Drug Trafficking Area (HIDTA).  Multiple local transnational criminal organizations known for smuggling drugs into Calexico from Mexico using a variety of tactics, techniques, procedures, and varying concealment methods operate in this area, including *Cartel De Jalisco Nueva Generacion* (CJNG) as well as remnants of the *Beltran Leyva* Organization and *La Familia Michoacana* organizations.  CJNG, based in Jalisco, was previously a faction of the *Sinaloa* Cartel. CJNG broke away from the *Sinaloa* Cartel and has become an established Mexican Cartel.  The Mexican government has declared CJNG as one of the most dangerous cartels in the country.

Due to the close proximity of urban areas on both sides of the border, the El Centro Sector suffers from some of the quickest vanishing times – that is, the time it takes to illegally cross into the United States and assimilate into local, legitimate traffic.  These quick vanishing times enable the illegal activities of transnational criminal organizations, whether they are smuggling people or narcotics.

Border Patrol's own experience with apprehensions between border crossings bears this out.  In fiscal year 2018, there were over 29,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the El Centro Sector.  Also in fiscal year 2018, Border Patrol had approximately 200 separate drug-related events between border crossings in the El Centro Sector, through which it seized over 620 pounds of marijuana, over 165 pounds of cocaine, over 56 pounds of heroin, and over 1,600 pounds of methamphetamine.

The specific Project Area is as follows:

- *El Centro Project 1:*

    - The project begins approximately 10 miles west of the Calexico Port of Entry continuing west 15.25 miles in Imperial County.
    - Start coordinate: 32.63273, -115.922787; End coordinate: 32.652563, -115.662399

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 4

## II.B.  Yuma Sector

Within the United States Border Patrol Yuma Sector (Yuma Sector) DHS is requesting that DoD assist by undertaking road construction, by replacing approximately 36 miles of existing vehicle barrier and approximately 6 miles of dilapidated pedestrian fencing with new pedestrian fencing, and by installing lighting in the specific locations identified below.  The specific areas identified below are located in Yuma County, Arizona.

Yuma County has been identified by the ONDCP as a HIDTA.  Of particular note is the operation of the *Sinaloa* Cartel in this area.  The *Sinaloa* Cartel continues to be the most powerful cartel in the country and controls illicit networks and operations in the United States. Despite the arrest of Joaquin "El Chapo" Guzman-Loera, its narcotics business has continued uninterrupted.  As a result, there have been no significant changes within the *Sinaloa* Cartel's hierarchy, or any changes in the illicit operations conducted by the *Sinaloa* Cartel.

Border Patrol's own experience with apprehensions between border crossings bears this out.  In fiscal year 2018, there were over 26,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the Yuma Sector. Also during fiscal year 2018, Border Patrol had over 1,400 separate drug-related events between border crossings in the Yuma Sector, through which it seized over 8,000 pounds of marijuana, over 78 pounds of cocaine, over 102 pounds of heroin, over 1,700 pounds of methamphetamine, and over 6 pounds of fentanyl.

The replacement of ineffective pedestrian fencing in this area is necessary because the older, wire mesh design is easily breached and has been damaged to the extent that it is ineffective.  Additionally, this area is notorious for border violence and narcotics smuggling.  Furthermore, while the deployment of vehicle barrier in the Yuma Sector initially curtailed the volume of illegal cross-border vehicular traffic, transnational criminal organizations quickly adapted their tactics switching to foot traffic, cutting the barrier, or simply driving over it to smuggle their illicit cargo into the United States. Thus, in order to respond to these changes in tactics, DHS now requires pedestrian fencing.

The specific Project Areas are as follows:

- *Yuma Project 1:*

    - The project begins approximately 1 mile southeast of the Andrade Port of Entry continuing along the Colorado River for approximately 5 miles in Yuma County.
    - Start coordinate: 32.704197, -114.726013; End coordinate: 32.642102, -114.764632)

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 5

- *Yuma Project 2:*

  - The project involves the replacement of two segments of primary pedestrian fencing in Yuma Sector for a total of approximately 6 miles. This includes approximately 2 miles of fencing along the Colorado River.
  - Start coordinate: 32.37755528, -114.4268201; End coordinate: 32.3579244, -114.3623999;
  - The project also includes replacement of primary pedestrian fencing approximately 17 miles east of the San Luis Port of Entry, on the Barry M Goldwater Range, continuing east for approximately 4 miles.
  - Start coordinate: 32.51419938, -114.8011175; End coordinate: 32.49350559, -114.8116619

- *Yuma Project 3:*

  - The project begins approximately 0.4 miles east of the Barry M. Goldwater Range continuing approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.
  - Start coordinate: 32.232935, -113.955211; End coordinate: 32.039033, -113.33411

## III.C.  Tucson Sector

Within the United States Border Patrol Tucson Sector (Tucson Sector) DHS is requesting that DoD assist by undertaking road construction, by replacing approximately 86 miles of existing vehicle barrier with new pedestrian fencing, and by installing lighting in the specific locations identified below.  The specific areas identified below are located in Pima, Cochise, and Santa Cruz Counties, Arizona.

Pima, Cochise and Santa Cruz Counties have been identified by the ONDCP as a HIDTA.  The *Sinaloa* Cartel relies on their local associates to coordinate, direct, and support the smuggling of illegal drugs and aliens from Mexico to the United States. Since Arizona is contiguous with the U.S.-Mexico International Boundary, the Tucson and Phoenix metropolitan areas are major trans-shipment and distribution points for contraband smuggling. Plaza bosses operate as a *Sinaloa* Cartel leader within their specific area of operation along the Sonora-Arizona corridor of the U.S.-Mexico International Boundary.

Border Patrol's own experience with apprehensions between border crossings bears this out.  In fiscal year 2018, there were over 52,000 apprehensions of illegal entrants attempting enter the United States between the border crossings in the Tucson Sector. Also in fiscal year 2018 Border Patrol had over 1,900 separate drug-related events between border crossings in the Tucson Sector, through which it seized over 1,600 pounds of marijuana, over 52 pounds of cocaine, over 48 pounds of heroin, over 902 pounds of methamphetamine, and over 11 pounds of fentanyl.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 6

In addition, the absence of adequate pedestrian fencing, either due to the presence of vehicle barrier only or ineffective pedestrian designs, in the Tucson sector continues to be particularly problematic as it pertains to the trafficking of illegal narcotics.  Rival transnational criminal organizations frequently employ "rip crews" who leverage the remote desert environment and lack of infrastructure to steal one another's illicit cargo resulting in increased border violence.

The terrain also provides high ground to scouts seeking to protect and warn smuggling loads being passed through the area.  Transnational criminal organizations have successfully utilized this advantage in furtherance of their illicit activity and for this reason the area is in need of an improved capability to impede and deny illegal crossings or people and narcotics.  In addition, the area hosts a number of tourist attractions that allow illegal activity to blend into legitimate activity; avoiding detection and evading interdiction.

The specific Project Areas are as follows:

- *Tucson Project 1:*
  - The project includes replacement of two segments of vehicle barriers.  The first segment begins approximately 2 miles west of the Lukeville Port of Entry continuing west approximately 30 miles.
  - Start coordinate: 32.038278, -113.331716; End coordinate: 31.890032, -112.850162
  - The second segment project begins approximately 3 miles east of the Lukeville Port of Entry and continues east approximately 8 miles in Pima County, Arizona.
  - Start coordinate: 31.8648, -112.76757; End coordinate: 31.823911, -112.634298

- *Tucson Project 2:*
  - The project includes approximately 5 miles of primary pedestrian fence replacement around the Lukeville Port of Entry extending from approximately 2 miles west of the port to approximately 3 miles east of the port.
  - Start coordinate: 31.88999921, -112.850162; End coordinate: 31.8648, -112.76757

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 7

- *Tucson Project 3*:

  - The project includes three segments of vehicle barrier replacement beginning approximately 18 miles west of the Naco Port of Entry and continuing to approximately 25 miles east of the Douglas Port of Entry (or approximately 5 miles west of the Arizona/New Mexico state line) for approximately 20 miles of non-contiguous vehicle barrier replacement in Cochise County, Arizona.
  - Start coordinate: 31.333754, -110.253863; End coordinate: 31.333767, -110.250286;
  - Start coordinate: 31.334154, -110.152548; End coordinate: 31.334137, -110.147464;
  - Start coordinate: 31.333995, -109.453305; End coordinate: 31.332759, -109.129344

- *Tucson Project 4:*

  - The project begins approximately 9 miles east of the Nogales Port of Entry and continues eastward for approximately 30 miles with approximately 26 miles of non-contiguous vehicle barrier replacement in Santa Cruz and Cochise Counties, Arizona.
  - Start coordinate: 31.333578, -110.79579; End coordinate: 31.333511, -110.775333;
  - start coordinate:  31.33328, -110.70545; End coordinate: 31.333602, -110.288665)
  - Note: An additional approximately 0.3 miles of new pedestrian fence could be built between the existing segmented vehicle barrier locations to fill existing gaps if appropriate real estate interest can be verified

- *Tucson Project 5:*

  - The project includes approximately 2 miles of vehicle barrier replacement beginning approximately 4.5 miles east of the Sasabe Port of Entry continuing east in six non-continuous segments for approximately 15 miles in Pima and Santa Cruz Counties, Arizona.
  - Start Coordinate: 31.460175, -111.473171; End Coordinate: 31.459673, -111.471584;
  - Start Coordinate: 31.453091, -111.450959; End Coordinate: 31.449633, -111.440132;
  - Start Coordinate: 31.440683, -111.412054; End Coordinate: 31.437351, -111.40168;
  - Start Coordinate: 31.423471, -111.358336; End Coordinate: 31.422541, -111.355444;
  - Start Coordinate: 31.42221, -111.354379; End Coordinate: 31.421321, -111.351608;

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 8

- o  Start Coordinate: 31.386813, -111.243966; End Coordinate: 31.385462, -111.239759)

## II.D.  El Paso Sector

Within the United States Border Patrol El Paso (El Paso Sector) DHS is requesting that DoD assist by undertaking road construction, by replacing approximately 70 miles of existing vehicle barrier with new pedestrian fencing, and by installing lighting in the specific locations identified below.  The specific areas identified below are located in Luna, Hidalgo and Doña Ana Counties, New Mexico.  Luna, Hidalgo and Doña Ana Counties have been identified by the ONDCP as a HIDTA.

There are three specific transnational criminal organizations of interest operating in the El Paso Sector - the *Sinaloa* Cartel as well as remnants of the *Juarez* Cartel and the *Beltran Leyva* Organization.  In the El Paso Sector the *Sinaloa* Cartel employs a variety of tactics, techniques and procedures depending upon the terrain and environment to move drugs across the border.  While the *Sinaloa* Cartel has a strong presence and control of territories at the flanks of the Sector, it does not have full control of the territory throughout the El Paso Sector.  The *Juarez* Cartel, traditionally a major trafficker of marijuana and cocaine, has become an active member in opium cultivation and heroin production.

Border Patrol's own experience with apprehensions between border crossings bears this out.  In fiscal year 2018, there were over 31,000 apprehensions of illegal entrants attempting to enter the United States between border crossings in the El Paso Sector. Also in fiscal year 2018, Border Patrol had over 700 separate drug-related events between border crossings in the El Paso Sector, through which it seized over 15,000 pounds of marijuana, over 342 pounds of cocaine, over 40 pounds of heroin, and over 200 pounds of methamphetamine.

Although the deployment of vehicle barrier in the El Paso Sector initially curtailed the volume of illegal cross-border vehicular traffic, transnational criminal organizations quickly adapted their tactics switching to foot traffic, cutting the barrier, or simply driving over it to smuggle their illicit cargo into the United States.

Thus, in order to respond to these changes in tactics, CBP now requires pedestrian fencing.  Successfully impeding and denying illegal activities or transnational criminal organizations in this area is further complicated by the close proximity of New Mexico Highway 9 to the border.  In some cases the highway is less than a half a mile, allowing illegal cross-border traffic to evade detection and apprehension and quickly vanish from the border area.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 9

The specific Project Areas are as follows:

- *El Paso Project 1:*
    - ○ The project includes 46 miles of vehicle barrier replacement beginning approximately 17.5 miles west of the Columbus Port of Entry continuing east in non-contiguous segments to approximately 35 miles east of the Columbus Port of Entry within the Luna and Doña Ana Counties, New Mexico.
    - ○ Start Coordinate: 31.7837, -107.923151; End Coordinate: 31.783689, -107.679049;
    - ○ Start Coordinate: 31.783672, -107.573919; End Coordinate: 31.783741, -107.038154

- *El Paso Project 2:*
    - ○ The project includes 23.51 miles of Vehicle Barrier replacement in non-contiguous segments within Hidalgo and Luna Counties, New Mexico. The first segment begin approximately 5.1 miles east of the New Mexico/Arizona Border continuing east 4.55 miles.
    - ○ Start Coordinate:  31.332323, -108.962631; End Coordinate: 31.332292, -108.885946;
    - ○ The second segment begins approximately 3 miles west of the Antelope Wells Port of Entry to 3 miles east of the port of entry for 6.12 miles of Vehicle Barrier replacement.
    - ○ Start Coordinate:  31.333368, -108.582412; End Coordinate: 31.333407, -108.47926;
    - ○ The third segment begins approximately 20 miles west of the Columbus Port of Entry extending west 12.84 miles.
    - ○ Start Coordinate:  31.783722, -108.182442; End Coordinate: 31.783708, -107.963193;

## III.   Technical Specifications

As set forth above, DHS requires road construction, installation of lighting, and the replacement of existing vehicle barrier or dilapidated pedestrian fencing with new pedestrian fencing within the Project Areas.  DHS will provide DoD with more precise technical specifications as contract and project planning moves forward.

Given DHS's experience and technical expertise, DHS plans to coordinate closely with DoD throughout project planning and execution, to include review and approval of design specifications, barrier alignment and location, and other aspects of project planning and execution.

Subject:  Request for Assistance Pursuant to 10 U.S.C. § 284
Page 10

## IV. Sequencing

The DHS request for assistance includes approximately 218 miles in which DHS requires road construction, the installation of lighting, and the replacement of existing vehicle fencing or dilapidated pedestrian fencing with new pedestrian fencing within the Project Areas.  DHS requests that DoD's support under 10 U.S.C. § 284 address the requirements in order of priority as DoD resources allow.  The DHS order of priority is as follows:

1. Yuma Sector Project 1
2. Yuma Sector Project 2
3. El Paso Sector Project 1
4. El Centro Sector Project 1
5. Tucson Sector Project 1
6. Tucson Sector Project 2
7. Tucson Sector Project 3
8. Tucson Sector Project 4
9. Yuma Sector Project 3
10. El Paso Sector Project 2
11. Tucson Sector Project 5

## V. Funding

DHS requests that DoD provide the above-referenced border fences, roads, and lighting on a non-reimbursable basis as support to block drug smuggling corridors.

DHS will accept custody of the completed infrastructure and account for that infrastructure in its real property records.

DHS will operate and maintain the completed infrastructure.

## VI. Conclusion

DHS requests DoD assistance under 10 U.S.C. § 284 to construct fences, roads, and to install lighting in order to block drug smuggling corridors in the Project Areas set forth above.  The Projects Areas set forth above are also areas of high illegal entry under IIRIRA § 102(a), and the requested fences, roads, and lighting will assist in deterring illegal crossings in the Project Areas.

# TAB

# H

Administrative Record - Section 284 Projects: 033



MAR 0 8 2019

COMPTROLLER

MEMORANDUM FOR UNDER SECRETARY OF DEFENSE FOR POLICY

SUBJECT:  Assessing the Department of Homeland Security Request for Department of Defense
Support to Block Drug-Smuggling Corridors

As directed by the Acting Secretary of Defense on March 1, 2019, I am providing an
assessment of the fiscal considerations and funding recommendations, of the Department of
Homeland Security (DHS) request for assistance, dated February 25, 2019, to provide counter-
drug support pursuant to 10 U.S.C. 284(b)(7).  This review was conducted absent the cost
estimates developed by the Department of the Army, and thus, the amounts identified below may
change once the actual cost estimates are known.

In order to support the DHS request for assistance, the Department would need to transfer
funding into the Drug Interdiction and Counter-Drug Activities, Defense appropriation, using the
general transfer authority (GTA) provided for under Section 8005 of the Department of Defense
Appropriations Act, 2019.  The Department can use this authority to transfer funding if the funds
are used for 1) a higher priority item, 2) the item is based on unforeseen military requirements,
and 3) the item for which funds are requested has not been denied by Congress.

I recommend implementing the transfer of funds in two increments.  The first (TAB A)
would consist of $1 billion for the construction efforts, resourced from fact-of-life execution year
assets.  Up to an additional $1.5 billion could be provided in a second increment.  I will
accelerate the Department's midyear execution review in order to aide in the identification of
potential sources that minimize the risk to operations and readiness.

Elaine McCusker

Elaine McCusker
Deputy Under Secretary of Defense
(Comptroller)



| Unclassified | **REPROGRAMMING ACTION** | | | | | | Page 1 of 3 |

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | **DoD Serial Number:** FY 19-01 RA |
|---|---|
| **Appropriation Title:** Various Appropriations | |
| | **Includes Transfer?** Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

This reprogramming action is submitted because this action uses general transfer authority. This reprogramming action provides funding in support of higher priority items, based on unforeseen military requirements, than those for which originally appropriated; and is determined to be necessary in the national interest. It meets all administrative and legal requirements, and none of the items has previously been denied by the Congress.

This reprogramming action transfers $1,000.000 million from the Military Personnel, Army, 19/19, and Reserve Personnel, Army, 19/19, appropriations to the Drug Interdiction and Counter-Drug Activities, Defense, 19/19, appropriation. This reprogramming action uses $1,000.000 million of general transfer authority pursuant to section 8005 of division A of Public Law 115-245, the Department of Defense (DoD) Appropriations Act, 2019; and section 1001 of Public Law 115-232, the John S. McCain National Defense Authorization Act for Fiscal Year (FY) 2019.

| **FY 2019 REPROGRAMMING INCREASE:** | | | **+1,000,000** | |
|---|---|---|---|---|
| **Drug Interdiction and Counter-Drug Activities, Defense, 19/19** | | | **+1,000,000** | |
| Budget Activity 01: Counter-Narcotics Support | 238,306 | 238,306 | **+1,000,000** | 1,238,306 |

Explanation: Funds are required to provide support for counter-drug activities of the Department of Homeland Security (DHS). DHS has identified areas along the southern border of the United States that are being used by individuals, groups, and transnational criminal organizations as drug smuggling corridors, and determined that the construction of additional physical barriers and roads in the vicinity of the United States border is necessary in order to impede and deny drug smuggling activities. DHS requests DoD assistance in the execution of projects to replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install lighting. Title 10, U.S.Code, Section 284(b)(7) authorizes the DoD to support counterdrug activities of other Federal agencies through the construction of roads and fences, and the installation of lighting, to block drug smuggling corridors across international boundaries of the United States. Such support is funded using DoD's Drug Interdiction and Counter-Drug Activities appropriation. This is a base budget requirement.

| Approved (Signature and Date) |
|---|

**DD 1415-1**                              *UNCLASSIFIED*

*Unclassified* **REPROGRAMMING ACTION**

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 19-01 RA |
|---|---|
| Appropriation Title: Various Appropriations | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

### FY 2019 REPROGRAMMING DECREASES: −1,000,000

**Military Personnel, Army, 19/19** −993,627

Budget Activity 01: Pay and Allowances of Officers

| | 14,000,263 | | 14,000,263 | | −56,440 | | 13,943,823 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-38.9 million) and Continuation Pay (CP) ($-17.5 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system. This is base budget funding.

Budget Activity 02: Pay and Allowances of Enlisted

| | 27,151,209 | | 27,151,209 | | −754,212 | | 26,396,997 |

Explanation: Funds are available due to a 9,500 Soldier reduction to Army's overall end strength target (478,000 vice 487,500) as Army refocuses on smart, modest annual growth without compromising quality in a highly challenging recruiting and retention market. Funds are available from the following programs stemming from strength reductions and rate-driven adjustments observed in execution to date. This is base budget funding.

- $325.9 million in basic pay, primarily driven by the decrease in projected average strength
- $135.1 million in retired pay accrual, primarily driven by the decrease in projected average strength
- $15.9 million in clothing allowances, stemming from reduced requirements for non-accession related uniform purchases
- $13.3 million in incentive pays and family separation allowances, reflecting current base budget execution trends showing a shift toward higher Overseas Contingency Operations execution
- $141.3 million in separation payments, driven by nearly 10 thousand fewer projected separations than seen in fiscal year 2018, fewer Soldiers eligible for disability separation in the Integrated Disability Evaluation System, and fewer projected involuntary separations
- $29.0 million in social security tax employer contributions, primarily driven by the decrease in projected average strength
- $27.6 million in enlistment and reenlistment incentives, due to projections for fewer recruitment contracts with bonus options compared to prior year execution and a smaller than expected cohort eligible for reenlistment
- $66.1 million due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-41.4 million) and Continuation Pay (CP) ($-24.7 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system

| *Unclassified* | **REPROGRAMMING ACTION** | Page 3 of 3 |

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 19-01 RA |
| Appropriation Title: Various Appropriations | |
| | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |
| Budget Activity 04:  Subsistence of Enlisted Personnel | | | | | | | | |
| | | 2,269,930 | | 2,269,930 | | **-57,420** | | 2,212,510 |

Explanation: Funds are available due to a decrease in projected average enlisted strength, lower than budgeted rate increases (no inflation in 2019 vice 3.4% budgeted), and a slight increase in the amount of realized collections for members subsisting in Army dining facilities.  This is base budget funding.

| Budget Activity 05:  Permanent Change of Station Travel | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 1,785,401 | | 1,785,401 | | **-115,726** | | 1,669,675 |

Explanation: Funds are available due to lower than budgeted rates of execution that have been realized in recent move expenditures.  This is base budget funding.  Specifically:
- $36.9 million is available in accession moves
- $26.1 million is available in rotational moves
- $52.7 million is available in separation moves

| Budget Activity 06:  Other Military Personnel Costs | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 317,883 | | 317,883 | | **-9,829** | | 308,054 |

Explanation: Funds are available due to a lower-than-projected number of former soldiers receiving unemployment compensation payments.  This is base budget funding.

| **Reserve Personnel, Army, 19/19** | | | | | | **-6,373** | | |
|---|---|---|---|---|---|---|---|---|
| Budget Activity 01:  Reserve Component Training and Support | | | | | | | | |
| | | 4,874,662 | | 4,871,312 | | **-6,373** | | 4,864,939 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.  This is base budget funding.

DD 1415-1

*UNCLASSIFIED*

UNCLASSIFIED

APR 06 2019

**ACTION MEMO**

DUSDP

Prepared by: James Ross, OASD(HD&GS)
Phone Number: (571) 256-8325

**FOR:** ACTING SECRETARY OF DEFENSE

**FROM:** Kenneth P. Rapuano, Assistant Secretary of Defense, Homeland Defense & Global  APR 05 2019
Security

**SUBJECT:** Modification of DoD Support to Block Drug-Smuggling Corridors

**PURPOSE:** To obtain your approval of a Department of a Homeland Security (DHS) request to modify steel bollard fencing specifications for projects you previously approved under 10 U.S.C. § 284.

**COORDINATION:** This action was coordinated with SecArmy and OGC.

**BLUF:** Approving this request will meet DHS's preferred specifications for barrier construction, but may result in less miles of coverage (estimated decrease from 57 to 48) due to increased cost. Also, the final bullet on page two addresses the Secretary of Defense request for DHS documents regarding 10 U.S.C. § 284.

**DISCUSSION:**

- On March 25, 2019, you approved a DHS request for assistance in blocking drug-smuggling corridors on the southern border (TAB C). You have the authority under 10 U.S.C. § 284 to use certain DoD funds to construct roads and fences, and to install lighting, to block drug-smuggling corridors across international boundaries of the United States in support of counter-narcotics activities of Federal law enforcement agencies.

- Specifically, you approved construction of roads and 18-foot steel bollard fences and installation of lighting for 3 DHS priority projects totaling 57 miles of fencing at an estimated cost of $969 million:

  - DHS Priority 1: Yuma Sector Project 1, 5 miles/18-foot fence/$85 million
  - DHS Priority 2: Yuma Sector Project 2, 6 miles/18-foot fence/$102 million
  - DHS Priority 3: El Paso Sector Project 1, 46 miles/18-foot fence/$782 million

- On March 29, 2019, DHS requested that DoD modify the specifications for the projects that you approved on March 25, 2019. DHS now requests that all fencing installed by DoD include a 5-foot anti-climb steel plate. Additionally, DHS requests that DoD construct 30-foot steel bollard fencing for Yuma Sector Project 1 (DHS Priority 1) and El Paso Sector Project 1 (DHS Priority 3). The fence for DHS Priority 2, Yuma Sector Project 2, remains 18-foot steel bollard (TAB D).

| SD CA | | DSD SA | |
|-------|--------|---------|--------|
| SD SMA | 4/9 | DSD SMA | |
| SD MA | | DSD MA | |
| CoS | | DSD CA | |
| SD Action Grp | | | |
| ES | | ESB Rvw | 4/8 |
| ESR | | ESD | 4/8 |

Administrative Record - Section 284 Projects: 055



CSDP003269-19/CMD004376-19

   – DHS requests that DoD directly follow the prioritization provided in their February 25, 2019, request for assistance as closely as possible, even if this means completing a portion of the fencing on some projects.

- A comparison of the projects you approved on March 25, 2019, with the modification provided by DHS on March 29, 2019, is provided in the table below. Costs and mileage figures are estimates and may change depending on the actual cost of construction.

| DHS Priority | Project Name | SecDef Approved March 25, 2019 ($17M/mile) 18-foot bollard | DHS Modification March 29, 2019 Height Varies by Project Now includes anti-climb feature | |
| --- | --- | --- | --- | --- |
| | | | 18-foot $17.4M/mile (Note 1) | 30-foot $20.9M/mile (Note 1) |
| 1 | Yuma Sector Project 1 | $85M / 5 miles | | $104.5M / 5 miles |
| 2 | Yuma Sector Project 2 | $102M / 6 miles | $104.4M / 6 miles | |
| 3 | El Paso Sector Project 1, segment 1 | $255M / 15 miles | | $313.5M / 15 miles |
| | El Paso Sector Project 1, segment 2 | $527M / 31 miles | | $459.8M / 22 miles (Note 2) |
| Total Cost / Mileage | | $969M / 57 miles | $982.2M/ 48 miles | |

Notes:
1. The U.S. Army Corps of Engineers (USACE) estimates the 5-foot anti-climb feature will add $400K/mile to fence cost.
2. Undertaking construction in clearly defined segments, USACE should maximize the number of miles of approved barrier projects undertaken within the funds ($1B) available.

- USACE should use the design-build construction contract methodology to maximize the number of miles of approved barrier projects undertaken within the funds ($1B) available. As undefinitized contract actions are definitized, the work must be executed in clearly defined segments, and government commitments cannot exceed funds available. USACE estimates it should be able to provide at least 48 total miles of steel bollard fencing at a cost of $982.2 million:

   – DHS Priority 1: Yuma Sector Project 1, 5 miles/30-foot fence/$104.5 million
   – DHS Priority 2: Yuma Sector Project 2, 6 miles/18-foot fence/$104.4 million
   – DHS Priority 3: El Paso Sector Project 1, 37 miles/30-foot fence/$773.3 million

- The documents at TAB D and TAB E provide all the documentation provided by DHS for the use of 10 U.S.C. § 284 to construct fencing and roads, and to install lighting, to block

drug-smuggling corridors.  These documents are submitted in response to your request to provide DHS Documentation (OSD003222-19) (TAB F).

**RECOMMENDATIONS**:

1) Approve DHS's modifications as stated in its March 29, 2019, request, 2) sign the letter to the Secretary of Homeland Security at TAB A, and 3) sign the letter at TAB B directing USACE to construct steel bollard fencing for DHS Priority Projects 1, 2, and 3 using the new specifications.

Approve: _____   Disapprove: _____   Other: _____

APR - 9 2019

COORDINATION:  TAB G

Attachments:
As stated

~~DRAFT // PRE-DECISIONAL // DELIBERATIVE~~

# ACTION MEMO

Prepared by: Tom LaCrosse, OASD(HD&GS)
Phone Number: (571) 256-8353

**FOR:** ACTING SECRETARY OF DEFENSE    *KR*    MAY 0 8 2019

**FROM:** Kenneth P. Rapuano, Assistant Secretary of Defense, Homeland Defense & Global Security

**SUBJECT:** Request for Assistance Pursuant to 10 U.S.C. § 284 – Approval of Additional Support to the Department of Homeland Security

**PURPOSE:** To obtain your approval of a second tranche of assistance to the Department of Homeland Security (DHS) in blocking drug-smuggling corridors along the southern border; and for you to direct specific actions by the Under Secretary of Defense (Comptroller)/Chief Financial Officer (USD(C)/CFO), the Secretary of the Army, and the Commander, U.S. Army Corps of Engineers.

**COORDINATION:** This action was coordinated with SecArmy, USD(C)/CFO, OGC, and the Joint Staff.

**BLUF:** Approving this request will support DHS's efforts to secure the southern border by blocking drug-smuggling corridors.   You have the authority under 10 U.S.C. § 284 to construct roads and fences, and to install lighting, to block drug-smuggling corridors across international boundaries of the United States in support of counter-narcotics activities of Federal law enforcement agencies.

## DISCUSSION:

- 10 U.S.C. § 284 gives you the authority to construct roads and fences, and to install lighting, to block drug-smuggling corridors across international boundaries of the United States in support of counterdrug activities of Federal law enforcement agencies.

- Funding for assistance provided pursuant to 10 U.S.C. § 284 comes from the counter-narcotics support line in DoD's "Drug Interdiction and Counter-Drug Activities, Defense" appropriation.

- On February 25, 2019, DHS requested DoD assistance in blocking up to 11 specific drug-smuggling corridors on Federal land along the southern border of the United States. DHS requested that DoD provide this support in order of stated priority as DoD resources allow by (1) replacing existing vehicle barricades or dilapidated pedestrian barricades with construction of new pedestrian fences (i.e., fences that would block both vehicles and pedestrians), (2) constructing new and improving existing patrol roads, and (3) installing lighting (TAB D). This support to DHS is consistent with the President's direction in his April 4, 2018, memorandum, "Securing the Southern Border of the United States."

- On March 25, 2019, you approved a portion of the DHS request for assistance in blocking drug-smuggling corridors on the southern border pursuant to 10 U.S.C. § 284. Specifically,





OSD004791-19/CMD005890-19

PRE-DECISIONAL // DELIBERATIVE

you approved the construction of roads and fences and installation of lighting for 3 DHS priority projects totaling 57 miles of fencing across DHS's top three priority projects (Yuma Sector Project 1, Yuma Sector Project 2, and El Paso Sector Project 1). To fund this support, you directed the transfer of $1B into the "Drug Interdiction and Counter-Drug Activities, Defense" appropriation (TAB E).

- On April 9, 2019, you approved a design modification to this support requested by DHS. Specifically, you approved construction of 30-foot steel bollard with anti-climb plate for Yuma Sector Project 1 and El Paso Sector Project 1 and 18-foot steel bollard with anti-climb plate for Yuma Sector Project 2 (TAB F).

- The U.S. Army Corps of Engineers (USACE) is prepared to proceed with the following DHS priority projects as undefinitized contractual actions, including initial project scoping and contracting, pursuant to 10 U.S.C. § 284.

| DHS Priority | Project Name | Cost/Miles $20.7 per mile 30-foot bollard |
|---|---|---|
| 4 | El Centro Sector Project 1 | 15.25 miles |
| 5 | Tucson Sector Project 1 | 38 miles |
| 6 | Tucson Sector Project 2 | 5 miles |
| 7 | Tucson Sector Project 3 | 20 miles |
| | TOTAL | $1.5B / 78.25 miles |

- The requirements of Section 284 are met: DHS/Customs and Border Protection (CBP) is a Federal law enforcement agency; DHS has identified each project area as a drug-smuggling corridor; and the work requested by DHS falls within the scope of subsection 284(b)(7) in that it involves construction of fences (including linear ground detection systems), construction of roads, and installation of lighting (supported by grid power and including imbedded cameras).

- To provide this support under Section 284, additional funds must be transferred into the "Drug Interdiction and Counter-Drug Activities, Defense" appropriation using DoD's general transfer authority (GTA), which is provided in Section 8005 of the Department of Defense Appropriations Act, 2019, and Section 1001 of the John S. McCain National Defense Authorization Act (NDAA) for Fiscal Year 2019, and DoD's special transfer authority (STA), which is provided in Section 9002 of the Department of Defense Appropriations Act, 2019, and Section 1512 of the John S. McCain NDAA for Fiscal Year 2019. This action will utilize $700 million in funds designated for Overseas Contingency Operations (OCO) for a base budget requirement. Together, these GTA and STA provisions allow total transfers of up to $6B. Congressional notification is required under both sections, but there is no statutory requirement to obtain prior congressional approval.

  – The Department may use GTA and STA only upon a determination by the Secretary of Defense that such action is necessary in the national interest, and the transfer may only be used to provide funding for higher-priority items, based on unforeseen military requirements, than those

Administrative Record - Section 284 Projects: 138

~~PRE-DECISIONAL // DELIBERATIVE~~

items for which funds were originally appropriated, and in no case for an item for which funds or authorization have been denied by Congress.

– The USD(C)/CFO has identified $1.5B in DoD funding that can transferred into the Drug Interdiction and Counter-Drug Activities, Defense, account. The funds identified by the USD(C)/CFO are not currently needed for those purposes by DoD (Enclosure to Tab B) (i.e., DD 1415 and DD 1415-3).

– You may determine that:

  o Use of GTA and STA is necessary in the national interest (see April 4 memo);

  o Blocking drug-smuggling corridors is a higher-priority item than fully executing all available funding for items in the budget lines identified by the USD(C)/CFO in the Enclosure to TAB B;

  o The requirement for this increased support to DHS is a military requirement unforeseen at the time of development of the fiscal year 2019 budget request; and

  o Congress has not denied funding or authorization for support to DHS under Section 284(b)(7). Congress has not enacted legislation that denies funding for the item referenced in the transfer—namely counter-drug activities funding, including fence construction, under Section 284(b)(7).

• Any support provided under Section 284, including under subsection (b)(7), is subject to 10 U.S.C. § 276, which provides that support may not be provided if the provision of such support would adversely affect the military preparedness of the United States. By approving the above projects, you are determining that providing such support does not adversely affect the military preparedness of the United States.

– The military preparedness of the United States relates to the ability of DoD, at a strategic level, to defend the United States and to carry out the other major DoD missions. The term "adversely affect" is not any adverse effect, but any effect that would "seriously compromise" the nation's military capability.[1]

---

[1] *See* House Conference Report No. 100-989, Sept. 28, 1988, Accompanying P.L. 100-456, National Defense Authorization Act, Fiscal Year 1989.

Administrative Record - Section 284 Projects: 139

~~PRE-DECISIONAL // DELIBERATIVE~~

–   The sources of funds to be utilized to provide this support are documented in the Enclosure to Tab B.

–   On May 8, 2019, the Chairman of the Joint Chiefs of Staff found that the proposed funding adjustments do not immediately impact the preparedness of the joint force and that some of the sources identified for reprogramming could be used to address currently unfunded DoD requirements (TAB G).

–   It is reasonable, therefore, for you to find that utilizing these funds for support to DHS does not adversely affect the military preparedness of the United States because, after an assessment of the relevant accounts and based on the Chairman's advice, these funds are excess or early to need.

## RECOMMENDATIONS:

1) Determine that providing the approved support, including the use of up to $1.5B transferred from the funds identified in the Enclosure to Tab B, does not adversely affect the military preparedness of the United States because the funds are excess or early to need.

Approve: _PM5 5/9/19____   Disapprove: _____   Other: _____

2) Determine that transferring $1.5B in funds for this support is in the national interest and that the other requirements of Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, and Sections 1001 and 1512 of the John S. McCain NDAA for FY 2019 are met (i.e., that the item to be funded is higher priority than the items from which funds and authority are transferred, that the increase in Section 284(b)(7) support is based on unforeseen military requirements, and that the programmatic increase in Section 284(b)(7) support to DHS has not been denied by Congress).

Approve: _PM5 5/9/19____   Disapprove: _____   Other: _____

3) Approve immediate DoD support to DHS's Priority Projects 4, 5, 6, and 7 (78.25 miles of 30-foot bollard fence with an anti-climb feature), and sign the letter to the Acting Secretary of Homeland Security at Tab A.  This supports the next four DHS priority projects.

Approve: _PM5 5/9/19____   Disapprove: _____   Other: _____



OSD004791-19/CMD005890-19

Administrative Record - Section 284 Projects: 140

~~PRE-DECISIONAL / DELIBERATIVE~~

4) Sign the memorandum to USD(C)/CFO at TAB B – authorizing the transfer of $1.5B from the accounts identified in the Enclosure to Tab B into the "Drug Interdiction and Counter-Drug Activities, Defense" appropriation, and direct the USD(C)/CFO, upon approval of the transfer by the Office of Management and Budget, to notify Congress promptly of the transfer.

Approve: _____PMS 5/9/19____ Disapprove: _____ Other: _____

5) Sign the memorandum to the Secretary of the Army at TAB C, authorizing the Commander, U.S. Army Corps of Engineers, to undertake DHS priority projects 4, 5, 6, and 7.

Approve: _____PMS 5/9/19____ Disapprove: _____ Other: _____

COORDINATION:  TAB H

Attachments:
As stated

OSD004791-19/CMD005890-19

Administrative Record - Section 284 Projects: 141

# TAB

# A



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

5/9/19

MEMORANDUM FOR ACTING SECRETARY OF HOMELAND SECURITY

SUBJECT: Additional Support to the Department of Homeland Security

The Department of Defense appreciates that the Department of Homeland Security (DHS) confronts a continuing and worsening crisis at the southern border. As I indicated in my March 25, 2019 letter, in which I approved the undertaking of three projects to support to your Department's effort to secure the southern border by blocking drug-smuggling corridors along the border through the construction of roads and fences and the installation of lighting, the Department of Defense has continued to assess the availability of resources and other factors in order to determine how additional similar support can be provided to DHS.

10 U.S.C. § 284(b)(7) gives the Department of Defense the authority to construct roads and fences and to install lighting to block drug-smuggling corridors across international boundaries of the United States in support of counterdrug activities of Federal law enforcement agencies. For the following reasons, I have concluded that the support requested on February 25, 2019 satisfies the statutory requirements:

- DHS/Customs and Border Protection (CBP) is a Federal law enforcement agency;

- DHS has identified each project area as a drug-smuggling corridor; and

- The work requested by DHS to block these identified drug-smuggling corridors involves construction of fences (including linear ground detection systems), construction of roads, and installation of lighting (supported by grid power and including imbedded cameras).

Accordingly, at this time I have decided to undertake 4 additional projects, namely El Centro Sector Project 1, Tucson Sector Project 1, Tucson Sector Project 2, and Tucson Sector Project 3, by constructing 78.25 miles of 30-foot pedestrian fencing, constructing and improving roads, and installing lighting as described in the February 25, 2019 request.

As the proponent of the requested action, CBP will serve as the lead agency for environmental compliance and will be responsible for providing all necessary access to land. I request that DHS place the highest priority on completing these actions for the projects identified above. DHS will accept custody of the completed infrastructure, account for that infrastructure in its real property records, and operate and maintain the completed infrastructure.

The Commander, U.S. Army Corps of Engineers, is authorized to coordinate directly with DHS/CBP and immediately begin planning and executing up to $1.5B in support to DHS/CBP by undertaking the projects identified above.

Patrick M. Shanahan
Acting

cc:
Secretary of the Army
Chairman of the Joint Chiefs of Staff
Under Secretary of Defense for Policy
Under Secretary of Defense (Comptroller)/Chief Financial Officer
General Counsel of the Department of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant Secretary of Defense for Homeland Defense and Global Security
Assistant to the Secretary of Defense for Public Affairs
Commander, U.S. Army Corps of Engineers

Administrative Record - Section 284 Projects: 144

# TAB

# B



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

5/9/19

MEMORANDUM FOR UNDER SECRETARY OF DEFENSE (COMPTROLLER)/CHIEF
FINANCIAL OFFICER

SUBJECT:   Additional Funding Construction in Support of the Department of Homeland
Security Pursuant to 10 U.S.C. § 284

On February 25, 2019 the Secretary of Homeland Security requested that DoD provide
support to the efforts of the Department of Homeland Security (DHS) to secure the southern
border by blocking up to 11 drug-smuggling corridors along the border through the construction
of roads and fences and the installation of lighting.  I have determined that the requirements of
title 10, U.S. Code, section 284, have been satisfied.  Accordingly, I have approved DoD support
for El Centro Sector Project 1, Tucson Sector Project 1, Tucson Sector Project 2, and Tucson
Sector Project 3 (DHS Priority Projects 4, 5, 6, and 7) and have authorized up to $1.5B in funding
for the construction of 30-foot pedestrian fencing, the construction and improvement of roads, and
the installation of lighting to block drug-smuggling corridors along the southern border.

I have also decided that the Department will transfer both base funds and funds
designated for Overseas Contingency Operations to provide the support described above.  This
support will be funded through a transfer of $1.5B from the accounts identified in the Enclosure
into the "Drug Interdiction and Counter-Drug Activities, Defense" appropriation.  I am advised
that the amounts are excess or early to current programmatic needs.  You should undertake a
reprogramming action to effectuate such transfer, as authorized by law.

The reprogramming action that I am directing satisfies the statutory requirements.  I have
determined that a transfer of funds and authorization of appropriations for the construction of
fences and roads and the installation of lighting to block drug-smuggling corridors is in the
national interest.  In an April 4, 2018 memorandum, "Securing the Southern Border of the United
States," the President directed DoD to assist DHS in stopping the flow of illegal drugs into the
United States.  The reprogramming action is necessary to advance that goal.  I have also
determined that the other requirements of section 8005 and 9002 of the DoD Appropriations Act,
2019, and section 1001 and 1512 of the John S. McCain National Defense Authorization Act for
FY 2019 are met as set forth below:

- The items to be funded (El Centro Sector Project 1, Tucson Sector Project 1, Tucson
Sector Project 2, and Tucson Sector Project 3) are a higher priority than the items from
which funds and authorizations are transferred because these projects are necessary in
the national interest to prevent the flow of drugs into the United States, and the items
from which funds and authorizations are transferred are excess or early to need.

- Support to law enforcement under section 284 for the construction of fences and roads and
the installation of lighting to block drug-smuggling corridors is a military requirement
assigned by statute.  The need to provide support for the above projects was an unforeseen
military requirement not known at the time of the FY 2019 budget request.



- Support under section 284 for construction of roads and fences and the installation of lighting, including for the projects listed above, has not been denied by Congress. Congress has not enacted legislation that denies funding for the item referenced in the transfer – namely counter-drug activities funding, including fence construction, under § 284(b)(7).

I have determined that providing the requested support for the projects listed above will not adversely affect the military preparedness of the United States. The sources of funds to be utilized to provide this support are identified in the Enclosure. Utilizing these funds for support to DHS does not affect the military preparedness of the United States because they are excess or early to current programmatic needs.

This $1.5B in funds will be allocated to the Department of the Army with instructions to allocate it further to the U.S. Army Corps of Engineers to undertake fence and road construction and lighting installation, including initial project scoping and contracting, for the approved projects.

No funds may be transferred or re-programmed from the drug-demand-reduction program, the National Guard counter-drug program, or the National Guard counter-drug schools program in order to fund subsection 284(b)(7) support to DHS.

You will comply with all statutory requirements, but will do so without regard to comity-based policies that require prior approval from congressional committees.

My point of contact is Kenneth Rapuano, Assistant Secretary of Defense for Homeland Defense and Global Security.

Patrick M. Shanahan
Acting

Enclosure:
As stated

cc:
Secretaries of the Military Departments
Chairman of the Joint Chiefs of Staff
Under Secretary of Defense for Policy
General Counsel of the Department of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant Secretary of Defense for Homeland Defense and Global Security
Assistant to the Secretary of Defense for Public Affairs
Commander, U.S. Army Corps of Engineers

Administrative Record - Section 284 Projects: 147

*Unclassified*     **REPROGRAMMING ACTION - INTERNAL REPROGRAMMING**     Page 1 of 1

| Subject: Drug Interdiction and Counter-Drug Activities, Defense | DoD Serial Number: FY 19-16 IR |
|---|---|
| Appropriation Title: Various Appropriations | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

This reprogramming action transfers $1,500.000 million from the Drug Interdiction and Counter-Drug Activities, Defense, 19/19, appropriation to Operation and Maintenance, Army, 19/19, appropriation for drug interdiction and counter-drug activities consistent with the provisions in division A of Title VI of Public Law 115-245, the Department of Defense (DoD) Appropriations Act, 2019.

Realignment of funds between Drug Interdiction projects may be accomplished only with the concurrence of the Office of the Deputy Assistant Secretary of Defense, Counternarcotics and Global Threats. No funds made available in this reprogramming action may be obligated for projects pursuant to sections 321, 322, or 333 of Title 10, United States Code. This prohibition will be noted on all Funding Authorization Documents.

**FY 2019 REPROGRAMMING INCREASE:**                    **+1,500,000**

**Operation and Maintenance, Army, 19/19**                    **+1,500,000**
Budget Activity 01: Operating Forces
Counter-Narcotics Support                    -            1,216,874       **+1,500,000**       2,716,874


**FY 2019 REPROGRAMMING DECREASE:**                    **-1,500,000**

**Drug Interdiction and Counter-Drug Activities, Defense, 19/19**       **-1,500,000**
Budget Activity 01: Counter-Narcotics Support
                    1,738,306       1,738,306       **-1,500,000**       238,306

Explanation: Transfers funds from the Drug Interdiction and Counter-Drug Activities, Defense, 19/19, appropriation to Operation and Maintenance, Army, 19/19, appropriation to support the Department of Homeland Security (DHS) request for DoD to support drug interdiction and counter-drug activities through the construction of roads and fences, and the installation of lighting, to block drug smuggling corridors across international boundaries of the United States.

Approved (Signature and Date)

DD 1415-3                    *UNCLASSIFIED*

| Unclassified | **REPROGRAMMING ACTION** | Page 1 of 8 |

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | **DoD Serial Number:** FY 19-02 RA |
| Appropriation Title: Various Appropriations | |
| | **Includes Transfer?** Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

This reprogramming action is submitted because these actions use general and special transfer authority. This reprogramming action provides funding in support of higher priority items, based on unforeseen military requirements, than those for which originally appropriated; and is determined to be necessary in the national interest. It meets all administrative and legal requirements, and none of the items has previously been denied by the Congress.

**Part I** of this reprogramming action transfers $818.465 million between Fiscal Year (FY) 2019 Defense appropriations. This reprogramming action uses $818.465 million of general transfer authority pursuant to section 8005 of division A of Public Law 115-245, the Department of Defense (DoD) Appropriations Act, 2019; and section 1001 of Public Law 115-232, the John S. McCain National Defense Authorization Act for FY 2019.

**Part II** of this reprogramming action transfers $681.535 million between FY 2019 Title IX, Overseas Contingency Operations (OCO) Defense appropriations. This reprogramming action uses $681.535 million of special transfer authority pursuant to section 9002 of Title IX, OCO, of division A of Public Law 115-245, the Department of Defense (DoD) Appropriations Act, 2019 and section 1512 of Public Law 115-232, the John S. McCain National Defense Authorization Act for FY 2019.

## PART I

**FY 2019 REPROGRAMMING INCREASE:**                    **+818,465**

**Drug Interdiction and Counter-Drug Activities, Defense, 19/19**          **+818,465**

Budget Activity 01:  Counter-Narcotics Support

|  | 238,306 | 238,306 | **+818,465** | 1,056,771 |

Explanation: Funds are required to provide support for counter-drug activities of the Department of Homeland Security (DHS). DHS has identified areas along the southern border of the United States that are being used by individuals, groups, and transnational criminal organizations as drug smuggling corridors, and determined that the construction of additional physical barriers and roads in the vicinity of the United States border is necessary in order to impede and deny drug smuggling activities. DHS requests DoD assistance in the execution of projects to replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install lighting. Title 10, U.S.Code, Section 284(b)(7) authorizes the DoD to support counterdrug activities of other Federal agencies through the construction of roads and fences, and the installation of lighting, to block drug smuggling corridors across international boundaries of the United States. Such support is funded using DoD's Drug Interdiction and Counter-Drug Activities appropriation.

Approved (Signature and Date)

**DD 1415**                    *UNCLASSIFIED*

Administrative Record - Section 284 Projects: 149

| Unclassified | | | | **REPROGRAMMING ACTION** | | | | Page 2 of 8 |
|---|---|---|---|---|---|---|---|---|

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | **DoD Serial Number:** FY 19-02 RA |
|---|---|
| Appropriation Title: Various Appropriations | **Includes Transfer?** Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |
| **FY 2019 REPROGRAMMING DECREASES:** | | | | | | -818,465 | | |
| **ARMY DECREASES** | | | | | | -35,959 | | |
| **Reserve Personnel, Army, 19/19** | | | | | | -10,599 | | |
| Budget Activity 01: Reserve Component Training and Support | | 4,873,661 | | 4,873,661 | | -10,599 | | 4,863,062 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions (\$-5.018 million) and Continuation Pay (CP) (\$-5.581 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

| **National Guard Personnel, Army, 19/19** | | | | | | -25,360 | | |
|---|---|---|---|---|---|---|---|---|
| Budget Activity 01: Reserve Component Training and Support | | 8,980,394 | | 8,980,394 | | -25,360 | | 8,955,034 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions (\$-14.503 million) and Continuation Pay (CP) (\$-10.857 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

| **NAVY DECREASES** | | | | | | -129,251 | | |
|---|---|---|---|---|---|---|---|---|
| **Military Personnel, Navy, 19/19** | | | | | | -88,503 | | |
| Budget Activity 01: Pay and Allowances of Officers | | 8,840,745 | | 8,840,745 | | -33,002 | | 8,407,743 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions (\$-25.496 million) and Continuation Pay (CP) (\$-7.506 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

| Budget Activity 02: Pay and Allowances of Enlisted | | 19,702,868 | | 19,702,868 | | -55,501 | | 19,647,367 |
|---|---|---|---|---|---|---|---|---|

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions (\$-37.733.million) and Continuation Pay (CP) (\$-17.768 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

Administrative Record - Section 284 Projects: 150

| Unclassified | | | | **REPROGRAMMING ACTION** | | | Page 3 of 8 |

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | **DoD Serial Number:** FY 19-02 RA |
|---|---|
| Appropriation Title: Various Appropriations | **Includes Transfer?** Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | |
|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

**Military Personnel, Marine Corps, 19/19** — **-36,653**

Budget Activity 01: Pay and Allowances of Officers

| | 3,065,655 | | 3,065,655 | | -12,030 | | 3,053,625 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-12.030 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

Budget Activity 02: Pay and Allowances of Enlisted

| | 9,517,117 | | 9,517,117 | | -24,623 | | 9,492,494 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-23.287 million) and Continuation Pay (CP) ($-1.336 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

**Reserve Personnel, Navy, 19/19** — **-4,095**

Budget Activity 01: Reserve Component Training and Suppor

| | 2,064,037 | | 2,064,037 | | -4,095 | | 2,059,942 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-2.923 million) and Continuation Pay (CP) ($-1.172 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

**AIR FORCE DECREASES** — **-402,255**

**Military Personnel, Air Force, 19/19** — **-45,249**

Budget Activity 01: Pay and Allowances of Officers

| | 9,773,411 | | 9,771,327 | | -45,249 | | 9,726,078 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-30.785 million) and Continuation Pay (CP) ($-14.464 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

DD 1415

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| *Unclassified* | **REPROGRAMMING ACTION** | | | | | | Page 4 of 8 |

| | |
|---|---|
| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | **DoD Serial Number:** FY 19-02 RA |
| Appropriation Title: Various Appropriations | **Includes Transfer?** Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

**Reserve Personnel, Air Force, 19/19** — **-4,835**

Budget Activity 01: Reserve Component Training and Support

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1,885,498 | | 1,885,498 | | -4,835 | | 1,880,663 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-4.274 million) and Continuation Pay (CP) ($-0.561 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

**National Guard Personnel, Air Force, 19/19** — **-8,571**

Budget Activity 01: Reserve Component Training and Support

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 3,761,744 | | 3,761,744 | | -8,571 | | 3,753,173 |

Explanation: Funds are available due to lower than expected Thrift Savings Plan (TSP) automatic and matching contributions ($-5.220 million) and Continuation Pay (CP) ($-3.351 million) for military members enrolled in the new Blended Retirement System (BRS) as a result of fewer than planned opt-ins from the legacy retirement system.

**Aircraft Procurement, Air Force 19/21** — **-57,000**

Budget Activity 05: Modification of In-service Aircraft

| Line Item | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| E-3 | | 116,865 | | 116,865 | | -57,000 | | 59,865 |

Explanation: Funds are available due to schedule delays in the Diminishing Manufacturing Sources Replacement of Avionics for Global Operations and Navigation (DRAGON) integration. DRAGON integration is delayed for two primary reasons. First, aircraft have been available for Programmed Depot Maintenance (PDM) at a slower than planned rate. Second, block 40/45 upgrades, which are still ongoing, must be completed before DRAGON integration. Therefore, funds for DRAGON integration are early to need.

**Missile Procurement, Air Force 19/21** — **-76,900**

Budget Activity 02: Other Missiles

| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
|---|---|---|---|---|---|---|---|---|
| Predator Hellfire Missile | 3,437 | 288,765 | 3,437 | 288,765 | - | -23,000 | 3,437 | 265,765 |

Explanation: Funds are available due to contract savings from all variants that provide precision kill capabilities. Savings are attributed to negotiated lower unit costs per missile system.

DD 1415

**Subject:** Support for DHS Counter-Drug Activity Reprogramming Action

**Appropriation Title:** Various Appropriations

**DoD Serial Number:** FY 19-02 RA

**Includes Transfer?** Yes

**Component Serial Number:**

*(Amounts in Thousands of Dollars)*

| Line Item | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
|---|---|---|---|---|---|---|---|---|
| | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |
| Budget Activity 03: Modification of In-service Missiles | | | | | | | | |
| Minuteman III Modifications | | 124,592 | | 124,592 | | **-24,300** | | 100,292 |

Explanation: Funds are available due to a slip in the production schedule to FY 2020 for the Launch Control Block Upgrade program due to late design changes to the Journal Memory Loader and Printer.

| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
|---|---|---|---|---|---|---|---|---|
| Air Launch Cruise Missile (ALCM) | | 47,632 | | 47,632 | | **-29,600** | | 18,032 |

Explanation: Funds are available due to contract savings from reduced guided missile flight controller modification requirements; and due to lack of executable requirements for Support Equipment and Low Cost Mods in FY 2019.

| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
|---|---|---|---|---|---|---|---|---|
| **Space Procurement, Air Force, 19/21** | | | | | | **-209,700** | | |
| Budget Activity 01: Space Procurement, AF | | | | | | | | |
| Evolved Expendable Launch Capability | | 659,981 | | 659,981 | | **-44,900** | | 615,081 |

Explanation: Funds are available due to the Space Test Program (STP)-4 satellite provider termination of the Robotic Servicing of Geosynchronous Satellites (RSGS) spacecraft. There is no longer a need for the National Security Space Launch (NSSL) launch capability mission integration required to launch this mission for this satellite, meaning the mission has been removed from the official launch mission manifest. The next possible launch Space Vehicle host is outside the 24-month planning cycle, therefore these funds are early to need.

| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
|---|---|---|---|---|---|---|---|---|
| Evolved Expendable Launch Vehicle (Space) | 5 | 954,555 | 5 | 954,555 | **-1** | **-164,800** | 4 | 789,755 |

Explanation: Funds are available due to the Space Test Program (STP)-4 satellite provider termination of the Robotic Servicing of Geosynchronous Satellites (RSGS) spacecraft. There is no longer a need for the National Security Space Launch (NSSL) service for this satellite, meaning the mission has been removed from the official launch mission manifest. The next possible launch Space Vehicle host is outside the 24-month planning cycle, therefore these funds are early to need.

| *Unclassified* | **REPROGRAMMING ACTION** | | | | | | Page 6 of 8 |

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 19-02 RA |
| Appropriation Title: Various Appropriations | |
| | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | |
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |
| **DEFENSE-WIDE DECREASES** | | | | | | **-251,000** | | |
| **Chemical Agent and Munitions Destruction, Defense, 19/20** | | | | | | **-251,000** | | |
| Budget Activity 02: Chem Agents -RDT&E | | 886,728 | | 886,728 | | **-251,000** | | 635,728 |

Explanation: Funds are available due to unexecuted prior year funding plus current year appropriation that was found to be more than sufficient to cover the program's funding needs in FY 2019. This is a fact-of-life asset in Chemical Materials Activity (CMA) and Assembled Chemical Weapons Alternatives (ACWA). Funds are available based on projected costs in FY 2019 (to include additional technologies at Blue Grass Chemical Agent-Destruction Pilot Plant (PCAPP) and at the Pueblo Chemical Agent-Destruction Pilot Plant (PCAPP). Due to cost avoidance that will be gained by shortening schedules at both sites, the program has an asset. This does not inhibit the ability to pursue efforts/technologies to accelerate the destruction of the remaining declared stockpile.

**DD 1415**

| Unclassified | REPROGRAMMING ACTION | Page 7 of 8 |
|---|---|---|

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 19-02 RA |
|---|---|
| Appropriation Title: Various Appropriations | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

### PART II

**FY 2019 REPROGRAMMING INCREASE:** +681,535

**Drug Interdiction and Counter-Drug Activities, Defense, 19/19** +681,535

Budget Activity 01: Counter-Narcotics Support

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 238,306 | | 1,056,771 | | +681,535 | | 1,738,306 |

Explanation: Funds are required to provide support for counter-drug activities of the Department of Homeland Security (DHS). DHS has identified areas along the southern border of the United States that are being used by individuals, groups, and transnational criminal organizations as drug smuggling corridors, and determined that the construction of additional physical barriers and roads in the vicinity of the United States border is necessary in order to impede and deny drug smuggling activities. DHS requests DoD assistance in the execution of projects to replace existing vehicle barriers or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install lighting. Title 10, U.S.Code, Section 284(b)(7) authorizes the DoD to support counterdrug activities of other Federal agencies through the construction of roads and fences, and the installation of lighting, to block drug smuggling corridors across international boundaries of the United States. Such support is funded using DoD's Drug Interdiction and Counter-Drug Activities appropriation.

**FY 2019 REPROGRAMMING DECREASES:** -681,535

**Afghanistan Security Forces Fund, 19/20** -604,000

Budget Activity 06: Afghan National Army

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 1,639,993 | | 1,639,993 | | -279,000 | | 1,360,993 |

Budget Activity 07: Afghan National Police

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 726,264 | | 726,264 | | -117,200 | | 609,064 |

Budget Activity 08: Afghan Air Force

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 1,728,263 | | 1,728,263 | | -71,900 | | 1,656,363 |

Budget Activity 09: Afghan Special Security Forces

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 825,480 | | 825,480 | | -135,900 | | 689,580 |

Explanation: Funds are available from the Afghanistan Security Forces Fund (ASFF) due to forward funding of Afghan National Defense and Security Forces (ANDSF) requirements in the FY 2018/2019 ASFF appropriation and from cost savings identified during a comprehensive contract management review conducted by the Commander, Combined Security Transition Command – Afghanistan (CSTC-

DD 1415

| Unclassified | REPROGRAMMING ACTION | Page 8 of 8 |

| Subject: Support for DHS Counter-Drug Activity Reprogramming Action | DoD Serial Number: FY 19-02 RA |
| Appropriation Title: Various Appropriations | Includes Transfer? Yes |

| Component Serial Number: | *(Amounts in Thousands of Dollars)* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Program Base Reflecting Congressional Action | | Program Previously Approved by Sec Def | | Reprogramming Action | | Revised Program | |
| Line Item | Quantity | Amount | Quantity | Amount | Quantity | Amount | Quantity | Amount |
| a | b | c | d | e | f | g | h | i |

A) from September 2018 through March 2019.  The revised funding levels allow the CSTC-A to provide full support to the ANDSF sustainment, infrastructure, equipment, and training and operations requirements.

**Operation and Maintenance, Defense-Wide, 19/20**                                  **-77,535**
Defense Security Cooperation Agency
Budget Activity 04:  Administration and Servicewide Activities
                         1,262,434            1,262,434            -77,535          1,184,899

Explanation:  Funds are available from the Coalition Support Fund (CSF) due to no projected claims for reimbursements from key cooperating nations.  The Department has preserved some CSF for projected Coalition Readiness Support Program requirements and Jordan border security reimbursements.



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

5/9/19

MEMORANDUM FOR SECRETARY OF THE ARMY
    COMMANDER, U.S. ARMY CORPS OF ENGINEERS

SUBJECT:   Construction of Roads and Fences along the U.S. Southern Border in Support of the
    Department of Homeland Security

On February 25, 2019 the Secretary of Homeland Security requested that DoD provide
support to the efforts of the Department of Homeland Security (DHS) to secure the southern
border by blocking up to 11 drug-smuggling corridors along the border through the construction
of fences and roads and the installation of lighting.

On March 25, 2019 I determined that the requirements of title 10, U.S. Code, section 284,
had been satisfied, and I approved support pursuant to title 10, U.S. Code, section 284(b)(7), and
directed the transfer of $1B into the Drug Interdiction and Counter-Drug Activities, Defense
account.

Having determined again that the requirements of title 10, U.S. Code, section 284, have
been satisfied, I have decided to provide up to $1.5B of support for El Centro Sector Project 1,
Tucson Sector Project 1, Tucson Sector Project 2, and Tucson Sector Project 3 specifically by
constructing 78.25 miles of 30-foot pedestrian fencing, constructing and improving roads, and
installing lighting.

I have directed the Under Secretary of Defense (Comptroller)/Chief Financial Officer
(USD(C)/CFO) to transfer $1.5B from the accounts identified in the Enclosure to my
memorandum to the USD(C)/CFO into the Drug Interdiction and Counter-Drug Activities,
Defense account. That $1.5B will be allocated to the Department of the Army with instructions
to further allocate it to the U.S. Army Corps of Engineers to undertake the DHS priority projects
identified below, including initial project scoping and contracting:

- El Centro Sector Project 1 - 15.25 miles

- Tucson Sector Project 1 - 38 miles

- Tucson Sector Project 2 - 5 miles

- Portions of Tucson Sector Project 3 - 20 miles

The U.S. Army Corps of Engineers will be the construction agent for this support and
will take all necessary action to undertake construction this fiscal year.  In light of the urgent and
compelling nature of the crisis at the southern border, as described by the President, the Acting
Secretary of Homeland Security, and other DHS officials, you should undertake construction as
quickly as possible, consistent with applicable law.



As the proponent of the requested action, Customs and Border Protection will serve as the lead agency for environmental compliance and will be responsible for providing all necessary access to land.  DHS will accept custody of the completed infrastructure, account for that infrastructure in its real property records, and operate and maintain the completed infrastructure.

My point of contact is Kenneth Rapuano, Assistant Secretary of Defense for Homeland Defense and Global Security.

Patrick M. Shanahan
Acting

cc:
Chairman of the Joint Chiefs of Staff
Under Secretary of Defense for Policy
Under Secretary of Defense (Comptroller)/Chief Financial Officer
General Counsel of the Department of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant Secretary of Defense for Homeland Defense and Global Security
Assistant to the Secretary of Defense for Public Affairs

**ACTION MEMO**

AUG 2 1 2019

DUSD(P) ▨▨

Prepared by: ▨▨▨▨▨ OASD(HD&GS)

Phone Number: ▨▨▨▨

FOR: SECRETARY OF DEFENSE

FROM: Kenneth P. Rapuano, Assistant Secretary of Defense, Homeland Defense & Global Security

SUBJECT: Military Construction Pursuant to 10 U.S.C. § 2808

**PURPOSE:** To obtain (1) your determination that constructing eleven border barrier projects is necessary to support the use of the armed forces in connection with the national emergency at the southern border, (2) your approval to undertake the eleven border projects, and (3) your authorization to notify Congress of the decision to undertake the eleven border projects.

**COORDINATION:** This action was coordinated with the Secretaries of the Military Departments, Acting USD(C)/CFO, USD(A&S), OGC, and the Joint Staff.

**BLUF:** This memorandum recommends that you determine that construction of eleven border barrier military construction (MILCON) projects costing approximately $3.6B (TAB E) is necessary to support the use of the armed forces in connection with the national emergency at the southern border and that you approve undertaking those projects.

**DISCUSSION:** On April 4, 2018, the President directed the Secretary of Defense to support the Department of Homeland Security (DHS) in securing the southern border, and to take other necessary actions to stop the flow of deadly drugs and other contraband, gang members and other criminals, and illegal aliens into this country. Since April 4, 2018, DHS has submitted **29** separate requests for DoD support regarding the crisis at the southern border, and DoD currently has approximately 5,540 personnel supporting DHS's border security mission.

Statutory Authority

- On February 15, 2019, the President declared a national emergency in accordance with the National Emergencies Act and determined that the crisis at the southern border is a national emergency that requires the use of the armed forces (TAB F).

- This declaration made available 10 U.S.C. § 2808, which authorizes the Secretary of Defense, without regard to any other provision of law, to undertake MILCON projects not otherwise authorized by law that are necessary to support the use of the armed forces in connection with the national emergency.

- To satisfy the requirements of 10 U.S.C § 2808, the border barriers must be MILCON projects, and you must determine that these MILCON projects are necessary to support the use of the armed forces in connection with the national emergency (TAB G).

  - To be MILCON, the construction or acquisition of land must be with respect to a military installation in accordance with 10 U.S.C. § 2801(a). Within the United States, a military installation means "a base, camp, post, station, yard, center, or other activity under the jurisdiction of the Secretary of a military department."



| | | | | |
|---|---|---|---|---|
| SD CA | | DSD SA | ▨ | |
| SD SMA | | DSD SMA | | |
| SD MA | | DSD MA | | |
| CoS | | DSD CA | | |
| SD Action Grp | | | | |
| ES | | ESB Rvw | | |
| ESR | ▨ | ESD | | |



OSD008866-19/CMD010951-19

OFFICE OF THE
SECRETARY OF DEFENSE

2019 AUG 21 PM 3: 54

FY19 2808 Administrative Record - 0186

**DRAFT // PRE-DECISIONAL // DELIBERATIVE**

- Based on the facts and analysis presented below and in TABs G, H, I, and J, you may find that these 11 projects are MILCON projects necessary to support the use of the armed forces in connection with the national emergency.

Border Barrier Projects as MILCON Projects

- With the exception of Yuma Project 2 ($40M) and Yuma Project 10/27 ($527M), which fall on approximately 33 miles of land on the Barry M. Goldwater Range (BMGR) in Arizona under the administrative jurisdiction of the Secretary of the Navy, the remaining proposed border barrier projects are on non-DoD Federal land or non-Federal land.

- In order for the remaining border barrier projects to constitute MILCON projects:

  - the Federal landholding agency (primarily the Department of the Interior (DOI) or elements of DoI) must transfer administrative jurisdiction over the Federal land to the Secretary of a Military Department;

  - the Secretary of a Military Department must acquire the non-Federal land through purchase or condemnation; and

  - the Secretary of a Military Department must accept custody and accountability over the land (both Federal and non-Federal) and report the land in the Military Department's inventory, either as its own installation or as part of an existing, nearby military installation.

- There are two types of Federal land – public domain lands and normal Federal property.

- *Public Domain Lands*: DOI may transfer administrative jurisdiction of public domain lands to DoD through either new withdrawal or emergency withdrawal procedures. New withdrawal procedures may take between 12 and 24 months (due to DOI's legal requirement to comply with certain environmental and other laws), while emergency withdrawals could be accomplished within 1 month.

  - The Department of the Army may only submit a withdrawal application to DOI after SecDef makes a decision to undertake specific MILCON projects pursuant to Section 2808. DoD, through OUSD(P) and the U.S. Army Corps of Engineers (USACE), is working with DOI to describe the land needed for each proposed project and to develop four applications for emergency withdrawal to be submitted to DOI shortly after your decision to undertake specific Section 2808 projects.

- *Normal Federal Property:* For those non-DoD lands that are ordinary Federal property, the Federal landholding agency may transfer administrative jurisdiction to the Secretary of a Military Department within a few weeks of identifying the property. This transfer would occur through the General Services Administration, pursuant to the Federal Property Act.

- *Non-Federal Land:* The Department of the Army may acquire the lands required for projects on non-Federal land through voluntary purchase or condemnation, which USACE indicates would take 12 to 24 months, depending on the number of property owners and the owners' willingness to sell.

Necessity of Border Barriers

- A more detailed explanation as to why these border barrier projects are necessary to support the use of the armed forces can be found at TAB H.

- At the request of then-Acting Secretary Shanahan, then-Secretary of Homeland Security Nielsen provided a prioritized list (TAB I) of border barrier construction projects (in 15 segments) that DHS

**DRAFT // PRE-DECISIONAL // DELIBERATIVE**

DRAFT // PRE-DECISIONAL // DELIBERATIVE

assessed would improve the effectiveness and efficiency of armed forces personnel supporting DHS in securing the southern border.

- DHS's letter explained that it had identified 12 capabilities required to achieve operational control of the border, the most important of which is impeding and denying unlawful entry, primarily through the use of artificial barriers.

- Based on this DHS list, then-Acting Secretary Shanahan instructed the CJCS to assess whether and how construction of these projects, as well as projects identified by DHS for construction under 10 U.S.C. § 284 that have not yet been approved for funding by DoD, could support the use of the armed forces. He also directed the USD(C) to identify $3.6 billion that could be used to source Section 2808 projects. The CJCS concluded that all of the DHS identified construction projects are necessary to support the use of the armed forces in connection with the national emergency at the southern border (TAB J).

- In developing this assessment, the CJCS consulted with DHS, including Customs and Border Protection (CBP) and the U.S. Border Patrol (USBP); U.S. Northern Command; and USACE and determined that border barriers:

    – Improve CBP's detection, identification, classification, and response capabilities;

    – Reduce vulnerabilities in key border areas and the time it takes for Border Patrol agents to apprehend illegal migrants; and

    – Serve as a force multiplier to allow military personnel to cover other areas in support of the detection and monitor mission.

- The CJCS's assessment also determined that the construction of border barriers would:

    – Make migration flows more predictable by channeling illegal migrants towards points of legal entry, improving CBP force allocation, and reducing the need for low-density/high-demand DoD aviation assets;

    – Allow DoD to re-prioritize its force laydown in support of DHS/CBP; and

    – Enable more effective and efficient use of DoD personnel, which could ultimately reduce the demand for DoD support at the southern border over time.

Determinations

- Based on the information and analysis above and at TABs H, I, and J, you may determine that the border barrier construction projects at TAB E, and associated acquisition of land and transfer of administrative jurisdiction, are MILCON projects necessary to support the use of the armed forces in connection with the national emergency declared by the President on February 15, 2019. The memorandum at TAB A would memorialize this decision and direct implementing actions.

- Section 2808 authorizes the SecDef to undertake military construction "without regard to any other provision of law" that would prevent an expeditious response to the national emergency. Such provisions of law include, but are not limited to, environmental, historic preservation, and contracting laws.

- If you determine that the above construction projects and associated acquisition of land and transfer of administrative jurisdiction are MILCON projects necessary to support the use of the armed forces, you will need to sign notification letters to the Acting Secretary of Homeland Security (TAB C) and the Secretary of the Interior (TAB D).

DRAFT // PRE-DECISIONAL // DELIBERATIVE

- The letter to the Acting Secretary of Homeland Security notifies DHS of your decision to undertake 11 border barrier military construction projects necessary to support the use of the armed forces in response to the February 15, 2019, national emergency.

- The letter to the Secretary of the Interior notifies DOI of your decision to undertake certain border barrier military construction projects necessary to support the use of the armed forces on lands currently held by DOI or its agencies, and requests DOI's assistance to transfer administrative jurisdiction over those lands expeditiously to the Secretary of the Army.

  o The Department of the Army, through USACE, will work with DOI to describe the necessary lands, determine the appropriate transfer mechanism (emergency withdrawal or Federal Property Act transfer), and develop and submit the application and requisite information.

  o After the Secretary of the Interior approves the emergency withdrawal by signing a public land order transferring administrative jurisdiction to the Department of the Army (or transfers jurisdiction pursuant to the Federal Property Act), the Department of the Army will accept custody of and accountability for the land and add the land to its real property inventory as either a new military installation or as part of an existing military installation, consistent with Section 2801, as outlined in TAB G.

- **Congress:** You are required to notify the congressional defense committees of the specific MILCON projects you decide to undertake under Section 2808 and their associated cost. The letters at TAB B notify the committees of your decision.

  - There already are congressional efforts to restrict use of Section 2808 to build border barriers, and a decision to undertake border barrier projects under Section 2808 will likely renew and invigorate those efforts (TAB K).

  - Although not required by Section 2808, DoD committed to informing the congressional defense committees of the specific MILCON projects that would be deferred in order to make funds available for border barrier MILCON projects under Section 2808. There will be separate guidance to the Comptroller regarding engagement with Congress on deferred MILCON projects.

- **Funding:** The DUSD(C) provided you a package that identified existing MILCON projects that the Department could defer to fund up to $3.6B in Section 2808 MILCON projects should you decide to undertake those projects. In compiling this package, the DUSD(C) relied on DoD Components to prioritize projects with award dates in fiscal year 2020 or later, the deferral of which would have a minimal effect on Component readiness. The DUSD(C) did not consider any family housing, barracks, or dormitory projects for deferral.

  - As will be detailed in a separate package, the Comptroller will prioritize deferred MILCON projects to ensure that, initially, only funds associated with projects outside of the United States will be provided to the Department of the Army for construction of Section 2808 projects.

- **Litigation:** The Secretary of Defense (in his official capacity) is a defendant in multiple lawsuits challenging, among other matters, the President's declaration of national emergency and the use of Section 2808. The plaintiffs seek an injunction to halt all activity under Section 2808.

  - The Government has notified all courts in which a challenge to Section 2808 is pending that the Department has not made any decision to undertake any projects under Section 2808. The Government agreed to notify those courts as soon as a decision is made. The Office of General Counsel, through the Department of Justice (DOJ), will provide such notification. DOJ will

DRAFT // PRE-DECISIONAL // DELIBERATIVE

share the specific MILCON projects to be undertaken along with any other publicly available information about the projects.

– DOJ has requested that DoD share the funding sources with the courts and the parties as soon as possible in order to avoid additional lawsuits and narrow the scope of the litigation.

**RECOMMENDATIONS:**

1) Determine that 11 border barrier projects (TAB E) and associated acquisition of land and transfer of jurisdiction are MILCON projects necessary to support use of the armed forces in connection with the February 15, 2019, national emergency requiring use of the armed forces, and decide to undertake those projects as authorized by 10 U.S.C. § 2808.

Approve: _Mtte_ 9/3/19_____ Disapprove: _____ Other: _____

2) Notify Congress of your decision to undertake military construction projects under 10 U.S.C. § 2808 by signing the congressional notification letters at TAB B.

3) Sign the memorandum at TAB A:
   a. Documenting and implementing your decision to undertake 11 military construction projects necessary to support the use of the armed forces in connection with the national emergency.

   b. Authorizing and directing the Acting Secretary of the Army to:
      i. Expeditiously undertake the 11 border barrier military construction projects, and as authorized by Section 2808, do so without regard to any other provision of law that could impede such expeditious construction in response to the national emergency;

      ii. Immediately proceed to construct the projects on BMGR, where the land is already under the jurisdiction of the Secretary of the Navy (constructing the remaining projects as the necessary real property is under the administrative jurisdiction of the Department of the Army and reflected in its records as a military installation);

      iii. Immediately apply for and accept administrative jurisdiction of real property from other Federal departments and agencies, including DOI, and to acquire non-Federal real property necessary to undertake the specified military construction projects; and

      iv. Add such land to the Department of the Army's real property inventory, either as a new installation or as part of an existing military installation, consistent with DoD Instruction (DoDI) 4165.14, "Real Property Inventory (RPI) and Forecasting," and DoDI 4165.71, "Real Property Acquisition."

   c. Directing the Secretary of the Navy, as the land holding agency for BMGR, to ensure USACE has the access and information necessary to undertake the military construction projects at BMGR; and

   d. Directing the Acting USD(C)/CFO to ensure that up to $3.6B in unobligated MILCON funds are available to undertake such military construction projects.

4) Sign the letter at TAB C notifying the Acting Secretary of Homeland Security of your decision.

DRAFT // PRE-DECISIONAL // DELIBERATIVE

5) Sign the letter at TAB D requesting assistance from the Secretary of the Interior for the transfer of administrative jurisdiction of non-DoD Federal land.

Attachments:
TAB A – Memorandum – Guidance for Undertaking MILCON Projects Pursuant to Section 2808 of Title 10, U.S. Code
TAB B – Congressional Notification Letters
TAB C – Letter Notifying Acting Secretary of Homeland Security
TAB D – Letter Requesting Assistance from DOI for Transfer of Administrative Jurisdiction
TAB E – Border Barrier Project List
TAB F – President's Declaration of National Emergency
TAB G – Paper on Section 2808 of Title 10, U.S. Code.
TAB H – Summary of Analysis and Justification of the Necessity of Border Barriers to Support Use of the Armed Forces
TAB I – Letter from the Secretary of Homeland Security on Recommended 2808 Border Barrier Projects
TAB J – CJCS Assessment of 2808 Border Barrier Projects
TAB K – Statement of Administration Policy on Border Barrier Related Matters
TAB L – Coordination

DRAFT // PRE-DECISIONAL // DELIBERATIVE

# TAB

# A

UNCLASSIFIED//FOUO



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

9/3/19

MEMORANDUM FOR SECRETARIES OF THE MILITARY DEPARTMENTS
ACTING UNDER SECRETARY OF DEFENSE
(COMPTROLLER)/CHIEF FINANCIAL OFFICER

SUBJECT: Guidance for Undertaking Military Construction Projects Pursuant to Section 2808 of Title 10, U.S. Code

On February 15, 2019, in accordance with the National Emergencies Act, the President declared that a national emergency exists at the southern border requiring the use of the armed forces. This declaration made available, among other statutes, 10 U.S.C. § 2808, which authorizes the Secretary of Defense, without regard to any other provision of law, to undertake military construction projects not otherwise authorized by law that are necessary to support the use of the armed forces in connection with the national emergency.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

I therefore authorize and direct the Acting Secretary of the Army to expeditiously undertake the eleven border barrier military construction projects specified in the attachment, and, as authorized by section 2808, to do so without regard to any other provision of law that could impede such expeditious construction in response to the national emergency. Such laws include, but are not limited to, the National Environmental Policy Act, the Endangered Species Act, the National Historic Preservation Act, the Clean Water Act, and provisions in Chapter 137 ("Procurement Generally") of title 10, U. S. Code. The Acting Secretary of the Army shall immediately apply for and accept administrative jurisdiction of real property from other Federal departments and agencies, including DOI, and acquire the non-Federal real property necessary to undertake the specified military construction projects. Once the Department of the Army obtains administrative jurisdiction of the requisite land, the Acting Secretary of the Army shall add such land to the Department of the Army's real property inventory, either as a new installation or as part of an existing military installation, consistent with DoD Instruction (DoDI) 4165.14, "Real Property Inventory (RPI) and Forecasting," and DoDI 4165.71, "Real Property Management."



OSD008866-19/CMD011427-19

UNCLASSIFIED//FOUO

The Acting Secretary of the Army is directed to immediately proceed to construct 33 miles of border barrier on the Barry M. Goldwater Range (BMGR), identified as Yuma 10/27 and Yuma 2, to the extent the land is already under the jurisdiction of the Secretary of the Navy. As the land holding agency for BMGR, the Secretary of the Navy shall ensure USACE has the access and information necessary to undertake these military construction projects on BMGR. The Acting Secretary of the Army shall proceed with construction of the remaining projects as soon as the requisite land is under the administrative jurisdiction of the Department of the Army and reflected in its records as a military installation.

I further authorize and direct the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the eleven specified military construction projects. As will be detailed in separate guidance, the Comptroller will prioritize deferred military construction projects to ensure that, initially, only funds associated with projects outside of the United States will be provided to the Department of the Army for construction of section 2808 projects.

The Secretaries of the other Military Departments will assist the Acting Secretary of the Army with any staffing shortfalls related to undertaking these tasks.

Matt T. Espu

Attachment:
As stated

cc:
Chairman, Joint Chiefs of Staff
Under Secretary of Defense (Policy)
Under Secretary of Defense (Acquisition & Sustainment)
General Counsel of the Department Of Defense
Assistant Secretary of Defense for Legislative Affairs
Assistant to the Secretary of Defense for Public Affairs
Commander, U.S. Army Corps of Engineers

FY19 2808 Administrative Record - 0194

## List of Proposed Border Barrier Projects

**Yuma Project 2** ($40M): Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 197, for a total of approximately 1.5 - 2 miles.

**Yuma Project 10/27** ($527M): Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M): Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M): Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M): Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M): Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M): Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M): Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M): Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M): Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M): Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.

# TAB

# B



**SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

9/3/19

The Honorable James Inhofe
Chairman
Committee on Armed Services
United States Senate
Washington, DC 20510

Dear Mr. Chairman:

On February 15, 2019, the President issued a proclamation declaring that a national emergency exists along the southern border of the United States that requires the use of the armed forces. In order to provide additional authority to the Department of Defense as part of the Federal Government's response to this national emergency, the President further made available, in accordance with Section 301 of the National Emergencies Act (50 U.S.C. 1631), the authority provided in Section 2808 of Title 10, U.S. Code.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

Accordingly, I have authorized and directed the Acting Secretary of the Army to undertake these 11 projects expeditiously, and, as authorized by Section 2808, to do so without regard to any other provision of law that may impede the expeditious construction of such projects in response to the national emergency. A description of and the estimated cost for each project, including the cost of any associated real estate actions, can be found in the enclosure.

I have further authorized and directed the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the specified military construction projects. The funds being made available are associated only with deferred military construction projects that are not scheduled for award until fiscal year 2020 or later and do not include any family housing, barracks, or dormitory projects. Furthermore, I have directed the Acting Under Secretary of Defense (Comptroller) to prioritize deferred military construction projects such that, initially, only funds associated with deferred military construction projects outside of the United States will be made available to the Department of the Army. This will



provide for approximately $1.8 billion of the required funds.  The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation.  My intent in prioritizing funds in this manner is to provide time to work with you to determine opportunities to restore funds for these important military construction projects as well as to work with our allies and partners in improving cost burden sharing for the overseas construction projects.

     I am sending an identical letter to the other Congressional defense committees.

                  Sincerely,

Enclosure:
As stated

cc:
The Honorable Jack Reed
Ranking Member

## List of Military Construction Projects

**Yuma Project 2** ($40M): Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 297, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M): Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M): Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M): Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M): Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M): Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M): Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M): Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M): Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M): Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M): Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

9|3|19

The Honorable Adam Smith
Chairman
Committee on Armed Services
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

On February 15, 2019, the President issued a proclamation declaring that a national emergency exists along the southern border of the United States that requires the use of the armed forces. In order to provide additional authority to the Department of Defense as part of the Federal Government's response to this national emergency, the President further made available, in accordance with Section 301 of the National Emergencies Act (50 U.S.C. 1631), the authority provided in Section 2808 of Title 10, U.S. Code.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

Accordingly, I have authorized and directed the Acting Secretary of the Army to undertake these 11 projects expeditiously, and, as authorized by Section 2808, to do so without regard to any other provision of law that may impede the expeditious construction of such projects in response to the national emergency. A description of and the estimated cost for each project, including the cost of any associated real estate actions, can be found in the enclosure.

I have further authorized and directed the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the specified military construction projects. The funds being made available are associated only with deferred military construction projects that are not scheduled for award until fiscal year 2020 or later and do not include any family housing, barracks, or dormitory projects. Furthermore, I have directed the Acting Under Secretary of Defense (Comptroller) to prioritize deferred military construction projects such that, initially, only funds associated with deferred military construction projects outside of the United States will be made available to the Department of the Army. This will

provide for approximately $1.8 billion of the required funds. The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation. My intent in prioritizing funds in this manner is to provide time to work with you to determine opportunities to restore funds for these important military construction projects as well as to work with our allies and partners in improving cost burden sharing for the overseas construction projects.

I am sending an identical letter to the other Congressional defense committees.

Sincerely,

Enclosure:
As stated

cc:
The Honorable William M. "Mac" Thornberry
Ranking Member

## List of Military Construction Projects

**Yuma Project 2** ($40M): Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 297, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M): Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M): Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M): Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M): Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M): Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M): Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M): Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M): Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M): Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M): Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

9/3/19

The Honorable Richard C. Shelby
Chairman
Committee on Appropriations
United States Senate
Washington, DC 20510

Dear Mr. Chairman:

On February 15, 2019, the President issued a proclamation declaring that a national emergency exists along the southern border of the United States that requires the use of the armed forces. In order to provide additional authority to the Department of Defense as part of the Federal Government's response to this national emergency, the President further made available, in accordance with Section 301 of the National Emergencies Act (50 U.S.C. 1631), the authority provided in Section 2808 of Title 10, U.S. Code.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

Accordingly, I have authorized and directed the Acting Secretary of the Army to undertake these 11 projects expeditiously, and, as authorized by Section 2808, to do so without regard to any other provision of law that may impede the expeditious construction of such projects in response to the national emergency. A description of and the estimated cost for each project, including the cost of any associated real estate actions, can be found in the enclosure.

I have further authorized and directed the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the specified military construction projects. The funds being made available are associated only with deferred military construction projects that are not scheduled for award until fiscal year 2020 or later and do not include any family housing, barracks, or dormitory projects. Furthermore, I have directed the Acting Under Secretary of Defense (Comptroller) to prioritize deferred military construction projects such that, initially, only funds associated with deferred military construction projects outside of the United States will be made available to the Department of the Army. This will

provide for approximately $1.8 billion of the required funds. The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation. My intent in prioritizing funds in this manner is to provide time to work with you to determine opportunities to restore funds for these important military construction projects as well as to work with our allies and partners in improving cost burden sharing for the overseas construction projects.

I am sending an identical letter to the other Congressional defense committees.

Sincerely,

Enclosure:
As stated

cc:
The Honorable Patrick J. Leahy
Vice Chairman

# List of Military Construction Projects

**Yuma Project 2** ($40M): Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 297, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M): Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M): Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M): Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M): Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M): Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M): Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M): Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M): Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M): Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M): Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.



**SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

9|3|19

The Honorable Nita M. Lowey
Chairwoman
Committee on Appropriations
U.S. House of Representatives
Washington, DC 20515

Dear Madam Chairwoman:

On February 15, 2019, the President issued a proclamation declaring that a national emergency exists along the southern border of the United States that requires the use of the armed forces. In order to provide additional authority to the Department of Defense as part of the Federal Government's response to this national emergency, the President further made available, in accordance with Section 301 of the National Emergencies Act (50 U.S.C. 1631), the authority provided in Section 2808 of Title 10, U.S. Code.

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

Accordingly, I have authorized and directed the Acting Secretary of the Army to undertake these 11 projects expeditiously, and, as authorized by Section 2808, to do so without regard to any other provision of law that may impede the expeditious construction of such projects in response to the national emergency. A description of and the estimated cost for each project, including the cost of any associated real estate actions, can be found in the enclosure.

I have further authorized and directed the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer to ensure that up to $3.6 billion in unobligated military construction funds are available for the purpose of undertaking the specified military construction projects. The funds being made available are associated only with deferred military construction projects that are not scheduled for award until fiscal year 2020 or later and do not include any family housing, barracks, or dormitory projects. Furthermore, I have directed the Acting Under Secretary of Defense (Comptroller) to prioritize deferred military construction projects such that, initially, only funds associated with deferred military construction projects outside of the United States will be made available to the Department of the Army. This will

provide for approximately $1.8 billion of the required funds.  The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation.  My intent in prioritizing funds in this manner is to provide time to work with you to determine opportunities to restore funds for these important military construction projects as well as to work with our allies and partners in improving cost burden sharing for the overseas construction projects.

I am sending an identical letter to the other Congressional defense committees.

Sincerely,

Enclosure:
As stated

cc:
The Honorable Kay Granger
Ranking Member

# List of Military Construction Projects

**Yuma Project 2** ($40M):  Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 297, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M):  Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M):  Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M):  Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M):  Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M):  Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M):  Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M):  Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M):  Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M):  Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M):  Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.



TAB

C



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

9/3/19

The Honorable Kevin McAleenan
Acting Secretary of Homeland Security
Washington, DC 20528

Dear Mr. Secretary:

The Department of Defense appreciates that the Department of Homeland Security (DHS) confronts a continuing crisis at the southern border. On February 15, 2019, the President declared that a national emergency exists at the southern border that requires the use of the armed forces, making available certain emergency authorities, including 10 U.S.C. § 2808.

Section 2808 provides that, in the event of a declaration by the President of a national emergency requiring the use of the armed forces, "the Secretary of Defense, without regard to any other provision of law, may undertake military construction projects, and may authorize the Secretaries of the military departments to undertake military construction projects, not otherwise authorized by law that are necessary to support such use of the armed forces."

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

I therefore have authorized and directed the Acting Secretary of the Army to undertake expeditiously the border barrier military construction projects specified in the enclosure and, as authorized by Section 2808, to do so without regard to any other provision of law that could impede such expeditious construction in response to the national emergency. The Secretary of the Army will immediately apply for and accept administrative jurisdiction of real property from other Federal departments and agencies, including DHS and DOI, and acquire non-Federal real property necessary to undertake the specified military construction projects.

I have directed the Acting Secretary of the Army to immediately proceed to construct 33 miles of border barrier on the Barry M. Goldwater Range (BMGR), identified as Yuma 10/27 and Yuma 2, to the extent the land is already under the jurisdiction of the Secretary of the Navy. The Acting Secretary of the Army will proceed with construction of the remaining projects as



OSD008866-19/CMD011429-19

soon as the requisite land is under the administrative jurisdiction of the Department of the Army and reflected in its records as a military installation.

The Acting Secretary of the Army and the Commander, U.S. Army Corps of Engineers, are authorized to coordinate directly with the Department of Homeland Security, Department of the Interior, and Department of Justice, including any of their components, on any matters required to execute these projects.

Sincerely,

Enclosure:
As stated

## List of Military Construction Projects

**Yuma Project 2** ($40M)**:** Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 197, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M)**:** Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M)**:** Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M)**:** Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M)**:** Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M)**:** Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M)**:** Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M)**:** Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M)**:** Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M)**:** Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M)**:** Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.

# TAB

# D



**SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

9|3|19

The Honorable David Bernhardt
Secretary of the Interior
Washington, DC 20240

Dear Mr. Secretary:

On February 15, 2019, the President declared that a national emergency exists at the southern border that requires the use of the armed forces, making available certain emergency authorities, including 10 U.S.C. § 2808.

Section 2808 provides that, in the event of a declaration by the President of a national emergency requiring the use of the armed forces, "the Secretary of Defense, without regard to any other provision of law, may undertake military construction projects, and may authorize the Secretaries of the Military Departments to undertake military construction projects, not otherwise authorized by law that are necessary to support such use of the armed forces."

Based on analysis and advice from the Chairman of the Joint Chiefs of Staff and input from the Commander, U.S. Army Corps of Engineers, the Department of Homeland Security (DHS), and the Department of the Interior and pursuant to the authority granted to me in Section 2808, I have determined that 11 military construction projects along the international border with Mexico, with an estimated total cost of $3.6 billion, are necessary to support the use of the armed forces in connection with the national emergency. These projects will deter illegal entry, increase the vanishing time of those illegally crossing the border, and channel migrants to ports of entry. They will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers. In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively. In this respect, the contemplated construction projects are force multipliers.

I therefore authorized and directed the Acting Secretary of the Army to undertake expeditiously the border barrier military construction projects specified in the enclosure, including the acquisition of lands and transfer of administrative jurisdiction, as authorized by section 2808, and to do so without regard to any other provision of law that could impede the expeditious construction of such projects in response to the national emergency. Section 2808 provides the Department with the legal authority required to acquire the land necessary to undertake the military construction projects that I have determined are necessary to support the use of the armed forces in connection with the February 15, 2019 declaration of national emergency.

Several of these 11 border barrier military construction projects have portions that are on two types of Federal land: public domain lands governed by section 204 of the Federal Land



OSD008866-19/CMD011431-19

Policy and Management Act (title 43, U.S. Code, section 1714) and Federal property governed by the Federal Property and Administrative Services Act (40 U.S.C. 571, et seq.). The USACE has been working with the DOI and its agencies to describe in sufficient detail the land needed for these projects (and the appropriate transfer method) so that the Department of the Army may expeditiously obtain administrative jurisdiction over such lands and reflect the lands in its records as a military installation.

Utilizing the authority provided to the Secretary of Defense in section 2808 to undertake, without regard to any other provision of law, military construction projects necessary to support the use of the armed forces in connection with the national emergency, I have directed the Acting Secretary of the Army to request from DOI emergency withdrawal of all public lands required for these projects from all public land laws and transfer of administrative jurisdiction of such lands to the Secretary of the Army. I have further directed the Acting Secretary of the Army, with respect to property governed by the Federal Property and Administrative Services Act, to request that the Federal land holding agency, through the General Services Administration, expeditiously and without charge transfer administrative jurisdiction over such lands to the Acting Secretary of the Army.

My points of contact are Kenneth Rapuano, Assistant Secretary of Defense for Homeland Defense and Global Security, and Lieutenant General Todd Semonite, Commander, U.S. Army Corps of Engineers.

Sincerely,

Mark T. Esper

Enclosure:
As stated

2

# TAB

# E

## List of Military Construction Projects

**Yuma Project 2** ($40M):  Replacement of one segment of primary pedestrian fencing on the Barry M. Goldwater Range starting 2.5 miles east of Border Monument 198 and extending east to Border Monument 297, for a total of approximately 1.5-2 miles.

**Yuma Project 10/27** ($527M):  Construction of approximately 31 miles of a new secondary pedestrian fence system on the Barry M. Goldwater Range.

**Yuma Project 3** ($630M):  Replacement of 31 miles of vehicle barriers with new pedestrian fencing, beginning approximately 0.4 miles east of the Barry M. Goldwater Range and continuing for approximately 31 miles east through the Cabeza Prieta National Wildlife Refuge in Yuma County.

**San Diego Project 4** ($67M):  Construction of 1.5 miles of a new primary pedestrian fence system starting 3.6 miles east of the Otay Mesa Port of Entry (POE), extending east, and construction of 2 miles of a new secondary pedestrian fence system starting 3.6 miles east of the Otay Mesa POE, extending east.

**Yuma Project 6** ($65M):  Construction of approximately 1 mile of a new primary pedestrian fence system starting at Andrade POE and extending a half mile west of monument marker 206, then resuming east of the Colorado River and extending south one mile; and construction of 2 miles of a new secondary pedestrian fence system starting a half mile east of monument marker 208 and extending east to the Colorado River, and then resuming on the east side of the Colorado river and extending south for approximately one mile.

**El Paso Project 2** ($476M):  Replacement of 23.51 miles of vehicle barriers with new pedestrian fencing in noncontiguous segments within Hidalgo and Luna Counties, New Mexico.
- The first segment begins approximately 5.1 miles east of the New Mexico/Arizona Border, continuing east for 4.55 miles.
- The second segment begins approximately 3 miles west of the Antelope Wells POE to 3 miles east of the POE for 6.12 miles.
- The third segment begins approximately 20 miles west of the Columbus POE, extending west for 12.84 miles.

**El Paso Project 8** ($164M):  Construction of approximately 6 miles of a new primary pedestrian fence system in place of existing vehicle barriers starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63; and construction of approximately 6 miles of a new secondary pedestrian fence system starting 1.5 miles west of monument marker 64 and extending 2 miles east of monument marker 63.

**San Diego Project 11** ($57M):  Construction of approximately 3 miles of a new secondary pedestrian fence system starting 2 miles west of the Tecate POE and extending to 1.5 miles east of the Tecate POE.

**El Centro Project 5** ($20M):  Construction of approximately 1 mile of a new secondary pedestrian fence system starting 0.5 mile west of the Calexico West POE, extending 1 mile east of the Calexico West POE.

**Laredo Project 7** ($1,268M):  Construction of approximately 52 miles of a new primary pedestrian fence system starting from the Laredo-Columbia Solidarity POE North West for approximately 52 miles along the Rio-Grande River.

**El Centro Project 9** ($286M):  Construction of approximately 12 miles of a new secondary pedestrian fence system, starting 1.5 miles west of monument marker 223 and ending at monument marker 221, and resuming 1 mile east of the Calexico West POE and extending east for 3 miles.

# TAB

# F

DECLARING A NATIONAL EMERGENCY CONCERNING THE SOUTHERN BORDER
OF THE UNITED STATES

- - - . - - - -

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

The current situation at the southern border presents
a border security and humanitarian crisis that threatens
core national security interests and constitutes a national
emergency.  The southern border is a major entry point for
criminals, gang members, and illicit narcotics.  The problem
of large-scale unlawful migration through the southern border
is long-standing, and despite the executive branch's exercise
of existing statutory authorities, the situation has worsened
in certain respects in recent years.  In particular, recent
years have seen sharp increases in the number of family units
entering and seeking entry to the United States and an inability
to provide detention space for many of these aliens while their
removal proceedings are pending.  If not detained, such aliens
are often released into the country and are often difficult to
remove from the United States because they fail to appear for
hearings, do not comply with orders of removal, or are otherwise
difficult to locate.  In response to the directive in my
April 4, 2018, memorandum and subsequent requests for support
by the Secretary of Homeland Security, the Department of Defense
has provided support and resources to the Department of Homeland
Security at the southern border.  Because of the gravity of the
current emergency situation, it is necessary for the Armed
Forces to provide additional support to address the crisis.

NOW, THEREFORE, I, DONALD J. TRUMP, by the authority vested
in me by the Constitution and the laws of the United States
of America, including sections 201 and 301 of the National
Emergencies Act (50 U.S.C. 1601 *et seq.*), hereby declare that

2

a national emergency exists at the southern border of the
United States, and that section 12302 of title 10, United States
Code, is invoked and made available, according to its terms, to
the Secretaries of the military departments concerned, subject
to the direction of the Secretary of Defense in the case of
the Secretaries of the Army, Navy, and Air Force.  To provide
additional authority to the Department of Defense to support the
Federal Government's response to the emergency at the southern
border, I hereby declare that this emergency requires use of
the Armed Forces and, in accordance with section 301 of the
National Emergencies Act (50 U.S.C. 1631), that the construction
authority provided in section 2808 of title 10, United States
Code, is invoked and made available, according to its terms, to
the Secretary of Defense and, at the discretion of the Secretary
of Defense, to the Secretaries of the military departments.
I hereby direct as follows:

Section 1.  The Secretary of Defense, or the Secretary of
each relevant military department, as appropriate and consistent
with applicable law, shall order as many units or members of the
Ready Reserve to active duty as the Secretary concerned, in the
Secretary's discretion, determines to be appropriate to assist
and support the activities of the Secretary of Homeland Security
at the southern border.

Sec. 2.  The Secretary of Defense, the Secretary of the
Interior, the Secretary of Homeland Security, and, subject to
the discretion of the Secretary of Defense, the Secretaries of
the military departments, shall take all appropriate actions,
consistent with applicable law, to use or support the use of
the authorities herein invoked, including, if necessary, the
transfer and acceptance of jurisdiction over border lands.

3

Sec. 3.  This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this fifteenth day of February, in the year of our Lord two thousand nineteen, and of the Independence of the United States of America the two hundred and forty-third.



# TAB

# H

## TAB H – Necessity of Border Barriers
## Summary of Supporting Analysis

- This document summarizes analysis provided by the Chairman of the Joint Chiefs of Staff (CJCS) and the Department of Homeland Security (DHS) and provides further context from the Office of the Under Secretary of Defense for Policy supporting a decision to undertake the eleven specified military construction projects pursuant to 10 U.S.C. § 2808.

- Section 2808 authorizes the Secretary of Defense to undertake military construction projects that are necessary to support the use of the armed forces in connection with a declaration of national emergency requiring use of the armed forces. A description of Section 2808's requirements can be found at Tab G.

- Since April 4, 2018, there have been **29** requests for assistance from the Department of Homeland Security (DHS) for DoD support at the southern border, and DoD currently has approximately 5,540 personnel supporting DHS's border security mission. The number of migrant apprehensions by U.S. Border Patrol for Fiscal Year (FY) 2019 through July 2019 (760,370) has already exceeded the total number of apprehensions in FY 2018 (396,579) and FY 2017 (303,916).

  – Customs and Border Protection (CBP) expects another 100,000 apprehensions in August 2019.

- The high number of monthly apprehensions places a considerable strain on CBP detention facilities and personnel. Approximately 40 percent of U.S. Border Patrol (USBP) agents are assigned to processing and detention duties during every 8-hour shift, with another 54 percent of agents performing other administrative duties and training or operating in an off-duty status. This leaves approximately 6 percent of USBP personnel for operations and patrols across the entire 1,954-mile southern border – or approximately 330 agents for each 8-hour shift.

- The USBP's role in CBP's border security mission is to gain, maintain, and expand operational control of the U.S. border between ports of entry. According to DHS, operational control between ports of entry is achieved by establishing situational awareness of the border area, developing the capability to impede and deny illegal entry, and effectively delivering an appropriate law enforcement response and resolution to illicit activity.

- According to DHS, each DoD person deployed in support of DHS "frees up" a CBP agent to be employed in a direct law enforcement capacity in areas of heavy cross-border activity. As such, DoD deployments in support of DHS at the southern border have primarily been oriented towards support roles that relieve DHS personnel of non-law enforcement duties (e.g., logistics, planning, and intelligence analysis) or that provide monitoring and detection support (i.e., operating mobile surveillance camera units or providing aerial reconnaissance).

- Physical barriers like pedestrian fencing are the primary means by which DHS has sought to deter, contain, channel, or interdict illicit activity. DHS has identified 12 capabilities required to achieve operational control of the southern border and has ranked impeding and denying unlawful entry, provided primarily by artificial barriers, as the most important of these critical capabilities.

  – As noted in the CJCS assessment, a 2007 Congressional Research Service Report determined that fencing or a wall is critical to the detection and identification of illegal entry, particularly in urban areas.

1

- – Barriers are the capability most frequently identified by CBP field commanders as necessary to establish operational control at the border.
- – For example, DHS has opined that physical barriers prevent incursions into the communities, businesses, and other sensitive areas proximate to the border; reduce the enforcement footprint and compress USBP operations; increase vanishing times or eliminate "quick" vanishing times (i.e., the time it takes for illegal border crossers to disappear into the surrounding environment and evade apprehension); and provide a force multiplier effect by increasing the efficacy and efficiency of DoD resources.

- There is historical evidence tending to show that physical barriers have been effective along the southern border.
  - – In 1992, the San Diego Sector was the epicenter of illegal immigration and narcotics trafficking. During Operation Gatekeeper, DoD provided personnel and technology and constructed roads and barriers. By 2010, apprehensions were down 88 percent in the Sector. By 2015, apprehensions were down 95 percent from 1992 levels.
  - – In 1993, a similar strategy was employed by DoD as part of Operation Hold the Line in the El Paso Sector. By 2015, apprehensions were down 95 percent from 1993 apprehension levels.

- DHS states that "the border barrier projects that DHS recommends that DoD undertake pursuant to 10 U.S.C. § 2808 will fundamentally change the border dynamic, give a distinct and enduring advantage to USBP as a force multiplier, and provide agents capabilities to respond more quickly to illicit activities."
  - – Moreover, DHS finds that the construction of border barriers will "likely reduce DHS's reliance on DoD for force protection, surveillance support, engineering support, air support, logistical support, and strategic communications assistance."

### Recommendations of the CJCS

- Building on the above analysis, the CJCS analyzed the construction projects proposed by DHS for construction under 10 U.S.C. 284 and Section 2808 in order to determine which projects could best support use of the armed forces in addressing the national emergency at the southern border. The CJCS analysis identified and considered four key factors: DHS's prioritization of projects, current migrant flows as measured by monthly apprehensions in each CBP sector, current deployment of military personnel and support missions by CBP sector, and the type of land (Federal or private) upon which the proposed projects are expected to be undertaken.
  - – The type of land was considered because, at the time of the CJCS analysis, the understanding was that construction could begin more quickly on Federal land than on private land. A delay in constructing border barriers could adversely affect the government's ability to re-prioritize DoD support and concentrate CBP resources.
  - – The CJCS assessment, however, was developed prior to notice from DHS that it lacked the authority to transfer administrative jurisdiction of the necessary lands and subsequent consultation with the Department of the Interior (DOI) regarding the time required and limitations on transferring such jurisdiction. Before consulting with DOI, it was understood that acquiring private land, and subsequently building border barrier on such land, would take longer than building on Federal land.
  - – After consultation with DOI, it also became apparent that there was considerably more private land on the DHS prioritized list than originally understood, and that the

2

administrative jurisdiction of certain Federal lands could not be transferred to a Military Department. The detailed analysis of each project below incorporates this updated information from DOI.

- Although the CJCS found that, in general, barrier construction in one CBP sector has ripple effects across all other sectors, given finite resources, certain construction projects are more beneficial than others in supporting the use of the armed forces.
    - To that end, the CJCS independently re-prioritized DHS's list of requested border barrier projects based on the factors listed above. The following eleven projects would cost an estimated \$3.6 billion. The apprehension figures in the chart below are current through July 31, 2019.

| JS Rank | CBP Border Group Priority | Sector / Project | Miles | Apprehension FY19TD (FY18 Total) | Military Personnel in Sector / MSC Sites | Land Type | Projected Cost (\$M) |
|---|---|---|---|---|---|---|---|
| 1 | 8 | El Paso 8 Sect. 1 & 2 | 12 | 167,395 (31,561) | 1,512 / ▮ | Non-Fed | \$164M |
| 2 | 30 | El Paso 2 | 24 | | | FED | \$476M |
| 3 | 4 | San Diego 4 Sect. 1 & 2 | 3.5 | 51,296 (38,591) | 237 / ▮ | FED | \$67M |
| 4 | 11 | San Diego 11 | 3 | | | Non-Fed | \$57M |
| 5 | 10/27 | Yuma 10/27 | 31 | 65,362 (26,244) | 338/ ▮ | FED | \$527M |
| 6 | 6 | Yuma 6 Sect. 1 & 2 | 3 | | | FED | \$65M |
| *NR | 10 | Yuma 2 | 2 | | | FED | \$40M |
| **NR | 27 | Yuma 3 | 31 | | | FED | \$630M |
| 7 | 7 | Laredo 7 | 52 | 32,717 (32,641) | 304 / ▮ | Non-Fed | \$1,268M |
| 8 | 5 | El Centro 5 | 1 | 30,464 (29,230) | 102 / ▮ | Non-Fed | \$20M |
| 9 | 9 | El Centro 9 | 12 | | | Non-Fed | \$286M |
| **Total Projects: 11; Total Miles: 175; Total Cost: \$3.6B** | | | | | | | |

\* Yuma 2 was not included in the CJCS priority ranking; however, like Yuma 10/27, Yuma 2 is entirely on the Barry M. Goldwater Range.

\*\*Yuma 3 was not included in the CJCS priority ranking due to expected availability of funds for construction under Section 2808. The CJCS assessment did confirm that the border project was necessary to support the use of the armed forces.

## Assessment by CBP Sector

All information on the deployment of military personnel is current as of August 13, 2019. There are 2,979 active duty personnel and 2,802 National Guard personnel deployed at the southern border. Active-duty and National Guard support is being provided in all nine CBP Sectors.

For the active duty component of DoD support, 679 personnel are undertaking logistics, transportation, maintenance, and analyst support as a backfill for National Guard personnel in support of CBP's Operation Guardian Support (CBP's named mission for securing the southwest border). There are also 300 active duty personnel providing support at CBP detention facilities at the southern border, including by providing transportation support (160 personnel) and assisting with welfare checks and migrant feeding (100 personnel). The remaining 40 active-duty personnel provide command and control for this support. All other active duty personnel providing support in the CBP Sectors listed below are undertaking detection and monitoring, force protection, engineering, and command and control missions.

National Guard personnel are undertaking aerial support, infrastructure and maintenance support, detection and intelligence support, and logistics support missions. The Texas National Guard is also providing additional support at detention centers and at ports of entry in Texas, as highlighted below.

- **El Paso Sector Projects:**
  - The El Paso Sector has the largest presence of military personnel. There are **877** active-duty and **635** National Guard Service members in this sector. The active duty forces include a crisis response force and associated UH-60 helicopter crews stationed at Fort Bliss on a 48-hour prepare-to-deploy order in support of DHS and crews associated with an additional four UH-60 helicopter crews and one UH-72 helicopter crew undertaking detection and monitoring missions. The crisis response force is deployable across the Southwest Border. The 635 National Guard personnel in this Sector also include 386 Texas National Guard personnel deployed in support of CBP detention operations and operations at ports of entry.

  - The El Paso Sector has a significant number of deployed mobile surveillance camera sites ▮▮ due to the rugged terrain, which limits visibility, and the sparse existing pedestrian fencing, which limits CBP's ability to monitor large areas and respond quickly.

  - The El Paso Sector has the second largest number of apprehensions of any CBP sector.

  - The first project (El Paso 8 Section 1 and El Paso 8 Section 2) are expected to channel migrants to the Antelope Wells port of entry and increase what are currently fast vanishing times due to the proximity of Highway 81. Further, the rugged terrain on both sides of the border presents hazards for both migrants and CBP agents, which a barrier would mitigate by discouraging border crossings in this area.

  - The second project (El Paso 2) comprises 24 miles of non-contiguous barrier, including sections near the Antelope Wells port of entry. Although a lower priority for CBP, the CJCS concluded that packaging this project with the other two El Paso Sector projects would best support the use of the armed forces by bolstering the effectiveness of the first two projects in this high-apprehension sector.

  - The CJCS assesses that the additional fencing contemplated for the El Paso Sector will lessen the high level of need for DoD to operate mobile surveillance camera sites.

FY19 2808 Administrative Record - 0229

- The additional fencing contemplated for the El Paso Sector may also allow DoD to focus monitoring and detection assets on unfenced areas within the El Paso Sector or in other CBP Sectors.
- The CJCS noted that Operation Hold the Line, which surged personnel, technology, and physical barriers in the El Paso Sector, helped to substantially decrease the number of apprehensions between 1993 and 2015.

- **San Diego Sector Projects:**
  - There are **179** active duty and **58** National Guard personnel in the San Diego Sector. They operate ▮ mobile surveillance camera sites in the sector.
  - Apprehensions in the San Diego Sector are increasing, with the number of apprehensions in FY 2019 (**51,296**) already exceeding those in FY 2018 (38,581).
  - The San Diego Sector is particularly challenging for migrant interdiction due to the highly urbanized and highly mountainous areas within the Sector, both of which allow for quick vanishing times.
  - The first San Diego Sector project (San Diego 4 Section 1 and San Diego 4 Section 2) would add pedestrian fencing in rugged terrain east of the highly urbanized areas of Otay Mesa and Chula Vista. The second project (San Diego 11) would add new secondary pedestrian fencing on either side of the Tecate port of entry, which is also in an area of rugged terrain where migrants have access to Highway 94.
  - The CJCS assesses that the projects contemplated for the San Diego Sector are expected to channel migrants to existing ports of entry, thereby reducing the need for DoD detection and monitoring between ports of entry.
  - The additional fencing contemplated for the San Diego Sector may also allow DoD to focus monitoring and detection assets on unfenced areas within the San Diego Sector or in other CBP Sectors.
  - The CJCS noted that Operation Gatekeeper, like Operation Hold the Line, introduced border barriers to the San Diego Sector in 1992, helping to decrease apprehensions 95 percent by 2015.

- **Yuma Sector Projects:**
  - There are currently **244** active duty military personnel and **94** National Guard personnel deployed in the Yuma Sector. Most are operating ▮ mobile camera systems.
  - Apprehensions are on the rise in this Sector. So far in FY 2019, there have been **65,362** apprehensions. In all of FY 2018, there were 31,393 total apprehensions.
  - Yuma 10/27 and Yuma project 2 are located on the Barry M. Goldwater Range. It is an active DoD military installation largely under the administrative control of the Department of the Navy. Construction of additional border barriers on the Barry M. Goldwater Range will impede the passage of migrants onto a live-fire range and otherwise divert migrants to ports of entry.
  - Yuma project 2 and Yuma project 3 were requested as part of DHS's request for DoD to build border barrier under Section 284 but not approved, and were excluded from the Joint Staff border barrier assessment.

5

- Additional fencing in the Yuma Sector will reduce the need for DoD to operate mobile surveillance camera sites that monitor unlawful crossings in the area and allow such assets to be reallocated elsewhere.

- The additional fencing contemplated for the Yuma Sector may also allow DoD to focus monitoring and detection assets on unfenced areas within the Yuma Sector or in other CBP Sectors.

- **Laredo Sector and El Centro Sector Projects:**

  - There are currently **511** active duty military personnel and **390** National Guard personnel deployed in the Laredo Sector. Of the **390** National Guard personnel, there are **70** Texas National Guard personnel deployed in the Laredo Sector in support of CBP detention operations and operations at ports of entry. Active duty personnel operate ▮ mobile surveillance camera sites in the Laredo Sector. There are also two UH-72 helicopter crews performing detection and monitoring missions in the Laredo Sector.

  - Apprehensions are up slightly in this Sector. So far in FY 2019, there have been **32,717** apprehensions. They have already exceeded the total number of apprehensions in FY 2018 (32,641).

  - There are currently **46** active duty personnel and 56 National Guard personnel deployed in the El Centro Sector. Active duty personnel also operate ▮ mobile surveillance camera sites in this sector.

  - Apprehensions are on the rise in this Sector. So far in FY 2019 there have been **30,464** apprehensions. In all of FY 2018, the total number of apprehensions were 29,230.

  - Additional fencing in these sectors would reduce the need for DoD support to DHS in these areas and enable DoD to redirect personnel and assets to other areas without barriers.

**Determinations**

- The forgoing data and analysis provide a basis for concluding that, in accordance with Section 2808, the above eleven MILCON projects are necessary to support the use of the armed forces in connection with the national emergency declared by the President on February 15, 2019. The memorandum at TAB A memorializes and implements this determination.

  - DoD has long provided support to DHS in executing its border enforcement and security mission, but the need for such support has become more acute given the significant increase in border crossing apprehensions. This history of DoD support, and the more acute crisis, has been outlined in congressional testimony (e.g., DASD Salesses testimony before the House of Representatives Committee on Homeland Security's Border Security, Facilitation, and Operations Subcommittee on June 20, 2019).

  - The eleven projects are necessary to support the use of the armed forces because, as the forgoing analysis demonstrates, the construction of such physical barriers will deter illegal entry, increase the vanishing time of illegal border crossers, and channel migrants to points of entry, all of which will reduce the demand for DoD personnel and assets at the locations where the barriers are constructed and allow the redeployment of DoD personnel and assets to other high-traffic areas on the border without barriers or, if the surplus DoD personnel are no longer needed, to other national defense missions.

  - Although these projects may reduce the overall need for DoD support on the border, they likely will not eliminate it. Instead, they will allow DoD to meet DHS's needs with fewer

6

personnel and resources.  In short, these barriers will allow DoD to provide support to DHS more efficiently and effectively.  In this respect, the contemplated construction projects are force multipliers.

FY19 2808 Administrative Record - 0232

# TAB

# I